**SO ORDERED.**

**SIGNED this 24 day of May, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

**IN RE:**

| | |
|---|---|
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC,**<br>　　**DEBTOR.** | **CASE NO.**<br>**09-10340-8-JRL**<br><br>**CHAPTER 11** |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC,**<br>　　**Plaintiff**<br><br>　　　　v.<br><br>**WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; JDAVIS ARCHITECTS, PLLC; FLUHRER REED, PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS INC.,**<br>　　**Defendants**<br><br>**and**<br><br>**WEAVER COOKE CONSTRUCTION, LLC and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,**<br>　　**Defendants, Counterclaimants and Crossclaimants,**<br><br>　　　　v. | **ADVERSARY PROCEEDING NO.**<br><br>**10-00023-8-JRL** |

**JDAVIS ARCHITECTS, PLLC; FLUHRER REED PA; SKYSAIL OWNERS ASSOCIATION, INC.; WACHOVIA BANK, NATIONAL ASSOCIATION and WELLS FARGO & COMPANY f/d/b/a WACHOVIA CORPORATION,**
    Crossclaim Defendants.

**and**

**NATIONAL ERECTORS REBAR, INC.,**
    Defendant, Counterclaimant, Crossclaimant,
    and Third-Party Plaintiff,

       v.

**ROBERT ARMSTRONG, JR., ROBERT P. ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.,**
    Third-Party Defendants.

**and**

**JDAVIS ARCHITECTS, PLLC,**
    Third-Party Plaintiff,

       v.

**MCKIM & CREED, P.A.,**
    Third-Party Defendant.

## ORDER

This matter came before the court on defendant National Erectors Rebar's motion to dismiss the plaintiff's claim against it. A hearing was held on March 29, 2011, in Raleigh, North Carolina.

The plaintiff, New Bern Riverfront Development, LLC ("NBRD") initiated this adversary proceeding against various defendants including National Erectors Rebar, Inc. ("National Erectors"), JDavis Architects, PLLC, ("JDavis"), and Weaver Cooke Construction,

LLC, ("Weaver Cooke"). NBRD owned real property in Craven County, North Carolina, and developed it into the SkySail Luxury Condominiums ("the project"). Weaver Cooke served as the general contractor for the project and hired National Erectors as a subcontractor to design and construct certain structural components for the project. National Erectors now moves to dismiss the claim of negligence asserted against it by NBRD.

## BACKGROUND

Weaver Cooke hired National Erectors as a subcontractor to design and construct a post-tensioning concrete system ("the PT system"), which is a series of cables embedded in concrete structures integrated into the project to provide support. NBRD directly contracted with JDavis as architect, who was responsible for designing the rest of the project's structural elements besides the PT system. JDavis oversaw the manner in which the PT system connected with the rest of the components of the project.

After completion of the design and construction of the PT system, the system failed in three separate sections. The failure caused the surrounding concrete to fracture and the reinforcing steel cables to be displaced. The fracturing and displacement caused concrete debris to fall from above onto the deck of the parking garage of the project. After the damage, NBRD alleges in its complaint that Weaver Cooke hired two firms to investigate the failures and draft a plan for corrective work, one of which was to specifically focus on the PT system. That firm reported that the PT system adversely affected the columns in the parking deck of the project and the swimming pool. NBRD's lawsuit is based, among other things, on the damage done by the failure of the PT system. NBRD asserted claims for breach of contract against Weaver Cooke

and JDavis[1] and a claim for negligence against National Erectors.[2]

## DISCUSSION

NBRD's claim for negligence is based on two grounds: (1) National Erectors failed to comply with the standard of care required of "design professionals"[3] under North Carolina law which resulted in damage to the project and NBRD; and (2) under common law, National Erectors failed to exercise reasonable care in designing and constructing the PT system, which caused damage to the project and NBRD. National Erectors moves to dismiss the claim for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012). National Erectors argues it is not a "design professional" to which this specific standard of care should be applied and that an action in common law tort does not lie against a party who is simply negligent in performing a contract.

