**SO ORDERED.**

**SIGNED this 05 day of October, 2011.**

_____
J. Rich Leonard
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | CASE NO. 09-10340-8-JRL |
|     DEBTOR. | |
| | **CHAPTER 11** |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | |
|     Plaintiff | ADVERSARY PROCEEDING NO. |
|     v. | 10-00023-8-JRL |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; JDAVIS ARCHITECTS, PLLC; FLUHRER REED, PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS INC., | |
|     Defendants | |
| and | |
| WEAVER COOKE CONSTRUCTION, LLC and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
|     Defendants, Counterclaimants and Crossclaimants, | |
|     v. | |

**JDAVIS ARCHITECTS, PLLC; FLUHRER REED PA; SKYSAIL OWNERS ASSOCIATION, INC.; WACHOVIA BANK, NATIONAL ASSOCIATION and WELLS FARGO & COMPANY f/d/b/a WACHOVIA CORPORATION,**
    Crossclaim Defendants.

**and**

**NATIONAL ERECTORS REBAR, INC.,**
    Defendant, Counterclaimant, Crossclaimant,
    and Third-Party Plaintiff,

       v.

**ROBERT ARMSTRONG, JR., ROBERT P. ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.,**
    Third-Party Defendants.

**and**

**JDAVIS ARCHITECTS, PLLC,**
    Third-Party Plaintiff,

       v.

**MCKIM & CREED, P.A.,**
    Third-Party Defendant.

## ORDER

This matter came before the court on JDavis Architects, PLLC and Fluhrer Reed, PA's motions to dismiss cross-claims of defendant National Erector Rebar, Inc. and on third-party defendant JMW Concrete Contractors' motion to dismiss the third-party complaint asserted against it by National Erector Rebar, Inc. Counsel have agreed that the motions may be decided without further hearing.

The plaintiff, New Bern Riverfront Development, LLC ("NBRD") initiated this adversary proceeding against various defendants including National Erectors Rebar, Inc. ("National"), JDavis Architects, PLLC, ("JDavis"), Fluhrer Reed, PA ("Fluhrer"), and Weaver Cooke Construction, LLC, ("Weaver Cooke").  Among its many claims, NBRD asserted claims against National for professional negligence and common law negligence.  National filed a motion to dismiss the claims of NBRD against it.  In addition, National brought cross-claims against defendants JDavis and Fluhrer, and a third-party complaint against JMW Concrete Contractors ("JMW"), asserting that these parties were liable to National for contribution and indemnity.   In response, JDavis, Fluhrer, and JMW  moved to dismiss the respective claims asserted against them.  The ruling on these subsequent motions to dismiss was reserved until after the court considered National's motion to dismiss the claims of NBRD, which the court denied on May 24, 2011.

**Background**

NBRD owned real property in Craven County, North Carolina, and developed it into the SkySail Luxury Condominiums ("the project"). Weaver Cooke, the general contractor for the project, hired National as a subcontractor to design and construct a post-tensioning concrete system ("the PT system"), which is a series of cables embedded in concrete structures integrated into the project to provide support.  NBRD directly contracted with JDavis as architect, who was responsible for designing the rest of the project's structural elements besides the PT system.  The structural engineering for most of the structure was performed by Fluhrer pursuant to a contract with JDavis.  JDavis oversaw the manner in which the PT system connected with the rest of the components of the project.  JMW was a subcontractor on the project that contracted with Weaver

Cooke to perform concrete work on the project.

After completion of the design and construction of the PT system, the system failed in three separate sections. The failure caused the surrounding concrete to fracture and the reinforcing steel cables to be displaced. The fracturing and displacement caused concrete debris to fall from above onto the deck of the parking garage of the project. NBRD's lawsuit is based, among other things, on the damage done by the failure of the PT system. NBRD asserted a negligence claim against National on the grounds of professional negligence and common law negligence. National brought cross-claims for contribution and indemnity against defendants JDavis and Fluhrer and third-party defendant JMW, based on their negligence and negligent misrepresentations.[1] JDavis, Fluhrer, and JMW moved to dismiss the claims of National for contribution and indemnity.

## Discussion

National's claims for contribution and indemnity are pled in the alternative. The claims for contribution are governed by N.C. Gen. Stat. § 1B-1(a), which provides a right to contribution "where two or more persons become jointly or severally liable in tort for the same injury." National seeks indemnity only under an implied-in-law theory, which is "a common law right to indemnification for a passively negligent tort-feasor from an actively negligent tort-feasor, for injuries caused to third parties." Kaleel Builders, Inc. v. Ashby, 161 N.C. App. 34, 41, 587 S.E.2d 470, 475 (2003). JDavis, Fluhrer, and JMW (collectively "movants") move to dismiss the claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to adversary proceedings by

---

[1] Negligence was the sole basis for National's claims against JMW.

