**SO ORDERED.**

**SIGNED this 10 day of September, 2013.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

NEW BERN RIVERFRONT DEVELOPMENT, LLC,
    DEBTOR.

CASE NO. 09–10340–8–SWH
CHAPTER 11

NEW BERN RIVERFRONT DEVELOPMENT, LLC,
    Plaintiff,

AP NO. 10–00023–8–SWH

    v.

WEAVER COOKE CONSTRUCTION, LLC, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, J. DAVIS ARCHITECTS, PLLC, FLUHRER REED, PA, and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS INC.,
    Defendants

and

WEAVER COOKE CONSTRUCTION, LLC and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,
    Defendants, Counterclaimants,
    Crossclaimants and Third–Party Plaintiffs,

    v.

1

**JDAVIS ARCHITECTS, PLLC; FLUHRER REED, PA, SKYSAIL OWNERS ASSOCIATION, INC., NATIONAL REINFORCING SYSTEMS, INC., ROBERT ARMSTRONG, JR., ROBERT P. ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC., PERFORMANCE FIRE PROTECTION, LLC, RANDOLPH STAIR AND RAIL COMPANY, STOCK BUILDING SUPPLY, LLC, PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY, UNITED FORMING, INC., a/d/b/a UNITED CONCRETE, INC., and WATERPROOFING SPECIALTIES, INC.,**
      **Crossclaimants, Counterclaimants and Third-Party Defendants**

**and**

**NATIONAL ERECTORS REBAR, INC.,**
      **Defendant, Counterclaimant, Crossclaimant, and Third–Party Plaintiff,**

         **v.**

**ROBERT ARMSTRONG, JR., ROBERT P. ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.,**
      **Third-Party Defendants**

**and**

**J. DAVIS ARCHITECTS, PLLC,**
      **Third-Party Plaintiff,**

         **v.**

**MCKIM & CREED, P.A.,**
    **Third-Party Defendant**

**and**

**GOURAS, INC.,**
    **Fourth-Party Plaintiff,**

        **v.**

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC., and ALEX GARCIA d/b/a JC 5,**
    **Fourth-Party Defendants.**

## ORDER DENYING MOTION TO STRIKE

The matter before the court in the above–captioned adversary proceeding is the joint motion of Summit Design Group, Inc., Robert P. Armstrong, Jr., Inc, Robert P. Armstrong, Jr. ("Armstrong") (collectively "Summit Design") and National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc. ("National Reinforcing") (collectively "National Erectors") (collectively, the "movants"), to strike the expert report of H. Dean Penny ("Penny") of Kimley–Horn and Associates, Inc., dated May 24, 2013, pursuant to Fed. R. Bankr. P. 9014 and E.D.N.C. LBR 7007–1, to which New Bern Riverfront Development, LLC ("plaintiff") has objected. A hearing was held on August 6, 2013, in Raleigh, North Carolina. At the conclusion of the hearing, the court took the matter under advisement. For the reasons that follow, the motion to strike is **DENIED.**

**BACKGROUND**

The crux of the above–captioned adversary proceeding involves alleged construction and design defects to Skysail Luxury Condominiums ("Skysail"), a 121–unit condominium development owned by the plaintiff and located along the Trent River in downtown New Bern, North Carolina. In addition to a deepwater marina with more than 200 slips, Skysail consists of an attached L–shaped one–level parking structure ("parking structure") and an adjacent terrace and pool deck ("pool terrace").

On July 27, 2006, Weaver Cooke Construction, LLC ("Weaver Cooke") was hired by the plaintiff to serve as the general contractor for SkySail. As part of its duties, Weaver Cooke was responsible for the design and construction of the post–tensioning concrete system ("post–tensioning system"), which is a series of cables embedded and integrated into concrete structures and other components to provide support. Weaver Cooke executed a written subcontract with National Erectors on September 26, 2006, under which National Erectors was to design the post-tensioning system and supply any labor and materials required in its implementation. The design of the post–tensioning system was subsequently subcontracted by National Erectors to Robert P. Armstrong, Jr., Inc.[1] and performed by Armstrong, a licensed professional engineer and president of Summit Design f/k/a Robert P. Armstrong, Jr., Inc.

