SO ORDERED.

SIGNED this 25 day of August, 2014.

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-10340-8-SWH |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | |
|     DEBTOR | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | ADVERSARY PROCEEDING NO. |
|     Plaintiff | 10-00023-AP |
|     v. | |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC., | |
|     Defendants, | |
|     and | |
| WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
|     Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
|     v. | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING COMPANY, INC.; HAMLIN  ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**
        **Crossclaimants, Counterclaimants and**
        **Third-Party Defendants.**

        **and**

**NATIONAL ERECTORS REBAR, INC.**
        **Defendant, Counterclaimant,**
        **Crossclaimant and Third-Party**
        **Plaintiff,**

        **v.**

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**
        **Third-Party Defendants.**

        **and**

**J. DAVIS ARCHITECTS, PLLC,**
    **Third-Party Plaintiff,**

    **v.**

**MCKIM & CREED, P.A.,**
    **Third-Party Defendant.**

    **and**

**GOURAS, INC.,**
    **Third Party Defendant and**
    **Fourth-Party Plaintiff,**

    **v.**

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
    **Fourth-Party Defendants.**

    **and**

**STOCK BUILDING SUPPLY, LLC,**
    **Third-Party Defendant and**
    **Fourth-Party Plaintiff,**

    **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
    **Fourth-Party Defendant.**

### ORDER GRANTING SUMMARY JUDGMENT
### REGARDING STATUTE OF LIMITATIONS DEFENSE
### ASSERTED BY CURENTON CONCRETE WORKS, INC.

This matter came on to be heard upon the motion for summary judgment filed by Curenton Concrete Works, Inc. ("Curenton") regarding the third party complaint of Weaver Cooke Construction, LLC ("Weaver Cooke"), in Raleigh, North Carolina, on March 5, 2014. Although summary judgment

is sought on several bases, this order will deal with the issue of whether the statute of limitations bars the negligence and breach of express warranty claims asserted by Weaver Cooke against Curenton.

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Luxury Condominiums located in New Bern, North Carolina (the "SkySail Project" or the "Project"). On March 30, 2009, New Bern initiated an action in Wake County Superior Court against nine individual defendants related to the alleged defective construction of the SkySail Condos (the "State Action"). The named defendants in the State Action included: New Bern's general contractor, Weaver Cooke; Travelers Casualty and Surety Company of America ("Travelers"); National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc. ("NER") and certain subcontractors of the general contractor.

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code. The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010. After voluntarily dismissing its causes of action as to the subcontractors named as defendants in the State Action, New Bern filed its first amended complaint on May 6, 2010, asserting claims against Weaver Cooke; Travelers; National Erectors Rebar, Inc. f/k/a NRS, and the additional parties of J. Davis Architects, PLLC, and Fluhrer Reed, PA.

On May 27, 2010, Weaver Cooke filed an answer to New Bern's first amended complaint and a third-party complaint against Wachovia Bank, National Association and Wells Fargo & Company f/d/b/a Wachovia Corporation. Absent as third-party defendants in Weaver Cooke's original third-

party complaint were any of the subcontractors hired by Weaver Cooke during the construction of the SkySail Project.

On June 14, 2012, Weaver Cooke filed its second, third-party complaint asserting claims of negligence, contractual indemnity and breach of express warranty against many of the subcontractors hired during the construction of the SkySail Project, including Curenton. Curenton filed an answer to Weaver Cooke's second, third-party complaint on June 27, 2012, asserting numerous defenses, including the statute of limitations.

On December 20, 2013, Curenton filed a motion for summary judgment regarding all three causes of action alleged by Weaver Cooke. As grounds for summary judgment, Curenton argued: (1) the applicable statute of limitations bars Weaver Cooke's claims of negligence and breach of express warranty; (2) the economic loss rule bars Weaver Cooke's negligence claim; and (3) Weaver Cooke's contractual indemnity claim is barred by N.C. Gen. Stat. § 22B-1. Inasmuch as the resolution of the statute of limitations affirmative defense may dramatically affect the complexion of the litigation, the court has chosen to deal first with that issue as to each third-party defendant.

