**SO ORDERED.**

**SIGNED this 27 day of August, 2014.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-10340-8-SWH |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | |
|     DEBTOR | |
| | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | ADVERSARY PROCEEDING NO. |
|     Plaintiff | 10-00023-SWH-AP |
|     v. | |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC., | |
|     Defendants, | |
|     and | |
| WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
|     Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
|     v. | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING COMPANY, INC.; HAMLIN ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**
  Crossclaimants, Counterclaimants and
  Third-Party Defendants.


  **and**

**NATIONAL ERECTORS REBAR, INC.**
  Defendant, Counterclaimant,
  Crossclaimant and Third-Party
  Plaintiff,

  v.

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**
  Third-Party Defendants.

  **and**

2

**J. DAVIS ARCHITECTS, PLLC,**
    Third-Party Plaintiff,

    v.

**MCKIM & CREED, P.A.,**
    Third-Party Defendant.

    and

**GOURAS, INC.,**
    Third Party Defendant and
    Fourth-Party Plaintiff,

    v.

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
    Fourth-Party Defendants.

    and

**STOCK BUILDING SUPPLY, LLC,**
    Third-Party Defendant and
    Fourth-Party Plaintiff,

    v.

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
    Fourth-Party Defendant.

### ORDER ON SUMMARY JUDGMENT REGARDING, INTER ALIA, STATUTE OF LIMITATIONS DEFENSE ASSERTED BY WATERPROOFING SPECIALTIES, INC.

This matter came on to be heard upon the motion for summary judgment filed by Waterproofing Specialties, Inc. ("WSI") regarding the third party complaint of Weaver Cooke Construction, LLC ("Weaver Cooke"), in Raleigh, North Carolina, on March 5, 2014. Although summary judgment is sought on several bases, this order will deal with the issue of whether the statute

of limitations bars the negligence and breach of express warranty claims Weaver Cooke asserts against WSI. Additionally, the court will consider whether summary judgment is appropriate on the basis that no genuine issue of material fact exists regarding the lack of defects in WSI's work on the parking and pool decks.

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Luxury Condominiums located in New Bern, North Carolina (the "SkySail Project" or the "Project"). On March 30, 2009, New Bern initiated an action in Wake County Superior Court against nine individual defendants related to the alleged defective construction of the SkySail Condos (the "State Action"). The named defendants in the State Action included: New Bern's general contractor, Weaver Cooke; Travelers Casualty and Surety Company of America ("Travelers"); National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc. ("NER") and certain subcontractors of the general contractor.

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code. The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010. After voluntarily dismissing its causes of action as to the subcontractors named as defendants in the State Action, New Bern filed its first amended complaint on May 6, 2010, asserting claims against Weaver Cooke; Travelers; NER; and the additional parties of J. Davis Architects, PLLC, and Fluhrer Reed, PA.

On May 27, 2010, Weaver Cooke filed an answer to New Bern's first amended complaint and a third-party complaint against Wachovia Bank, National Association and Wells Fargo & Company f/d/b/a Wachovia Corporation. Absent as third-party defendants in Weaver Cooke's original third-

party complaint were any of the subcontractors hired by Weaver Cooke during the construction of the SkySail Project.

On June 14, 2012, Weaver Cooke filed its second, third-party complaint asserting claims of negligence, contractual indemnity and breach of express warranty against many of the subcontractors hired during the construction of the SkySail Project, including WSI. WSI filed an answer to Weaver Cooke's second, third-party complaint on August 28, 2012, asserting numerous defenses, including the statute of limitations and contributory negligence.

On December 20, 2013, WSI filed a motion for summary judgment regarding all three causes of action alleged by Weaver Cooke. As grounds for summary judgment, WSI argued: (1) the applicable statute of limitations bars Weaver Cooke's claims of negligence and breach of express warranty to the extent the claims relate to balcony "sequencing defects;" (2) the economic loss rule bars Weaver Cooke's negligence claim; (3) Weaver Cooke's contractual indemnity claim is barred by N.C. Gen. Stat. § 22B-1; (4) all of Weaver Cooke's claims are barred by the doctrine of contributory negligence; and, (5) no genuine issue of material fact exists as to whether work performed by WSI on the Project's parking and pool decks was defective. The court will deal only with the first and fifth bases for summary judgment in this opinion.

