**SO ORDERED.**

**SIGNED this 5 day of September,2014.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO. 09-10340-8-SWH** |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC** | |
| **DEBTOR** | |
| | |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC** | **ADVERSARY PROCEEDING NO.** |
| **Plaintiff** | **10-00023-SWH-AP** |
| **v.** | |
| **WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC.,** | |
| **Defendants,** | |
| **and** | |
| **WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** | |
| **Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs,** | |
| **v.** | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER
REED PA, SKYSAIL OWNERS ASSOCIATION,
INC.; NATIONAL REINFORCING SYSTEMS,
INC., ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., CAROLINA CUSTOM
MOULDING, INC., CURENTON CONCRETE
WORKS, INC., WILLIAM H. DAIL d/b/a
DD COMPANY, EAST CAROLINA MASONRY,
INC., GOURAS, INC., HAMLIN ROOFING
COMPANY, INC.; HAMLIN  ROOFING
SERVICES, INC., HUMPHREY
HEATING & AIR CONDITIONING, INC.;
PERFORMANCE FIRE PROTECTION, LLC;
RANDOLPH STAIR AND RAIL COMPANY;
STOCK BUILDING SUPPLY, LLC; PLF OF
SANFORD, INC. f/d/b/a LEE WINDOW &
DOOR COMPANY; UNITED FORMING,
INC. a/d/b/a UNITED CONCRETE, INC.;
JOHNSON'S MODERN ELECTRIC
COMPANY, INC.; and WATERPROOFING
SPECIALITIES, INC.,**

　　　　**Crossclaimants, Counterclaimants and
　　　　Third-Party Defendants.**


　　　　**and**

**NATIONAL ERECTORS REBAR, INC.**
　　　　**Defendant, Counterclaimant,
　　　　Crossclaimant and Third-Party
　　　　Plaintiff,**

　　　　**v.**

**ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., JMW CONCRETE
CONTRACTORS, and JOHNSON'S MODERN
ELECTRIC COMPANY, INC.**
　　　　**Third-Party Defendants.**

　　　　**and**

2

**J. DAVIS ARCHITECTS, PLLC,**
     **Third-Party Plaintiff,**

     **v.**

**MCKIM & CREED, P.A.,**
     **Third-Party Defendant.**

     **and**

**GOURAS, INC.,**
     **Third Party Defendant and**
     **Fourth-Party Plaintiff,**

     **v.**

**RAFAEL HERNANDEZ, JR., CARLOS**
**CHAVEZ d/b/a CHAVEZ DRYWALL,**
**5 BOYS, INC. and ALEX GARCIA**
**d/b/a/ JC 5,**
     **Fourth-Party Defendants.**

     **and**

**STOCK BUILDING SUPPLY, LLC,**
     **Third-Party Defendant and**
     **Fourth-Party Plaintiff,**

     **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
     **Fourth-Party Defendant.**

## ORDER GRANTING UNITED FORMING INC.'S
## MOTION FOR SUMMARY JUDGMENT

This matter came on to be heard upon the motion for summary judgment filed by United

Forming, Inc. ("United Forming") regarding the third party complaint of Weaver Cooke Construction,

LLC ("Weaver Cooke"), in Raleigh, North Carolina, on June 2, 2014.  For the reasons that follow,

Weaver Cooke has not made a sufficient showing to support its causes of action and therefore, United Forming is entitled to judgment as a matter of law.

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Luxury Condominiums located in New Bern, North Carolina (the "SkySail Project" or the "Project"). On March 30, 2009, New Bern initiated an action in Wake County Superior Court against nine individual defendants related to the alleged defective construction of the SkySail Condos (the "State Action"). The named defendants in the State Action included: New Bern's general contractor, Weaver Cooke; Travelers Casualty and Surety Company of America ("Travelers"); National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc. ("NER") and certain subcontractors of the general contractor.

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code. The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010. After voluntarily dismissing its causes of action as to the subcontractors named as defendants in the State Action, New Bern filed its first amended complaint on May 6, 2010, asserting claims against Weaver Cooke; Travelers; NER; and the additional parties of J. Davis Architects, PLLC, and Fluhrer Reed, PA.

On May 27, 2010, Weaver Cooke filed an answer to New Bern's first amended complaint and a third-party complaint against Wachovia Bank, National Association and Wells Fargo & Company f/d/b/a Wachovia Corporation. Absent as third-party defendants in Weaver Cooke's original third-party complaint were any of the subcontractors hired by Weaver Cooke during the construction of the SkySail Project.

