**SO ORDERED.**

**SIGNED this 18 day of September,2014.**

*Stephani W. Humrickhouse*

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                        CASE NO. 09-10340-8-SWH

**NEW BERN RIVERFRONT DEVELOPMENT, LLC**
        **DEBTOR**

**NEW BERN RIVERFRONT DEVELOPMENT,**          **ADVERSARY PROCEEDING NO.**
**LLC**
        **Plaintiff**                         **10-00023-AP**

        **v.**

**WEAVER COOKE CONSTRUCTION, LLC;**
**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA; J. DAVIS**
**ARCHITECTS, PLLC; FLUHRER REED PA;**
**and NATIONAL ERECTORS REBAR, INC. f/k/a**
**NATIONAL REINFORCING SYSTEMS, INC.;**

        **Defendants**

        **and**

**J. DAVIS ARCHITECTS, PLLC, FLUHRER**
**REED PA, SKYSAIL OWNERS ASSOCIATION,**
**INC.; NATIONAL REINFORCING SYSTEMS,**
**INC., ROBERT P. ARMSTRONG, JR., ROBERT**
**ARMSTRONG, JR., INC., SUMMIT DESIGN**

GROUP, INC., CAROLINA CUSTOM
MOULDING, INC., CURENTON CONCRETE
WORKS, INC., WILLIAM H. DAIL d/b/a
DD COMPANY, EAST CAROLINA MASONRY,
INC., GOURAS, INCORPORATED, HAMLIN
ROOFING COMPANY, INC., HAMLIN
ROOFING SERVICES, INC., HUMPHREY
HEATING & AIR CONDITIONING, INC.
PERFORMANCE FIRE PROTECTION, LLC,
RANDOLPH STAIR AND RAIL COMPANY,
STOCK BUILDING SUPPLY, LLC, PLF OF
SANFORD, INC. f/d/b/a LEE WINDOW &
DOOR COMPANY, UNITED FORMING,
INC. a/d/b/a UNITED CONCRETE, INC.
WATERPROOFING SPECIALITIES, INC.,
and JOHNSON'S MODERN ELECTRIC
COMPANY, INC.,
     Crossclaim, Counterclaim and
     Third-Party Defendants.

     and

NATIONAL ERECTORS REBAR, INC.
     Defendant, Counterclaimant,
     Crossclaimant and Third-Party
     Plaintiff

     v.

ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., JMW CONCRETE
CONTRACTORS, and JOHNSON'S MODERN
ELECTRIC COMPANY, INC.
     Third-Party Defendants.

     and

J. DAVIS ARCHITECTS, PLLC,
     Third-Party Plaintiff

     v.

2

**MCKIM & CREED, P.A.,**
      **Third Party Defendant**

      **and**

**GOURAS, INCORPORATED**
      **Third Party Defendant and**
      **Fourth-Party Plaintiff**

**RAFAEL HERNANDEZ, JR., CARLOS
CHAVEZ d/b/a CHAVEZ DRYWALL,
5 BOYS, INC. and ALEX GARCIA
d/b/a/ JC 5**
      **Fourth-Party Defendants**

      **and**

**STOCK BUILDING SUPPLY, LLC**
      **Third-Party Defendant and**
      **Fourth-Party Plaintiff**

      **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
      **Fourth-Party Defendant.**

### ORDER REGARDING HAMLIN ROOFING COMPANY, INC. AND HAMLIN ROOFING SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT ON WEAVER COOKE CONSTRUCTION LLC'S SECOND, THIRD-PARTY COMPLAINT

This matter came on to be heard upon the motion for summary judgment filed by Hamlin Roofing Company, Inc. ("HRCI") and Hamlin Roofing Services, Inc. ("HRSI") regarding the third party complaint of Weaver Cooke Construction, LLC ("Weaver Cooke"), in Raleigh, North Carolina, on March 5, 2014. Although summary judgment is sought on several bases, this order shall address whether Weaver Cooke may maintain its causes of action against HRSI, and whether the statute of limitations bars Weaver Cooke's negligence and breach of warranty claims.

