**SO ORDERED.**

**SIGNED this 26 day of September, 2014.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-10340-8-SWH |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | |
| DEBTOR | |
| | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | ADVERSARY PROCEEDING NO. |
| Plaintiff | 10-00023-AP |
| v. | |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC., | |
| Defendants, | |
| and | |
| WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
| Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
| v. | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING COMPANY, INC.; HAMLIN ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**
      **Crossclaimants, Counterclaimants and**
      **Third-Party Defendants.**


      **and**

**NATIONAL ERECTORS REBAR, INC.**
      **Defendant, Counterclaimant,**
      **Crossclaimant and Third-Party**
      **Plaintiff,**

      **v.**

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**
      **Third-Party Defendants.**

      **and**

**J. DAVIS ARCHITECTS, PLLC,**
    **Third-Party Plaintiff,**

    v.

**MCKIM & CREED, P.A.,**
    **Third-Party Defendant.**

    and

**GOURAS, INC.,**
    **Third Party Defendant and**
    **Fourth-Party Plaintiff,**

    v.

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
    **Fourth-Party Defendants.**

    and

**STOCK BUILDING SUPPLY, LLC,**
    **Third-Party Defendant and**
    **Fourth-Party Plaintiff,**

    v.

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
    **Fourth-Party Defendant.**

## ORDER REGARDING HUMPHREY HEATING AND AIR CONDITIONING, INC.'S MOTION FOR SUMMARY JUDGMENT

This matter came on to be heard upon the motion for summary judgment filed by Humphrey Heating and Air Conditioning, Inc. ("HHAC") regarding the complaint of Weaver Cooke Construction, LLC ("Weaver Cooke"). A hearing took place on June 2, 2014, in Raleigh, North Carolina.

**BACKGROUND**

This adversary proceeding relates to the alleged defective construction of the SkySail Luxury Condominiums located in New Bern, North Carolina (the "SkySail Project" or the "Project"). New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Project and Weaver Cooke was the Project's general contractor. Weaver Cooke subcontracted with HHAC in October 2006, to install the Project's HVAC system; HHAC's work on the Project was completed in October of 2008. Upon completion of its work, HHAC claims that it submitted several requests for final payment to Weaver Cooke that were unmet. Therefore, in February of 2009, HHAC filed a claim of lien against the real property of the SkySail Project and a payment bond claim against Weaver Cooke's surety, Travelers Casualty and Surety Company of America ("Travelers"). Shortly thereafter, HHAC brought a complaint in Craven County, North Carolina, for enforcement of the liens against Weaver Cooke and New Bern (the "Craven County Action").

On March 30, 2009, New Bern initiated an action in Wake County Superior Court against nine individual defendants regarding their roles in the construction of the SkySail Condos (the "State Action"). The named defendants in the State Action included: Weaver Cooke; Travelers; National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc. ("NER") and certain subcontractors of the general contractor, including HHAC. New Bern's claims against the subcontractors related to the subcontractors' contentions that they had not been paid by Weaver Cooke for work they performed on the Project.

In order to resolve HHAC's Craven County Action, Weaver Cooke agreed to make payments to HHAC and entered into a settlement agreement with HHAC on May 27, 2009 (the "Settlement Agreement"). Although HHAC asserted a claim of lien and a payment bond claim in the amount

of $98,771.48, Weaver Cooke disputed that amount and agreed to pay HHAC $93,152. Upon the receipt of Weaver Cooke's final payment under the terms of the the Settlement Agreement, HHAC, on October 2, 2009, filed voluntary dismissals of its claims against Weaver Cooke with prejudice, and without prejudice as to New Bern in the Craven County Action. Thereafter, on October 22, 2009, New Bern dismissed its claims against HHAC in the State Action without prejudice.

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code. The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010. After voluntarily dismissing its causes of action as to the other subcontractors named as defendants in the State Action, New Bern filed its first amended complaint on May 6, 2010, asserting claims against Weaver Cooke, Travelers, NER, and the additional parties of J. Davis Architects, PLLC, and Fluhrer Reed, PA.

On May 27, 2010, Weaver Cooke filed an answer to New Bern's first amended complaint and a third-party complaint against Wachovia Bank, National Association and Wells Fargo & Company f/d/b/a Wachovia Corporation. Absent as third-party defendants in Weaver Cooke's third-party complaint were any of the subcontractors it hired during the construction of the SkySail Project, including HHAC.

On June 14, 2012, Weaver Cooke filed its second, third-party complaint asserting claims of negligence, contractual indemnity and breach of express warranty against many of the subcontractors hired during the construction of the SkySail Project, including HHAC. HHAC filed an answer to Weaver Cooke's second, third-party complaint on July 12, 2012.

