**SO ORDERED.**

**SIGNED this 26 day of September,2014.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                              CASE NO. 09-10340-8-SWH

**NEW BERN RIVERFRONT DEVELOPMENT,
LLC,**
     **DEBTOR**


**NEW BERN RIVERFRONT DEVELOPMENT,
LLC,**
     **Plaintiff,**                                   **ADVERSARY PROCEEDING NO.**

     **v.**                                                **10-00023-8-AP**

**WEAVER COOKE CONSTRUCTION, LLC;
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA; J. DAVIS
ARCHITECTS, PLLC; FLUHRER REED PA;
and NATIONAL ERECTORS REBAR, INC. f/k/a
NATIONAL REINFORCING SYSTEMS, INC.,**
     **Defendants,**

     **and**

**WEAVER COOKE CONSTRUCTION, LLC;
and TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,**
     **Defendants, Counterclaimants,**
     **Crossclaimants and Third-Party Plaintiffs,**

**v.**

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN  ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**

> **Crossclaimants, Counterclaimants and Third-Party Defendants.**

**and**

**NATIONAL ERECTORS REBAR, INC.**

> **Defendant, Counterclaimant, Crossclaimant and Third-Party Plaintiff,**

> **v.**

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**

> **Third-Party Defendants.**

**and**

2

**J. DAVIS ARCHITECTS, PLLC,**
        **Third-Party Plaintiff,**

      **v.**

**MCKIM & CREED, P.A.,**
        **Third-Party Defendant.**

      **and**

**GOURAS, INC.,**
        **Third-Party Defendant and**
        **Fourth-Party Plaintiff,**

      **v.**

**RAFAEL HERNANDEZ, JR., CARLOS
CHAVEZ d/b/a CHAVEZ DRYWALL,
5 BOYS, INC. and ALEX GARCIA
d/b/a/ JC 5,**
        **Fourth-Party Defendants.**

      **and**

**STOCK BUILDING SUPPLY, LLC,**
        **Third-Party Defendant and**
        **Fourth-Party Plaintiff,**

      **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
        **Fourth-Party Defendant.**

### ORDER ALLOWING MOTION OF WATERPROOFING SPECIALTIES, INC. FOR SUMMARY JUDGMENT ON INDEMNITY CLAIM

Pending before the court is the final component of the motion for summary judgment filed by third-party defendant Waterproofing Specialties against Weaver Cooke Construction, LLC ("Weaver Cooke"), in its capacity as third-party plaintiff. The court already entered an order granting summary judgment with respect to two of Weaver Cooke's three claims against

3

Waterproofing Specialties (for negligence and breach of express warranty) on grounds that the claims were barred by the applicable statutes of limitation. This order addresses the remaining claim, in which Weaver Cooke asserts that Waterproofing Specialties must indemnify it for its losses. On August 22, 2014, the court entered summary judgment with respect to Weaver Cooke's indemnity claim against defendants Stock Building Supply, LLC and PLF of Sanford, Inc. (formerly dba Lee Window & Door Co.) (herein collectively "Stock Supply") on grounds that are equally applicable to Waterproofing Specialties. Accordingly, for the reasons outlined below, the court will enter summary judgment in favor of Waterproofing Specialties on this claim as well.

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Luxury Condominiums ("SkySail Project") located in New Bern, North Carolina. On March 30, 2009, New Bern initiated an action in Wake County Superior Court against nine individual defendants related to their roles in the construction of the SkySail Condos (the "State Action"). The named defendants in the State Action included New Bern's general contractor, Weaver Cooke; Travelers Casualty and Surety Company of America ("Travelers"); National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc. ("NER") and certain subcontractors of the general contractor.

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code. The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010. After voluntarily dismissing its causes of action as to the subcontractors named as defendants in the State Action, New Bern filed its first amended complaint on May 6, 2010,

4

asserting claims against the original parties of Weaver Cooke, Travelers, and NER, and the additional parties of J. Davis Architects, PLLC, and Fluhrer Reed, PA.

On May 27, 2010, Weaver Cooke filed an answer to New Bern's first amended complaint and a third-party complaint against Wachovia Bank, N.A. and Wells Fargo & Company f/d/b/a Wachovia Corporation. Absent as third-party defendants in Weaver Cooke's original third-party complaint were any of the subcontractors hired by Weaver Cooke during the construction of the SkySail Project. On June 14, 2012, Weaver Cooke filed its second, third-party complaint asserting claims of negligence, contractual indemnity and breach of express warranty against many of the subcontractors hired during the construction of the SkySail Project, including Waterproofing Specialties, along with Stock Building Supply, LLC and PLF of Sanford, Inc. Waterproofing Specialties filed an answer to Weaver Cooke's second, third-party complaint on August 28, 2012, asserting numerous defenses, including the statute of limitations.

