**SO ORDERED.**

**SIGNED this 26 day of September,2014.**

_Stephani A. Humrickhouse_
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO. 09-10340-8-SWH** |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC** | |
|     **DEBTOR** | |
| | |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC** | **ADVERSARY PROCEEDING NO.** |
|     **Plaintiff** | **10-00023-AP** |
|       **v.** | |

**WEAVER COOKE CONSTRUCTION, LLC;**
**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA; J. DAVIS**
**ARCHITECTS, PLLC; FLUHRER REED PA;**
**and NATIONAL ERECTORS REBAR, INC. f/k/a**
**NATIONAL REINFORCING SYSTEMS, INC.,**
    **Defendants,**

    **and**

**WEAVER COOKE CONSTRUCTION, LLC;**
**and TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA,**
    **Defendants, Counterclaimants,**
    **Crossclaimants and Third-Party Plaintiffs,**

    **v.**

J. DAVIS ARCHITECTS, PLLC, FLUHRER
REED PA, SKYSAIL OWNERS ASSOCIATION,
INC.; NATIONAL REINFORCING SYSTEMS,
INC., ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., CAROLINA CUSTOM
MOULDING, INC., CURENTON CONCRETE
WORKS, INC., WILLIAM H. DAIL d/b/a
DD COMPANY, EAST CAROLINA MASONRY,
INC., GOURAS, INC., HAMLIN ROOFING
COMPANY, INC.; HAMLIN  ROOFING
SERVICES, INC., HUMPHREY
HEATING & AIR CONDITIONING, INC.;
PERFORMANCE FIRE PROTECTION, LLC;
RANDOLPH STAIR AND RAIL COMPANY;
STOCK BUILDING SUPPLY, LLC; PLF OF
SANFORD, INC. f/d/b/a LEE WINDOW &
DOOR COMPANY; UNITED FORMING,
INC. a/d/b/a UNITED CONCRETE, INC.;
JOHNSON'S MODERN ELECTRIC
COMPANY, INC.; and WATERPROOFING
SPECIALITIES, INC.,
   Crossclaimants, Counterclaimants and
   Third-Party Defendants.


   and

NATIONAL ERECTORS REBAR, INC.
   Defendant, Counterclaimant,
   Crossclaimant and Third-Party
   Plaintiff,

   v.

ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., JMW CONCRETE
CONTRACTORS, and JOHNSON'S MODERN
ELECTRIC COMPANY, INC.
   Third-Party Defendants.

   and

2

**J. DAVIS ARCHITECTS, PLLC,**
　　　**Third-Party Plaintiff,**

　　　　**v.**

**MCKIM & CREED, P.A.,**
　　　**Third-Party Defendant.**

　　　**and**

**GOURAS, INC.,**
　　　**Third Party Defendant and**
　　　**Fourth-Party Plaintiff,**

　　　　**v.**

**RAFAEL HERNANDEZ, JR., CARLOS**
**CHAVEZ d/b/a CHAVEZ DRYWALL,**
**5 BOYS, INC. and ALEX GARCIA**
**d/b/a/ JC 5,**
　　　**Fourth-Party Defendants.**

　　　**and**

**STOCK BUILDING SUPPLY, LLC,**
　　　**Third-Party Defendant and**
　　　**Fourth-Party Plaintiff,**

　　　　**v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
　　　**Fourth-Party Defendant.**

## ORDER DENYING SUMMARY JUDGMENT ON
## CONTRIBUTORY NEGLIGENCE AND WARRANTY DEEFNSES
## ASSERTED BY HAMLIN ROOFING COMPANY, INC.

This matter came on to be heard upon the motion for summary judgment filed by Hamlin

Roofing Company, Inc. ("HRCI") regarding the third party complaint of Weaver Cooke

Construction, LLC ("Weaver Cooke"), in Raleigh, North Carolina, on March 5, 2014.  The court has

previously entered orders regarding HRCI's motion for summary judgment and this order shall address HRCI's remaining arguments that: (1) Weaver Cooke's negligence claim is barred by the doctrine of contributory negligence; and (2) Weaver Cooke's claim for breach of express warranty is barred by Weaver Cooke's failure to furnish notice of a claim under HRCI's express warranty.

