**SO ORDERED.**

**SIGNED this 30 day of September, 2014.**

_Stephani W. Humrickhouse_
Stephani W. Humrickhouse
United States Bankruptcy Judge

___

S UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-10340-8-SWH |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | |
|     DEBTOR | |
| | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | ADVERSARY PROCEEDING NO. |
|     Plaintiff | 10-00023-AP |
|     v. | |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC.; | |
|     Defendants | |
|     and | |
| J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN | |

GROUP, INC., CAROLINA CUSTOM
MOULDING, INC., CURRENTON CONCRETE
WORKS, INC., WILLIAM H. DAIL d/b/a
DD COMPANY, EAST CAROLINA MASONRY,
INC., GOURAS, INCORPORATED, HAMLIN
ROOFING COMPANY, INC., HAMLIN
ROOFING SERVICES, INC., HUMPHREY
HEATING & AIR CONDITIONING, INC.
PERFORMANCE FIRE PROTECTION, LLC,
RANDOLPH STAIR AND RAIL COMPANY,
STOCK BUILDING SUPPLY, LLC, PLF OF
SANFORD, INC. f/d/b/a LEE WINDOW &
DOOR COMPANY, UNITED FORMING,
INC. a/d/b/a UNITED CONCRETE, INC.
WATERPROOFING SPECIALITIES, INC.,
and JOHNSON'S MODERN ELECTRIC
COMPANY, INC.,
  Crossclaim, Counterclaim and
  Third-Party Defendants.

  and

NATIONAL ERECTORS REBAR, INC.
  Defendant, Counterclaimant,
  Crossclaimant and Third-Party
  Plaintiff

  v.

ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., JMW CONCRETE
CONTRACTORS, and JOHNSON'S MODERN
ELECTRIC COMPANY, INC.
  Third-Party Defendants.

  and

J. DAVIS ARCHITECTS, PLLC,
  Third-Party Plaintiff

  v.

2

**MCKIM & CREED, P.A.,**
    **Third Party Defendant**

    **and**

**GOURAS, INCORPORATED**
    **Third Party Defendant and**
    **Fourth-Party Plaintiff**

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5**
    **Fourth-Party Defendants**

    **and**

**STOCK BUILDING SUPPLY, LLC**
    **Third-Party Defendant and**
    **Fourth-Party Plaintiff**

    **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
    **Fourth-Party Defendant.**

## ORDER DENYING NATIONAL ERECTORS REBAR, INC.'S MOTION FOR SUMMARY JUDGMENT

This matter came on to be heard upon the motion of National Erectors Rebar, Inc. ("NER") for summary judgment as to crossclaims asserted against it by Weaver Cooke Construction, LLC ("Weaver Cooke"). A hearing on the motion was held in Raleigh, North Carolina, on March 6, 2014.

This adversary proceeding relates to the alleged defective construction of the SkySail Luxury Condominiums located in New Bern, North Carolina (the "SkySail Project" or the "Project"). New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Project

and Weaver Cooke was the Project's general contractor. The background facts and chronology of the pleadings have been recounted in numerous orders and opinions entered in this case and are incorporated herein.

In September 2006, NER contracted with Weaver Cooke to provide the design, labor, equipment and materials necessary for the installation of the post-tension concrete system at the SkySail Project.[1] The post-tension concrete system is a series of cables embedded in concrete structures integrated into the Project to provide structural support. During construction of the Project, the concrete fractured due to the displacement of post-tension cables in several sections of the post-tension system. These fractures and displacements are known as "blowouts," and have allegedly caused cracks in the parking deck, the pool, the courtyard and areas within the main building, and have caused other damages to several different areas of the Project. New Bern alleges in its first amended complaint that Weaver Cooke, as the Project's general contractor, failed to properly design and construct the post-tension system and seeks to recover damages from Weaver Cooke associated with the failure of the post-tension system.[2] In addition, New Bern asserts a claim of negligence against NER, regarding NER's design and installation of the post-tension system.

In its response to New Bern's first amended complaint, Weaver Cooke asserts crossclaims of negligence, breach of warranty and indemnity against NER damages related to NER alleged

---

[1] According to NER, it was actually NRS who contracted with Weaver Cooke to *design* the post-tension system and NER contracted with Weaver Cooke only to *install* the post-tension system. However, according to the Articles of Merger filed with the North Carolina Secretary of State on July 12, 2006, NRS merged into NER, and NER was designated as the surviving entity. As a result of the merger, the separate entity of NRS ceased to exist and NER assumed all of NRS' liabilities. N.C. Gen. Stat. §§ 55-11-06(a)(1), (3) (2013).

[2] See *Plaintiff New Bern Riverfront Development, LLC's First Amended Complaint* (Docket Entry 15 at 24-27).

defective design and construction of the post-tension system. In addition, Weaver Cooke asserts a claim for damages and reimbursement regarding repairs it undertook related to the blowout which occurred on August 7, 2008.

