SO ORDERED.

SIGNED this 5 day of December, 2014.

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | 09-10340-8-SWH |
| DEBTOR. | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | |
| Plaintiff, | ADVERSARY PROCEEDING NO. |
| v. | 10-00023-8-SWH-AP |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC.; | |
| Defendants, | |
| and | |
| J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, | |

**INC.; ROBERT P. ARMSTRONG, JR.; ROBERT ARMSTRONG, JR., INC.; SUMMIT DESIGN GROUP, INC.; CAROLINA CUSTOM MOULDING, INC.; CURENTON CONCRETE WORKS, INC.; WILLIAM H. DAIL d/b/a DD COMPANY; EAST CAROLINA MASONRY, INC.; GOURAS, INCORPORATED; HAMLIN ROOFING COMPANY, INC.; HAMLIN ROOFING SERVICES, INC.; HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; WATERPROOFING SPECIALTIES, INC.; and JOHNSON'S MODERN ELECTRIC COMPANY, INC.;**

       **Crossclaimants, Counterclaimants and Third-Party Defendants,**

       **and**

**NATIONAL ERECTORS REBAR, INC.,**

       **Defendant, Counterclaimant, Crossclaimant and Third-Party Plantiff,**

       **v.**

**ROBERT P. ARMSTRONG, JR.; ROBERT ARMSTRONG, JR., INC.; SUMMIT DESIGN GROUP, INC.; JMW CONCRETE CONTRACTORS; and JOHNSON'S MODERN ELECTRIC COMPANY, INC.;**

       **Third-Party Defendants,**

       **and**

2

**J. DAVIS ARCHITECTS, PLLC,**
    Third-Party Plaintiff,

    v.

**MCKIM & CREED, P.A.,**

    Third-Party Defendant,

    and

**GOURAS, INCORPORATED,**

    Third-Party Defendant and
    Fourth-Party Plaintiff,

**RAFAEL HERNANDEZ, JR.; CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL; 5 BOYS, INC.; and ALEX GARCIA d/b/a JC 5;**

    Fourth-Party Defendants,

    and

**STOCK BUILDING SUPPLY LLC,**

    Third-Party Defendant and
    Fourth-Party Plaintiff,

    v.

**CARLOS O. GARCIA, d/b/a C.N.N.C,**

    Fourth-Party Defendant.

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came on to be heard upon the motion of Weaver Cooke Construction, LLC ("Weaver Cooke") and Travelers Casualty and Surety Company of America ("Travelers") for the entry of an order of partial summary judgment in their favor regarding New Bern Riverfront

Development, LLC's ("New Bern") claims for consequential damages. A hearing was held in Raleigh, North Carolina, on March 3, 2014. On September 25, 2014, the court entered an order granting summary judgment for Weaver Cooke on New Bern's claims for consequential damages against it. New Bern Riverfront Dev., LLC v. Weaver Cooke Constr., LLC (In re New Bern Riverfront Dev., LLC), Adv. Pro. No. 10-00023-8-JRL-AP (Bankr. E.D.N.C. Sept. 25, 2014). However, the court deferred ruling on the motion as to New Bern's claims for consequential damages against Travelers to allow for additional briefing on the matter.

The background facts and chronology of pleadings in this case have been recounted in numerous orders and opinions and are incorporated herein. Travelers argues that, as a mere surety, its liability is coextensive with that of its principal, Weaver Cooke, and that it is entitled to rely on the mutual waiver of consequential damages clause found in the underlying construction contract between Weaver Cooke and New Bern. New Bern does not dispute the validity of the waiver clause, but maintains that the clause only limits its ability to recover from Travelers insofar as Travelers is derivatively liable for consequential damages caused by Weaver Cooke's default. New Bern asserts that Travelers has independent obligations under the performance bond to which the waiver clause does not apply, and that it has properly asserted claims for breach of those obligations in this adversary proceeding. Travelers denies both that it has independent obligations and that they have been properly plead. In summary, New Bern asserts that Travelers is liable for consequential damages caused by the breach of its obligations under the performance bond that are not derivative of the construction contract.

Discussion

Rule 56 of the Federal Rules of Civil Procedure provides that a party may move for summary judgment, and upon such movant showing there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the court shall grant such motion. Fed. R. Civ. P. 56. Likewise, Rule 7056 of the Federal Rules of Bankruptcy Procedure provides that Rule 56 applies in adversary proceedings. Fed. R. Bankr. P. 7056. An issue of material fact exists when there is a dispute over facts that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must establish that there is a genuine issue of material fact; it must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed R. Civ. P. 56(e)) (emphasis added in case). There is no genuine issue if the record as a whole "could not lead a rational trier of fact to find for the non-moving party." Id. In a motion for summary judgment, factual inferences are viewed in the light most favorable to the non-movant. Id.

