**SO ORDERED.**

**SIGNED this 12 day of March, 2015.**

_____
        **Stephani W. Humrickhouse**
        **United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | 09-10340-8-SWH |
|     DEBTOR | |
| | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC | ADVERSARY PROCEEDING NO. |
|     Plaintiff | 10-00023-8-AP |
|     v. | |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC., | |
|     Defendants, | |
| and | |
| WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
|     Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
|     v. | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING COMPANY, INC.; HAMLIN ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**
      Crossclaimants, Counterclaimants and
      Third-Party Defendants.


      and

**NATIONAL ERECTORS REBAR, INC.**
      Defendant, Counterclaimant,
      Crossclaimant and Third-Party
      Plaintiff,

      v.

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**
      Third-Party Defendants.

      and

**J. DAVIS ARCHITECTS, PLLC,**
    **Third-Party Plaintiff,**

    **v.**

**MCKIM & CREED, P.A.,**
    **Third-Party Defendant.**

    **and**

**GOURAS, INC.,**
    **Third Party Defendant and**
    **Fourth-Party Plaintiff,**

    **v.**

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
    **Fourth-Party Defendants.**

    **and**

**STOCK BUILDING SUPPLY, LLC,**
    **Third-Party Defendant and**
    **Fourth-Party Plaintiff,**

    **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
    **Fourth-Party Defendant.**

## ORDER DENYING NATIONAL REINFORCING SYSTEMS, INC.'S MOTION FOR RECONSIDERATION

The matter before the court is the motion of National Reinforcing Systems, Inc. ("NRS") to alter or amend this court's order of September 10, 2014, which granted summary judgment in NRS's favor (the "September 10, 2014 Order"). See Order Granting National Reinforcing Systems, Inc.'s

Motion for Summary Judgment, Doc. No. 923.  A hearing took place in Raleigh, North Carolina on January 20, 2015.  For the reasons that follow, the motion will be denied.

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Luxury Condominiums (the "Project") located in New Bern, North Carolina and Weaver Cooke Construction, LLC was the Project's general contractor.  On March 30, 2009, New Bern initiated an action in Wake County Superior Court related to the alleged defective construction of the Project (the "State Action"), naming numerous defendants, including Weaver Cooke and "National Erectors Rebar, Inc. *f/k/a National Reinforcing Systems, Inc*."  Doc. No. 1-1 at 1 (emphasis added).  On June 8, 2009, Weaver Cooke filed an answer to New Bern's complaint, containing crossclaims against "Defendant National Erectors Rebar, Inc. *and* National Reinforcing Systems, Inc."  Doc. No. 1-17 at 12 (emphasis added).

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code.  The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010.  New Bern filed its first amended complaint on May 6, 2010, again asserting claims against National Erectors Rebar, Inc. f/k/a National Reinforcing Systems, Inc.  On May 27, 2010, Weaver Cooke filed an answer to New Bern's first amended complaint and again asserted crossclaims against both National Erectors Rebar, Inc. and National Reinforcing Systems, Inc.  On September 9, 2010, Weaver Cooke filed a third-party complaint, asserting claims of negligence, contractual indemnity and breach of express warranty, exclusively against "National Reinforcing Systems, Inc."  See Doc. No. 103.

4

On December 20, 2013, NRS filed a motion for summary judgment regarding all three causes of action alleged by Weaver Cooke in its third-party complaint. The court found, however, that although Weaver Cooke had lodged claims against both National Erectors Rebar, Inc. ("NER") and NRS, the claims against NRS could not stand because NRS had previously merged into NER. Thus, in the September 10, 2014 Order, the court found that NRS was not a proper party to the third-party complaint filed against it by Weaver Cooke, necessitating dismissal of that complaint. The court also held that, as to Weaver Cooke, NER is the proper party to hold responsible for any liability of NRS. See Doc. No. 923 at 6. NRS's motion for summary judgment was granted as to all of Weaver Cooke's claims.

