**SO ORDERED.**

**SIGNED this 27 day of March,2015.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

| | |
|---|---|
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC** | **CASE NO. 09-10340-8-SWH** |
|      **DEBTOR** | |

**NEW BERN RIVERFRONT DEVELOPMENT, LLC**
     **Plaintiff**

     **v.**

| | |
|---|---|
| **WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC.,** | **ADVERSARY PROCEEDING NO. 10-00023-8-AP** |
|      **Defendants,** | |

     **and**

**WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,**
     **Defendants, Counterclaimants,**
     **Crossclaimants and Third-Party Plaintiffs,**

     **v.**

J. DAVIS ARCHITECTS, PLLC, FLUHRER
REED PA, SKYSAIL OWNERS ASSOCIATION,
INC.; NATIONAL REINFORCING SYSTEMS,
INC., ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., CAROLINA CUSTOM
MOULDING, INC., CURENTON CONCRETE
WORKS, INC., WILLIAM H. DAIL d/b/a
DD COMPANY, EAST CAROLINA MASONRY,
INC., GOURAS, INC., HAMLIN ROOFING
COMPANY, INC.; HAMLIN  ROOFING
SERVICES, INC., HUMPHREY
HEATING & AIR CONDITIONING, INC.;
PERFORMANCE FIRE PROTECTION, LLC;
RANDOLPH STAIR AND RAIL COMPANY;
STOCK BUILDING SUPPLY, LLC; PLF OF
SANFORD, INC. f/d/b/a LEE WINDOW &
DOOR COMPANY; UNITED FORMING,
INC. a/d/b/a UNITED CONCRETE, INC.;
JOHNSON'S MODERN ELECTRIC
COMPANY, INC.; and WATERPROOFING
SPECIALITIES, INC.,
       Crossclaimants, Counterclaimants and
       Third-Party Defendants.


       and

NATIONAL ERECTORS REBAR, INC.
       Defendant, Counterclaimant,
       Crossclaimant and Third-Party
       Plaintiff,

       v.

ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., JMW CONCRETE
CONTRACTORS, and JOHNSON'S MODERN
ELECTRIC COMPANY, INC.
       Third-Party Defendants.

       and

**J. DAVIS ARCHITECTS, PLLC,**
      **Third-Party Plaintiff,**

            **v.**

**MCKIM & CREED, P.A.,**
      **Third-Party Defendant.**

            **and**

**GOURAS, INC.,**
      **Third Party Defendant and**
      **Fourth-Party Plaintiff,**

            **v.**

**RAFAEL HERNANDEZ, JR., CARLOS**
**CHAVEZ d/b/a CHAVEZ DRYWALL,**
**5 BOYS, INC. and ALEX GARCIA**
**d/b/a/ JC 5,**
      **Fourth-Party Defendants.**

            **and**

**STOCK BUILDING SUPPLY, LLC,**
      **Third-Party Defendant and**
      **Fourth-Party Plaintiff,**

            **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
      **Fourth-Party Defendant.**

## ORDER DENYING JOHNSON'S MODERN ELECTRIC COMPANY, INC.'S MOTION FOR RECONSIDERATION

The matter before the court is the motion of Johnson's Modern Electric Company, Inc. ("JME") to alter, amend, or clarify this court's order of September 30, 2014, which denied JME's motion for summary judgment (the "September 30, 2014 Order") on the claims contained in the third-party complaint filed by National Erectors Rebar, Inc. ("NER"). See Order Denying Johnson's

Modern Electric Company, Inc.'s Motion for Summary Judgment, Doc. No. 972.  A hearing took place in Raleigh, North Carolina on January 20, 2015.  For the reasons that follow, the motion will be denied.

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of the SkySail Luxury Condominiums (the "Project") located in New Bern, North Carolina.  On March 30, 2009, New Bern initiated an action in Wake County Superior Court related to the alleged defective construction of the Project (the "State Action"), naming numerous defendants, including Weaver Cooke Construction, LLC, the general contractor for the Project.  Many of the other defendants were Weaver Cooke's subcontractors, including NER, against whom New Bern alleged negligence in the design and construction of the post-tensioning support system for the Project.  On June 8, 2009, Weaver Cooke filed an answer to New Bern's complaint, which contained crossclaims against NER for negligence, breach of warranty, and indemnity.