**A. Negligence based on professional duty of care**

Negligence arises out of the violation of a duty to exercise ordinary care which is imposed on every person who engages in an active course of conduct and results in harm to others or the property of others. Davidson and Jones, Inc. v. New Hanover County, 41 N.C. App. 661, 666 (N.C. Ct. App. 1979). That duty of care may also arise out of contractual relations. Id. However, privity of contract is not a prerequisite to impose a duty to use due care

---

[1] NBRD also alleges willful and egregious breach of contract, unfair and deceptive trade practices, and breach of the covenant of good faith against Weaver Cooke.

[2] NBRD's claim for negligence was also asserted against Fluhrer Reed, P.A., who was hired by JDavis to provide engineering services and design and construct the PT system.

[3] This phrase is employed by NBRD. See infra for discussion on its relevance.

"in one's actions in connection with an economic relationship." Id. North Carolina courts have developed a discrete form of negligence applicable to engineers, surveyors, and architects, requiring them to use the degree of care which an engineer, surveyor, or architect would use under similar circumstances. Id. at 667 (referring to architects); Associated Indus. Contractors, Inc. v. Fleming Engineering, Inc., 162 N.C. App. 405, 409-410 (N.C. Ct. App. 2004) (referring to engineers and surveyors and citing Davidson and Jones Inc., 41 N.C. App. at 668). Furthermore, lack of privity of contract does not render these professionals immune from liability to the general contractor for damages resulting from their negligence. Davidson and Jones Inc., 41 N.C. App. at 668. Although NBRD is not the general contractor, the lack of contractual privity still exists as to National Erectors. Thus despite the lack of contractual privity, the duty of care applicable to engineers, surveyors and architects may still apply to National Erectors. See Quail Hollow East Condominium Ass'n. v. Donald J. Scholz Co., 47 N.C. App. 518, 522-526 (N.C. Ct. App. 1980) (giving homeowners' association standing to sue architect in negligence for work done for condominium complex despite the fact that there was no contract between architect and HOA).

The remaining issue is whether National Erectors qualifies as an architect, engineer and/or surveyor and should thus be held to this standard of care. National Erectors argues the standard should not apply to its actions, because the only job for which NBRD alleges National Erectors was licensed was as general contractor.[4] Furthermore, National Erectors argues NBRD

---

[4]Based on the filings, it appears all parties agree that Weaver Cooke served as the general contractor for the project. However, in describing the parties, jurisdiction and venue in its complaint, NBRD describes National Erectors as being licensed by the state as a general contractor.

is attempting to expand the scope of professional negligence to include "design professionals" while courts have adhered to the specific categories of architect, engineer, and surveyor. Finally, National Erectors denies contributing to the design of the project and that even if it did, it did not do so as a licensed architect, engineer, or surveyor—those roles were fulfilled by other parties named in the complaint.[5]

North Carolina law does not categorize the special duty of care as one applying to "design professionals" as NBRD phrases in its complaint. Courts have strictly dealt with this discrete form of negligence as applying to architects, engineers, and surveyors. See, e.g., Davidson and Jones, Inc., 41 N.C. App. at 583084 (titling the section as "Architects' liability" and discussing the duty of care of architects); Quail Hollow East Condominium Association, 47 N.C. App. at 521-22 (discussing the duty of care imposed on architects); Associated Industrial Contractors, Inc., 162 N.C. App. 409-10 (outlining the degree of care required of surveyors or civil engineers). Therefore it is inappropriate to expand this standard as applying to any party serving as a "design professional," which according to the complaint, is defined as someone who "designs and constructs." However, NBRD also alleges that National Erectors owed a duty to perform its work in accordance with the standard of care applicable to engineers and architects, so the additional use of the broader category of "design professional" is not detrimental. The court will disregard it and focus on whether a claim for professional negligence by an architect or engineer has been sufficiently pled.

NBRD does not allege that National Erectors was a licensed architect, engineer or

---

[5]For example, Fluhrer Reed P.A. is a co-defendant and served as the licensed engineer on the project.