-4-

Federal Rule of Bankruptcy Procedure 7012).

**A. Underlying injury sounding in tort**

In support of their motions to dismiss the claims of National, the movants share the same core argument. They contend that because National can only be found liable for breach of contract, there is no underlying tort injury, and therefore, the tort theories of contribution and implied-in-law indemnity do not apply. It is undisputed that "both implied-in-law indemnity and contribution require an underlying tort injury." CBP Resources, Inc. V. SGS Control Serv., Inc., 394 F.Supp.2d 733, 741 (M.D.N.C. 2005) (citing Kaleel Builders, 161 N.C. App. at 41, 587 S.E.2d at 475; Holland v. Edgerton, 85 N.C. App. 567, 571, 355 S.E.2d 514, 517 (1987)). Furthermore, National agreed that NBRD failed to state a claim against it for negligence, and moved the court to dismiss the claims. However, National contended that so long as the underlying negligence claims asserted against it remain, it may rightfully pursue claims for contribution and implied-in-law indemnity based upon those allegations. Because of the dependant nature of the claims at issue, the court's ruling on National's motion to dismiss NBRD's claim for negligence was outcome determinative as to the movants' motions to dismiss the claims of National for contribution and implied-in-law indemnity.

On May 24, 2011, the court found that NBRD sufficiently pled a claim for negligence against National on two separate grounds—professional negligence and common law negligence. In light of the court's ruling, it is clear that the movants' argument fails. Because the claims of NBRD subject National to potential tort liability, it may rightfully base claims for contribution and implied-in-law indemnity based upon those allegations.

**B. National's Claim for implied-in-law indemnity**

The movants also share the contention that National has failed to sufficiently state a claim for implied-in-law indemnity.[2] The North Carolina Supreme Court has described implied-in-law indemnity as a situation in which "two persons are jointly liable in respect to a tort, one being liable because he is the actual wrongdoer, and the other by reason of constructive or technical fault imposed by law, the latter, if blameless as between himself and his cotortfeasor, ordinarily will be allowed to recover full indemnity over against the actual wrongdoer." Hayes v. City of Wilmington, 243 N.C. 525, 543, 91 S.E.2d 673, 686 (1956). Stated more simply, implied-in-law indemnity "arises from an underlying tort, where a passive tort-feasor pays the judgment owed by an active tort-feasor to the injured third party." Kaleel Builders, 161 N.C. App. at 39, 587 S.E.2d at 474.

National has pled that in the event that it is held liable for any alleged damages, then it is entitled to recover the same from the movants based on their negligence and negligent misrepresentations.[3] In this respect, National makes specific allegations as to each movant's active negligence with respect to work performed on the project and contends that such negligence is the cause of damages allegedly arising from the underlying tort. Viewing the claims in the light most favorable to the non-movant, the claims for implied-in-law indemnity are sufficiently pled against the movants such that they survive the motions to dismiss at this phase

---

[2] The movants' central argument was that National failed to state a claim for implied-in-law indemnity *or* contribution because there was not an "underlying tort," which has already been addressed above. Notably, this was the movants' sole argument against National's claim for contribution.

[3] As mentioned above, negligent misrepresentation was not a basis for National's claims against JMW.

of the proceeding.

**C. JMW's reliance on the completed and accepted work doctrine**

In addition to the arguments shared with the other movants, JMW contends that National's claims based on JMW's alleged negligence should be dismissed pursuant to the completed and accepted work doctrine. JMW argues that because its concrete work on the project was completed and accepted by Weaver Cooke, the third-party complaints against JMW should be dismissed. The court finds that JMW's argument lacks merit. The completed and accepted work doctrine establishes "the general rule that an independent contractor is not liable for injuries to third parties occurring after the contractor has completed the work and it has been accepted by the *owner*." Price v. Johnston Cotton Co., 226 N.C. 758, 759, 40 S.E.2d 344, 344 (1946) (emphasis added) (citations omitted); see Nifong v. C.C. Mangum, Inc., 121 N.C. App. 767, 768–69, 468 S.E.2d 463, 465 (1996) (explaining the completed work doctrine and its exceptions as applied in North Carolina). JMW contends that Weaver Cooke, the general contractor for the project, accepted its completed work. However, because NBRD is the owner of the project—not Weaver Cooke—JMW's reliance on the completed work doctrine is misplaced.

**D. JMW's motion to dismiss the third-party complaint filed in state court for insufficient service of process**

JMW also contends that it never received adequate service of process, and therefore, National's third-party complaint should be dismissed. On March 30, 2009, NBRD filed its first complaint in Wake County Superior Court, naming National, among others, as defendant. On September 10, 2009, National filed a third-party complaint, naming JMW as a third-party defendant. It is undisputed that JMW is a sole proprietorship owned by Mr. Jerry Holyfield, Jr.