The plaintiff initiated a civil action in the Wake County Superior Court against, inter alia, Weaver Cooke, National Erectors, JDavis Architects, PLLC ("JDavis Architects"), and Fluhrer Reed, PA ("Fluhrer Reed") on March 30, 2009. While the civil action was pending in state court,

---

[1] On December 16, 2006, Armstrong, acting in his capacity as president of Summit Design, filed Articles of Amendment with the North Carolina Secretary of State, changing the corporate name of "Robert P. Armstrong, Jr., Inc." to "Summit Design Group, Inc."

the plaintiff filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on November 30, 2009, and the case was subsequently removed to this court on December 16, 2009.

On May 6, 2010, the plaintiff filed an amended complaint, which was later supplemented on June 8, 2012, by a first supplemental complaint. On May 27, 2010, Weaver Cooke filed an answer to the amended complaint. Within its answer, Weaver Cooke alleged counterclaims against, inter alia, the plaintiff, and crossclaims against National Erectors, Fluhrer Reed, and JDavis Architects. In its answer to the crossclaims of National Erectors, Weaver Cooke alleged crossclaims against Summit Design. On July 6, 2010, and in its answer to the crossclaim of Weaver Cooke, National Erectors filed a third–party complaint against, inter alia, Summit Design. Weaver Cooke filed an answer to the crossclaims previously asserted against it by National Erectors and alleged crossclaims against Summit Design on July 29, 2010.

After conducting a status conference on November 21, 2011, the court entered a scheduling order in this adversary proceeding on November 22, 2011 (hereinafter, the "initial scheduling order"). In accordance with the initial scheduling order and Fed. R. Civ. P. 26, the plaintiff disclosed Penny as one of its retained experts and served his written report, dated February 29, 2012, regarding the parking structure and the pool terrace (hereinafter, the "initial report"). In the initial report, Penny opined that the cracking in the pool walls, slabs, and beams below the pool terrace "are indicative of restraint to movement[,]" which was caused by the failure to mitigate the internal force restraint and stress attributed to the shrinkage and elastic shortening resulting from post–tensioning operations. The initial report provided a preliminary budget estimate for recommended repairs to the parking structure and pool terrace of $561,000 and $225,000, respectively.

5

Approximately one month after issuance of the initial report, the plaintiff submitted a supplemental report prepared by Penny, dated March 30, 2012 (hereinafter, the "first supplemental report"). In addition to the recommendations and opinions set forth in the initial report, the first supplemental report recommended complete destruction and reconstruction of the pool terrace.

On June 7, 2012, and based on its prior order granting the plaintiff leave to file supplemental pleadings and Weaver Cooke leave to file a second third–party complaint,[2] the court modified certain provisions and stayed deadlines of the initial scheduling order subsequent to September 15, 2012, pending the addition of third–party defendants.

The initial scheduling order, as modified and stayed by the court's June 7, 2012 order, was later amended and restated on December 13, 2012 (hereinafter, the "amended scheduling order"). Under the amended scheduling order, the plaintiff was required to submit reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by March 1, 2012, and depositions of its retained experts were to be completed by May 31, 2013. Any rebuttal or supplemental expert reports, as required under Fed. R. Civ. P. 26(e), were to be submitted by March 31, 2013. The deadline to complete all discovery was September 16, 2013, and mediation, which could be commenced and structured by the mediator at any point after January 7, 2013, must be concluded by September 30, 2013. The

---

[2] On June 14, 2012, and after obtaining leave from the court, Weaver Cooke filed and served a third–party complaint against Curenton Concrete Works, Inc., William H. Dail d/b/a DD Company, East Carolina Masonry, Inc., Gouras, Inc., Hamlin Roofing Services, Inc., Humphrey Heating & Air Conditioning, Inc., Performance Fire Protection, LLC, Randolph Stair and Rail Company, Stock Building Supply, LLC, PLF of Sanford, Inc. f/d/b/a Lee Window & Door Company, United Forming, Inc., and Waterproofing Specialties, Inc.

trial of this adversary proceeding, which the parties expected to take ten days, was scheduled to commence on December 9, 2013.[3]

Approximately two months after the deadline set by the amended scheduling order for rebuttal and supplemental expert reports, the plaintiff submitted a second supplemental report prepared by Penny and dated May 24, 2013 (hereinafter, the "second supplemental report"). The second supplemental report, according to the plaintiff, was prepared by Penny to expand upon and provide further explanation of the findings, calculations, opinions and recommendations set forth