Simply put, Curenton argues that Weaver Cooke's negligence and breach of warranty claims accrued more than three years prior to the June 14, 2012, filing date of Weaver Cooke's second, third-party complaint. Curenton claims that, due to Weaver Cooke's knowledge of alleged defects attributable to it prior to June of 2009, Weaver Cooke's negligence and breach of warranty claims are time-barred. In response, Weaver Cooke argues that a genuine issue of material fact exists as to when Weaver Cooke discovered the *impact* of the defects giving rise to its causes of action alleged against Curenton; i.e., Weaver Cooke claims it first discovered the extent of the damage caused by defects attributable to Curenton within three years of its second, third-party complaint.

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.

With respect to the non-core matter now before the court, there is no dispute as to the relevant facts or applicable law. The court has jurisdiction to enter this order allowing summary judgment, in light of the right of *de novo* review by the district court. Ward v. United States Dept. of Educ., Case No. 5:13-CV-695-D (E.D.N.C. June 18, 2014), citing Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165 (2014).

In this proceeding, the court turns to North Carolina state law, and as is typical in this context, the determination of "whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law." Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). North Carolina General Statute § 1-52 provides a three year statute of limitations for actions sounding in tort or contract. N.C. Gen. Stat. § 1-52(1), (5) (2010). Additionally,

> [f]or purposes of the three-year limitation prescribed by G.S. 1-52, a cause of action based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant.

N.C. Gen. Stat. § 1-50(a)(5)(f) (2009).

Actions based upon or arising out of the defective or unsafe condition of an improvement to real property include those which seek to "recover damages for breach of a contract to construct or repair an improvement to real property" and those based upon the "negligent construction or repair of an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)(b) (2009). Curenton argues that, even with the benefit of a discovery rule, which would serve to delay accrual of Weaver Cooke's causes of action against it until the defect became apparent or ought reasonably to have become apparent, Weaver Cooke knew, or reasonably should have known, of defects attributable to Curenton more than three years prior to the filing of the second, third-party complaint.

Specifically, Curenton was responsible for pouring the project's elevated concrete slabs, which included the balcony slabs, the structural post-tension slab for the pool deck and the concrete slabs for the parking deck. The "forms" for Currenton's concrete pours were constructed and removed by another subcontractor, United Forming Incorporated. Weaver Cooke's claims against Currenton relate to the alleged defective construction of the concrete balcony slabs.[1] The concrete placement for the balconies was completed in February of 2008. Weaver Cooke asserts that Curenton is liable for construction defects relating to water intrusion occurring in or around the balcony doors at the SkySail

---

[1] "Weaver Cooke's primary assertion is that Curenton failed to accurately achieve and uniformly achieve the elevations established on isolated concrete balcony forms, and otherwise failed to finish the concrete slabs so as to provide a smooth, even and uniform surface, free from undulations which may trap or repel water on the balconies." *Weaver Cooke Construction, LLC's Memorandum in Response to Motion for Summary Judgment of Curenton Concrete Works, Inc.* (Docket Entry 749 at 6).

7

Project, which Weaver Cooke further alleges caused damage to the interior of certain condo units. Weaver Cooke claims that the water intrusion through the doors was caused, in part, by the pooling of water on balconies due to improper balcony slopes, improper "step-downs," and the lack of a smooth and even finish. Curenton maintains that the fact of water intrusion and its causes were known to Weaver Cooke by the end of 2008 and thus, claims based on these alleged defects are time-barred.

To support its argument, Curenton points to the deposition testimony of the management level employees of Weaver Cooke who oversaw and supervised the major construction activities at the SkySail Project. These included Kevin Lloyd, Weaver Cooke's project manager and vice president; Steve Tidey, Weaver Cooke's project superintendent; David Cline, Weaver Cooke's assistant project manager; Raj Garud, Weaver Cooke's project coordinator; and Dan Estes, Weaver Cooke's president. From the record before the court, which includes the depositions of these individuals along with certain affidavits and the parties' pleadings, the following facts may be determined.[2]

First, Weaver Cooke knew about water intrusion at windows and exterior doors, and related damage to condo unit interiors, no later than the spring of 2009.[3] Garud agreed that Weaver Cooke

---

[2] Attached to the numerous motions for summary judgment filed by the various subcontractors in this adversary proceeding are excerpts of relevant deposition testimony which each subcontractor relies upon to support its motion. Likewise, Curenton provided the court with excerpts of the deposition transcripts of the above-identified Weaver Cooke employees to support its motion for summary judgment. However, in ruling upon the present motion, the court also finds useful *other* excerpts of the same deposition transcripts which were *not* provided by Curenton. Accordingly, the court has also relied upon additional excerpts of the same deposition transcripts, which were provided to the court by other parties to this action. Where necessary, the court shall cite the source of the deposition testimony.