WSI was responsible for, among other things, installing and applying concealed waterproofing, expansion joints and traffic coating to the horizontal concrete surfaces of the SkySail project, which included the Project's concrete balcony slabs and the parking and pool decks. Weaver Cooke alleges that certain failures in the sequence in which traffic coating was applied to the concrete balconies, in relation to the installation of other building materials, contributed to water intrusion problems and caused damage to the interior of certain condo units. WSI argues that Weaver Cooke was aware of these sequencing defects more than three years prior to Weaver Cooke's filing of its second, third-

party complaint. Accordingly, WSI asserts that Weaver Cooke's negligence and breach of warranty claims, regarding the balconies, are barred by the three-year statute of limitations found in N.C. Gen. Stat. § 1-52. In response, Weaver Cooke contends that genuine issues of material fact exist as to whether the sequencing defects were reasonably apparent more than three years prior to the filing of its second, third party complaint.

The debtor, New Bern, has also identified cracks in the Project's parking and pool decks, and the resulting water intrusion, as a defect for which it seeks to recover damages from Weaver Cooke. In turn, Weaver Cooke has alleged in its third-party complaint that WSI defectively applied traffic coating and waterproofing to the parking and pool decks, which contributed to cracks, and thus water intrusion. However, WSI argues that there is no credible evidence that its work on the parking and pool decks contributed to the water intrusion problems and that New Bern and Weaver Cooke have not only failed to forecast any such evidence, but have, in fact, affirmatively agreed with WSI's position. But, Weaver Cooke, in its response to the summary judgment motion, maintains that a factual issue still exists regarding the defective nature of the work performed by WSI on the parking and pool decks.

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut,"

but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.

I.   **Statute of Limitations and the Balcony Sequencing Defects**

In this proceeding, the court turns to North Carolina state law, and as is typical in this context, the determination of "whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law." Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). North Carolina General Statute § 1-52 provides a three-year statute of limitations for actions sounding in tort or contract. N.C. Gen. Stat. § 1-52(1), (5) (2010). Additionally,

> [f]or purposes of the three-year limitation prescribed by G.S. 1-52, a cause of action based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant.

N.C. Gen. Stat. § 1-50(a)(5)(f) (2009).

Actions based upon or arising out of the defective or unsafe condition of an improvement to real property include those which seek to "recover damages for breach of a contract to construct or repair an improvement to real property" and those based upon the "negligent construction or repair of an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)(b) (2009). WSI argues that even with the benefit of a discovery rule, which would serve to delay accrual of Weaver Cooke's causes of action against it until the defect became apparent or ought reasonably to have become apparent, Weaver Cooke knew, or reasonably should have known, of the sequencing defects relating to the balconies more than three years prior to the filing of the second, third-party complaint.

The sequencing defects of which Weaver Cooke complains relate to the WSI's application of the waterproof traffic coating to the Project's concrete balconies in coordination with the installation of the brick veneer and the balcony sliding glass doors. Traffic coating is a liquid waterproofing substance applied to exposed concrete in order to prevent water penetration through the concrete and the attached structure. WSI's work on the concrete balconies was completed in 2008. According to the architectural details for the SkySail Project,[1] the traffic coating was to be applied to the concrete balconies *prior* to the installation of the sliding glass doors, such that the traffic coating would run *underneath* the threshold of the sliding glass doors.[2] However, the sliding glass doors were actually installed *before* the traffic coating had been applied such that the traffic coating went *over* the threshold of the balcony doors. In addition, the brick veneer was also installed prior to the application of the traffic coating.[3] New Bern has alleged that these sequencing defects contributed to water intrusion issues on the Project's balconies. Similarly, Weaver Cooke asserts that WSI is responsible for this defective sequencing and the resulting damage.

WSI argues that these sequencing defects were open and obvious and known to Weaver Cooke more than three years prior to Weaver Cooke's filing of its second, third-party complaint and thus, any claims based on those defects are time barred. Furthermore, WSI alleges that it was Weaver Cooke,

---

[1] This refers to drawings prepared by J. Davis Architects for the SkySail Project, which specified in detail how certain components of the project were to be constructed.