On June 14, 2012, Weaver Cooke filed its second, third-party complaint asserting claims of negligence, contractual indemnity and breach of express warranty against many of the subcontractors it hired during the construction of the SkySail Project, including United Forming.  United Forming filed an answer to Weaver Cooke's second, third-party complaint on July 17, 2012.

On December 20, 2013, United Forming filed a motion for summary judgment regarding all three causes of action alleged by Weaver Cooke.  As grounds for summary judgment, United Forming argues that Weaver Cooke has failed to offer sufficient evidence to support its claims and therefore, United Forming is entitled to judgment as a matter of law.  In addition, United Forming argues that the economic loss rule bars Weaver Cooke's negligence claim.  The court shall not address United Forming's economic loss argument, holding instead that it is entitled to summary judgment because Weaver Cooke has not made a sufficient showing to support its causes of action.

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)).  In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.

United Forming was responsible for furnishing the labor, materials and equipment necessary for the Project's concrete formwork, the placing of reinforcing steel, and pouring the concrete of all

columns and other vertical structural members, including the structural pool walls and the vertical columns of the Project's parking deck.  Concrete formwork is the mold that is constructed in order to form and shape fresh concrete, which is applied in a liquid state.  Weaver Cooke has alleged that United Forming is responsible for defective conditions present at both the parking deck and the Project's swimming pool.  The defects Weaver Cooke complains of at the swimming pool relate to United Forming's alleged omission of "waterstops;" the defects at the parking deck relate to cracking concrete in that structure.  However, United Forming argues that Weaver Cooke has failed to produce sufficient evidence to establish that United Forming was responsible for defects at either of those locations.  In response, Weaver Cooke argues that there is ample evidence of United Forming's defective work and genuine issues for trial.

## I.      Waterstops and the Project's Swimming Pool

Weaver Cooke first alleges that United Forming failed to install waterstops in the swimming pool deck and that this omission has contributed to water intrusion problems.  A waterstop is a device that, when used in a concrete joint, can slow the migration of water through the joint.  United Forming asserts that the installation of waterstops was excluded from its work and therefore, it cannot be held liable for the failure to install the waterstops.  Weaver Cooke concedes that United Forming deleted waterstops from the scope of its work at the time United Forming entered into a subcontractor with Weaver Cooke.  However, Weaver Cooke claims its "evidence will be that Weaver Cooke purchased and delivered water stops to [United Forming] at the project site for [United Forming] to place in its pool forms at the locations designated in the project plans, before [United Forming] poured the concrete pool walls."[1]

---

[1] *Defendant Weaver Cooke Construction, LLC's* <u>*Amended*</u> *Memorandum in Response to Summary Judgment of United Forming, Inc.* (Docket Entry 771 at 12).

Although Weaver Cooke alludes to evidence which could create a genuine issue of material fact as to whether United Forming agreed to install waterstops during the construction of the SkySail Project, Weaver Cooke does not offer what that evidence would be.  United Forming cites to numerous contractual amendments it executed with Weaver Cooke during the course of its work on the SkySail Project and which reflect extra work United Forming agreed to perform.[2]  Absent from any of those amendments is an agreement to install waterstops.[3]

"[O]nce the movant has satisfied [the] 'initial burden' of demonstrating the absence of a genuine dispute as to any material fact, the nonmoving party must show that a genuine dispute does, in fact, exist."  Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) (citations omitted).  In making that showing, "the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*."  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). (citations omitted).  In order for Weaver Cooke to survive United Forming's motion for summary judgment, it was incumbent on Weaver Cooke to produce some evidence tending to show that United Forming agreed to install waterstops or should otherwise be held liable for that omission.  Weaver Cooke has failed to do so.  Accordingly, United Forming's motion for summary judgment shall be granted to the extent that Weaver Cooke's claims relate to the failure to install waterstops at the swimming pool.

---

[2] *Reply in Support of Motion for Summary Judgment of United Forming, Inc.* (Docket Entry 824 at 7).

[3] Id.

## II.      Cracks in the Parking Deck

Weaver Cooke also alleges that United Forming's work on the one-story parking deck was defective and caused cracking in that structure.  However, United Forming argues that there is no evidence that its work on the parking deck was defective or caused cracks in the parking deck.  To support its claims, Weaver Cooke cites to the Structural Opinion Report prepared by Roger G. Stroud, an engineer retained by Fluhrer Reed, PA (SkySail's engineer of record and also a party to this litigation).[4]   In his Structural Opinion Report, Stroud identifies certain defects "which could contribute" to cracking in concrete structures.  The factors identified by Stroud include: early form removal; the settlement of form supports or deflection of forms; early thermal cracking; drying shrinkage; and weakened areas due to slab penetrations.  Some of the factors identified by Stroud, if present, could be attributable to work performed by United Forming.  However, United Forming asserts that Stroud only identifies *possible* causes of cracking in concrete structures, in general, and that Stroud never concludes whether those conditions are actually present at the SkySail Project or whether United Forming's work was defective.