3

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Luxury Condominiums located in New Bern, North Carolina (the "SkySail Project" or the "Project"). On March 30, 2009, New Bern initiated an action in Wake County Superior Court against nine individual defendants related to the alleged defective construction of the SkySail Condos (the "State Action"). The named defendants in the State Action included: New Bern's general contractor, Weaver Cooke; Travelers Casualty and Surety Company of America ("Travelers"); National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc. ("NER") and certain subcontractors of the general contractor.

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code. The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010. After voluntarily dismissing its causes of action as to the subcontractors named as defendants in the State Action, New Bern filed its first amended complaint on May 6, 2010, asserting claims against Weaver Cooke; Travelers; NER; and the additional parties of J. Davis Architects, PLLC, and Fluhrer Reed, PA.

On May 27, 2010, Weaver Cooke filed an answer to New Bern's first amended complaint and a third-party complaint against Wachovia Bank, National Association and Wells Fargo & Company f/d/b/a Wachovia Corporation. Absent as third-party defendants in Weaver Cooke's original third-party complaint were any of the subcontractors hired by Weaver Cooke during the construction of the SkySail Project.

On June 14, 2012, Weaver Cooke filed its second, third-party complaint asserting claims of negligence, contractual indemnity and breach of express warranty against many of the subcontractors Weaver Cooke claims that it hired for the SkySail Project, including HRSI. On August 1, 2012, HRSI filed an answer to Weaver Cooke's second, third party complaint and asserted as a defense that it had no contractual relationship with Weaver Cooke. Thereafter, on August 3, 2012, Weaver Cooke filed a second amendment to its second, third-party complaint and named HRCI as a third-party defendant. HRCI filed an answer to Weaver Cooke's second, third-party complaint on August 13, 2012, asserting numerous defenses, including the statute of limitations. HRSI filed an additional answer to Weaver Cooke's second, third-party complaint on August 13, 2012, alleging that none the allegations contained in Weaver Cooke's complaint related to services provided by HRSI.

On December 20, 2013, HRSI and HRCI jointly filed a motion for summary judgment regarding all three causes of action alleged by Weaver Cooke. Initially, HRSI argues that while a sister company of HRCI, it had no involvement with the SkySail Project whatsoever and therefore, should be entitled to summary judgment on Weaver Cooke's claims. In addition, HRCI acknowledges that it did perform work on the SkySail Project but argues that it is entitled to summary judgment because: (1) the applicable statute of limitations bars Weaver Cooke's claims of negligence and breach of express warranty; (2) the economic loss rule bars Weaver Cooke's negligence claim; (3) Weaver Cooke's contractual indemnity claim is barred by N.C. Gen. Stat. § 22B-1; (4) the negligence and contractual indemnity claims are barred by the doctrine of contributory negligence; and (5) Weaver Cooke's claim for breach of express warranty is barred by Weaver Cooke's failure to furnish notice of a claim as required by the warranties. Inasmuch as the

5

resolution of the statute of limitations affirmative defense may dramatically affect the complexion of the litigation, the court has chosen to deal first with that issue raised by HRCI.  In addition, the court shall address whether HRSI is entitled to summary judgment based on its argument that it did not perform any services for the SkySail Project.

Simply put, HRCI argues that Weaver Cooke had knowledge of its allegedly defective work more than three years before Weaver Cooke filed its second, third-party complaint and therefore, Weaver Cooke's claims against it are barred by the three-year statute of limitations found in N.C. Gen Stat. § 1-52.  Weaver Cooke maintains that it did not have knowledge of HRCI's defective work until 2012 and argues that its causes of action are not time barred.   In addition, HRSI asserts that it did not perform any work on the Project and Weaver Cooke's claims against HRSI must be dismissed as a matter of law.  In response, Weaver Cooke argues that a genuine issue of material fact still exists as to whether HRSI performed work at the SkySail Project.

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)).  No material facts are in dispute when the non-moving party:

> fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Id. at 322-23.   In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis."  Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.