On December 6, 2013, HHAC filed a motion for summary judgment regarding Weaver Cooke's second, third-party complaint.  As grounds for summary judgment, HHAC argues: (1) the Settlement Agreement bars all of Weaver Cooke's claims; (2) the expiration of the statute of limitations bars Weaver Cooke's negligence and breach of warranty claims; (3) the expiration of the one-year express warranty provided by HHAC bars Weaver Cooke's breach of warranty action; (4) the economic loss rule is a bar to Weaver Cooke's negligence claim; and, (5) the Settlement Agreement bars Weaver Cooke's indemnity action as it supercedes the parties prior indemnity agreement.  In this order, the court will address the statute of limitations defense to the negligence and breach of warranty claims, as well as Weaver Cooke's indemnity claim.

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)).  In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.

### I.    HHAC's Statute of Limitations Defense

In its Memorandum in Support of its Motion for Summary Judgment, HHAC asserts that Weaver Cooke's claims of negligence and breach of express warranty are barred by the relevant

statute of limitations. Weaver Cooke notes that HHAC did not assert the statute of limitations as an affirmative defense in its answer to the second, third-party complaint and argues that the defense has therefore been waived.

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, the affirmative defense of the statute of limitations must be affirmatively stated in a party's responsive pleading. Fed. R. Civ. P. 8(c). However, "when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." First Union Nat'l Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622 (8th Cir. 2007) (citations omitted) (internal marks omitted). Accord Brinkley v. Harbour Rec. Club, 180 F.3d 598, 612-13 (4th Cir. 1999); Dresser Indus., Inc. v. Pyrrhus AG, 936 F.2d 921, 928 (7th Cir. 1991); Allied Chemical Corp. v. Mackay, 695 F.2d 854, 855-56 (5th Cir. 1983). Absent unfair surprise to the non-moving party, an affirmative defense may be asserted for the first time in a motion for summary judgment. See Brinkley, 180 F.3d at 612-13 (holding that plaintiff was not unfairly surprised or prejudiced when defendant raised an affirmative defense for the first time on summary judgment, noting that the plaintiff "had ample opportunity to respond to HRC's summary judgment motion in which it initially raised the [affirmative] defense."). Id. at 613.

The statute of limitations defense was first asserted by HHAC in its motion for summary judgment filed on December 6, 2013, and was more comprehensively explained in its memorandum filed on the same date. Weaver Cooke responded in writing to the statute of limitations defense in its memorandum filed on January 13, 2014, and had an opportunity for oral argument on the issue during the hearing on HHAC's motion for summary judgment, held on June 2, 2014. Additionally, HHAC asserted the affirmative defenses of laches and estoppel in the answer filed July 12, 2012,

7

in which it alleged that "the improvements of which Plaintiff New Bern . . . and . . . Weaver [Cooke] complains were performed over a period of time sufficient for Plaintiff New Bern . . . and . . . Weaver [Cooke] to make their objections known; and the . . . delay in doing so has prejudiced Defendant [HHAC]."[1]  Finally, at the time that Weaver Cooke was considering and responding to HHAC's statute of limitations defense, it was undergoing similar, if not identical, analysis of the defense regarding numerous other subcontractors' pleadings.  Weaver Cooke has not been prejudiced or unfairly surprised by HHAC's failure to assert the statute of limitations defense in its answer and it is therefore appropriate for the court to consider HHAC's statute of limitations argument.

"[W]hether a cause of action is barred by the statute of limitations is a mixed question of law and fact.  However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law." Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985).  North Carolina General Statute § 1-52 provides a three-year statute of limitations for actions sounding in tort or contract.  N.C. Gen. Stat. §§ 1-52(1), (5) (2013).  Additionally,

> [f]or purposes of the three-year limitation prescribed by G.S. 1-52, a cause of action based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant.

N.C. Gen. Stat. § 1-50(a)(5)(f) (2013).

Actions based upon or arising out of the defective or unsafe condition of an improvement to real property include those that seek to "recover damages for breach of a contract to construct or

---

[1] Docket Entry 376 at 12-13.

8

repair an improvement to real property" and those based upon the "negligent construction or repair of an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)(b) (2013). HHAC argues that, even with the benefit of a discovery rule, Weaver Cooke knew, or reasonably should have known, of the alleged defects in HHAC's work more than three years prior to the filing of the second, third-party complaint. In response, Weaver Cooke argues that it become aware of HHAC's alleged defective work only after it received the report prepared by the debtor's expert, George Barbour, in March 2012 (the "Barbour Report").