On December 20, 2013, Stock Supply filed a motion for summary judgment regarding all three causes of action alleged against it by Weaver Cooke. Waterproofing Specialties also filed its motion for summary judgment on December 20, 2013, asserting similar grounds. In support of its motion, which is the motion on which the court ruled first, Stock Supply argued that (1) the applicable statute of limitations bars Weaver Cooke's claims of negligence and breach of express warranty; (2) the economic loss rule bars Weaver Cooke's negligence claim; and (3) N.C. Gen. Stat. § 22B-1 bars Weaver Cooke's contractual indemnity claim. The court dealt first with the statute of limitations issue, and granted summary judgment in favor of Stock Supply with respect to the negligence and breach of express warranty claims in an order entered June 10, 2014. Subsequently, an order granting summary judgment on Waterproofing Specialties' statute of limitations defense

5

as to those claims as asserted by Weaver Cooke against it, on the same bases discussed in the Stock Supply order, was entered on August 27, 2014.

Weaver Cooke's claim for indemnification is its only remaining claim against Waterproofing Specialties. The discussion that follows is identical in substance to the discussion in the court's order of August 22, 2014, because the indemnity provisions in the contract between Weaver Cooke and Waterproofing Specialties are identical to the provisions at issue in that order. Likewise, the legal bases upon which the court granted Stock Supply's motion for summary judgment on Weaver Cooke's indemnity claim are identical to the reasons the court now grants Waterproofing Specialties's motion for summary judgment on Weaver Cooke's indemnity claim.

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.

With respect to the non-core matter now before the court, there is no dispute as to the relevant facts, contractual language, or applicable law. The court has jurisdiction to enter this order allowing summary judgment, in light of the right of *de novo* review by the district court. Ward v.

United States Dept. of Educ., Case No. 5:13-CV-695-D (E.D.N.C. June 18, 2014), citing Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165 (2014).

The court's analysis is governed by North Carolina state law, and in particular N.C. Gen. Stat. § 22B-1, which provides:

> Any promise or agreement in, or in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance or appliance, including moving, demolition and excavating connected therewith, *purporting to indemnify and hold harmless the promisee*, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or *damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee*, its independent contractors, agents, employees, or indemnitees, is against public policy and is void and unenforceable. Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability *for damages resulting from the sole negligence of the promisor, its agents or employees.*

N.C. Gen. Stat. § 22B-1 (emphasis added).

The contractual indemnification language at issue is set out in Article 16 of Weaver Cooke's subcontract ("the Subcontract") with Waterproofing Specialties, as follows:

Article 16
Indemnification

16.1   Subcontractor shall be responsible to Contractor for the acts and omissions of Subcontractor's employees, sub-subcontractors and their agents and employees, and other persons performing portions of Subcontractor's Work under a contract with Subcontractor.

16.2   To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than Subcontractor's Work itself) including loss of use resulting therefrom, if caused in

7

> whole or in part by the negligent acts or omissions of Subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, *regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.* Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity, which would otherwise exist as to a party or person described in this Article.

Waterproofing Specialties Mot. for Sum. J. Benitz Aff. Ex. A (Weaver Cooke Subcontract) at 9 ¶¶ 16.1, 16.2 (emphasis added). This language is included in all of the Weaver Cooke's subcontracts, such that the court's analysis in the context of this particular motion (insofar as it is based on operation of law, and not unique facts) will apply with respect to Weaver Cooke's indemnity claims against other third-party defendants as well.

In its motion, Waterproofing Specialties argues that Weaver Cooke's indemnity claim is precluded by N.C. Gen. Stat. § 22B-1, which provides that "an indemnity provision in a construction contract that purports to hold harmless the promisee as a reult of the 'negligence, in whole or in part, of the promisee – is void and unenforceable,'" and further that Weaver Cooke's own negligence bars the claim. Waterproofing Specialties Mem. in Support of Mot. for Sum. J. ("Waterproofing Specialties Mem.") at 21. In response, Weaver Cooke argues that N.C. Gen. Stat. § 22B-1 does not bar its claim; that the contractual indemnity language could be "blue penciled" if necessary; and that a defense of contributory negligence does not apply to contract-based actions, including the indemnity claim. In addition, Weaver Cooke asserts that its indemnity claim is independently derived from a contract implied-in-fact. Weaver Cooke Mem. in Response to Mot. for Sum. Judgment ("Weaver Cooke Mem.") at 35-42. The court will address the express contractual indemnity claim and the indemnity implied-in-fact theory in turn, beginning with the statute and the indemnity provisions set out in Article 16 of the Subcontract.

I.      **N.C. Gen. Stat. § 22B-1 as applied to Subcontract ¶¶ 16.1 and 16.2.**

A.      **Paragraph 16.2**

Waterproofing Specialties argues that ¶ 16.2 of the Subcontract runs afoul of the North

Carolina statute, such that the provision is void and unenforceable, because the Subcontract specifies

that Waterproofing Specialties is obligated to indemnify Weaver Cooke "regardless of whether or

not such claim, damage, loss or expense is caused in part by a party indemnified hereunder."  In

addition, the provision requires Waterproofing Specialties to indemnify Weaver Cooke for damages

caused "in part" by Waterproofing Specialties's negligence, leaving open the question whether such

damages may also be caused in part by Weaver Cooke itself.  Because courts strictly construe an

indemnity provision against the party asserting it, language that "might require defendant to

indemnify plaintiff from plaintiff's own negligence" is deemed void.    City of Wilmington v. N.C.