## BACKGROUND

This adversary proceeding relates to the alleged defective construction of the SkySail Luxury Condominiums located in New Bern, North Carolina (the "SkySail Project" or the "Project"). New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Project and Weaver Cooke was the Project's general contractor. On June 14, 2012, Weaver Cooke filed its second, third-party complaint asserting claims of negligence, contractual indemnity and breach of express warranty against many of the subcontractors Weaver Cooke hired during the construction of the SkySail Project; however HRCI was not named as a third-party defendant. Thereafter, on August 3, 2012, Weaver Cooke filed a second amendment to its second, third-party complaint and named HRCI as a third-party defendant. HRCI filed an answer to Weaver Cooke's second, third-party complaint on August 13, 2012, asserting numerous defenses, including contributory negligence.

On December 20, 2013, HRCI filed a motion for summary judgment regarding all three causes of action alleged by Weaver Cooke. As grounds for summary judgment, HRCI argues that: (1) the applicable statute of limitations bars Weaver Cooke's claims of negligence and breach of express warranty; (2) the economic loss rule bars Weaver Cooke's negligence claim; (3) Weaver Cooke's contractual indemnity claim is barred by N.C. Gen. Stat. § 22B-1; (4) the negligence and contractual indemnity claims are barred by the doctrine of contributory negligence; and (5) Weaver

4

Cooke's claim for breach of express warranty is barred by Weaver Cooke's failure to furnish notice of a claim as required by the warranties. This order shall address HRCI's remaining arguments that Weaver Cooke's negligence claim is barred by its contributory negligence, and Weaver Cooke's breach of warranty claim is barred by its failure to furnish notice of a claim as required by the warranties.

## DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.

### I.     Contributory Negligence

"Under North Carolina law, contributory negligence generally will act as a complete bar to a plaintiff's recovery." Thompson v. Bradley, 142 N.C.App. 636, 640, 544 S.E.2d 258, 261 (2001) (citing Cobo v. Raba, 347 N.C. 541, 495 S.E.2d 362 (1998)). "Issues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment. Only where the evidence establishes the plaintiff's own negligence so clearly

5

that no other reasonable conclusion may be reached is summary judgment to be granted. " <u>Nicholson</u> <u>v. American Safety Util. Corp.</u>, 346 N.C. 767, 774, 488 S.E. 2d 240, 244 (1997) (citations omitted).

Weaver Cooke subcontracted with HRCI to install the roofing system for the Project. Part of HRCI's work involved installing the thermoplastic polyolefin ("TPO") roofing membrane on the Project's roof. The TPO membrane is a flexible, plastic material which comes in rolled sheets and is the primary water and air barrier on the Project's roof. The Project's roof was designed such that in certain locations, the exterior walls extended above the roof-line, resulting in the roof being partially walled at those locations. The portions of the exterior walls that extended above the roof-line are known as parapet walls. HRCI was to install the TPO such that the TPO would be laid up the back of the roof's parapet walls, over the top of the parapet, and then secured to the front of the parapet wall, resulting in the TPO terminating with the sheet pointing downward, towards the ground. This design was intended to prevent water from getting trapped underneath the TPO membrane and potentially causing leaks in the roof.

The parapet walls were to be constructed by another subcontractor, Gouras Incorporated.[1] At the time that HRCI installed the TPO membrane on the roof, the parapet walls had not yet been built. Therefore, and in order to accommodate for the later installation and attachment of the TPO over the top of and to the front of the parapet walls, HRCI left excess TPO material hanging over the edge of the unfinished building. Thereafter, another subcontractor, Carolina Custom Molding, Inc. ("CCMI") began its work on the roof. CCMI was responsible for installing the cornice work, which rested on top of the parapet walls. Once the parapet walls were built, but before the TPO had

---

[1] <u>See</u> *Defendant Weaver Cooke Construction, LLC's Memorandum in Response to the Motion for Summary Judgment of Hamlin Roofing Services, Inc. and Hamlin Roofing Company, Inc.* (Docket Entry 763 at 5).

been secured to the parapet walls, CCMI began installing its cornice work. In order to complete its work, CCMI claims that it was forced to cut back the TPO membrane, resulting in the TPO no longer running down the face of the parapet walls.