In this motion, NER seeks summary judgment regarding the crossclaims of negligence, breach of express warranty and indemnity asserted against it by Weaver Cooke. As grounds for summary judgment, NER argues that: (1) the economic loss rule bars Weaver Cooke's negligence claim; (2) Weaver Cooke has failed to produce sufficient evidence to maintain its claim of professional negligence; (3) Weaver Cooke's contractual indemnity claim is barred by N.C. Gen. Stat. § 22B-1; and, (4) Weaver Cooke's contributory negligence bars all of its causes of action. The court shall address each argument separately.

## I.  Economic Loss

NER first argues that, due its contract with Weaver Cooke, Weaver Cooke's negligence cause of action is barred by the economic loss rule, as is recognized by the North Carolina Supreme Court in N.C. State Ports Authority v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 240 S.E. 2d, 345 (1978). However, the court has already addressed this issue in the context of NER's motion for summary judgment on the negligence cause of action asserted against it by New Bern.[3] Although NER did not contract with New Bern, NER argued in that motion that, due to its contract with Weaver Cooke, New Bern's negligence claim was barred by the economic loss rule. In ruling upon that issue the court analyzed the subject matter of NER's contract with Weaver Cooke and the

---

[3] See Order Denying National Erectors Rebar Inc.'s Motion for Summary Judgment (Docket Entry 941).

damages alleged to have been caused by NER's work.[4] The court determined that the damages alleged to have been caused by defects in the post-tension system fell into an exception of the economic loss rule as recognized in Ports Authority, specifically, that the damages alleged were to property other than that which was the subject matter of the contract.[5] The court went on to find that sufficient evidence existed to create a genuine issue of material fact as to whether that exception to the economic loss rule applied.[6]

Having already determined that NER's contract with Weaver Cooke did not bar a negligence cause of action against NER under the economic loss rule, albeit in the context of New Bern's claim against NER, the analysis is equally applicable to the negligence claim asserted by Weaver Cooke. Weaver Cooke's negligence claim against NER alleges the same damages asserted by New Bern. Accordingly, NER's motion for summary judgment on Weaver Cooke's negligence claim, regarding its economic loss defense shall be denied.[7]

## II.    Evidence of Professional Negligence

NER also argues that Weaver Cooke has failed to produce sufficient evidence to maintain a claim of professional negligence against it. To support its argument, NER claims that it contracted with Weaver Cooke only to install the post-tension system and that the design of the post-tension system was specifically removed from its responsibilities. NER further points to an admission of

---

[4] Id. See also *Order* (Docket Entry 169) (regarding NER's economic loss arguemnt in the context of its motion to dismiss New Bern's claims).

[5] Id. (Docket Entry 941 at 7-8).

[6] Id.

[7] In so holding, the court also specifically incorporates herein the orders found at Docket Entry 169 and Docket Entry 941.

6

NRS, where NRS admits that *it* was retained to provide the design of the post-tension system. NRS, in turn, subcontracted with professional engineer, Robert Armstrong, Jr., of Summit Design Group, Inc., to provide an engineer's seal for the plans and drawings associated with the post-tension system.

However, according to the Articles of Merger filed with the North Carolina Secretary of State on July 12, 2006, NRS merged into NER, and NER was designated as the surviving entity. In North Carolina, once a merger takes effect "[e]ach other merging corporation merges into the surviving corporation and the separate existence of each merging corporation except the surviving corporation ceases." N.C. Gen. Stat.§ 55-11-06(a)(1) (2013). In addition, "[t]he surviving corporation has all liabilities of each merging corporation." N.C. Gen. Stat. § 55-11-06(a)(3) (2013).

In its answer to New Bern's first amended complaint, Weaver Cooke asserts that "National Erectors, as a result of its ownership and relationship of National Reinforcing, is legally responsible and liable for all claims, acts, and obligations of National Reinforcing."[8] Furthermore, NER admits that NRS was responsible for the design of the post-tension system. Based on the merger between NRS and NER, which occurred before NER had contracted to perform any work on the SkySail Project, North Carolina law provides that NER is responsible for the work of NRS. Summary judgment for NER would therefore not be appropriate on the plaintiff's claim of negligence on the basis of the division of duties between NRS and NER.

### III. Weaver Cooke's Indemnity Claim

NER next argues that the indemnity provision contained in the subcontract between it and Weaver Cooke is void and unenforceable pursuant to N.C. Gen. Stat. § 22B-1, thus barring Weaver

---

[8] See Docket Entry 30 at 55.

Cooke's indemnity claim. The court has already interpreted the indemnity agreement contained in the subcontracts that Weaver Cooke entered into with its subcontractors, including NER.[9] According to the court's construction of the indemnity agreement, Weaver Cooke may only assert an indemnity claim against NER to the extent that NER is "wholly" responsible for any damages.[10]

The Project originally was designed to be a conventional reinforced concrete structure, however, New Bern later switched the design to a post-tension system. Weaver Cooke contracted with NER to design and install the post-tension system and the damages Weaver Cooke complains of, regarding NER's work, relate to the blowouts and the collateral damages the blowouts caused to the Project, including cracking in certain structures of the Project and other structural deficiencies.