The relationship between Weaver Cooke and Travelers is one of suretyship. Suretyship involves a contractual relationship whereby one party, the surety, agrees to be answerable for the debt or performance obligation of another, the principal. Branch Banking and Trust Co. v. Creasy, 301 N.C. 44, 52, 269 S.E.2d 117, 122 (1980). A surety's derivative liability is defined by the underlying construction contract and the bond. While the terms of the bond ultimately define a surety's liability, see N. Am. Specialty Ins. Co. v. Chichester Sch. Dist., 158 F. Supp. 2d 468, 471 (E.D. Penn. 2001) (surety can only be bound to extent, manner and circumstances set out in bond); Matter of Simon, 36 N.C. App. 51, 58, 243 S.E.2d 163, 167 (1978); DCC Constructors, Inc. v.

Randall Mech., Inc., 791 So. 2d 575, 576 (Fla. Dist. Ct. App. 2001) ("a surety's liability on a bond is determined strictly from the terms and conditions of the bond agreement"); 17 Am. Jur. 2d *Contractors' Bonds* § 4, the general rule regarding a surety's liability for its principal's default is that a "surety can only be obligated to perform under the bond to the extent that the principal is obligated under the construction contract." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1468 (4th Cir. 1991). Thus, in construing a performance bond, it is necessary to view it in light of the terms of the underlying construction contract. Id. at 1467-68; see also RGK, Inc. v. U.S. Fid. & Guar. Co., 292 N.C. 668, 684, 235 S.E.2d 234, 244 (1977); Blue Cross and Blue Shield of N.C. v. Odell Assocs., Inc., 61 N.C. App. 350, 364, 301 S.E.2d 459, 467 (1983). As surety for Weaver Cooke, Travelers' derivative liability for Weaver Cooke's default arises out of the construction contract between Weaver Cooke and New Bern. The construction contract contained a mutual waiver of consequential damages. Thus, to the extent that New Bern's claims for consequential damages against Travelers derive from Weaver Cooke's breach, New Bern cannot recover. New Bern does not disagree.

However, a surety's obligations encompass more than just derivative obligations arising from its principal's breach. A surety also has independent obligations, separate and apart from its derivative obligations under the construction contract, that arise out of the bond itself. Bond agreements create contractual obligations for which sureties are responsible. See Westchester Fire Ins. Co. v. City of Brooksville, 731 F. Supp. 2d 1298, 1304 (M.D. Fla. 2010); Int'l Fid. Ins. Co. v. Cnty. of Rockland, 98 F. Supp. 2d 400, 406 (S.D.N.Y. 2000); Arcady Farms Milling Co. v. Wallace, 242 N.C. 686, 690, 89 S.E.2d 413, 416 (1955). A surety is "'engaged in a direct and original undertaking'" that is independent from its principal's default. Hofler v. Hill, 311 N.C. 325, 332, 317

S.E.2d 670, 674 (1984) (quoting Creasy, 301 N.C. at 52-53, 269 S.E.2d at 122). A surety agreement thus creates a "direct and separate liability" on behalf of the surety. Wallace, 242 N.C. at 690, 89 S.E.2d at 416. Since New Bern cannot recover consequential damages against Travelers based on its derivative obligations, the validity of New Bern's claim for consequential damages against Travelers turns on whether Travelers breached a non-derivative obligation under the performance bond, and the extent of liability provided by the bond.

Unlike a surety's liability for breach of its derivative obligations, absent express or implied language in the bond, a surety's liability for breach of its non-derivative, direct obligations may not be limited to the terms of the bond. Courts have noted the distinction between sureties' derivative liability and direct liability. In Am. Home Assurance Co. v. Larkin Gen. Hosp., 593 So. 2d 195, 196 n.2 (Fla. 1992), the court held that a surety could not be liable for consequential damages caused by the *contractor's* default where the bond did not specifically provide for them, but specifically distinguished that situation from a claim for consequential damages resulting from a *surety's* failure to fulfill its obligations. In Marshall Contractors, Inc. v. Peerless Ins. Co., 827 F. Supp. 91, 95 (D. R.I. 1993), the court found that the fact that consequential damages were not recoverable as a result of the principal's default since the bond did not provide for them would not necessarily relieve the surety from liability for consequential damages attributable to its *own* alleged breach of the bond.

> It would appear that, absent liability for consequential damages resulting from its own delinquency, the surety on a performance bond would have little incentive to fulfill its obligations in a timely fashion. On the contrary, the surety likely would be tempted to delay its performance in the hope of extracting a favorable settlement from the bondholder faced with mounting consequential losses.