In the motion presently before the court, NRS seeks reconsideration of the September 10, 2014 Order granting summary judgment in its favor, arguing that the order contains an error of law and has unintended consequences, which cause manifest injustice. NRS asks the court to affirm its decision, yet on the grounds raised in the summary judgment motion (i.e., negligence, contractual indemnity and breach of express warranty). In the alternative, NRS asks the court to hold that NER is not liable for any claims asserted against NRS. NER filed a response in support of NRS's motion to reconsider, arguing that the September 10, 2014 Order subjects NER to additional design-related claims that have been defended to date by NRS through separate counsel. According to NER, defending against design claims at this juncture will subject it to manifest injustice. Weaver Cooke opposes reconsideration of the September 10, 2014 Order, contending that NRS has not established any error of law or other basis for relief, and that the court correctly interpreted North Carolina merger law.

## DISCUSSION

Although NRS filed the motion to reconsider under Rules 52(b), 59(e), and 60(b) of the Federal Rules of Civil Procedure, the motion is governed by Rule 54 of the Federal Rules of Civil Procedure.[1]  Rule 54(b) provides, in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054 (emphasis added).  Thus, a Rule 54(b) motion is the appropriate tool for seeking reconsideration of an interlocutory order, as it does not resolve all claims against all parties.  Saint Annes Dev. Co., Inc. v. Trabich, 443 Fed. Appx. 829, 832 (4th Cir. 2011).  However, the grounds on which courts will grant reconsideration are fairly narrow, and generally extend to only three scenarios: (1) an intervening change in controlling law; (2) additional, previously unavailable evidence; or (3) the prior decision was based on clear error or would work manifest injustice.  Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565-66 (M.D.N.C. 2005). Rule 54(b) motions are appropriate tools to correct *manifest* errors of the court.  Henderson v. Clinton & Clinton, No. 5:13-CV-635-FL, 2014 WL 4055824, at *6 (E.D.N.C. Aug. 15, 2014).  The bases for reconsideration "'rarely arise and the motion to reconsider should be equally rare.'" DIRECTV, INC. v. Hart, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).  Motions for reconsideration are not an avenue for movants to ask the court to rethink what it already thought through.  Henderson, No. 5:13-CV-635-FL, 2014 WL 4055824, at *6.

---

[1] Made applicable to this adversary proceeding by Rule 7054 of the Federal Rules of Bankruptcy Procedure.

NRS[2] has not alleged an intervening change in the law or the emergence of previously unavailable evidence. Thus, the issue is whether September 10, 2014 Order is based on clear error or would work manifest injustice. For reconsideration to be allowed on this basis, the prior decision cannot be "maybe or probably wrong; it must strike [the court] with the force of a five-week old, unrefrigerated dead fish." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (citations omitted). In other words, it must be "dead wrong." Id. The primary 'wrong' that NRS alleges is the court's statement that "to the extent that NRS is liable to Weaver Cooke, that liability belongs with NER." Doc. No. 923 at 6. NRS makes a number of arguments in support of this contention of error, including: (1) that it did not raise any issues surrounding the merger as a basis for summary judgment, (2) that it admitted it was a separate entity and responsible for the work, (3) there is no evidence that NER was involved with the purchase order pertaining to NRS's work, and (4) if NRS is not a proper party, there is no basis upon which to impose liability on NER.

What NRS does not offer is any legal authority to support its claim of error. The arguments raised tend to find fault with the court's interpretation of N.C. Gen. Stat. § 55-11-06(a)(1) in roundabout fashion, but NRS fails to present any viable basis upon which the court could have found differently. First, the argument that it was error to find that NRS is not a proper party to this action because NRS did not seek summary judgment on this basis is simply a non-starter. The issue before the court was whether NRS was entitled to summary judgment on the third-party claims of Weaver Cooke. It was not error for the court to award NRS summary judgment on grounds other than those

---

[2] To be clear, although the court refers to the movant as "NRS" in this order, the court maintains that NRS ceased to exist on July 12, 2006, the date it merged into NER. However, because the motion was filed by "National Reinforcing Systems, Inc.," and for ease of identification, the court refers to movant as "NRS" solely for purposes of this order.

advanced in the summary judgment motion. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.") Here, North Carolina merger law is dispositive and was applied accordingly.