On November 30, 2009, New Bern filed a petition for relief under chapter 11 of the Bankruptcy Code.  The State Action was removed to the United States District Court for the Eastern District of North Carolina on December 16, 2009, and subsequently transferred to this court on February 3, 2010.  New Bern filed an amended complaint on May 6, 2010.  On July 6, 2010, NER filed a third-party complaint against JME, among others, asserting that JME negligently installed multiple electrical conduits "in the slab at the location of a blow out."  Doc. No. 61-1 at ¶ 42.  NER claims that to the extent it is found liable for any damage, including damage alleged by New Bern

and Weaver Cooke, it is entitled to indemnity from JME as the actual tortfeasor, and in the alternative, NER seeks to recover joint tortfeasor contribution from JME.[1]

NER filed motions for summary judgment against New Bern and Weaver Cooke on December 20, 2013. In each respective motion, NER argued that the negligence claims lodged against it are improper, because the economic loss rule bars tort claims for contract-based losses. On September 23, 2014, and September 30, 2014, however, the court entered orders denying NER's motions for summary judgment as to New Bern and Weaver Cooke, respectively, finding in part that a genuine issue of fact exists as to whether an exception to the economic loss rule applies in this case, rendering summary judgment inappropriate.

Prior to the court's determination of NER's summary judgment motions, on January 10, 2014, JME filed a motion for summary judgment on the claims contained in NER's third-party complaint. JME positioned its motion as dependent upon the outcome of NER's summary judgment motions against New Bern and Weaver Cooke. JME argued that the economic loss rule bars New Bern and Weaver Cooke's negligence claims against NER, warranting dismissal of such claims. Thus, JME asserted that if the court grants summary judgment in favor of NER as to New Bern and Weaver Cooke's claims, the court must also grant summary judgment in favor of JME and dismiss NER's negligence claim, as the underlying tort claims will have been dismissed.

In addition, at the June 2, 2014 hearing on its summary judgment motion, counsel for JME stated that not all of the negligence claims against NER would need to be dismissed in order to grant

---

[1] Although NER stated in its third-party complaint that JME "negligently installed multiple electrical conduits," counsel for NER stated at the June 2, 2014 hearing that NER is not pursuing a claim of direct negligence against JME, and is only asserting claims of indemnity and contribution based on the negligence claims pled against NER.

JME's motion.  According to JME, the court need only dismiss the negligence claims in connection with the August 2008 blowout, which JME argues are the only negligence claims NER refers to in its third-party complaint.  During the hearing, JME presented photographs relating to the August 2008 blowout for illustrative purposes in connection with its further argument that the August 2008 blowout only damaged the concrete slab where it occurred, and did not damage any other part of the Project.  At that hearing, NER did not specifically respond to JME's argument concerning limitation of its claims against JME to the August 2008 blowout, and neither New Bern nor Weaver Cooke responded to JME's motion in writing or at the hearing.  The court found, in the September 30, 2014 Order, that since NER's motions for summary judgment against New Bern and Weaver Cooke had been denied because there was an issue as to whether the economic loss rule applies, JME's motion must also be denied, because the liability asserted is derivative.

In the motion presently before the court, JME seeks reconsideration of the September 30, 2014 Order denying summary judgment.  According to JME, during the construction of the Project, there were five "blowouts" in post-tensioned concrete slabs, in which the concrete spalled and/or became fractured.  JME asserts that NER's claims in the third-party complaint against it are limited to a single blowout that occurred in August of 2008.  JME further argues that there is no evidence to suggest that NER's alleged negligence *with respect to the August 2008 blowout* caused damage to property other than that which was the subject matter of NER's contract.  JME therefore contends that New Bern and Weaver Cooke's negligence claims against NER *as to the August 2008 blowout* fail as a matter of law because they are barred by the economic loss rule.  JME further argues that as a result, NER's claims against JME are barred because those claims only arise out of the August 2008 blowout and are dependent upon an underlying negligence claim against NER.  Finally, JME

requests that the court allow briefing on the issue of whether NER may properly assert derivative

negligence claims against JME where NER has been sued under a theory of professional negligence

as a design professional.

NER filed a response agreeing with JME's assertion that the August 2008 blowout did not

cause damage to property other than that which was the subject of NER's contract, but counsel for

NER also noted at the hearing that the orders denying NER's summary judgment motions against

New Bern and Weaver Cooke did not deal with specifically or differentiate liability or damages

associated with the August 2008 blowout, which would be a necessary precursor to dismissal of

NER's claims against JME on that basis.   Furthermore, NER's response to JME's summary

judgment motion did not provide any arguments or materials supporting such differentiation.