-6-

surveyor, nor does National Erectors contend it is licensed in any of those professions.  North Carolina law regarding the standard of care applied to these professionals does not specify whether it should be applied to <u>licensed</u> individuals.  North Carolina law does, however, prohibit the practice or offer to practice architecture without certificate of admission to practice.  N.C. Gen. Stat. § 83A-12.  Similarly, it is unlawful to practice engineering or land surveying without a license or imply that one is a professional engineer when one is not licensed.  N.C. Gen. Stat. § 89C-23.  Although it is unlawful to practice these professions without a license, North Carolina law generally holds those who practice a particular profession without a license to the standard of care applicable to licensed professionals in negligence actions.  <u>See, e.g.</u>, <u>Grier v. Phillips</u>, 230 NC. 672, 679 (1949) (holding an unlicensed dentist must exercise the skill and care required of licensed dentists); <u>Hazelwood v. Adams</u>, 245 N.C. 398, 401 (1957) (confirming that one who holds himself out to practice dentistry implicitly agrees to provide services in compliance with the standard of care of the average member of the profession in good standing).

The court does not imply or presume that National Erectors was practicing architecture, engineering, or surveying without a license, nor does NBRD specifically assert this in its complaint.  In fact, there are exemptions, at least under the architecture statutes, which allow for certain work that appears to be the practice of architecture to be conducted without a license.  <u>See</u> N.C. Gen. Stat. 83A-13 (listing categories of projects and work that do not require an architectural license, such as general contractors participating in "Design/Build" undertakings).  All the court intends to address at this juncture is whether a claim for professional negligence has been asserted by NBRD, viewing the complaint in the light most favorable to NBRD, the non-movant.

NBRD alleges that National Erectors was required to "design and construct" certain components of the project and owed NBRD a duty to perform the design and construction of the project "consistent with the standard of care applicable to . . . [an] engineer, or architect . . . ." It also alleges this duty was breached and proximately caused damage to NBRD. Neither the complaint, National Erectors' motion to dismiss, nor NBRD's response elaborate on the work performed by National Erectors, whether the "design and construct[ion]" of the PT system was truly that of the practice of engineering, surveying, or architecture, and whether National Erectors, licensed or not, performed work in conformity with the care exercised by the average professional in that field. It may well be that the work performed by National Erectors does not fit the definition of "engineering" or "architecture" or that National Erectors' work falls under a statutory exception. Those responses have yet to be provided and explored. Therefore, the court denies the motion to dismiss the claim for professional negligence, as NBRD has sufficiently pled a claim as it relates to any alleged engineering or architectural work performed by National Erectors.

**B. Common law negligence**

The court next addresses whether NBRD has sufficiently pled a claim on the second grounds for negligence—common law negligence. More specifically, the issue is whether in light of the contractual relations between National Erectors and third parties, NBRD can still assert a claim for negligence. The general rule in North Carolina is that a breach of contract does not give rise to a tort action between the contracting parties. N.C. State Ports Authority v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81 (N.C. 1978) *rejected in part on other grounds by* Trs. Of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230 (1985); See also Moore

v. Coachmen Industries, Inc., 129 N.C. App. 389, 401 (N.C. Ct. App. 1998). The law of contract governs the obligations and remedies of the parties in the event of a breach of contract. Spillman v. American Homes of Mocksville Inc., 108 N.C. App. 63, 65 (N.C. Ct. App. 1992). The rule is often referred to as the economic loss rule, which encourages contracting parties to allocate risks for economic loss themselves. Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635, 639 (N.C. Ct. App. 2007). Where the loss is already contemplated by the contract, a claim for negligence, arising out of the party's negligent performance of the contract, is surplusage. Ports Authority, 294 N.C. at 83. Exceptions to this rule fall into four categories:

> (1) the injury was to the person or property of someone other than the promisee;
>
> (2) the injury was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee;
>
> (3) the injury was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy with the duty to use care in the safeguarding of the property from harm; and
>
> (4) the injury was a willful injury to or a conversion of the property of the promiseee, which was the subject of the contract.

22 Strong's North Carolina Index 4th, Negligence §12 (citing Ports Authority, 294 N.C. at 82). In these instances, a tort action can be brought against the defendant despite the fact that the parties have a contract between them.