("Mr. Holyfield"), and as such, JMW must be served pursuant to Rule 4(j)(1) of the North Carolina Rules of Civil Procedure. On September 11, 2009, National attempted service by mailing a copy of the third-complaint and summons to the address of JMW Concrete Contractors, Inc., an entity that purchased the assets of JMW in August 2009. Because process was not properly served on Mr. Holyfield or his registered agent, the attempted service of process did not comply with Rule 4(j)(1). See Park v. Sleepy Creek Turkeys, Inc., 60 N.C. App. 545, 548, 299 S.E.2d 670, 671–72 (1983); Hall v. Lassiter, 44 N.C. App. 23, 25, 260 S.E.2d. 155, 157 (1979). On November 19, 2009, National obtained an alias and pluries summons as to various third-party defendants, including JMW, which kept National's action against JMW in existence even though process had not yet been properly served.[4] The state court proceeding was stayed on November 30, 2009 pursuant to NBRD's filing for bankruptcy, and on December 16, 2009, NBRD filed a notice of removal.

When a case has been removed in which a "defendant[] has not been served with process or in which the service has not been perfected prior to removal, or in which process [was] defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. However, § 1448 cannot revive an action that was subject to dismissal prior to removal. See Maxwell v. Nat'l Gypsum

---

[4] Alias and pluries summons are governed by Rule 4(d) of the North Carolina Rules of Civil Procedure, which states:
> When any defendant in a civil action is not served within the time allowed for service, the action may be continued in existence as to such defendant [if] . . . [t]he plaintiff [sues out] an alias or pluries summons returnable in the same manner as the original process. Such alias or pluries summons may be sued out at any time within 90 days after the date of issue of the last preceding summons in the chain of summonses or within 90 days of the last prior endorsement.

N.C. R. Civ. P. 4(d).

Co., 2003 U.S. Dist. LEXIS 7367, at *1–2 (M.D.N.C. 2003) (explaining that because "the time period during which Plaintiff could serve the summons, have the time for its service extended through endorsement, or seek issuance of an alias or pluries summons ended," the case could not be revived by § 1448). As applied to the case at hand, even though JMW was not served prior to removal, National had taken appropriate steps in causing an alias and pluries summons to be issued prior to removal, thereby preserving its action against JMW and retaining the ability to serve JMW via federal process.

Rule 4(m) of the Federal Rules of Civil Procedure governs the time limit for service of process in a federal proceeding:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). In a removal action where § 1448 service is available, the 120-day service period commences on the date of removal. Motsinger v. Flynt, 119 F.R.D. 373, 376 (M.D.N.C. 1988). In this case, the state court action was removed on December 19, 2009, and therefore, National was required to serve JMW in the following 120 days or before April 19, 2010. It is undisputed that National failed to serve JMW within this period.

However, even though the Rule 4(m) service period has run, the court must consider whether there was good cause for National's failure to serve JMW within the service period. In regard to this question, the court finds two events particularly relevant. First, on March 11, 2010— over a month before the 120-day service period had run—all parties appeared before this court for a status conference at which the status of the pleadings was among the

issues discussed. At the conference, counsel for National called attention to the fact that not all parties had responded to the third-party claims asserted in the state court proceedings. NBRD made clear that it intended to move the court to amend its pleadings. Accordingly, all parties agreed not to stand on the state court pleadings, but instead, to use the amended pleadings as the basis for the lawsuit. Therefore after the conference, National did not make efforts to remedy the defects in service of the state court action because it believed that service of the state court pleadings would be futile.

The second complicating factor was the death of Mr. Holyfield. In accordance with the discussions at the status conference, NBRD filed a motion to amend on March 19, 2010, and on May 4, 2010, the court granted the motion. On May 6, 2010, NBRD filed its amended complaint. Mr. Holyfield, the owner and sole proprietor of JMW, died on May 20, 2010. In response to the claims of NBRD and the cross-claims of Weaver Cooke, National filed the third-party complaint against multiple parties, including JMW. National caused a summons to be issued to JMW on July 8, 2010. However, counsel for JMW refused to accept service and the estate file for decedent Jerry Holyfield was not opened until August 23, 2010. Once National became aware that the estate file was open, it promptly caused a summons to be re-issued and served on the administrator of the estate of Mr. Holyfield.

Based of the foregoing, the court finds that while National undoubtedly ran afoul of Rule 4(m) by not properly serving JMW for well over 200 days after removal, good cause has been shown for this failure. Accordingly, the court extends the service period until such time that service on JMW was completed.

**Conclusion**

Based on the foregoing, the movants' motions to dismiss National's claims for contribution and indemnity are **DENIED**.

**END OF DOCUMENT**