---

[3] Paragraph 3(b) of the amended scheduling order, listing the limitations placed on the parties regarding reports of retained experts under Fed. R. Civ. P. 26(a)(2), provides as follows:

c. Reports from retained experts under Rule 26(a)(2) will be due:

  i. From the plaintiff by March 1, 2012;

  ii. From the defendants, crossclaimants, counterclaimants and crossclaim defendants by June 30, 2012;

  iii. From the third–party defendants by July 30, 2012 (applicable only to third parties currently in the case);

  iv. From third–party defendants and fourth–party defendants added after June 7, 2012, by February 28, 2013;

  *v. From rebuttal experts and/or supplementation under Rule 26(e) by March 31, 2013;*

  vi. Depositions of the plaintiff's retained experts shall be completed by May 31, 2013;

  vii. Depositions of the defendants', crossclaimants', counterclaimants', and crossclaim defendants' retained experts shall be completed by July 31, 2013; and

  viii. Depositions of the third–party defendants' retained experts shall be completed by August 31, 2013.

(emphasis added).

in the initial report and the first supplemental report. In addition to those materials referenced in the initial report, Penny reviewed the following materials in preparing the second supplemental report:

1. Lewis Report (JDA Expert), dated June 29, 2012

2. Stroud Report (JDA Expert), dated June 27, 2012

3. Mikula Group Inc. Report, dated July 2, 2012

4. Weaver Cook Construction Initial Expert Report, dated June 29, 2012

5. Vertex Cost Report, dated July 2, 2012

6. National Reinforcing Systems, Inc. Post Tensioning Drawings, Issued for Approval June 20, 2006 (45 Drawings 001–018)

7. National Reinforcing Systems, Inc. Field–Use Drawings, dated March 30, 2007

8. Fluhrer Reed Structural Construction Documents – [D]ated and Signed December 20, 2006 (38 Drawings)

With respect to the pool terrace, the second supplemental report concluded that tying the concrete slab housing the pool terrace to Building A "created inherent stiffness[] within the pool terrace that doesn't allow it to expand and contract with changes in temperature." Penny opines that "[i]n an ideal world, the pool terrace should have been an independent structure, isolated from Building A similar to the way it is isolated from Buildings B and C." According to the second supplemental report, "[t]he decision to use [post–tension system] within the pool terrace slab created additional stresses on the pool walls that . . . have contributed to the cracking within the pool walls." Additionally, "the sweeps of the [post–tensioning system] strands within the [pool] terrace slab have likely contributed to the cracking within the slab." In addition to the repairs previously suggested, the second supplemental report recommends that installation of both a waterproofing membrane and

insulating liner is necessary to allow the pool terrace to withstand anticipated movements within the pool wall and the pool terrace. An alternative measure producing the same result, an expansion joint or sliding joint, could be cut into the pool wall below the pool terrace slab. The second supplemental report states that "[t]he viability of each approach needs further investigation during the repair process." The total cost of the repairs to the pool terrace recommended by the second supplemental report, including contingencies, is estimated at $594,000. This cost estimate is approximately $369,000 more than the estimate for the repairs recommended by the initial report.

On August 22, 2013, and upon a finding that an extension of certain deadlines was reasonable, this court entered an order extending the deadlines set by the amended scheduling order to complete discovery, file dispositive motions and complete mediation by sixty days. The court also indicated that it would, by separate order, also extend the scheduled commencement of the trial to a date no earlier than February 2014.

On June 12, 2013, the movants filed the motion currently before the court moving to strike the second supplemental report, which was submitted after the deadline for rebuttal and supplemental expert reports established by the amended scheduling order, on the grounds that its untimely disclosure is neither harmless nor substantially justified. The plaintiff filed its response and memorandum opposing the motion to strike on July 25, 2013.

## DISCUSSION

Federal Rule of Civil Procedure 26(a)(2)(B), made applicable to proceedings in bankruptcy by Fed. R. Bankr. P. 7026 and 9014(c), requires parties to "disclose . . . the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705[]" and provide a written report containing, inter alia, "a complete statement of all opinions the [expert]

9

witness will express and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i); Fed. R. Bankr. P. 7026, 9014(c).[4]  Federal Rule of Civil Procedure 26(e)(2), governing the supplementation of the disclosures and discovery responses, submitted by retained experts, provides as follows:

> (1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>>
>> (B) as ordered by the court.
>
> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any

---

[4] To comply with Fed. R. Civ. P. 26(a)(2)(B), expert reports must include:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

>additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e); see id. 26(a)(2)(E) (stating that "[t]he parties must supplement the[ir] disclosures [of expert testimony] when required under Rule 26(e)."); see also Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 630–31 (E.D.N.C. 2008) ("Supplementation of an expert report permits a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment." (citations omitted)). The submission and supplementation, if any, of written expert reports must occur "at the time . . . the court orders[,]" Fed. R. Civ. P. 26(a)(2)(C), which, for the plaintiff's experts in the instant case, was March 1, 2013, and March 31, 2013, respectively.