[3] To the extent the court references "spring of 2009," that term is derived from the testimony of Weaver Cooke's president, Dan Estes, who repeatedly cited this time period as the point by which he was aware of certain defects at the SkySail Project. That term is the most general and arguably the latest date given among Weaver Cooke's management; however, Estes' testimony, which followed that of the other Weaver Cooke employees, was corroborative in nature and was not at any point understood by the court or other litigants to refer to any time period *other than a time period*

knew about leaks around sliding glass doors, with certainty, by September of 2008.[4] Cline testified that he had no reason to disagree with Garud on that issue.[5] Tidey agreed that Weaver Cooke knew of numerous water intrusion issues at the SkySail Project in February of 2009, including water intrusion issues at balcony doors and damage to the interior of the condo units.[6] Tidey further testified that Weaver Cooke was aware of standing water on the balconies at that time (February 2009) as well.[7] Lloyd testified that he would have no reason to disagree with Garud, Cline or Tidey on those issues.[8] Additionally, Weaver Cooke's president, Estes, testified that he became aware of water intrusion issues around windows and doors at the project in the spring of 2009 and that he had no reason to disagree with Garud, Tidey and Cline as to when they became aware of water intrusion problems.[9]

Second, Weaver Cooke also specifically became aware of the improper balcony sloping and the failure to achieve proper step-downs on the balconies between 2008 and the spring of 2009. Proper balcony sloping and step-downs are intended to provide positive drainage away from the building and its doors; the failure to implement these designs may result in water pooling on balconies. Garud

---

*prior to June of 2009.* In this order, the court's use of "spring of 2009" likewise refers to a period in time occurring *prior to* June of 2009.

[4] Deposition of Raj Garud, Vol. II at 174, lines 5-9 (as found in *Stock Building Supply LLC's and PLF of Sanford, Inc.'s Memorandum in Support of their Motion for Summary Judgment against Weaver Cooke Construction, LLC* (Docket Entry 721 at 93)).

[5] Deposition of David Cline, Vol. I at 237, lines 5-10 (as found in Docket Entry 721 at 102).

[6] Deposition of Steve Tidey, Vol. I at 208, line 23 - 209, line 15 (as found in Docket Entry 721 at 119-20).

[7] Id.

[8] Deposition of J. Kevin Lloyd, Vol. II at 227, line 23 - 228, line 6 (as found in Docket Entry 721 at 132-33).

[9] Deposition of Daniel Estes at 167, line 2 - 168, line 13 (as found in Docket Entry 721 at 143-44).

testified that he became aware of improper sloping and water not draining off of the balconies in August of 2008 and that "[e]verybody in Weaver Cooke was aware" of this problem at that time.[10] Garud additionally testified that Weaver Cooke was aware of the failure to achieve adequate step-downs on the balconies by at least September of 2008.[11]  Tidey testified that Weaver Cooke knew of the improper balcony sloping by June of 2008.[12]  Lloyd and Cline testified that they had no reason to disagree with Garud or Tidey on those issues.[13]  Furthermore, Estes confirmed that he became aware of the failure to achieve proper step-downs and the related water intrusion problems in the spring of 2009.[14]

However, Weaver Cooke maintains that it was not until March of 2012, when it received the report of the debtor's expert, George Barbour (the "Barbour Report"), that it became aware of the *impact* of the water intrusion from the balconies.  Weaver Cooke argues that this is when the *extent* of the damages caused by defects attributable to Curenton were first discovered.  In addition, Weaver Cooke appears to argue that it was not until it received the Barbour Report, in March of 2012, that it was aware that New Bern sought to hold it liable for work performed by Curenton, and thus, its causes of action against Curenton did not accrue until that time.

---

[10] Garud Depo, Vol. II at 126, line 10 - 128, line 19; and at 174, line 10 - 175, line 5 (as found in *Third Party Defendant Curenton Concrete Works, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment*, Exhibit 12A, (Docket Entry 690-14 at 3-7)).

[11] Id. at 175, lines 6-23 (as found in Exhibit 12A, Docket Entry 690-14 at 7).

[12] Tidey Deposition, Vol. I at 180, lines 4-14 (as found in Docket Entry 721 at 115).

[13] Lloyd Deposition, Vol. II at 228, line 24 - 229, line 11; and at 229, line 23 - 230, line 3 (as found in Docket Entry 721 at 133-35). Cline Depo. Vol. I at 237, lines 16-21 (as found in Docket Entry 721 at 102).