[2] A copy of the specifically-referenced architectural detail can be found in WSI's Materials in Support of Motion for Summary Judgment, Deposition Exhibit # 504 (Docket Entry 713-1 at 9). Testimony of Weaver Cooke's employees, confirming that the architectural details called for this sequence in installation, can be found in the Deposition of J. Kevin Lloyd, Vol. II at 284, line 14 - 285, line 13 (as found in Docket Entry 713-1 at 46-47) and the Deposition of Steve Tidey, Vol. I at 112, line 25 - 114, line 7 (as found in Docket Entry 713-1 at 67-69).

[3] It does not appear that the architectural details specified that the traffic coating was to run underneath the brick veneer.

itself, who created the construction schedule that called for the application of the traffic coating after the installation of the brick veneer and the exterior balcony doors. Accordingly, WSI asserts that Weaver Cooke's negligence and breach of warranty claims, in relation to the sequencing defects, are time-barred.

WSI cites the deposition testimony of certain management-level employees of Weaver Cooke who oversaw and supervised the major construction activities at the SkySail Project, including Kevin Lloyd, Weaver Cooke's project manager and vice president, and Steve Tidey, Weaver Cooke's project superintendent, to support its statute of limitations defense. Tidey admitted that Weaver Cooke created a construction schedule which called for the application of the traffic coating *after* the installation of the brick veneer and the sliding glass doors. Tidey further acknowledged that this was a mistake on the part of Weaver Cooke. Lloyd confirmed that Weaver Cooke's schedule called for the doors and the brick veneer to be installed before the application of the traffic coating to the concrete balconies. Lloyd further testified that this scheduling component was an obvious error when compared to the architectural details, which called for the application of the traffic coating prior to the installation of the exterior doors.[4]

WSI also asserts that Weaver Cooke knew about water intrusion issues around the Project's exterior balcony doors more than three years before filing the second, third-party complaint and that this knowledge should have alerted Weaver Cooke to the potential defective nature of the traffic coating sequence issues. WSI cites to the deposition testimony of other management-level employees of Weaver Cooke, in addition to that of Tidey and Lloyd, including: David Cline, Weaver Cooke's

---

[4] Excerpts from the transcripts of Steve Tidey's and Kevin Lloyd's depositions can be found in the appendix to the *Memorandum in Support of Third-Party Defendant Waterproofing Specialties, Inc.'s Motion for Summary Judgment*, Docket Entry 713-1 at 43-48 (Kevin Lloyd), and 61-69 (Steve Tidey).

9

assistant project manager; Raj Garud, Weaver Cooke's project coordinator; and Dan Estes, Weaver Cooke's president.[5]  Weaver Cooke's knowledge of water intrusion issues is well documented in this case and it is evident that Weaver Cooke knew about water intrusion problems through the exterior balcony doors, and related damage to the interior of certain condo unit interiors, no later than the Spring of 2009.[6]  Garud agreed that Weaver Cooke knew about leaks around sliding glass doors, with certainty, by September of 2008.[7]  Cline testified that he had no reason to disagree with Garud on that issue.[8]  Tidey agreed that Weaver Cooke knew of numerous water intrusion issues at the SkySail Project in February of 2009, including water intrusion issues at balcony doors and damage to the

---

[5] Attached to the numerous motions for summary judgment filed by the various subcontractors in this adversary proceeding are excerpts of relevant deposition testimony which each subcontractor relies upon to support its motion. Likewise, WSI provided the court with excerpts of the deposition transcripts of the above identified Weaver Cooke employees to support its motion for summary judgment (found at Docket Entry 713-1).  However, in ruling upon the present motion, the court also finds useful *other* excerpts of the same deposition transcripts which were *not* provided by WSI.  Accordingly, the court has also relied upon additional excerpts of the same deposition transcripts, which were provided to the court by other parties to this action. Where necessary, the court shall cite the source of the deposition testimony.