Weaver Cooke also cites to the "Preliminary Report of Document Review" prepared by James L. Justus, another engineer retained by Fluhrer Reed, to argue that a genuine issue of material fact exists as to whether United Forming's work on the parking deck was defective and caused cracks.[5]   In his report, Justus identifies several areas of the Project where defective conditions were present.  According to Justus, Fluhrer Reed's January through July "field inspection reports" of 2007 noted

---

[4] The Structural Opinion Report prepared by Roger G. Stroud (the "Stroud report") can be found at Exhibit 1, Docket Entry 771-1.

[5] The Preliminary Report of Document Review prepared by James Justus (the "Justus report") can be found at Exhibit 2, Docket Entry 771-2.

numerous locations with honeycombing of the concrete after placement and curing.  In addition, Justus

notes that Engineering Consulting Services' Mactec Report, which was prepared in 2007, identified

problems with voids and honeycombing, and problems with cracking at column tops at the slab

interface.  Weaver Cooke argues that the defects identified in the Justus report relate to work

performed by United Forming.  However, United Forming asserts that the Justus report never identifies

the specific areas where the defects in the concrete were found and whether they relate to work

performed by United Forming.  In addition, United Forming argues that the Justus report never reaches

any conclusion as to whether the defects identified caused any cracking in the parking deck.

　　　　United Forming argues that Weaver Cooke's reliance upon the reports of Stroud and Justus,

which either speculate as to the causes of cracking in the concrete or passingly mention certain defects

related to concrete, is not sufficient to create a genuine issue of material fact as to whether United

Forming's work on the parking deck was defective.  The court agrees.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 322-23.  The North Carolina Supreme Court "has allowed 'could' or 'might'

expert testimony as probative and competent evidence to prove causation." Young v. Hickory Bus.

Furniture, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000).  However, "'could' or 'might' expert

testimony [is] insufficient to support a causal connection when there is additional evidence or

testimony showing the expert's opinion to be a guess or mere speculation." Id. (citing Maharias v.

Weathers Bros. Moving & Storage Co., 257 N.C. 767, 767-68, 127 S.E.2d 548, 549 (1962)).

A review of the reports of Stroud and Justus reveals that neither report actually attributes any of the defects identified in their reports to cracks in the parking deck.  The Stroud report appears to only identify *potential* causes of concrete cracking, in general, and makes no determination whether any of the defects it discusses actually exist at the SkySail Project.  The Stroud report states: "References 1 through 3 provide state-of-the-art information on factors affecting cracking in concrete structures.  Some of the factors which could contribute to cracking include the following."[6]  The Stroud Report then lists certain factors which "could" cause cracking, but does not determine whether those conditions were present at the SkySail Project.  Stroud's report only speculates as to the potential causes of the cracking concrete.

In addition, although the Justus report does indicate that voids and honeycombing in the concrete were detected in 2007, the report does not identify the locations where those defects were present or whether those defects related to work performed by United Forming.  The Justus report also does not reach any conclusions as to the affect of voids and honeycombing and whether those defects caused or contributed to cracking concrete.  In fact, the only conclusion identified by Justus relating to defects in the concrete states, "[n]umerous records were found indicating . . . incomplete consolidation in the concrete."[7]  Finally, although Justus identifies the additional defect of cracking at column tops at the slab interface, he concludes that "[n]o cause is identified" and the "problems were considered minor with repairs recommended."[8]

Weaver Cooke has failed to forecast any evidence that work performed by United Forming caused cracks in the Project's parking deck.  Accordingly, United Forming is also entitled to summary

---

[6] Stroud report at 13 (as found in Docket Entry 771-1 at 8).

[7] Justus report at 5 (as found in Docket Entry 771-2 at 5).

[8] Id. at 4 (as found in Docket Entry 771-2 at 4).

judgment on Weaver Cooke's negligence, breach of warranty and indemnity claims to the extent that the claims relate to United Forming's work on the parking deck.   In summary, Weaver Cooke has failed to make a sufficient showing to establish that United Forming was responsible for the damages or defects of which it complains.  No genuine issues of material fact exist and United Forming is entitled to judgment as a matter of law on all of Weaver Cooke's claims.

**SO ORDERED.**

**END OF DOCUMENT**