## I. Weaver Cooke's Claims against HRSI

HRSI asserts that it did not perform any work on the Project and therefore, all of Weaver Cooke's claims against it must be dismissed.  HRSI states that while it is a sister corporation of HRCI, they are separate and distinct 'S"corporations and HRSI neither contracted with Weaver Cooke nor performed any work at the SkySail Project.  HRSI surmises that Weaver Cooke initially named it as a third-party defendant in its June 14, 2012, second, third-party complaint because Weaver Cooke had mistakenly issued checks payable to HRSI for work that HRCI performed at the SkySail Project.[1] Although HRSI cashed the checks, it claims that the two companies utilize a single operating bank account, so a payment to one entity would be deposited into the same account as a payment to the other.  In response, Weaver Cooke asserts that it is "unclear" whether HRSI and HRCI are separate and distinct entities and that a genuine issue of material fact exists as to whether HRSI played a role in the SkySail Project

It is undisputed that HRCI is the entity that entered into the subcontract with Weaver Cooke to perform work at the SkySail project.[2]  Furthermore, the parties have also submitted evidence that

---

[1] The checks issued by Weaver Cooke to HRSI can be found in the *Motion for Summary Judgment filed by Hamlin Roofing Company, Inc. and Hamlin Roofing Services, Inc.*, Exhibit 12 (Docket Entry 691-6 at 1-10).

[2] See Id., Exhibit 1 (Docket Entry 691-1 at 1-22).

tends to show that the checks Weaver Cooke issued to HRSI actually relate to invoices submitted by HRCI, for work that HRCI performed on the Project.[3]  In fact, nearly all of the checks issued by Weaver Cooke to HRSI match the exact amount on the invoices that HRCI submitted to Weaver Cooke.[4]

In response, Weaver Cooke asserts that HRSI appears on "Attachment A-1" to the subcontract that Weaver Cooke executed with HRCI.  However, HRSI does not, in fact, appear anywhere on the referenced document and the only Hamlin entity identified in Attachment A-1 of the subcontract is "Hamlin Roofing Company, Inc."[5] In addition, the court has also found a document in the record that was not addressed by either Weaver Cooke, HRSI or HRCI, but identifies HRSI.  "Change Order No. 1," dated January 1, 2007, and created by Weaver Cooke, identifies "Hamlin Roofing Services, Inc." in the upper portion of the document.[6]  The change order was issued by Weaver Cooke and signed under the "Vendor's Authorization."  HRCI and HRSI assert that this change order removed from HRCI's scope of work its obligation to install flashing in certain locations but neither Weaver Cooke nor HRCI nor HRSI discusses the significance of the reference to HRSI in that document.

---

[3] See *Id.*, Exhibits 11 and 12 (Docket Entry 691-5 at 1, 7, 13, 19, 25, 30, 35, 40, 45, 50; 691-6 at 1-10).

[4] There is one exception, HRCI's final invoice, dated August 20, 2008, indicated an amount of $62,512.21 owed.  Thereafter, Weaver Cooke issued three separate checks to HRSI, each in the amount of $10,000.  The checks were issued nearly a year after the invoice date, with one check issued in May, 2009, one in June, 2009, and the third in July, 2009. See *Id.*, Exhibits 11 and 12 (Docket Entry 691-5 at 50; 691-6 at 10).

[5] *Defendant Weaver Cooke Construction, LLC's Memorandum in Response to the Motion for Summary Judgment of Hamlin Roofing Services, Inc. and Hamlin Roofing Company, Inc.*, Exhibit 1 (Docket Entry 763-1 at 2).

[6] *Id.*, Exhibit 3 (Docket Entry 691-1 at 25-26).

HRCI and HRSI argue that Weaver Cooke's error in paying HRSI for work that HRCI performed on the Project does not create a basis for Weaver Cooke's negligence, breach of express warranty or indemnity claims against HRSI.  In addition, they argue that Weaver Cooke has not produced any evidence that tends to show that HRSI performed work on the Project.  "[O]nce the movant has satisfied [the] 'initial burden' of demonstrating the absence of a genuine dispute as to any material fact, the nonmoving party must show that a genuine dispute does, in fact, exist."  <u>Dash v. Mayweather</u>, 731 F.3d 303, 311 (4th Cir. 2013) (citations omitted).  In making that showing, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial."  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  Neither the fact that HRSI cashed the checks issued to HRSI by Weaver Cooke, nor the identification of HRSI as the subcontractor on the change order prepared by Weaver Cooke present a genuine issue of material fact regarding HRSI's involvement on the Project when faced with HRSI's denial of such involvement.  No affidavits stating that workers wearing HRSI logoed shirts were spotted onsite, nor deposition testimony asserting that any worker identified himself as an HRSI employee were offered in opposition to the summary judgment motion, for instance.  Therefore summary judgment is properly awarded to HRSI on all counts of the amended third party complaint.