The defects of which Weaver Cooke complains relate to HHAC's installation of the Project's HVAC units. Weaver Cooke alleges that there is a lack of insulation for the condensate lines from the air conditioning units; a lack of fire caulking of piping penetrations; improper sloping of condensate drain lines; the duct fitting in one particular condo unit (Unit 201) is not at a proper angle as it discharges into the ceiling and has resulted in less efficient cooling capacity for that unit, and standing water in the auxiliary drain pan beneath the HVAC units in at least two of the condos.[2] Weaver Cooke is only able to articulate damages related to water dripping from the uninsulated condensation lines, which has caused damage to at least one of the condo unit floors. The extent of that damage is not clear, but appears to be *de minimis*. In addition, Weaver Cooke recognizes that New Bern continues to assert that the HVAC pipping in the mechanical closets should have been copper, as opposed to PVC piping.

Assuming that Weaver Cooke's complaints amount to defects for which HHAC is responsible, HHAC first argues that those defects were open and obvious and should have been

---

[2] See the February 29, 2012, letter/preliminary report prepared by Warren Maddox (Docket Entry 765-6 at 2-4); deposition of Warren Maddox at 95-99, 181-82, 194-99 (as found in Docket Entry 765-5 at 5-9, 13-20).

9

discovered during its work or shortly after it ceased working on the Project in 2008. The photographs corresponding to the preliminary report prepared by Warren Maddox, a professional engineer retained by New Bern, illustrate that the alleged defects in the HVAC piping, fire caulking, duct work and drain pans were not latent and were visible within the mechanical closet.[3] In addition, when asked whether the HVAC conditions he observed were concealed or otherwise not readily visible, Maddox responded, "not that I can recall."[4] Furthermore, George Barbour, who has also alleged that certain HVAC work was defective, confirmed that the HVAC defects he identified were contained within the mechanical closets and that issues with the condensate line, the drain lines and the drain pans were not hidden.[5]

Furthermore, even if Weaver Cooke did not discover the alleged defects immediately upon HHAC's completion of its work, it certainly should have discovered them once HHAC filed the Craven County Action to enforce its lien and payment bond claim, or at the latest, when Weaver Cooke and HHAC executed the settlement agreement. The Craven County Action was initiated in February 2009, and the Settlement Agreement was executed in May 2009, both of which being more than three years before Weaver Cooke's second, third-party complaint was filed on June 14, 2012.

The court finds that Weaver Cooke should have investigated the sufficiency of HHAC's work at the time that HHAC asserted a claim of lien and a payment bond claim and initiated an action to enforce its claim, in February 2009. Certainly, Weaver Cooke should have investigated any defects by the time it entered into a settlement agreement with HHAC on May 27, 2009. Indeed,

---

[3] See Docket Entry 756-6 at 17-22; Docket Entry 756-7 at 4-6.

[4] Deposition of Warren Maddox at 100 (as found in Docket Entry 659 at 51).

[5] See Deposition of George Barbour at 1348-50, 1358 (as found in Docket Entry 659 at 82-84, 92).

10

Weaver Cooke disputed the amount that HHAC was owed and paid HHAC nearly $5,000 less than what HHAC claimed it was owed. The court further finds that the alleged defects were open and obvious conditions within the mechanical closets of the condo units. Therefore, Weaver Cooke's claims of negligence and breach of express warranty are time-barred and HHAC's motion for summary judgment shall be allowed as to those claims.

## II.     Weaver Cooke's Indemnity Claim

In addition, HHAC asserts that it is entitled to summary judgment on Weaver Cooke's indemnity claim because, pursuant to the Settlement Agreement, Weaver Cooke agreed to indemnify HHAC. HHAC further argues that the Settlement Agreement supercedes its prior indemnity agreement, contained in its "SkySail subcontract" with Weaver Cooke. In response, Weaver Cooke argues that the Settlement Agreement actually contains language which serves as an additional basis for its indemnity claim against HHAC.

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." State v. Philip Morris USA Inc., 363 N.C. 623, 631, 685 S.E.2d 85, 90 (2009) (citations omitted) (internal quotation marks omitted).

This court has previously interpreted the identical indemnity agreement contained in the SkySail subcontracts that Weaver Cooke executed with its subcontractors.[6] Pursuant to the court's construction of the SkySail subcontract indemnity agreement, Weaver Cooke may only assert an

---

[6] See *Order Allowing Motion for Summary Judgment on Indemnity Claim* (Docket Entry 898).