Natural Gas Corp., 117 N.C. App. 244, 248, 450 S.E.2d 573, 576 (1994).

Weaver Cooke does not concede that the language of ¶ 16.2 violates the statute; however,

it is readily apparent that it does.  "Under North Carolina law, a general contractor cannot require

a subcontractor to insure it against its own negligent acts."   St. Paul Fire & Marine Ins. Co. v.

Hanover Ins. Co., 187 F. Supp. 2d 584, 590 n.7 (E.D.N.C. 2000).  When a contractor attempts to do

so, as the St. Paul court noted, "any agreement relative to the construction of a building that purports

to indemnify or hold harmless a general contractor against liability for damages arising out of bodily

injury to a person [or damage to property] caused by or resulting from the general contractor's own

negligence, in whole or in part, is against public policy and is void and unenforceable."   Id.

Waterproofing Specialties contends, correctly, that the statute also provides that where an indemnity

provision purports to do so, then that "promise or agreement in, or in connection with, [the] contract"

is "against public policy and is void and unenforceable." § 22B-1.

In response, Weaver Cooke argues that even if the language in the Subcontract violated § 22B-1 by essentially going too far, that violation is not fatal to its claim because the indemnity provisions are "self-limiting," and the court can strike the offending language. In particular, ¶ 16.2 is prefaced with the qualifier that it is to be applied "[t]o the fullest extent permitted by law." That limitation, Weaver Cooke contends, together with the court's ability to blue-pencil the provision as necessary, brings the provision into full compliance. In support of this argument Weaver Cooke cites Vecellio & Grogan, Inc. v. Piedmont Drilling & Blasting, Inc., 644 S.E.2d 16 (N.C. App. 2007), disc. rev. denied, 651 S.E.2d 564 (N.C. 2007), in which the North Carolina Court of Appeals took precisely this approach.

In Vecellio, a general contractor sued its subcontractor after the subcontractor provided blasting services that went awry during a road improvement project. The subcontractor challenged enforceability of its indemnity agreement with the general contractor under § 22B-1, arguing that the agreement included a "to the fullest extent permitted by law" clause as well as "offending" language virtually identical to the language in the instant case. Id. at 20-21. The appellate court reversed the trial court's grant of summary judgment on the indemnity claim, reasoning that the court could "merely sever the portion that is void as against public policy from an otherwise valid indemnity provision." Id. at 21 (quoting International Paper Co. v. Corporex Constructors, Inc., 385 S.E.2d 553, 555 (N.C. App. 1989)).

After the court excised the phrase "regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder," the parties were left with this language: "INDEMNITY. To the fullest extent permitted by law, Subcontractor shall indemnify and hold

10

harmless the Owner and Contractor ... from and against claims, damages, losses and expenses ... arising out of or resulting from performance of Subcontractor's Work." Id. at 20.  Notably, in the following paragraph, the Vecellio court said this: "Significantly, common law establishes that defendant is strictly liable for damages arising from blasting, even without an indemnity clause. Accordingly, the indemnity clause when redacted simply states the common law rule of strict liability." Id. at 21; see also International Paper Co. v. Corporex Constructors, Inc., 385 S.E.2d 553, 555 (N.C. App. 1989) (§ 22B-1 not applicable where parties stipulated that the party being indemnified was not negligent).  Weaver Cooke urges this court to follow Vecellio by striking the offending language, and enforcing what remains. In reply to this, Waterproofing Specialties acknowledges that the North Carolina Court of Appeals does uphold flawed indemnity clauses, but maintains that International Paper and Vecellio are distinguishable.

In its earlier order the court discussed the arguments advanced by Stock Supply, the gist of which was that Vecellio was wrongly decided and should not control this court's analysis. Stock Supply then went on to argue that even if the court *did* follow Vecellio and undertook to "blue pencil" the indemnity provision in the Subcontract, that provision *even as revised* does not require Stock Supply (or, equally, Waterproofing Specialties) to indemnify Weaver Cooke.  To illustrate: If this court were to excise the language that specifically ("regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder") and implicitly ("or in part ") purports to hold Waterproofing Specialties liable to Weaver Cooke for Weaver Cooke's own negligence, the provision would read as follows:

> To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or

resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than Subcontractor's Work itself) including loss of use resulting therefrom, *if caused in whole [redacted] by the negligent acts or omissions of Subcontractor*, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable [*redacted*].