Weaver Cooke claims that the cutting of the TPO membrane has contributed to water intrusion problems at the Project's roof and caused damage to the interior of certain condo units, including damage to the condo floors. Weaver Cooke alleges that HRCI contributed to these damages by failing to complete its installation of the TPO membrane and failing to communicate with the other roof subcontractors in such a way to ensure the TPO was installed correctly.

HRCI argues that Weaver Cooke was negligent in that Weaver Cooke had knowledge that CCMI was cutting back the TPO. HRCI cites to the deposition of Marvin ("Skip") Hartley, CCMI's Rule 30(b)(6) designee, where Hartley testified that Weaver Cooke was aware that CCMI's employees were cutting back the TPO membrane in order to properly install the cornice work and that David Cline, Weaver Cooke's assistant project manager, gave them permission to cut the back TPO.[2] However, Cline testified that he did not have any knowledge that CCMI was cutting the TPO membrane nor had he ever seen CCMI cutting the TPO. In addition, Cline testified that he had not, and would not have given CCMI any instruction to cut the TPO membrane.[3] Weaver Cooke asserts

---

[2] Deposition of Marvin Hartley at 100-01, 105-06 (as found in Docket Entry 691-8 at 84-85, 89-90). Although Hartley was CCMI's Rule 30(b)(6) designee, CCMI's attorney, Michael Hugo, who apparently had extensive knowledge of CCMI's involvement at the Skysail Project, often responded to question posed at Hartley's deposition, even though Hugo himself was not under oath. This was the case when Hartley was asked whether Weaver Cooke was aware that CCMI was cutting back the TPO and whether Weaver Cooke gave CCMI permission to cut the TPO. However, at the request of the attorney deposing Hartley, Hartley incorporated Hugo's testimony as his own.

[3] Deposition of David Cline, Vol. II at 469-70 (as found in Docket Entry 691-8 at 140-41).

that it was not until March of 2012, when it received the report of New Bern's expert, George Barbour (the "Barbour Report"), that it became aware of the HRCI's defective installation of the TPO.

Although Weaver Cooke's knowledge of CCMI's cutting of the TPO membrane *would* have put Weaver Cooke on notice that HRCI had failed to complete its work in installing the TPO, and would have allowed more immediate repair and perhaps avoided water damage, Weaver Cooke disputes such knowledge. Genuine issues of material fact exist as to whether Weaver Cooke was contributorily negligent and therefore, HRCI's motion for summary judgment on its contributory negligence defense shall be denied.

## II.    Weaver Cooke's Breach of Warranty Claim

HRCI also argues that Weaver Cooke's breach of warranty cause of action is barred because Weaver Cooke failed to furnish a notice of claim pursuant to HRCI's express warranty. HRCI claims that it gave Weaver Cooke an express two-year limited warranty, which expired more than two years before Weaver Cooke filed its second, third-party complaint in August 2012. HRCI asserts that Weaver Cooke failed to furnish a notice of a claim within the two-year period as required by its warranty and therefore, its breach of warranty claim is barred.

However, Weaver Cooke's breach of warranty claim is not related to HRCI's two-year warranty. Instead, Weaver Cooke alleges that HRCI failed to comply with certain warranties and covenants contained in the subcontract that it executed with HRCI for the SkySail Project. Some of the covenants cited by Weaver Cooke include HRCI's alleged agreement to "warrant its work against all defects of materials and/or workmanship and agree[ment] to repair or replace any broken, defective, malfunctioning, or unsatisfactory items to the satisfaction and acceptance of Weaver

8

Cooke."[4]   HRCI does not argue that the two-year warranty is Weaver Cooke's exclusive remedy, nor does HRCI assert any additional argument related to the subcontract that it entered into with Weaver Cooke.   Genuine issues of material fact exist as to whether HRCI breached any warranties contained in the subcontract that it entered into with Weaver Cooke.   Accordingly, HRCI's motion for summary judgment on Weaver Cooke's breach of warranty cause of action shall be denied.

      **SO ORDERED.**

**END OF DOCUMENT**

---

[4] See *Defendant Weaver Cooke Construction, LLC's Memorandum in Response to the Motion for Summary Judgment of Hamlin Roofing Services, Inc. and Hamlin Roofing Company, Inc.* (Docket Entry 763 at 27).