Weaver Cooke has asserted claims against several other entities regarding the alleged defective *design* of the post-tension system. Most importantly, Weaver Cooke asserts crossclaims against Robert P. Armstrong, Jr., Robert P. Armstrong, Jr. Inc. and Summit Design Group, Inc. (collectively "Armstrong") and claims that NER subcontracted the design component of the post-tension system to Armstrong.[11] Weaver Cooke alleges that Armstrong provided the sealed drawings for the post-tension system and that all or a portion of the allege deficiencies in the design of the post-tension system relate to work performed by Armstrong.[12]    Weaver Cooke also asserts crossclaims against the Project's architect, J. Davis Architects, PLLC ("J. Davis") and the Project's

---

[9] See e.g. *Order Allowing Motion for Summary Judgment on Indemnity Claim* (Docket Entry 898).

[10] See id. (Docket Entry 898 at 11).

[11] See Docket Entry 77.

[12] See Docket Entry 77 at 8.

engineer of record, Fluhrer Reed PA ("Fluhrer Reed").[13] Weaver Cooke alleges, among other things, that J. Davis had certain responsibilities regarding the design of the post-tension system, including making adjustments to the original design in order to integrate and accommodate the post-tension system into the Project's plans. Weaver Cooke also alleges that Fluhrer Reed was responsible for certain design elements related to the post-tension system. Finally, Weaver Cooke asserts that J. Davis and Fluhrer Reed's work on the post-tension system related to components of the post-tension design not undertaken by NER, but nonetheless, have caused or contributed to damages on the Project.

Based on Weaver Cooke's allegations against these parties, all of which it claims are responsible in varying degrees for the design of the post-tension system, Weaver Cooke does not assert and indeed cannot establish that NER is "wholly" responsible for the damages caused by the alleged defective design of the post-tension system. Of significance, Armstrong admits that it performed design services for the post-tension system.[14] Accordingly, NER's motion for summary judgment on Weaver Cooke's indemnity claim, insofar as it specifically relates to damages caused by the defective *design* of the post-tension system, shall be allowed.

However, regarding the defective *installation* of the post-tension system, it appears that Weaver Cooke asserts claims only against NER. Although NER does asserts claims against JMW Concrete Contractors ("JMW") and Johnson's Modern Electric Company, Inc. ("Johnson Electric"),

---

[13] See Docket Entry 30.

[14] See Docket Entry 83 at 5 (Armstrong's answer to NER's third-party complaint). See also Docket Entry 940 (Order Denying Summit Design, Inc., Robert P. Armstrong Jr., and Robert P. Armstrong Jr. Inc.'s Motion for Summary Judgment at 6-9 (Sept. 23, 2014)) (detailing the evidence cited by Weaver Cooke and others as to multiple causes of the asserted deficiencies in the design system and Armstrong's potential liability for those defects).

alleging that they both contributed to the defective installation of the post-tension system,[15] Weaver Cooke does not assert a claim against either of those entities. NER specifically alleges that JMW was negligent in pouring the concrete at the locations of two of the blowouts and that Johnson Electric improperly placed electrical conduits in the post-tension slabs, and that those defects caused or contributed to certain blowouts. However, Weaver Cooke contracted with both JMW and Johnson Electric to perform work on the Project and has not taken issue with either party's work. Therefore, it appears that Weaver Cooke does at least allege that NER is "wholly" responsible for the defective installation of the post-tension system and any resulting damages. Accordingly, NER's motion for summary judgment on Weaver Cooke's indemnity claim, as it relates to the defective *installation* of the post-tension system, shall be denied.

### IV. Contributory Negligence

"Under North Carolina law, contributory negligence generally will act as a complete bar to a plaintiff's recovery." Thompson v. Bradley, 142 N.C.App. 636, 640, 544 S.E.2d 258, 261 (2001) (citing Cobo v. Raba, 347 N.C. 541, 495 S.E.2d 362 (1998)). "Issues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment. Only where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted. " Nicholson v. American Safety Util. Corp., 346 N.C. 767, 774, 488 S.E. 2d 240, 244 (1997) (citations omitted).

---

[15] See Docket Entry 61 part 1 (Answer to Crossclaim, Crossclaim by National Erectors Rebar, Inc.).

NER asserts that Weaver Cooke's lack of coordination and supervision and failure to properly inspect the work of its subcontractors contributed to any alleged defects associated with its work. Specifically, NER claims that all of its work with the post tension system was completed prior to the installation of any embedded conducts and prior to the concrete pours. NER asserts that Weaver Cooke was negligent in supervising the subcontractor(s) who poured the concrete at the locations of the blowouts and that this failure of supervision contributed to the blowouts. However, even assuming but without deciding that Weaver Cooke was negligent in failing to adequately supervise the subcontractor who poured concrete at the locations of the blowouts, its has not yet been determined that defects in the poured concrete caused or contributed to the blowouts. It is alleged, for example, that the defective design of the post-tension system and the lack of hairpins at the locations of the blowouts have caused the blowouts. Genuine issues of material fact still exists as to the cause of the blowouts. Accordingly, NER's motion for summary judgment on Weaver Cooke's claims, regarding its contributory negligence argument, shall be denied.

**SO ORDERED.**

**END OF DOCUMENT**