Id.

Courts have specifically held that consequential damages incurred because of a surety's improper conduct are appropriate for recovery. See Cont'l Realty Corp. v. Andrew J. Crevolin Co., 380 F. Supp. 246, 252 (S.D. W. Va. 1974); see generally U.W. Marx, Inc. v. Mountbatten Sur. Co., Inc., 770 N.Y.S.2d 777, 781, 3 A.D.3d 688, 691 (2004) (where the surety fails to perform, its liability may include damages flowing from its breach). In Cont'l Realty, 380 F. Supp. at 252, 254, the surety breached its direct obligation to the obligee, and the court found that the surety was liable for the "natural and foreseeable damages incurred by virtue of [its] own breach." The court specifically noted that the surety agreement contained no limitation of liability for the surety's own breach. Id. at 252. In fact, the court stated that the law consistently awards damages against sureties that default on their bond obligations. Id. at 253. In breaching its duties, the surety acted "at its own risk and innocent parties under law must not suffer the consequences." Id. at 254. In sum, when a surety does not perform what it promises to do, "[the surety] is liable for those damages which flow reasonably and naturally from the contractor's breach as well, as its own." Hunt v. Bankers and Shippers Ins. Co. of N.Y., 73 A.D.2d 797, 798 (N.Y. App. Div. 1979). In Cnty. of Rockland, 98 F. Supp. 2d at 417, the court found that the terms of the *bond* limited the surety's liability for its *own* breach by expressly creating liability for certain types of damages caused by the principal, while omitting language creating liability for the same types of damages caused by the surety. The court also found the provision obligating the surety to pay for "additional legal, design professional and delay costs" resulting from its default clearly obligated the surety to pay for consequential damages. Id. at 414. From these cases, the court concludes that the recovery of consequential damages for the breach of a direct obligation of a surety under the bond is appropriate unless the bond expressly or impliedly limits such recovery.

The court must next determine what independent, non-derivative obligations the bond at issue created on behalf of Travelers, and the extent of liability allowed under the bond. The performance bond specifically obligates Travelers, upon a declaration of breach by Weaver Cooke, to promptly: (1) arrange for Weaver Cooke, with New Bern's consent, to complete the construction contract; (2) undertake to perform and complete the contract itself; (3) find a new contractor to complete the work; or (4) tender payment to New Bern for the amount for which it is liable or deny liability and give New Bern reasons therefor. Performance Bond, Ex. 1 to Def. Travelers' Memo., Doc. No. 1040 at 2. The bond provides that "[i]f the Surety does not proceed as provided . . . with reasonable promptness, the Surety shall be deemed to be in default . . . and the Owner shall be entitled to enforce any remedy available." Id. Furthermore, it provides that if Travelers elects to act under (1)-(3) above, its responsibilities "shall not be greater than those of the Contractor under the Construction Contract." Id. However, Travelers is also obligated for "[a]dditional legal, design professional and delay costs resulting from the Contractor's Default, *and resulting from the actions or failure to act of the Surety*." (emphasis added). Id. The court finds that Travelers has independent obligations under the terms of the bond.

As the above cases reveal, any limitation on the recovery of consequential damages arising from a surety's direct liability must be found in the bond itself. The bond between New Bern and Travelers contains no such limitation. Although the construction contract between Weaver Cooke and New Bern waived consequential damages, the performance bond did not. In fact, the bond itself states that "[i]f the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond . . . and the Owner shall be entitled to enforce any remedy available to the Owner." Id. Since the bond in question specifically obligates

9

Travelers not only to act, but to cover additional costs flowing from its own failure to act, the bond provides for the recovery of consequential damages, and more particularly, for "additional legal, design professional and delay costs," resulting from its alleged breach of the bond.

Finally, the court must determine whether New Bern's complaint seeks recovery of non-derivative consequential damages against Travelers. Travelers contends that New Bern failed to assert a non-derivative cause of action against it. The court disagrees. In the First Claim for Relief, New Bern alleges that Travelers breached the performance bond by failing to promptly make an election as to its course of action upon New Bern's demand for performance. First Amended Complaint at 27. New Bern also claims entitlement to compensatory damages for Travelers' "failure and refusal to perform its obligations under the Performance Bond." Id. The court finds that New Bern's complaint does sufficiently assert claims for relief against Travelers for breach of its non-derivative obligations under the surety bond.

## Conclusion

Because New Bern asserts a non-derivative cause of action against Travelers for breaches of its duties under the performance bond, summary judgment is improper as to New Bern's claim for consequential damages against Travelers. Partial summary judgment as to Travelers on the issue of New Bern's ability to recover consequential damages is thus **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**