Next, NRS argues that it "admitted" it was a separate entity and responsible for the work performed on the Project under its name, and that such admissions are binding on the court. The problem with this contention is twofold. First, in its response to Weaver Cooke's third-party complaint, on October 13, 2010, NRS states, "[i]t is admitted that Defendant National Reinforcing Systems, Inc. was a North Carolina corporation with its principal place of business in Lumberton, Robeson County, North Carolina," and "it is admitted that Weaver Cooke entered a written purchase order subcontract with a company operating as National Reinforcing Systems, Inc. to perform certain design functions and provide certain materials for the post-tension concrete components." Doc. No. 126, ¶¶ 2 and 7. However, these statements are wholly inconsistent with NRS's prior Motion to Dismiss and Response to Crossclaim of Weaver Cooke Construction, LLC, filed on February 3, 2010, which begins, "[n]ow comes the Unnamed or Improperly Named Defendant, National Reinforcing Systems, Inc. . . ." Doc. 1-37, p. 4 of 19. The response further states, "[i]t is denied that Defendant National Reinforcing Systems, Inc. is a North Carolina corporation with its principal place of business in Lumberton, Robeson County, North Carolina." Thus, although the court finds that NRS is clearly not a viable entity based on the merger statute (as discussed below) and regardless of any self-serving statements to the contrary, these statements are so contradictory

8

to other statements of record that they could not possibly be treated as binding admissions upon the court.

The second problem with NRS's "admission" contention is that it could not be more inconsistent with N.C. Gen. Stat. § 55-11-06, the basis for the court's decision, which provides that once a merger takes effect, "[e]ach other merging corporation merges into the surviving corporation and the separate existence of each merging corporation except the surviving corporation *ceases*." N.C. Gen. Stat. § 55-11-06(a)(1) (emphasis added). See also Wilkins v. Wachovia Corp., 2011 U.S. Dist. LEXIS 31060 at *10 (E.D.N.C. Feb. 28, 2011) ("Under North Carolina law, when a merger takes effect, only the surviving entity continues and the other merging entity ceases to exist.") (citing N.C.G.S. § 55-11-06); Engel v. Teleprompter Corp., 703 F.2d 127, 131 (5th Cir. 1983) ("A merger of two corporations contemplates that one corporation will be absorbed by the other and will cease to exist while the absorbing corporation remains.") (citations omitted). Thus, NRS could not have been a separate entity on September 26, 2006, when it purportedly entered into a purchase order with Weaver Cooke, because "NRS" ceased to exist on July 12, 2006, upon merger into NER, as evidenced by the Articles of Merger filed with the North Carolina Secretary of State.

Given that NRS did not exist on September 9, 2010, when Weaver Cooke filed the third-party complaint at issue, it could not have been a proper party to the complaint. The North Carolina merger statutes only provide for the continuance of proceedings that were pending against a merging corporation (i.e., the entity whose separate existence ceases upon merger) at the time of a merger, and do not provide for new actions initiated post-merger. See N.C.G.S. § 55-11-06(a)(4). It follows that once a merger has occurred, any new action should be brought against the surviving corporation. In a case remarkably similar to the one at hand, Bailey v. Vanscot Concrete Co., 894 S.W.2d 757

(Tex. 1995), an entity named Vanscot Concrete Company d/b/a Express-Pennington merged into Cen-Tex Ready-Mix Concrete Company in early July 1986, which then changed its name to Tarmac Texas, Inc. An incident occurred approximately three months later, where an individual ("Bailey") claimed that he was injured by contaminated concrete delivered by a truck bearing the name "Express/Pennington." Additionally, a sales invoice issued that day bore the trade inscription "Express/Pennington." Bailey sued Vanscot and later amended the complaint, naming "Vanscot Concrete Company d/b/a Express/Pennington Concrete Company." The court ultimately dismissed the action against Vanscot, holding that upon merger, Vanscot ceased to exist for purposes of legal liability:

> Bailey urges that Vanscot continues to exist after its merger with Tarmac for purposes of legal liability. Article 5.06(a)(1) of the Texas Business Corporation Act provides: When a merger takes effect: (1) the separate existence of every domestic corporation that is a party to the merger, except any surviving or new domestic corporation, shall cease. Bailey claims that Vanscot's *separate* existence ceased upon completion of the June 30, 1986 merger. At the time of Bailey's accident, the owner and operator of the involved concrete trucks was Tarmac. Nonetheless, Bailey suggests that Vanscot "lives on" within Tarmac. To the contrary article 5.06 means that Vanscot ceased to exist as a legal entity, in any form, after the merger. In a merger, the privileges, powers, rights, and duties of the corporation are transferred to the surviving corporation and are there continued and preserved. As a result of the merger, Vanscot had no actual or legal existence at the time of Bailey's accident. Civil suits may be maintained only by or against parties having an actual or legal existence. Vanscot was not a proper party to the suit, and judgment cannot be rendered against it.