## DISCUSSION

Although JME filed the motion to reconsider under Rules 59(e) and 60(b) of the Federal

Rules of Civil Procedure, the motion is governed by Rule 54 of the Federal Rules of Civil

Procedure.[2]  Rule 54(b) provides, in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the
> claims or the rights and liabilities of fewer than all the parties does not end the action
> as to any of the claims or parties and *may be revised at any time* before the entry of
> a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054 (emphasis added).  Thus, a Rule 54(b) motion is the

appropriate tool for seeking reconsideration of an interlocutory order, as it does not resolve all

claims against all parties.  Saint Annes Dev. Co., Inc. v. Trabich, 443 Fed. Appx. 829, 832 (4th Cir.

2011).  However, the grounds on which courts will grant reconsideration are fairly narrow, and

---

[2] Made applicable to this adversary proceeding by Rule 7054 of the Federal Rules of
Bankruptcy Procedure.

generally extend to only three scenarios: (1) an intervening change in controlling law; (2) additional, previously unavailable evidence; or (3) the prior decision was based on clear error or would work manifest injustice.  Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565-66 (M.D.N.C. 2005).  Rule 54(b) motions are appropriate tools to correct *manifest* errors of the court.  Henderson v. Clinton & Clinton, No. 5:13-CV-635-FL, 2014 WL 4055824, at *6 (E.D.N.C. Aug. 15, 2014).  The bases for reconsideration "'rarely arise and the motion to reconsider should be equally rare.'"  DIRECTV, INC. v. Hart, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).  Motions for reconsideration are not an avenue for movants to ask the court to rethink what it already thought through.  Henderson, No. 5:13-CV-635-FL, 2014 WL 4055824, at *6.

JME has not alleged an intervening change in the law or the emergence of previously unavailable evidence.  Thus, the issue is whether the September 30, 2014 Order is based on clear error or would work manifest injustice.  For reconsideration to be allowed on this basis, the prior decision cannot be "maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week old, unrefrigerated dead fish."  TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (citations omitted).  In other words, it must be "dead wrong."  Id.  JME essentially asserts that the court erred by considering whether all of the negligence claims against NER should be dismissed, instead of narrowing its focus to consider only the negligence claimed in connection with the August 2008 blowout, which JME argues is the sole basis for NER's claims against it.[3]  JME

---

[3] JME maintains that its potential liability is limited to the August 2008 blowout based on the allegation in NER's third-party complaint against it which reads, "[JME] negligently installed multiple electrical conduits in the slab at the location of **a** blowout."  Doc. 61-1 at ¶ 42.  NER did not dispute this characterization of its claim at the June 2, 2014 or January 20, 2015 hearings.

suggests that the court "could find a genuine issue of material fact as to whether NER's alleged negligence *with respect to the entire post-tension system* caused damaged to property other than that which was the subject matter of the contract, such as the pool deck and parking deck, and still dismiss NER's claims against JME if it finds that there is no genuine issue of material fact as to whether NER's alleged negligence *with respect to the **August 2008 blowout*** caused damage to property other than that which was the subject matter of the contract."  Doc. No. 1016, pg. 6-7.

In support of this argument, JME maintains that there is no evidence to suggest that the alleged negligence of NER with regard to the August 2008 blowout caused damage to any property other than the concrete slab itself, i.e., part of the property that was the subject matter of NER's contract.  JME maintains that NER presented deposition testimony to this effect in support of its summary judgment motions against New Bern and Weaver Cooke.  The main problem with JME's position is that it is being asserted for the very first time in a motion for reconsideration.  A careful review of the relevant pleadings leading up to the motion for reconsideration results in the inescapable conclusion that JME is attempting to either make a new argument or shore up an inartfully made old one.  This is reflected in the pleadings relating to JME's motion for summary judgment.