National Erectors argues the negligence claim should be dismissed because the facts resemble those in Ports Authority and that NBRD's claim is surplusage. In Ports Authority, the plaintiff hired a general contractor, who in turn hired a subcontractor to construct roofs for the project. The roofs leaked due to improper installation and the plaintiff sued the general contractor and subcontractor for breach of contract as well as negligence. The North Carolina

-9-

Supreme Court dismissed the negligence claims against the general contractor and subcontractor. As to the general contractor, the plaintiff's claim of negligence was surplusage because the parties had a contract between them which dictated the obligations and remedies of the parties in the event of a breach. Ports Authority, 294 N.C. at 83. As to the subcontractor, the Supreme Court held that although the complaint alleged the subcontractor was negligent in installing the roofs, it also alleged the subcontractor, having a contract with the general contractor, failed to properly apply the roofing material. Ports Authority, 294 N.C. at 87. This was "simply an allegation that [the subcontractor] did not properly perform its contract with [the general contractor]" and an action in tort was improper based on the economic loss rule. Id.

Furthermore, the circumstances in Ports Authority did not fall under one of the four exceptions to the economic loss rule, allowing a negligence claim to proceed. The plaintiff sought recovery and reimbursement for repairs to the roof and for expenses incurred in moving goods away from the leaking areas. Id. at 76. Thus all the damage done and relief requested related to the subject of the contract—the installation of roofs to the project. Id. (seeking recovery of "'all necessary repairs to the roofs'"). This clearly did not fit in the latter two categories discussed above—where the promisor, such as a common carrier, is charged by law with the duty to use care or where the promisor caused a wilful injury to the promisee's property. See Id. at 82. Nor was the injury at issue to a person or property of someone other than the promisee. Id. The remaining exception covers injuries to property that belongs to the promisee but was not the subject of the contract. Id. As described above, in Ports Authority, the injury at issue was to the roofs themselves which were the precise subject of the contracts—both the contract of the general contractor to construct the buildings, including roofs, and that of the

-10-

subcontractor to specifically construct the roofs.

NBRD argues that its negligence claim should not be barred by the economic loss rule because it falls under this exception. In its complaint, NBRD alleges that the subject matter of its contract with Weaver Cooke, in part, and Weaver Cooke's contract with National Erectors was to design and construct the PT system. NBRD also alleges that the improper design and construction of the PT system caused damage to parts of the parking deck and swimming pool. Therefore, NBRD alleges that the injury sustained was to property other than that which was the subject matter of the contract. Taking the complaint in the light most favorable to the non-movant, the negligence claim is sufficiently pled against National Erectors such that it survives the motion to dismiss at this phase of the proceeding.

NBRD cites Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635 (N.C. Ct. App. 2007), as further support that the negligence claim is allowed. The court is hesitant to rely on Lord because it is difficult to reconcile with the North Carolina Supreme Court's decision in Ports Authority. In Lord, the Court of Appeals upheld a negligence claim asserted against a subcontractor by the clients of the general contractor. The clients, William and Jennifer Lord, hired a general contractor to construct a home. Id. at 637. The general contractor hired a subcontractor to provide trusses used in the construction of the home. Id. at 638. The trusses were defective and the Lords asserted claims of negligence against the general and subcontractors. The court held that "[b]ecause there was no contract between the Lords and the [subcontractor], we further find that the economic loss rule does not apply and therefore does not operate to bar the Lords' negligence claims." Id. at 643. This appears to be the opposite of the conclusions reached in Ports Authority. There, the court found that even though the plaintiff did

not have a contract with the subcontractor, the negligence claim was barred by the economic loss rule because it was brought against the subcontractor for negligently performing its contract with the general contractor.  Ports Authority, 294 N.C. at 87.  The Court of Appeals in Lord, although discussing Ports Authority initially, does not describe the extent of the damages or whether the negligence claim was allowed under one of the four exceptions to the economic loss rule.  Lord, 182 N.C. App. at 640-42 (discussing Ports Authority).  Regardless, for purposes of the issue before this court, NBRD's negligence claim against National Erectors is properly brought as an exception to the economic loss rule described in Ports Authority.

## CONCLUSION

Based on the foregoing the defendant's motion to dismiss the claims for professional negligence and common law negligence is DENIED.