Under Fed. R. Civ. P. 37(c)(1), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7037, a party who fails to provide information required by Fed. R. Civ. P. 26(a) or (e) is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or harmless.*" Fed. R. Civ. P. 37(c)(1) (emphasis added). The purpose of Fed. R. Civ. P. 37(c)(1) is "preventing surprise and prejudice to the opposing party." S. States Rack & Fixture Inc. v. Sherwin–Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) (citations omitted).

The language of Fed. R. Civ. P. 37(c)(1), however, "provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is 'substantially justified,' and (2) when the nondisclosure is 'harmless.'" Southern States, 318 F.3d at 596 (alterations omitted); see, e.g., Carr v. Deeds, 453 F.3d 593, 604–05 (4th Cir. 2006) (holding that the party who failed to timely disclose an expert report bears the burden of "demonstrat[ing] substantial justification for her failure to comply."); Adams v. J.

11

Meyers Builders, Inc., 671 F. Supp. 2d 262, 270 (D.N.H. 2009) (characterizing "the 'harmlessness' exception as but a 'narrow escape hatch' in the case of noncompliance . . . ."). In determining whether an untimely disclosure is substantially justified or harmless, courts in the Fourth Circuit apply the following five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose.

Southern States, 318 F.3d at 597 (recognizing that courts have "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis . . . ."). As the Fourth Circuit observed in Southern States, "[f]our of these factors—surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence—relate mainly to the harmlessness exception, while the remaining factor—explanation for the nondisclosure—relates primarily to the substantial justification exception." Id.; accord MCI Commc'ns Servs., Inc. v. Am. Infrastructure–MD, Inc., No. 11–3767, 2013 WL 4086401, at *8 (D. Md. Aug. 12, 2013).

The movants contend that the second supplemental report, which was submitted approximately two months after the court imposed deadline for rebuttal and supplemental reports, should be excluded pursuant to Fed. R. Civ. P. 37(c)(1) because it violates Fed. R. Civ. P. 26(a)(2)(D) and E.D.N.C. LBR 7007–1. In support of exclusion, the movants cite the irreparable harm that they will suffer due to their reliance on the deadlines established by the amended scheduling order and the initial and first supplemental reports in preparing their case, developing their litigation strategy, and conducting discovery. Absent exclusion of the second supplemental

report, the movants will allegedly incur the significant additional litigation expenses associated with re–deposing a majority of the plaintiff's experts, which will undoubtedly further disrupt the schedule and delay the expected trial date set by the amended scheduling order.[5]

Irrespective of the sufficiency of the justification for its untimely disclosure of the second supplemental report, the court finds that the plaintiff's failure is harmless.[6] First, any surprise created by the plaintiff's failure to timely disclose the second supplemental report is minimal. The plaintiff timely identified Perry as one of its retained expert witnesses and submitted the initial report as required by Fed. R. Civ. P. 26(a)(1). Additionally, the second supplemental report was submitted by the plaintiff on May 24, 2013, which was prior to the scheduled deposition of Penny and approximately four months before the discovery deadline. While the court does not doubt that the movants were surprised by the untimeliness of the disclosure, they were aware of its substance

---

[5] According to the movants, the second supplemental report is neither supplemental nor rebuttal because it contains new theories and opinions that were not presented or raised in the initial report or first supplemental report regarding the causes of the cracks in the pool terrace. Specifically, the movants assert that these new opinions are based on calculations Perry performed after the issuance of the initial report, and relies upon materials and documents which Penny had or could have had prior to submission of the initial report. As a result, any additional information included therein should have been in either the initial or first supplemental reports.