[14] Estes Deposition, at 169, line 6 - 170, line 8 (as found in Docket Entry 721 at 145-46).

The fact that Weaver Cooke may have not known the *extent* of the damage caused by the water intrusion problem is not material to the legal question of when the statute of limitations with respect to any claim based upon that problem began to run.  See Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 329 S.E.2d 350 (1985).  In Pembee, the plaintiff had contracted with two parties for the construction of a 30,000 square foot manufacturing plant in July of 1972.  Id. at 489, 329 S.E.2d at 351.  By January of 1973, the plant was substantially completed and the plaintiff occupied the building at that time.  Within two months of occupying the facility, the plaintiff began to notice leaks in the roof, and made repairs.  A few years later, during a five-month period in 1976 going into 1977, extensive leaking occurred.  The plaintiff hired an engineer in April 1980, who discovered moisture entrapment in the roofing materials.  The plaintiff failed to file suit against the potentially responsible contractors until November of 1981.  Id.  When the defendants moved to dismiss on grounds that the action was outside the statute of limitations, the North Carolina Supreme Court agreed, concluding that the "the fact that [the roof] was defective was apparent at least by April 1977," when the intensified leaking occurred.  Id. at 494, 329 S.E.2d at 355.  At that point, the plaintiff, "although perhaps not aware of the extent of [the] damage, knew that its roof was defective" and therefore was "on inquiry as to the nature and extent of the problem."  Id. at 493, 329 S.E.2d at 354.  The plaintiff was at all times aware of the party, or parties, who were potentially liable for the defective roof.  Accordingly, the Pembee court held that the cause of action accrued no later than April of 1977, and the plaintiff's suit was barred by the statute of limitation.  Id. at 494, 329 S.E.2d at 355.  See also Williams v. Houses of Distinction, Inc., 213 N.C. App. 1, 10-11, 714 S.E.2d 438, 444-45 (N.C. App. 2011) (discussing Pembee in context of determining point in time when a plaintiff "'clearly knew' of the construction-related defects").

Moreover, Weaver Cooke's argument that it did not know until its receipt of the Barbour Report that it might potentially be held liable by New Bern for alleged defects attributable to Curenton also is not material. The dispositive issue is when Weaver Cooke's own negligence and breach of warranty causes of actions accrued, and that occurred when "the injury, loss, defect or damage [became] apparent or ought reasonably to have [been] apparent." N.C. Gen. Stat. § 1-50(a)(5)(f). Furthermore, New Bern's First Amended Complaint, filed on May 6, 2010, included allegations which put Weaver Cooke on notice that New Bern intended to hold it liable for work performed by Curenton. In its First Amended Complaint, New Bern asserted a breach of contract claim against Weaver Cooke, in which it alleged that:

> 150. Defendant Weaver Cooke has materially and substantially breached the Construction Contract by, among other things and in addition to the specific items described above:
> ...
>
> k. failing to properly construct the balconies of certain condominium units in the Project;
>
> l. failing to properly construct the Project buildings in a manner preventing water intrusion, which is causing damage and the potential for significant mold problems in the residential units as well as the common areas[,]"

*Plaintiff New Bern Riverfront Development, LLC's First Amended Complaint* (Docket Entry 15 at 24-25).

The defects which form the basis of Weaver Cooke's negligence and breach of warranty claims against Curenton are not latent and were known to Weaver Cooke more than three years prior to the filing of its second, third party complaint. Weaver Cooke was aware of water intrusion problems by at least the spring of 2009. Additionally, even though the fact of ponding water on the concrete balconies and water intrusion through the balcony doors, alone, was likely sufficient to put Weaver Cooke on notice of defects attributable to Curenton, Weaver Cooke had actual knowledge of the

*causes* of the water intrusion more than three years before it filed suit. In 2008 Weaver Cooke was aware of the improper balcony sloping and the failure to achieve balcony step downs. Upon identifying the water intrusion problem *and* its potential causes, Weaver Cooke should have quickly identified the prospective target, Curenton. There are no material facts in issue regarding when the discovery of the alleged defects occurred or that Curenton was potentially responsible for these defects. The causes of action for negligence and breach of warranty accrued no later than the spring of 2009 and therefore these claims are time barred and summary judgment in Curenton's favor on those claims is **GRANTED**.

    **SO ORDERED.**

**END OF DOCUMENT**