[6] To the extent the court references "Spring of 2009," that term is derived from the testimony of Weaver Cooke's president, Dan Estes, who repeatedly cited this time period as the point by which he was aware of certain defects at the SkySail Project.  That term is the most general and arguably the latest date given among Weaver Cooke's management; however, Estes' testimony, which followed that of the other Weaver Cooke employees, was corroborative in nature and was not at any point understood by the court or other litigants to refer to any time period *other than a time period prior to June of 2009*.  In this order, the court's use of "Spring of 2009" likewise refers to a period in time occurring *prior to* June of 2009.

[7] Deposition of Raj Garud, Vol. II at 174, lines 5-9 (as found in *Stock Building Supply LLC's and PLF of Sanford, Inc.'s Memorandum in Support of their Motion for Summary Judgment against Weaver Cooke Construction, LLC* (Docket Entry 721 at 93)).

[8] Deposition of David Cline, Vol. I at 237, lines 5-10 (as found in Docket Entry 721 at 102).

interior of the condo units.[9]  Tidey further testified that Weaver Cooke was aware of standing water on the balconies at that time (February 2009) as well.[10]  Lloyd testified that he would have no reason to disagree with Garud, Cline or Tidey on those issues.[11]  Additionally, Weaver Cooke's president, Estes, testified that he became aware of water intrusion issues around windows and doors at the project in the Spring of 2009 and that he had no reason to disagree with Garud, Tidey and Cline as to when they became aware of water intrusion.[12]

However, Weaver Cooke argues that it was not until it received the report of New Bern's expert, George Barbour (the "Barbour Report"), that it became aware that the sequencing defects were contributing to the water intrusion problem.  That is to say, Weaver Cooke admits that it was aware of certain water intrusion issues but asserts that it did not know that the sequence in which the traffic coating was applied contributed to that problem.

Since Weaver Cooke created the construction schedule, it was aware that the traffic coating was applied *after* the installation of the brick veneer and the balcony doors. Furthermore, because the traffic coating was applied to the balconies in 2008, Weaver Cooke had knowledge of this condition more that three years before filing its second, third-party complaint.  In addition, the undisputed facts establish that Weaver Cooke was aware of water intrusion problems through the exterior balcony doors

---

[9] Deposition of Steve Tidey, Vol. I at 208, line 23 - 209, line 15 (as found in Docket Entry 721 at 119-20).

[10] Id.

[11] Deposition of J. Kevin Lloyd, Vol. II at 227, line 23 - 228, line 6  (as found in Docket Entry 721 at 132-33).

[12] Deposition of Daniel Estes at 167, line 2 - 168, line 13 (as found in Docket Entry 721 at 143-44).

11

by the Spring of 2009. The question remains whether Weaver Cooke was aware that the sequence in which the traffic coating was applied was actually a *defect* which could contribute to water intrusion.

As to the application of the traffic coating in relation to the installation of the sliding glass doors, the architectural details specified that the traffic coating was to be installed underneath the threshold of the sliding glass doors. When Weaver Cooke installed the balcony doors prior to the application of the traffic coating, such that the traffic coating was applied *over* the threshold of the balcony doors, it should have known that it was deviating from the architectural details and potentially creating a defective condition. Upon the presentment of standing water on the concrete balconies and water intrusion issues through the exterior balcony doors, Weaver Cooke was alerted that this sequencing defect, which was occurring at the exact location where it failed to follow the architectural plans, was also contributing to the water intrusion problem. This sequencing defect was an open and obvious condition and should have been known to Weaver Cooke more than three years before it filed its second, third-party complaint. Accordingly, Weaver Cooke's negligence and breach of warranty claims against WSI, as they specifically relate to "balcony door sequencing defects," accrued more than three years prior to the filing of the second, third-party complaint, is thus barred by the applicable statute of limitations, and summary judgment in WSI's favor on those claims is granted.

The court next turns to the application of the traffic coating prior to the installation of the brick veneer, where the court must determine whether Weaver Cooke should have known that this condition could have contributed to the water intrusion problem, either at the time it created the construction schedule or upon the presentment of the water intrusion issues. Unlike the balcony doors, it does not appear that there were any architectural details which called for the traffic coating to run underneath the brick veneer. However, Weaver Cooke's cited knowledge of water intrusion should have necessarily led it to conclude that the water intrusion problems may have been caused by a sequencing

defect in relation to the brick veneer. Once alerted to the sequencing problem concerning the application of the traffic coating in relation to the installation of the balcony doors, Weaver Cooke should have been put on notice to evaluate the sequencing of the traffic coating, in general, including the application regarding the brick veneer. There is no genuine issue of material fact as to whether or when Weaver Cooke should have discovered the brick veneer/traffic coating sequencing error; such discovery should have occurred prior to three years before the filing of the second, third-party complaint, and thus such claim is also time barred.