## II.    HRCI and the Statute of Limitations

HRCI also argues that Weaver Cooke's negligence and breach of warranty claims are barred by the statue of limitations.  "[W]hether a cause of action is barred by the statute of limitations is a mixed question of law and fact.  However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law."

<u>Pembee Mfg. Corp. v. Cape Fear Constr. Co.</u>, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). North Carolina General Statute § 1-52 provides a three year statute of limitations for actions sounding in tort or contract.  N.C. Gen. Stat. § 1-52(1), (5) (2010).  Additionally,

> [f]or purposes of the three-year limitation prescribed by G.S. 1-52, a cause of action based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant.

N.C. Gen. Stat. § 1-50(a)(5)(f) (2009).

Actions based upon or arising out of the defective or unsafe condition of an improvement to real property include those which seek to "recover damages for breach of a contract to construct or repair an improvement to real property" and those based upon the "negligent construction or repair of an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)(b) (2009).  Although HRCI asserts that Weaver Cooke does not get the benefit of any type of discovery rule and argues that Weaver Cooke's negligence and breach of warranty claims accrued no later than June of 2008, when Hamlin last rendered services for the Project, this court has previously held that the discovery rule found in 1-50(a)(5)(f) is applicable to Weaver Cooke's claims.[7]  Accordingly, Weaver Cooke's negligence and breach of warranty claims against Hamlin did not accrue until the injury, defect or damage became apparent or ought to have become apparent.

Weaver Cooke subcontracted with HRCI to install the roofing system for the Project.  Part of HRCI's work involved installing the thermoplastic polyolefin ("TPO") roofing membrane on the Project's roof.  The TPO membrane is a flexible, plastic material which comes in rolled sheets and is the primary water and air barrier on the Project's roof.  The Project's roof was designed such that

---

[7] <u>See</u> *Order on Summary Judgment regarding Statute of Limitations East Carolina Masonry, Inc.* (Docket Entry 882) June 3, 2014.

10

in certain locations, the exterior walls extended above the roof-line, resulting in the roof being partially walled at those locations.  The portions of the exterior walls that extended above the roof-line are known as parapet walls.  HRCI was to install the TPO such that the TPO would be laid up the back of the roof's parapet walls, over the top of the parapet, and then secured to the front of the parapet wall, resulting in the TPO terminating with the sheet pointing downward, towards the ground.  This design was intended to prevent water from getting trapped underneath the TPO membrane and potentially causing leaks in the roof.

The parapet walls were to be constructed by another subcontractor, Gouras Incorporated.[8] At the time that HRCI installed the TPO membrane on the roof, the parapet walls had not yet been built.  Therefore, and in order to accommodate for the later installation and attachment of the TPO over the top of and to the front of the parapet walls,  HRCI left excess TPO material hanging over the edge of the unfinished building.  Thereafter, another subcontractor, Carolina Custom Molding, Inc. ("CCMI") began its work on the roof.  CCMI was responsible for installing the cornice work, which rested on top of the parapet walls.  Once the parapet walls were built, but before the TPO had been secured to the parapet walls, CCMI began installing its cornice work.  In order to complete its work, CCMI claims that it was forced to cut back the TPO membrane, resulting in the TPO no longer running down the face of the parapet walls.  HRCI asserts that it was not aware that CCMI was cutting into the TPO membrane.