11

indemnity claim against its subcontractors, including HHAC, for damages "wholly" caused by the subcontractors.[7] The Settlement Agreement, executed after the SkySail subcontract, contains the following language:

> Subcontractor does further covenant and agree to . . . correct, remedy, repair, replace, or re-execute, as promptly as possible, at its sole cost and expense any materials or supplies furnished or work done or required to be done under said Subcontract, which may be rejected by or found not acceptable to Owner or Contractor or their duly authorized representatives, successors or assigns pursuant to the terms of the Contract and for which Subcontractor is responsible under the Subcontract, in Law or in Equity. *Provided, nothing herein shall be construed as enlarging or abridging Subcontractor's obligations with regard to the Project or the Subcontract.*[8]

Weaver Cooke argues that this provision of the Settlement Agreement creates another basis for its indemnity claim against HHAC. In response, HHAC points to yet another provision contained in the Settlement Agreement:

> Subcontractor does hereby sell, assign, transfer, and set over unto Contractor all rights, title, and interest in and to Subcontractor's claims, liens, and defenses as a plaintiff or defendant in any litigation pertaining or relating to, or arising from the Subcontract, and all sums of money due and payable thereon, and does give and grant to Contractor full power and authority to demand and receive the same for its use and upon receipt thereof to give discharge of the same or any part thereof. *Contractor agrees to assume and hold Subcontractor harmless for any fees, including attorney fees, costs and expenses associated in any manner with this assignment.*[9]

HHAC argues that, pursuant to the last sentence of the above quoted paragraph, Weaver Cooke actually agrees to indemnify HHAC.

After reviewing the provisions of the Settlement Agreement, the court finds that the Settlement Agreement does not supercede or otherwise conflict with the indemnity agreement

---

[7] See id. (Docket Entry 898 at 11).

[8] Exhibit A (Docket Entry 376 at 14) (emphasis added).

[9] Id. (Docket Entry 376 at 15) (emphasis added).

contained in HHAC's SkySail subcontract. The Settlement Agreement appears to only assign claims that *HHAC* could have asserted related to the Project or subcontract to Weaver Cooke. The specific language of the Settlement Agreement that HHAC relies upon relates to Weaver Cooke's agreement to hold HHAC harmless in the event that Weaver Cooke chooses to exercise its right to assert claims as the assignee of HHAC. Furthermore, in a different portion of the Settlement Agreement, HHAC agrees to "correct, remedy, repair, replace . . . at its sole cost" work that it performed that is later found to be unacceptable to New Bern or Weaver Cooke pursuant to the terms if the subcontract. Finally, the Settlement Agreement specifically states that it is not to be construed as "enlarging or abridging" HHAC's obligations with regard to the Project or the SkySail subcontract. Because the Settlement Agreement did not supercede or modify the indemnity agreement of the SkySail subcontract, the court's interpretation of the indemnity agreement contained in HHAC's SkySail subcontract shall apply.

The court finds that Weaver Cooke may seek indemnity against HHAC to the extent that HHAC is "wholly" responsible for any damages. However, when questioned by the court, Weaver Cooke had difficulty articulating the damages caused by HHAC's allegedly defective work. Although Weaver Cooke acknowledges that New Bern continues to assert that the piping in the mechanical closet needs to be switched from PVC to copper, HHAC claims that it was only following the sealed mechanical drawings, which called for the installation of PVC piping.[10] At the hearing on HHAC's motion for summary judgment, Weaver Cooke indicated that it agreed with HHAC on that issue. The sealed mechanical drawings were not the responsibility of either HHAC or Weaver Cooke. If it is found that the piping in the mechanical closets should have been copper,

---

[10] See Exhibit E, Docket Entry 658 at 44.

13

as opposed to PVC, and that HHAC was only following the design when it installed the PVC, HHAC would not be "wholly" responsible for the damage associated with replacing the piping. The only damages that Weaver Cooke attributes to HHAC relate to certain isolated locations where water dripped from the uninsulated condensate lines onto the floor and caused damage to the hardwood floors of a certain condo unit, or units.

There appearing to be no dispute between the parties that the installation of PVC piping rather than copper piping could not wholly be the responsibility of HHAC, summary judgment on the indemnity claim relating to that alleged defect is ALLOWED. The indemnity claim is appropriate, however, relating to any damages that are wholly the responsibility of HHAC. It appears that any water damage to the floors as a result of condensation or standing water could be wholly the responsibility of HHAC, so the indemnity claim will survive as to that damage only. Therefore, summary judgment is DENIED on the indemnity claim relating to water damage to the flooring.

**SO ORDERED.**

**END OF DOCUMENT**