Thus, upon revision by the court, Waterproofing Specialties would be required to indemnify Weaver Cooke only for damages caused "wholly" by Waterproofing Specialties or its agents and employees.[1] As Stock Supply argued persuasively in its brief, "no evidence exists that Stock or PLF solely caused Weaver Cooke's damages; nor does Weaver Cooke so contend." Stock Supply Mem. at 38 [Docket Entry 721]. The same is true of Weaver Cooke's claims against Waterproofing Specialties, which also are based on water intrusion. And, "if any other party failed to act reasonably prudent under the circumstances, and that negligence contributed to [Weaver Cooke's] loss, the indemnification provision does not apply." Associated Mech. Contrs., Inc. v. HDR Eng'g Inc., 178 F.3d 1282, 1999 WL 253539 at *5 (4th Cir. 1999) (unpublished disposition) (citing § 22B-1).

As the court explained in its order allowing Stock Supply's motion for summary judgment on the indemnity claim:

> Weaver Cooke asserts that "[b]y way of the pleadings filed, the expert reports served, and expert deposition testimony provided in this action, [New Bern] now has made demand upon Weaver Cooke on account of alleged deficiencies in the work performed by Stock and PLF." *Memorandum in Response to Motion for Summary Judgment of Stock Building Supply, LLC and PLF of Sanford, Inc.* (Docket Entry 768 at 53). Stock Supply, in its memorandum of law supporting its motion for summary judgment, identifies water intrusion and certain defects which caused water intrusion

---

[1] An indemnity provision of that scope is expressly allowed by the statute, as follows: "Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability *for damages resulting from the sole negligence of the promisor, its agents or employees.* § 22B-1 (emphasis added).

12

as conditions for which Weaver Cooke seeks to hold it responsible. (Docket Entry 721 at 15). In addition, Stock Supply notes that Weaver Cooke's allegations related to water intrusion "were not explicitly raised in any pleading. Instead, these alleged construction defects have been identified in the testimony of New Bern's experts, and Weaver Cooke informally has asserted that Stock and PLF share, with various other parties, joint and several liability for resulting damages." (Docket Entry 721 at 10 n.3). In responding to Stock Supply's motion for summary judgment, Weaver Cooke acknowledges that it seeks to hold Stock Supply responsible for damages related to water intrusion. (Docket Entry 768 at 21, 28-32).

Similarly, Weaver Cooke seeks to hold Waterproofing Specialties responsible for damages related to water intrusion, as is discussed more fully below. Significantly, Weaver Cooke has never contended that the damages caused by the water intrusion were *solely* a result of Waterproofing Specialties' defective work. Instead, Weaver Cooke asserted identical claims of negligence, breach of warranty and indemnification against multiple subcontractors, all related to each subcontractor's contribution to the water intrusion problem.

Weaver Cooke, through its various pleadings and memoranda,[2] alleges that water intrusion through the Project's exterior doors and windows was caused by a combination of defects, attributable to several different subcontractors. One of the causes identified by Weaver Cooke is the pooling of water on balconies due to improper balcony slopes and inadequate "step-downs" between the balcony doors and the concrete balcony floors. The subcontractor responsible for this work was Curenton Concrete Works, Inc. ("Curenton"). The Project's concrete balconies were designed to have sufficient slope such that water on the balconies would drain away from the

---

[2] The memoranda referred to by the court include Weaver Cooke's: *Memorandum in Response to Motion for Summary Judgment of Curenton Concrete Works, Inc.* (Docket Entry 749); *Memorandum in Response to Motion for Summary Judgment of Third-Party Defendant, Gouras, Incorporated* (Docket Entry 758); *Memorandum in Response to Motion for Summary Judgment of Waterproofing Specialties, Inc.* (Docket Entry 759), and *Memorandum in Response to Motion for Summary Judgment of Stock Building Supply, LLC and PLF of Sanford, Inc.* (Docket Entry 768).

13

building.  Furthermore, a step-down was to be implemented into the design of the balconies to provide a slight drop, or "step-down," at the intersection of the concrete slab for the interior living space of the condo unit and the concrete slab for the adjacent exterior balconies.  The designed slope and step-downs on the balconies were intended to ensure positive drainage away from the building and the exterior doors, and also were to be designed with a smooth and even finish to further deter the pooling of water on the balconies.  Weaver Cooke alleges that Curenton's work was defective in that there was insufficient balcony slope to provide for the proper drainage of water, that Curenton failed to achieve adequate step-downs, and that the concrete did not have a smooth and even finish, which according to Weaver Cooke resulted in the ponding of water on the Project's balconies.  Weaver Cooke further alleges that this ponding of water on the balconies was a cause of water intrusion through the Project's exterior doors.[3]

Another defect identified by Weaver Cooke as a cause of water intrusion through the Project's windows and doors was the failure of Tyvek (a weather resistant material manufactured by DuPont that is used in the construction industry as a building wrap) to be properly sealed and integrated with the installation of the exterior doors and windows.   The installation of Tyvek was subcontracted to Gouras Incorporated ("Gouras").  According to Weaver Cooke, Gouras failed to properly seal the Tyvek to the Project's exterior doors and windows and the balcony floor slabs, contributing to the water intrusion problem.[4]

---

[3] Weaver Cooke acknowledges that the "issue presented by [New Bern] regarding the balcony slopes . . . relates to its assertion that the balcony slopes contribute to water intrusion and consequent damage to the interiors of the units." *Memorandum in Response to Motion for Summary Judgment of Curenton Concrete Works, Inc.*  (Docket Entry 749 at 29).