Bailey, 894 S.W.2d 757, 759 (internal citations omitted).[3] Thus, despite the post-merger use of the merged entity's trade name, Express/Pennington, the court determined that Express/Pennington no

---

[3] The Texas statute relied upon in Bailey is consistent with N.C. Gen. Stat. § 55-11-06(a)(1), which provides: "When a merger . . . takes effect: (1) Each merging corporation merges into the surviving corporation and the separate existence of each merging corporation except the surviving corporation ceases." N.C.G.S. § 55-11-06(a)(1).

10

longer existed after the merger, and found that the plaintiff "was required to sue the corporation which injured him – the post merger entity." Bailey, 894 S.W.2d 757, 759 n.1. In this case, the appropriate defendant is NER, the entity that New Bern named at the outset, and against which Weaver Cooke asserted crossclaims.

It therefore follows that NER is the proper party to hold responsible for any liability created by the actions of "National Reinforcing Systems, Inc." in connection with the Project. Contrary to the arguments of NRS, it is not necessary to find evidence of NER's involvement in procuring the purchase order signed by NRS. Once NRS merged into NER on July 12, 2006, it had no separate existence on September 26, 2006, the date the purchase order was signed. There may be numerous reasons why the purchase order was executed in this manner. Perhaps the 'boots on the ground' did not know about the merger yet, as suggested by counsel for NRS at the hearing on the motion for reconsideration. If so, this would be a problem to have been solved by NER as the surviving entity, rather than a problem to be solved in this lawsuit.

NER argues that the purchase order is the result of ultra vires actions taken by a group operating as NRS.[4] However, at the hearing on the reconsideration motion, counsel for NRS suggested that this group contained some individuals that ultimately remained with NER. Regardless of the identity of the 'group' in question, under North Carolina law, "the validity of a corporate action may not be challenged on the ground that the corporation lacks or lacked authority to act" unless challenged by a shareholder seeking to enjoin an act, by the Attorney General, or "by

---

[4] NRS also argued that the purchase order was entered into by a group operating as NRS, and that this group formed a de facto partnership of sorts, such that NRS had a separate existence at the time the work was performed on the Project. Although de facto partnerships have been recognized at law, the court finds this argument unpersuasive, based on its conclusions regarding the ceased existence of "National Reinforcing Systems, Inc." pursuant to North Carolina merger law.

11

the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director, officer, employee, or agent of the corporation." N.C.G.S. § 55-3-04. This does not reflect the posture of the current third-party plaintiff, Weaver Cooke, and third-party defendant, NRS. The only relevance this argument has is that it is perhaps exactly the type of action NER should have pursued if the purchase order truly was entered into by a rogue group of individuals holding themselves out to be an entity formerly known as NRS. NER may have difficulty explaining how it worked on the same portion of the same project as this 'group' without perceiving the problem. If NER was truly concerned with individuals 'operating' as NRS post-merger, a number of avenues could have been taken to thwart such activity. The fact that none were taken is telling.

Finally, NER argues that the September 10, 2014 Order works manifest injustice, as it will now be forced to defend against design-related claims as opposed to defending solely against installation-related claims as it has to date. This is simply incorrect, however, because New Bern's complaint alleges negligence against NER "in designing and constructing the PT System for the Project." See Doc. No. 1-6, ¶¶ 186-195. NER brought a motion to dismiss these claims in 2011, but the motion was denied, as the claims were held to be sufficiently pled. See Doc. No. 169. Further, Weaver Cooke's crossclaims against NER include design-related claims. See Doc. No. 30. Thus, no injustice will result given that NER has been subject to design-related claims since the inception of this lawsuit.

Based on the foregoing, NRS has not established any basis for reconsideration of the September 10, 2014 Order. NRS was not a proper party to the third-party complaint of Weaver

Cooke, rendering summary judgment in NRS's favor appropriate. Accordingly, the motion is

**DENIED.**

    **SO ORDERED.**

**END OF DOCUMENT**