    1.   The Second Third-Party Complaint brought by NER against JME, *inter alia*.

The fourth cause of action, paragraphs 40 - 45, recites NER's allegations against JME. Simply put, they constitute causes of action for both indemnity and contribution and seek recovery from JME only if NER is found negligent for any damages alleged by Weaver Cooke or New Bern. NER alleges that "[JME] negligently installed multiple electrical conduits in the slab at the location of a blow out," but has clarified through argument of counsel that such allegation is merely intended

to support the indemnity and contribution causes of action, and not to assert a direct negligence claim.  Doc. No. 61-1 at ¶ 42.  NER does not identify the precise blowout to which it is referring, nor seek to highlight or direct the court to specifically evaluate the August 2008 blowout in any substantive manner, i.e., allege that the blowout had limited damages, for example.

2.   JME's Answer to NER's Third-Party Complaint.

In its answer, JME generally denies the relevant paragraphs of the third-party complaint (paragraphs 40 - 45), and asserts general affirmative defenses.  JME makes no attempt to highlight and distinguish the August 2008 blowout event or assert how the economic loss rule might specifically apply to any negligence claim made regarding it.  In fact, JME does not mention the economic loss rule in its answer at all.

3.   JME's Motion for Summary Judgment on NER's Third-Party Complaint.

JME moves for summary judgment on a derivative theory: It asserts that since Weaver Cooke and New Bern's claims of negligence against NER are barred by the economic loss rule, and NER's claims against it are based solely on indemnification and contribution, the claims against it should be similarly denied.  The summary judgment motion does not mention any substantive bases for relief, such as the lack of evidence of any ancillary damages as a result of the August 2008 blowout.  Additionally, although Exhibits A and B are attached to the motion, they are blank, and no other supporting documentation was tendered to the court in conjunction with the summary judgment motion.

4.   JME's Memorandum in Support of its Motion for Summary Judgment.

In its memorandum, JME argues that the economic loss rule bars Weaver Cooke and New Bern's negligence claims against NER, and because JME is only derivatively liable, NER's claims

10

against it are barred as well.  However, there is only one statement made in the memorandum directed at the substantive issue of whether the economic loss rule applies to the recovery sought against JME.  "In addition, there is no evidence to support the contention that any alleged actions or inactions by NER would qualify for any of the four limited exceptions to the general rule set forth in <u>Port Authority</u>."  Doc. No. 741, pg. 7.  No mention of the August 2008 blowout is made; no supporting affidavit or deposition transcripts are appended.  No direction to the court is given suggesting that it separately evaluate the economic loss rule vis à vis the August 2008 blowout.

Furthermore, the sole sentence contained in JME's summary judgment memorandum regarding the economic loss rule is simply insufficient for this court to make a finding *as a matter of law* that no exception to that rule applies to the claim asserted against NER regarding the August 2008 blowout – or any blowout.  Thus, the court is similarly constrained to make such a finding as to JME's liability.  JME had an obligation at the summary judgment pleading stage to set out with particularity the basis for its assertion that there is no genuine issue of material fact regarding ancillary damages as a result of the August 2008 blowout, and it failed to do so.  JME did attempt to make the argument at issue at the summary judgment hearing <u>for</u> <u>the</u> <u>first</u> <u>time</u> when it handed up photos related to the August 2008 blowout to the court for illustrative purposes.  However, because its liability is derivative of NER's liability to Weaver Cooke and New Bern, no party with an incentive to dispute its position as to ancillary damages flowing from the August 2008 blowout appeared at that hearing.  With only JME's unsupported allegations and NER's self-serving argument, summary judgment on that issue would be improper.

It is entirely possible that JME and NER will establish at trial that the August 2008 blowout did not cause damage to property outside of the subject contract, such that the economic loss rule

bars the tort claims brought by NER against JME.  However, the court simply cannot make that finding on the record as it currently stands.  There is a genuine issue of material fact as to whether New Bern and Weaver Cooke's claims of negligence against NER are barred by the economic loss rule and whether NER's claims against JME are similarly barred.  Accordingly, the court did not err in finding that because NER's motions for summary judgment on New Bern and Weaver Cooke's claims were denied, JME's motion for summary judgment against NER must also be denied, given that NER's claims against JME are pled only on a derivative basis.

Finally, the court declines to solicit briefs on the issue of whether a design professional may assert derivative claims of professional negligence, as requested by JME.  That issue could have been briefed or argued in conjunction with JME's summary judgment motion, but was not.  The court is not inclined to reopen the briefing process at this time.

Based on the foregoing, JME has not established any basis for reconsideration of the September 30, 2014 Order.  Accordingly, the motion is **DENIED.**

**END OF DOCUMENT**