Where the failure to timely disclose an expert report is substantially justified or harmless, the court need not address whether the second supplemental report was proper supplementation under Fed. R. Civ. P. 26(e). See In re C.R. Bard, Inc., Nos. 2:10–CV–01224, 2:11–CV–00012, 2:11–CV–00114, 2:11–CV–00195, 2013 WL 2432861, at *5 (S.D. W.Va. June 4, 2013) (concluding that where a supplemental report is substantially justified and would be harmless, the count need "not reach the issue of whether the supplemental report was proper.").

[6] Because the plaintiff's failure to timely disclose the second supplemental report is harmless, the court need not address whether this failure was substantially justified. See Hoyle v. Freightliner, LLC, 650 F.3d 321, 330 (4th Cir. 2011) ("Cases decided subsequent to Southern States have not required courts to expressly consider each factor when evaluating discovery violations." (citation omitted)).

and Penny's contention that the extensive cracking in the pool terrace was attributable, at least in part, to the post–tensioning system imbedded in the concrete structures.

Second, the movants have both the ability and the opportunity to cure any surprise created by the untimely disclosure of the second supplemental report. See Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.C., 93 F. App'x 530, 534 (4th Cir. Apr. 2, 2004) (unpublished) (recognizing that the second Southern States factor, ability to cure any surprise, is satisfied where a party "had not only the ability to cure any surprise, but also the opportunity."). The plaintiff has made Penny available on September 6, 2013, for a continuation of his deposition to address any issues or questions regarding the second supplemental report. See Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., No. 5:02–CIV–709, 2006 WL 6663793, at *10 (E.D.N.C. Mar. 21, 2006) (indicating that the ability to depose an expert witness prior to trial may suffice to cure any surprise created by the production of an expert report on the final day of the discovery period); see also C.R. Bard, 2013 WL 2432861, at *5. Thus, the movants have been provided with sufficient time and the opportunity, through a continuation of Penny's deposition, to cure any surprise they may have had as a result of the second supplemental report.

Any potential delay significantly impacts the third factor, see Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc., 534 F. Supp. 2d 616, 625 (D. Md. 2008); however, allowing the second supplemental report would not disrupt the trial of this adversary proceeding because no dispositive motions are currently pending and the trial is not expected to commence until at least February 2014. This case, similar to Machie v. Manger, "is not one in which a party is seeking to admit new expert opinions [or reports] on the eve of trial." No. AW–09–2196, 2012 WL 2092814, at *5 (D. Md. June 7, 2012) (stating that the allowance of new or additional evidence "would not

14

disrupt trial[]" because "[t]rial has not been scheduled."). Additionally, the court has afforded the parties additional time to propound discovery and adequately prepare for trial by extending certain deadlines in the amended scheduling order, including the discovery deadline, the date by which mediation is to be completed and the deadline for the filing of dispositive motions, by sixty days. McLaurin v. East Jordan Iron Works, Inc., 666 F. Supp. 2d 590, 592–93 (E.D.N.C. 2009) (recognizing that "any surprise or prejudice caused by Plaintiffs' noncompliance can be cured by amendment of the scheduling order providing Defendants more time to disclose reports from their retained experts."). Therefore, any surprise caused by the untimely submission of the second supplemental report can be cured by this sixty-day extension of certain deadlines. Furthermore, allowing the second supplemental report would not disrupt trial of this adversary proceeding.

With respect to the fourth factor, the second supplemental report is vital to the plaintiff's claims, counterclaims, crossclaims and affirmative defenses. The plaintiff claims that it has suffered extensive damages due to construction and design defects caused by the alleged negligence of numerous parties, including the movants, and, whether these defects and extensive cracking in the concrete structures were caused by the design and implementation of the post–tensioning system in the concrete structures is a key issue in this adversary proceeding. As discussed above, the second supplemental report provides further analysis, more detailed findings and additional repair recommendations regarding the extensive cracks caused by the post–tensioning system in the pool terrace. As a result, the second supplemental report should be permitted to address these issues. The court, however, will not permit the plaintiff to submit any additional rebuttal or supplemental expert reports prepared by Penny.

## CONCLUSION

Based on the foregoing, the motion to strike is **DENIED.** Although the second supplemental report was submitted two months after the deadline established for rebuttal and supplemental expert reports by the amended scheduling order, the court finds, based on the factors laid out in Southern States, that the untimely disclosure is harmless under Fed. R. Civ. P. 37(c)(1) and, therefore, will not be excluded on that basis.

**SO ORDERED.**

**END OF DOCUMENT**