## II.    Defects in the Project's Parking and Pool Decks

WSI additionally argues that it is entitled to summary judgment on Weaver Cooke's claims to the extent that they relate to work performed by WSI on the Project parking and pool decks. WSI asserts that New Bern and Weaver Cooke *agree* that WSI's application of traffic coating and waterproofing to the Project's parking and pool decks was not defective and did not contribute to cracking and water intrusion problems occurring at these locations, thus entitling it to summary judgment on that issue. However, Weaver Cooke argues that a genuine issue of material fact still exists as to the cause of cracks and water intrusion in these structures.

WSI points to the testimony of experts retained by other parties to this action, who opine that work performed by WSI on the parking and pool decks was not defective. Dean Penny, the structural expert retained by New Bern, testified that he believed the cracks and leaks in the parking and pool decks were caused by structural inadequacies, and that he did not believe that any problems or failures in these locations were caused by work performed by WSI.[13]  James Justus, the expert retained by the Project's engineer, Fluhrer Reed, testified that he did not fault WSI's application of the traffic coating

---

[13] Deposition of H. Dean Penny at 150-52 (as found in Docket Entry 713-1 at 57-59).

or concealed waterproofing for the cracking problems in the parking and pool decks.[14] Additionally, Weaver Cooke's president, Dan Estes, testified that he did not believe that the problems on the parking or pool decks were the result of work performed by WSI.[15] Indeed, Weaver Cooke, in its memorandum responding to WSI's motion for summary judgment, states that it "tends to agree that the traffic coating and waterproofing at the pool deck and parking deck are not defective" and that it "maintains that the work [of WSI on the parking and pool decks] was performed properly." *Defendant Weaver Cooke Construction, LLC's Memorandum in Response to Motion for Summary Judgment of Waterproofing Specialties, Inc.* (Docket Entry 759 at 13).

However, despite testimony of its own president and experts retained by other parties to the contrary, Weaver Cooke bases its defense of WSI's summary judgment motion on this issue upon the testimony of an expert retained by JDavis Architects, PLLC, Mr. L.G. "Skip" Lewis. When asked about certain cracks in the parking deck, Lewis testified that:

> you know, that tells me -- I mean the thermal flexure of the parking deck is in small -- very small fractions of an inch, and so the indications, as I look at the ECS flood test reports, that there is -- I think there is more evidence there that there is a failure in the – either the product or the application of the traffic coating on the parking deck.

Deposition of L.G. Lewis Jr. at 223, lines 24 - 224, line 9 (as found in Exhibit 15, Docket Entry 759-8 at 20-21). However, Lewis stated that he had not actually measured any cracks in the parking deck and did not know if the cracks were beyond the capabilities of the traffic coating.[16] Instead, Lewis stated that his opinion was based on certain flood test results, formed "off the top of my head[,]" and

---

[14] Deposition of James L. Justus at 102-103 (as found in Docket Entry 713-1 at 36-37).

[15] Deposition of Daniel Estes at 206, 209-10 (as found in Docket Entry 713-1 at 25-27).

[16] Deposition of L.G. Lewis Jr. at 224, lines 19 - 23 (as found in Exhibit 15, Docket Entry 759-8 at 21).

14

that he didn't know if he had thought the issue completely through.  Id. at 223, lines 10-23 (as found in Exhibit 15,  Docket Entry 759-8 at 20).  In addition, when asked whether he was prepared to offer any opinions that "a specific waterproofing subcontractor deviated from the standard of care,"  Lewis admitted he had "not been asked to review the performance of the waterproofing subcontractor." Deposition of L.G. Lewis Jr. at 200, lines 6-10 (as found in Docket Entry 821-1 at page 90 of 129 of this unnumbered document).[17]  Finally, when pressed about whether he believed that the traffic coating on the parking deck "was installed in violation of the standard of care," Lewis responded "I don't know." Id. at 224, lines 11-15 (as found in Exhibit 15, Docket Entry 759-8 at 21).