Weaver Cooke claims that the cutting of the TPO membrane has contributed to water intrusion problems at the Project's roof and alleges that HRCI contributed to this defect by failing

---

[8] See  *Defendant Weaver Cooke Construction, LLC's Memorandum in Response to the Motion for Summary Judgment of Hamlin Roofing Services, Inc. and Hamlin Roofing Company, Inc.* (Docket Entry 763 at 5).

to complete its installation of the TPO membrane and failing to communicate with the other roof subcontractors in such a way to ensure the TPO was installed correctly. In response, HRCI asserts that Weaver Cooke was aware of water intrusion issues at the roof more than three years prior to the filing of its second, third-party complaint and that this knowledge should have led Weaver Cooke to identify the defective installation of the TPO membrane. In addition, HRCI asserts that Weaver Cooke was aware that CCMI was cutting the TPO membrane and thus, potentially creating a defective condition.

Initially, HRCI asserts that Weaver Cooke knew of water intrusion issues through the Project's roof as early as 2008 and argues that Weaver Cooke's negligence and breach of warranty causes of action accrued at that time. In support thereof, HRCI cites to the deposition testimony of David Cline, Weaver Cooke's assistant project manager. Cline testified that in 2008, Weaver Cooke was aware of certain cornice "cap issues," on the roof, at the corner of the building, where some of the spans were not riveted or sealed properly.[9] Cline attributed those defects to water intrusion problems.[10]

Weaver Cooke concedes that it had knowledge of the water intrusion problem more than three years prior to the initiation of the second, third-party complaint but maintains that it was not until it received the report prepared by the debtor's expert, George Barbour, in March 2012 (the "Barbour Report"), that it knew to attribute the water intrusion to HRCI's allegedly defective work. Weaver Cooke also contends that any water intrusion from the roof it may have been aware of in 2008 was related to "cap" and "cornice" issues, not the roofing work performed by HRCI.

---

[9] Deposition of David Cline, Vol. I at 151-153 (as found in Docket Entry 691-8 at 116-18).

[10] Id.

In addition, HRCI argues that Weaver Cooke had knowledge that CCMI was cutting back the TPO membrane. Hamlin cites to the deposition of Marvin ("Skip") Hartley, CCMI's Rule 30(b)(6) designee, where Hartley testified that Weaver Cooke was aware that CCMI's employees were cutting back the TPO membrane in order to properly install the cornice work and that Cline gave them permission to cut the back TPO.[11]  However, Cline testified that he did not have any knowledge that CCMI was cutting the TPO membrane nor had he ever seen CCMI cutting the TPO. In addition, Cline testified that he had not, and would not have given CCMI any instruction to cut the TPO membrane.[12]  Weaver Cooke asserts that it was not until March of 2012, when it received the report of New Bern's expert, George Barbour (the "Barbour Report"), that it became aware of the HRCI's defective installation of the TPO.

Although Weaver Cooke's knowledge of CCMI's cutting of the TPO membrane *would* have put Weaver Cooke on notice that Hamlin had failed to complete its work in installing the TPO, Weaver Cooke disputes such knowledge. Additionally, a dispute exists regarding whether HRCI had a duty to return to the Project after it finished laying the TPO to ensure that it was properly tacked over the parapet walls. Genuine issues of material fact still exist as to whether Weaver Cooke knew or should have known about Hamlin's alleged defective work more than three years

---

[11] Deposition of Marvin Hartley at 100-01, 105-06 (as found in Docket Entry 691-8 at 84-85, 89-90). Although Hartley was CCMI's Rule 30(b)(6) designee, CCMI's attorney, Michael Hugo, who apparently had extensive knowledge of CCMI's involvement at the Skysail Project, often responded to question posed at Hartley's deposition, even though Hugo himself was not under oath. This was the case when Hartley was asked whether Weaver Cooke was aware that CCMI was cutting back the TPO and whether Weaver Cooke gave CCMI permission to cut the TPO. However, at the request of the attorney deposing Hartley, Hartley incorporated Hugo's testimony as his own.

[12] Deposition of David Cline, Vol. II at 469-70 (as found in Docket Entry 691-8 at 140-41).

prior to Weaver Cooke's filing of its second, third-party complaint against HRSI and HRCI. Accordingly, Hamlin's motion for summary judgment on the statute of limitations defense shall be denied.

**SO ORDERED.**

**END OF DOCUMENT**