[4] "The issues with the Tyvek not being properly sealed to the windows/doors, balcony floor slabs, and shelf angles are related to water intrusion."  *Memorandum in Response to Motion for*

Yet another defect identified by Weaver Cooke as a cause of water intrusion through the Project's exterior doors was the sequence in which the waterproof traffic coating was applied to the concrete balconies in relation to the installation of the exterior balcony doors.[5]   Traffic coating is a liquid waterproofing substance applied to exposed concrete in order to prevent water penetration through the concrete and the attached structure.   The subcontractor responsible for applying the traffic coating was Waterproofing Specialties, and Weaver Cooke alleges that its defective work contributed to the water intrusion problem in that the traffic coating on the balconies was to be applied *prior* to the installation of, and underneath the threshold of, the exterior balcony doors. However, the sliding glass doors were actually installed *before* traffic coating had been applied to the concrete balconies, which resulted in the traffic coating being applied over the thresholds of the doors. Weaver Cooke alleges that this sequencing failure contributed to the water intrusion problem.[6]

Finally, Weaver Cooke also alleges that Stock Supply's failure to install sill pan flashing contributed to the water intrusion problem.   Sill pan flashing is a waterproof material that is installed beneath windows and doors to aid in drainage to the exterior of a building in the event of window and door leaks.   Weaver Cooke alleges that Stock Supply's failure to install sill pan flashing beneath

_____

*Summary Judgment of Third-Party Defendant, Gouras, Inc.* (Docket Entry 758 at 7).

[5] Weaver Cooke also alleges that the traffic coating was installed out of sequence in relation to the installation of the brick veneer and led to water intrusion through the Project's walls. However, it is not clear whether the sequencing defect in relation to the brick veneer contributed to water intrusion through the Project's exterior *doors* and *windows* as well.

[6] In responding to Waterproofing Specialties' motion for summary judgment, Weaver Cooke notes that "[New Bern] alleges that this allegedly improper work sequence allows for water intrusion." *Memorandum in Response to Motion for Summary Judgment of  Waterproofing Specialties, Inc.* (Docket Entry 759 at 5).

the balcony sliding glass doors contributed to water intrusion and the resulting damage to the interior of certain condo units.[7]

Thus, *Weaver Cooke, in its own pleadings*, has identified at least four different subcontractors whose work on the Project allegedly contributed to water intrusion through the Project's exterior doors and windows. Not once does Weaver Cooke assert that Waterproofing Specialties is solely responsible for the damages caused by the water intrusion. Based on the multiple defects identified by Weaver Cooke, which resulted from several different subcontractors' work, the court has no basis upon which to even try to imagine a scenario where Waterproofing Specialties's work could possibly be the sole cause of the damages about which Weaver Cooke now complains.

In addition, there is evidence in the record that Weaver Cooke itself contributed to the water intrusion problem. Certain management-level employees for Weaver Cooke admit that Weaver Cooke contributed to the sequencing error wherein the sliding glass doors were installed before the traffic coating had been applied to the concrete balconies. Steve Tidey, Weaver Cooke's project superintendent, admitted that Weaver Cooke created a construction schedule which called for the application of the traffic coating *after* the installation of the sliding glass doors. Tidey further acknowledged that this was a mistake on the part of Weaver Cooke. Kevin Lloyd, Weaver Cooke's project manager and vice president, confirmed that Weaver Cooke's schedule called for the doors to be installed before the application of the traffic coating to the balconies. Lloyd further testified

---

[7] See Weaver Cooke's *Memorandum in Response to Motion for Summary Judgment of Stock Building Supply, LLC and PLF of Sanford, Inc.* (Docket Entry 768 at 30-31).

that this scheduling component was an obvious error when compared to the architectural details, which called for the application of the traffic coating prior to the installation of the exterior doors.[8]

Furthermore, there is evidence that as early as 2008, Weaver Cooke was aware of Stock Supply's failure to install sill pan flashing, yet Weaver Cooke did nothing to remedy the problem. Tidey testified that he knew that pan flashing was not installed underneath the sliding glass doors by at least December 31, 2008. Tidey further testified that he did not take any steps to address the lack of sill pans, nor was he aware of anyone else within Weaver Cooke taking responsive or remedial action. Weaver Cooke's president, Dan Estes, confirmed that based on the "punch-out process" for the SkySail Project, Tidey should have identified this problem by September of 2008.[9]

In sum, it is apparent that regardless of the *extent* to which the work done by other subcontractors played a causative role in the water intrusion problems at SkySail, *and regardless of the extent of Weaver Cooke's own role and fault, if any, in relation to the water intrusion problem*, Weaver Cooke can neither argue nor establish that Waterproofing Specialties is *wholly* responsible for the resulting damages. This is due to the narrow scope of Weaver Cooke's indemnity provision, as blue-penciled by the court[10] (which was, as discussed above, necessitated by Weaver Cooke's own

_____

[8] Excerpts from the transcripts of Steve Tidey's and Kevin Lloyd's depositions can be found in the appendix to the *Memorandum in Support of Third-Party Defendant Waterproofing Specialties, Inc.'s Motion for Summary Judgment*, Docket Entry 713-1 at 46-48 (Kevin Lloyd), and 67-69 (Steve Tidey).