Weaver Cooke also relies on the testimony of Roger Stroud, one of Fluhrer Reed's experts. Weaver Cooke cites to the Structural Opinion Report prepared by Stroud, where he states that "the integrity of the waterproofing membrane is questionable." Structural Opinion Report of Roger E. Stroud at 11 (as found in Attachment 16, Docket Entry 759-9 at 11).  However, Stroud admitted that he was not holding himself out as an expert in the area of waterproofing in this case.[18]  Additionally, Stroud testified that the cracks in the pool deck were caused by defects in the substrate, not the traffic coating.[19]

---

[17] On January 30, 2014, WSI filed a *Reply Memorandum of Law in Response to Weaver Cooke Construction LLC's Memorandum in Response to Motion for Summary Judgment of Waterproofing Specialties, Inc.* (Docket Entry 821).  Filed by WSI, along with its reply brief, was its, *Third Party Defendant's Materials in Support of Reply Memorandum of Law in Support of its Motion for Summary Judgment on Weaver Cooke Construction, LLC's Thrid-Party Complaint* (the "Materials in Support of Reply Brief").  The "Materials in Support of Reply Brief," although on the docket, appear in a 129-page document, which is devoid of either page numbers or an identifying docket entry number.  However the court shall refer to this document as Docket Entry 821-1, and refer to the pages in the consecutive order in which they appear.

[18] Deposition of Roger G. Stroud at 236, lines 17-22 (as found in Docket Entry 821-1 at page 97 of 129).

[19] Id. at 250, lines 15-20 (as found in Docket Entry 821-1 at page 102 of 129).

15

WSI argues that Weaver Cooke's reliance upon testimony which is speculative, at best, is not enough to establish a genuine issue of material fact and defeat summary judgment. The court agrees. "'[A]n issue is genuine if it is supported by substantial evidence,' which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion." Liberty Mut. Ins. Co. v. Pennington, 356 N.C. 571, 579, 573 S.E.2d 118, 123–24 (2002) (quoting DeWitt v. Eveready Battery Co., Inc., 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)). A movant may meet its burden of proving that there is no genuine issue of material fact "by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim." Collingwood v. G.E. Real Estate Equities, Inc., 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)

The North Carolina Supreme Court "has allowed 'could' or 'might' expert testimony as probative and competent evidence to prove causation." Young v. Hickory Bus. Furniture, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000). However, "'could' or 'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." Id. (citing Maharias v. Weathers Bros. Moving & Storage Co., 257 N.C. 767, 767-68, 127 S.E.2d 548, 549 (1962)).

Lewis' testimony that he "thinks," off the top of his head, that there is "evidence" of a failure in application of the traffic coating is not sufficient to create a genuine issue of material fact when his additional testimony reveals that he did not actually measure any cracks in the parking deck and he admitted that he did not know if WSI's work was defective. Furthermore, although Stroud, in a portion of his Structural Opinion Report, "questioned" the integrity of the waterproofing membrane, he testified that he was not holding himself out as an expert in the area of waterproofing and attributed cracks in the pool deck to defects in the substrate. The "could" or "might" testimony of Lewis and

Stroud is insufficient to establish causation when their additional testimony reveals that they are speculating as to the defective nature of WSI's work and are either unwilling or unable to state that WSI's work on the parking or pool decks was defective. This is especially true where there is significant expert witness testimony to the contrary. Accordingly, no genuine issue of material fact exists as to whether WSI's work on the parking and pool decks was defective. WSI is entitled to judgment as a matter of law on Weaver Cooke's negligence and breach of warranty claims to the extent that they relate to work performed by WSI on the parking and pool deck.

In summary, WSI's motion for summary judgment on its statute of limitations defense is granted as it relates to "balcony door sequencing defects" and "brick veneer sequencing defects." Additionally, WSI's motion for summary judgment on Weaver Cooke's negligence and breach of warranty claims is granted as it relates to work performed by WSI on the parking and pool decks.

**SO ORDERED.**

**END OF DOCUMENT**