[9] Relevant excerpts from the transcripts of Tidey's and Dan Estes' depositions can be found in *Stock Building Supply LLC's and PLF of Sanford, Inc.'s Memorandum in Support of their Motion for Summary Judgment against Weaver Cooke Construction, LLC.*, Docket Entry 721 at 147-48 (Dan Estes) and 154 (Tidey).

[10] The court concludes that there is no necessary and appropriate basis upon which it should decline to follow or endeavor to further distinguish Vecellio because, as illustrated above, even when this court toes the Vecellio line, a blue-penciled version of the indemnity language does not help

election to include in its contracts language that is in express violation of the statute intended to govern precisely these situations). No genuine issue of material fact exists as to whether Waterproofing Specialties is *solely* responsible for the damages for which Weaver Cooke asserts it is liable, and summary judgment on the indemnity claim, to the extent it is based on ¶ 16.2, is appropriate.

### B.     Paragraph 16.1

While ¶ 16.2 is by far the more overtly substantive and specific of the provisions upon which Weaver Cooke bases its indemnity claim, in its response to Stock Supply's motion for summary judgment (though not to Waterproofing Specialties), Weaver Cooke also pointed to ¶ 16.1 of the Subcontract, which provides in its entirety: "Subcontractor shall be responsible to Contractor for the acts and omissions of Subcontractor's employees, sub-subcontractors and their agents and employees, and other persons performing portions of Subcontractor's Work under a contract with Subcontractor." See Waterproofing Specialties Mot. for Sum. J. Ex. A at 9 ¶ 16.1. Weaver Cooke did not make this argument in connection with Waterproofing Specialties' motion for summary judgment, although the contractual language is the same. In the interest of thoroughness, the court recites below the analysis it set out in its earlier order:

> According to Weaver Cooke, this provision is "not limited to personal injury or property damage caused by Stock's and PLF's negligence, as it [sic] is ¶ 16.2."

---

Weaver Cooke. The court cannot *add* language to a blue-penciled contractual provision (which should be especially true in the indemnity context, where language is strictly construed against the party seeking indemnification), so there is no basis upon which ¶ 16.2 can require Waterproofing Specialties's indemnification of Weaver Cooke.  See Jackson v. Associated Scaffolders & Equip. Co., Inc., 568 S.E.2d 666 (N. C. App. 2002) (indemnity provision void, where to make it enforceable the court "would be required to add language, rather than simply excise portions of the agreements which violate the statute").

Weaver Cooke Mem. at 46. What exactly that damage could be, if not the property damage at issue in the case and already discussed in connection with ¶ 16.2, is unclear to the court.

Weaver Cooke attempts to turn that uncertainty to its advantage by urging the court to apply the "fundamental rule of contract construction that the courts construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court is reasonably able to do so," and on that basis to conclude that ¶ 16.1 of the Subcontract provides a "separate and distinct indemnity obligation," notwithstanding the fact that the provision does not even mention indemnity. Weaver Cooke Mem. at 46-47 (quoting Johnston Co. v. R.N. Rouse & Co., 414 S.E.2d 30, 34 (N.C. 1992)). Specifically, Weaver Cooke contends the paragraph "shows an express intent to provide for indemnity which is much broader than that provided in ¶ 16.2." Id. at 48.

The court cannot "reasonably" extend the reach of this language in the way Weaver Cooke requests. See Johnston, 414 S.E.2d at 34 ; see also City of Wilmington, 450 S.E.2d at 575-76 (courts construe indemnity clause against the party asserting it). Most obviously, a party acknowledging that it is "responsible to" another party is, under no stretch of that language or this court's imagination, sufficient in and of itself to *require indemnification*, and that is precisely what Weaver Cooke asserts when it argues that ¶ 16.1, *standing alone*, requires that Stock Supply indemnify it for all damages caused wholly or in part by Stock Supply, other than the property damages contemplated by ¶ 16.2.[11]

Indeed, it appears to the court that ¶ 16.1 is associated with the topic of "indemnity" only by virtue of its location – under the "Indemnity" topic heading, and preceding ¶ 16.2   See Stock Supply Mem. Ex. A (Subcontract) at 12 ¶ 23.1 ("The headings in this Subcontract are for reference only and shall not affect the interpretation of this Subcontract."). Moreover, the words "responsible to" are used elsewhere in the Subcontract to denote something different from and less than an indemnity obligation. For example, the attachments to the Subcontract setting out the scope of work Stock Supply will provide together with the architectural drawings and specifications Stock Supply is required to follow include the following footer: "Subcontractor is responsible for all cleanup associated with his phase of work." Stock Supply Mem. Ex. A, Subcontract, Attachments A-1, B-1. In addition, ¶ 8.8 of the Subcontract provides that the subcontractor "will *be responsible for* the care and protection of Subcontractor's Work and materials until final acceptance by the Architect and/or Owner," and then goes on to illustrate the scope of that

---

[11] Again, Weaver Cooke has not presented its position as to what those damages are, other than to posit that they are different from those contemplated by ¶ 16.2.

responsibility by addressing who pays for what if "the work" incurs damage and needs repair. Id., Ex. A. at 4 ¶ 8.8 ("Protection of Work").[12]

While this generalized language is consistent with Stock Supply's contractual obligation to indemnify Weaver Cooke as is more specifically set out in ¶ 16.2 (and ¶ 16.3, which is not at issue), ¶ 16.1 does not, in and of itself, require something more or different from Stock Supply. The court concludes that neither of these provisions, whether construed individually or in tandem, can require Stock Supply to indemnify Weaver Cooke for anything other than, at most, damages to property caused "wholly" by Stock Supply. As discussed above, that argument is not available to Weaver Cooke, and summary judgment on Weaver Cooke's assertion of an indemnity claim arising out of ¶ 16.1 is appropriate.

## II.    Effect of Contributory Negligence on Indemnity Claim

In light of the court having determined that Waterproofing Specialties's contractual obligation to indemnify Weaver Cooke can encompass only those damages to property for which Waterproofing Specialties is "wholly" responsible, the question becomes whether Weaver Cooke – or, indeed, any other party or parties – contributed to the damages for which Weaver Cooke seeks indemnification. In Waterproofing Specialties's view, and as was persuasively argued by Stock Supply, "Weaver Cooke's negligent construction of the Project, its negligent supervision of the Project, and its negligent instructions to the subcontractors are the primary cause of, or at least a contributing cause of, the alleged construction defects at Skysail about which Weaver Cooke complains in its Third-Party Complaint." Stock Supply Mem. at 39-40. Thus, Weaver Cooke's contributory negligence "bars any indemnity under § 22B-1, whether grounded in negligence, contract, or otherwise." Id. at 40. In response, Weaver Cooke argues that its indemnity claim sounds in contract, while contributory negligence is a defense that sounds in tort.

---

[12] Identical language is featured in Waterproofing Specialties' Subcontract at attachments A-1, and A-2.

In the court's view, the relevant inquiry is whether Weaver Cooke, as the party *seeking indemnity under a contract*, is attempting to hold Waterproofing Specialties liable for damages attributable to others, including Weaver Cooke itself.   As discussed above, ¶ 16.2 of the Subcontract cannot pass statutory muster unless this court intervenes, under <u>Vecellio</u>, by excising the language offensive to public policy and the statute.  What Weaver Cooke is left with are contractual provisions that would, at most, require Waterproofing Specialties to indemnify Weaver Cooke for damages caused "wholly" by Waterproofing Specialties.   As was also discussed above, Weaver Cooke does not argue (and cannot, based upon the evidence already before the court) that the actions of Waterproofing Specialties, or parties for which it is responsible under the Subcontract, were the sole cause of the damages at issue.  Thus, the contributory negligence of *any* party – including, obviously, Weaver Cooke – is acutely relevant to construction of the Subcontract.  To reiterate: "[I]if any other party failed to act reasonably prudent under the circumstances, and that negligence contributed to [Weaver Cooke's] loss, the indemnification provision does not apply."  <u>Associated Mech. Contrs.</u>, 178 F.3d 1282, 1999 WL 253539 at *5  (4th Cir. 1999) (unpublished disposition) (citing § 22B-1).

The court has already discussed, at length, the nature, extent and significance of Weaver Cooke's own allegations with respect to the multiple causative factors and sources of the water intrusion problems at SkySail.  For those reasons, and on this alternative ground, summary judgment on the indemnity claim is appropriate.

## III.    Right to Indemnification pursuant to Indemnity Implied-in-fact.

Finally, in its response to Stock Supply's motion, Weaver Cooke also asserted that its right to indemnity is based *not only* on the contractual indemnity theory already discussed, which "arises from [¶¶] 16.1 and 16.2 of the parties' subcontract and thus is based on an express contract," but also

on an *implied-in-fact* indemnity claim, which is a creature of state law.  Weaver Cooke Mem.,

Docket Entry 768, at 37, 42-53.  Weaver Cooke did not set out that argument in its response to

Waterproofing Specialties' motion; again, however, in the interest of thoroughness and because the

court's analysis would have applied equally here had  Weaver Cooke advanced this theory with

respect to this defendant, the court recites its analysis from the earlier opinion:

> "A right of indemnity implied-in-fact stems from the existence of a binding contract
> between two parties that necessarily implies the right.  The implication is derived
> from the relationship between the parties, circumstances of the parties' conduct, and
> that the creation of the indemnitor/indemnitee relationship is derivative of the
> contracting parties' intended agreement."  Weaver Cooke Mem. at 50-51, quoting
> Kaleel Builders, Inc. v. Ashby, 587 S.E.2d 470, 474 (N.C. App. 2003), disc. rev.
> denied, 595 S.E.2d 152 (N.C. 2004).
>
> According to Weaver Cooke, the court should take into account the various
> responsibilities [defendant] undertook throughout the Subcontract, its warranties that
> its work would be free of defects, and its expressed intent to be "responsible for [the
> defendant's] own acts and omissions and those of its sub-subcontractors," which in
> Weaver Cooke's view basically coalesce in such a way as to at least implicitly
> require indemnification.  Weaver Cooke Mem., Docket Entry 768, at 52-53.
>
> In response, [defendant] argues that this theory amounts to the assertion of a
> new claim:  one that is absent from Weaver Cooke's pleadings, and therefore
> precluded as untimely.  Also absent from Weaver Cooke's Third-Party Complaint is
> any assertion of a key component of such a claim, which Weaver Cooke would have
> been required to plead along with it: specifically, to assert a claim for contractual
> indemnity implied-in-fact, the proponent must establish that there is a "special
> relationship" between the parties, from which the implication, and the claim, arise.
>  And, as [defendant] argues persuasively in its brief, the cases cited by Weaver Cooke
> and those located by [defendant] include no examples of courts finding that
> contractual indemnity implied-in-fact existed in factual scenarios that align with the
> instant case; *i.e.*, where the parties' written contract already includes an indemnity
> provision.  Stock Supply Mem. at pp. 21-22 (citing cases).
>
> For the reasons that follow, the court agrees with [defendant] with respect to
> all of those arguments; first, a claim for indemnity implied-in-fact is a separate claim
> that must be set out in the complaint, which Weaver Cooke did not do and cannot do
> now.  Further, even if Weaver Cooke had successfully included at least some
> components of such a claim in its Second Third-Party Complaint, it failed to allege

22

the "special circumstances" necessary to provide a factual basis from which such an agreement could be implied. As the North Carolina Court of Appeals recently explained:

> A right of indemnity implied in fact stems from the existence of a binding contract between two parties that necessarily implies the right. The implication is derived from the relationship between the parties, circumstances of the parties' conduct, and that the creation of the indemnitor/indemnitee relationship is derivative of the contracting parties' intended agreement. [citations omitted] In order to establish such a right to indemnity, *this Court has required a plaintiff to show special circumstances from which such an agreement might be implied*. See, e.g., McDonald, 91 N.C. App. 13, 370 S.E.2d 680 (holding that a defendant had submitted sufficient evidence to establish the existence of an implied-in-fact contract for indemnity with respect to attorney's fees where another defendant had orally agreed to provide him with an attorney in the event he was sued by plaintiff for breach of contract).

Carl v. State of North Carolina, 665 S.E.2d 787, 798 (N.C. App. 2008) (emphasis added), cert denied, 672 S.E.2d 684 (N.C. 2009).

And, in this proceeding, Weaver Cooke did not cite to any authority (nor was the court able to locate any) where a court recognized a party's right to assert a claim for indemnity implied-in-fact in a factual context similar to that in the instant case – where the parties' contract already expressly provides for indemnity. In this context, the court is hard pressed to think of an appropriate basis upon which one would be implied, because it seems that the two could not comfortably co-exist. In short, indemnity implied-in-fact is not a backup plan, to which a contractor may resort when flawed contractual provisions overreach and are then curbed. This rationale is consistent with the court of appeals' holding in Schenkel & Shultz, Inc. v. Hermon F. Fox & Associates, P.C., 636 S.E.2d 835 (N.C. App. 2006), aff'd, 658 S.E.2d 918 (N.C. 2008), wherein the court explained that "in the context of independent contractor relationships," which is what exists between Weaver Cooke and [defendant],

> *a right of indemnity under a contract implied-in-fact is inappropriate where, as here, both parties are well equipped to negotiate and bargain for such provisions*. [citation omitted] Accordingly, in light of the ability and capacity of parties to construction contracts to negotiate and bargain for mutually agreeable terms, we decline to read a right of indemnity implied-in-fact into the independent contractor agreement in this case. As previously stated by this Court,

23

> to do otherwise "would be to do so in every general and subcontractor agreement, thus infringing upon this state's long standing and coveted principle of freedom of contract.'

636 S.E.2d at 842-43, quoting Kaleel, 587 S.E.2d at 475.

The court concludes that Weaver Cooke did not timely assert a claim for contractual indemnity implied-in-fact; that even if to some limited extent it had done so, it still failed to allege the necessary "special circumstances" required to support such a claim; and finally, that undisputed material facts of record (*i.e.* the existence of an existing indemnity provision) would, under controlling case law, preclude such a claim in this case, such that [defendant] would have been entitled to summary judgment on this ground as well.

Order of August 22, 2014, Docket Entry 898.

## CONCLUSION

For the foregoing reasons, Waterproofing Specialties's motion for summary judgment with respect to Weaver Cooke's remaining claim against it, for indemnity, is **ALLOWED**.

**SO ORDERED.**

## END OF DOCUMENT