IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-252-BR

| | |
|---|---|
| EAST CAROLINA MASONRY, INC., <br>     Appellant, <br><br> v. <br><br> WEAVER COOKE CONSTRUCTION, LLC, <br>     Appellee. | ORDER |

This matter is before the court on East Carolina Masonry, Inc.'s ("ECM") appeal from the 3 June 2014 and 28 May 2015 orders of United States Bankruptcy Judge Stephani W. Humrickhouse. The issues have been fully briefed and are ripe for disposition.

## I.   BACKGROUND

This dispute arises out of a real estate development project, a luxury condominium complex, in New Bern, North Carolina. Weaver Cooke Construction, LLC ("Weaver Cooke") served as the project's general contractor and subcontracted with ECM to install brick veneer on the exterior of the subject project and perform work related thereto. ECM completed its work on the project in September 2008. Sometime in 2008, Weaver Cooke became aware of water intrusion issues at the project.

In March 2009, New Bern Riverfront Development, LLC ("New Bern"), the project owner/developer, filed suit in state court against various parties, including Weaver Cooke and some subcontractors, based on the allegedly defective construction of the project. In November 2009, New Bern filed a petition for relief under Chapter 11 of the bankruptcy code, and shortly thereafter, the state court action was removed to this court and transferred to the Bankruptcy Court. New Bern later voluntarily dismissed the subcontractors from the action and filed its first

amended complaint. Weaver Cooke and others remained defendants and new parties were added. In May 2010, Weaver Cooke answered New Bern's first amended complaint and asserted third-party claims against certain parties, none of whom were subcontractors on the project.

In March 2012, New Bern served the report of its expert George Barbour (the "Barbour report") on ECM. That report identified a number of alleged construction defects, including some purportedly attributable to ECM's work. With leave of court, in June 2012, Weaver Cooke filed its second third-party complaint, asserting claims against numerous subcontractors, including ECM, for negligence, contractual indemnity, and breach of express warranty.

ECM filed a motion for summary judgment on all Weaver Cooke's claims. Of significance here, on 3 June 2014, Judge Humrickhouse denied the motion to the extent ECM relied on the statute of limitations as a bar to the claims of negligence and breach of express warranty. The bankruptcy court concluded that the applicable statute of limitations is three years under N.C. Gen. Stat. § 1-52 and that N.C. Gen. Stat. § 1-50(a)(5)f applies, such that Weaver Cooke's negligence and warranty claims did not accrue until the defects were or reasonably should have been discovered. Applying that latter statute, the court further concluded that "genuine issues of material fact exist as to whether Weaver Cooke knew or should have known about ECM's alleged defects more than three years prior to June 14, 2012, the filing date of Weaver Cooke's second, third-party complaint" and therefore denied ECM's motion for summary judgment on the statute of limitations defense.

ECM subsequently filed a motion for reconsideration and to amend the 3 June 2014 order. On 28 May 2015, and upon finding that ECM had not established a basis for the court to reconsider its prior ruling, the bankruptcy court denied the motion. The court also certified the order as final pursuant to Federal Rule of Civil Procedure 54(b) and recommended that this court

2

consider the order as final.  ECM filed a notice of appeal from the bankruptcy court's two orders and a motion for leave to appeal the orders.  Thereafter, this court certified the orders as final and accordingly concluded ECM's motion for leave to appeal was moot.

## II.     DISCUSSION

At the outset, the court must address the appropriate standard of review of the bankruptcy court's orders.  This proceeding is non-core.  (See 6/19/15 Order, DE # 5, at 1; 5/14/15 Order, DE # 3, at 5.)  In such a case, the bankruptcy court cannot enter final orders and must submit proposed findings of fact and conclusions of law to the district court, which then undertakes a *de novo* review of the factual findings and law to which a party objects.  28 U.S.C. § 157(c)(1); see also Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.), 190 F.3d 624, 630 (4th Cir. 1999).  However, if all parties to the non-core proceeding consent, the bankruptcy court may enter final orders.  28 U.S.C. § 157(c)(2).  If a party appeals such an order, the district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones, Inc.), 492 F.3d 242, 249 (4th Cir. 2007).  "Mixed questions of law and fact are also reviewed *de novo*."  Id. (citation omitted).

Here, ECM and Weaver Cooke expressly consented to the bankruptcy court's entry of final orders.  (5/14/15 Order, DE # 3, Ex. B.)  While all the parties in this proceeding have not so done, (see id. at 6 n.1 & Ex. B), all the parties by their conduct have knowingly and voluntarily impliedly consented to the bankruptcy court's entry of final orders, see Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1948 (2015) (recognizing that § 157 does not require express consent and implied consent is permissible provided it is knowing and voluntary); Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 403 (4th Cir. 1992) (holding that parties had impliedly consented to the bankruptcy court's entry of judgment by acquiescing to that court's order

3

regarding distribution of funds to extent it is a non-core matter). That conduct consists of failing to object to the bankruptcy court's 14 May 2015 order which was submitted as proposed findings of fact and conclusions of law regarding certification of the numerous summary judgment orders in the proceeding as final. Finding that all parties have consented to the bankruptcy court's entry of final orders, this court will employ a *de novo* review of the bankruptcy court's legal conclusions and mixed questions of law and facts and a clear error review of its factual findings.

"On summary judgment, in the bankruptcy court or on appeal, the same standard is employed." Edmond v. Consumer Prot. Div. (In re Edmond), 934 F.2d 1304, 1307 (4th Cir. 1991). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (internal quotation marks and citation omitted); see also Fed. R. Bank. P. 7056 (incorporating same standard for Federal Rule of Civil Procedure 56 in adversary proceedings).

> "Ordinarily, the bar of the statute of limitations is a mixed question of law and fact." *Yancey v. Watkins*, 17 N.C.App. 515, 519, 195 S.E.2d 89, 92, *cert. denied*, 283 N.C. 394, 196 S.E.2d 277 (1973). Only when "the law is properly pleaded and *all the facts with reference thereto are admitted* [does] the question of limitations become[ ] a matter of law." *Id.* (citations omitted) (emphasis in the original). On the other hand, "where the facts are in doubt or in dispute and there is any evidence sufficient to justify the inference that the cause of action is not barred, the trial court may not withdraw the case from the jury." *Solon Lodge v. Ionic Lodge*, 247 N.C. 310, 317, 101 S.E.2d 8, 13 (1957) (citing *Garrett v. Stadiem*, 220 N.C. 654, 18 S.E.2d 178 (1942), *Majette v. Hood, Com'r of Banks*, 208 N.C. 824, 179 S.E. 23 (1935), and *Fort Worth R.R. v. Hegwood*, 198 N.C. 309, 151 S.E. 641 (1930)); *see also Hatem v. Bryan*, 117 N.C.App. 722, 724, 453 S.E.2d 199, 201 (1995) (stating that, "[w]hen . . . the evidence is sufficient to support an inference that the limitations period has not expired, the issue should be submitted to the jury") (citations omitted); *Yancey*, 17 N.C.App. at 520, 195 S.E.2d at 93 (holding that the issue of whether the statute of limitations had expired was "properly submitted to

> the jury" when "all the facts with respect to the statute of limitations were not admitted and [ ] more than one inference could be drawn from the evidence"). Thus, in the event that any fact relating to the issue of whether Plaintiffs' claims were time-barred was subject to legitimate dispute, such a factual issue is properly submitted to the jury rather than being resolved during consideration of a summary judgment motion.

Williams v. Houses of Distinction, Inc., 714 S.E.2d 438, 442-43 (N.C. Ct. App. 2011) (alterations in original).

The first issue the court must consider is when Weaver Cooke's negligence and warranty claims accrued. The court begins its analysis with what the parties agree is the applicable statute of limitations, N.C. Gen. Stat. § 1-52. The pertinent provisions of that statute provide for a three-year period within which to commence an action "[u]pon a contract, obligation or liability arising out of a contract, express or implied," N.C. Gen. Stat. § 1-52(1), and an action "for any other injury to the person or rights of another, not arising on contract," id. § 1-52(5). Neither of these provisions set forth when the cause of action accrues. Normally, in such a case under North Carolina common law, the cause accrues when the wrong is complete. Mast v. Sapp, 53 S.E. 350, 352 (N.C. 1906). For breach of warranty actions, it is the time of breach, Schenkel & Shultz, Inc. v. Hermon F. Fox & Assoc., P.C., 636 S.E.2d 835, 839 (N.C. Ct. App. 2006), and for negligence actions, it is the time of the negligent act or omission, Land v. Neill Pontiac, Inc., 169 S.E.2d 537, 538 (N.C. Ct. App. 1969).

To avoid the sometimes harsh results of the common law, the legislature enacted discovery rules for accrual of certain actions involving latent injuries. Two such discovery rules are at issue here. According to ECM, if any discovery rule is applicable, it is the rule within the statute of repose for actions for bodily injury and property damage, N.C. Gen. Stat. § 1-52(16), which provides:

5

> *Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs.* Except as provided in G.S. 130A-26.3, no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

(emphasis added). However, ECM argues, under the circumstances here, it does not operate to delay accrual of Weaver Cooke's causes of action because Weaver Cooke is not claiming damage to its *own* property.

Weaver Cooke does not contend that § 1-52(16) delays the accrual of its claims. Rather, the discovery rule on which it relies, and which the bankruptcy court applied, falls within the statute of repose for actions based upon or arising out of the defective or unsafe condition of an improvement to real property. The pertinent provisions of that statute, N.C. Gen. Stat. § 1-50(a)(5), provide:

> a. No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.
> . . . .
> f. *This subdivision prescribes an outside limitation of six years from the later of the specific last act or omission or substantial completion, within which the limitations prescribed by G.S. 1-52 and 1-53 continue to run. For purposes of the three-year limitation prescribed by G.S. 1-52, a cause of action based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant.* However, as provided in this subdivision, no action may be brought more than six years from the later of the specific last act or omission or substantial completion.

(emphasis added).

The parties do not dispute that Weaver Cooke's action is "based upon or arising out of the defective or unsafe condition of an improvement to real estate," which includes "[a]ctions to

6

recover damages for breach of a contract to construct or repair an improvement to real property;" id. § 1-50(a)(5)b.1, "[a]ctions to recover damages for the negligent construction or repair of an improvement to real property;" id. § 1-50(a)(5)b.2, and "[a]ctions in contract or in tort or otherwise[,]" id. § 1-50(a)(5)b.5. Instead, their dispute centers on the applicability of the discovery rule in § 1-50(a)(5)f.

In determining whether that rule applies, the court looks to the plain language of the statute, which refers in two respects to § 1-52. First, it expressly sets forth that the limitations period in § 1-52 continues to run within the six-year repose period. Second, and more importantly, it delays accrual of real property improvement claims for latent damages until the damage becomes apparent, or ought reasonably to have become apparent, "[f]or purposes of the three-year limitation prescribed by G.S. 1-52." The referenced limitations period is the statute of limitations. By these references to § 1-52, and contrary to ECM's argument, the discovery rule of § 1-50(a)(5)f does not apply solely in the context of its concomitant statute of repose. Rather, that rule "operates in conjunction with [the three-year statute of limitations of §] 1-52," Oates v. Jag, Inc., 333 S.E.2d 222, 227 (N.C. 1985), see also RPR & Assocs. v. O'Brien/Atkins Assocs., P.A., 24 F. Supp. 2d 515, 523-24 (M.D.N.C. 1998) (applying § 1-50(a)(5)f to postpone accrual of statute of limitations in § 1-52(5)), and it applies to the exclusion of the discovery rule in § 1-52(16), see Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc., 444 S.E.2d 423, 427-28 (N.C. 1994) (holding that § 1-50(5)(a) (the predecessor to § 1-50(a)(5)a) provides the applicable statute of repose to the exclusion of the statute of repose in § 1-52(16) because "by providing in § 1-50(5)(g) (the predecessor to § 1-50(a)(5)g) that 'the six-year limitation prescribed by the subdivision applies to the exclusion of the limitation periods set forth in N.C.G.S. §§ 1-15(c), 1-

52(16), and 1-47(2),' the legislature intended that all other provisions of the real property improvement statute of repose apply exclusively to such claims").

ECM attempts to avoid this result by arguing that "claimant" in § 1-50(a)(5)f has the same meaning as "claimant" in § 1-52(16), i.e., the owner of the property, which of course Weaver Cooke is not. In support of its argument, ECM cites § 1-50(a)(5)f's reference to § 1-52 in setting forth when the claimant's cause of action accrues and contends that such reference means the legislature intended for "claimant" to have the identical meaning in the two statutes. If that were the case, however, there would be no need to set forth a separate discovery rule in § 1-50(a)(5)f. As noted above, the references in § 1-50(a)(5)f to § 1-52 are specifically to its three-year statute of limitations period for specified actions. Section 1-52(16) does not contain any statute of limitations. It contains a discovery rule and a ten-year statute of repose. Its discovery rule applies to the actions specified in the other sections of § 1-52 "[u]nless otherwise provided by law." N.C. Gen. Stat. § 1-52(16). Therefore, even though § 1-52's statute of limitations period applies to Weaver Cooke's negligence and breach of warranty claims, the accrual of those claims is otherwise provided by § 1-50(a)(5)f.

Finally, the court has considered the cases on which ECM primarily relies, Kaleel Builders, Inc. v. Ashby, 587 S.E.2d 470 (N.C. Ct. App. 2003), and Cape Fear Med. Ctr., L.L.C. v. S.K. Anderson Constr. Co., No. COA06-27, 2007 WL 1246421 (N.C. Ct. App. May 1, 2007) (unpublished). Both cases, like here, involve a general contractor claiming breach of contract and warranty against subcontractors regarding defective construction. In Kaleel, recognizing that those claims are governed by the three-year statute of limitations in § 1-52 and that they accrue at breach, the Court of Appeals held that the claims were time barred as the complaint was filed more than three years from the date construction stopped. 587 S.E.2d at 477. Relying

8

on Kaleel, the Court of Appeals held in Cape Fear that § 1-52's statute of limitations barred the general contractor's claims because it filed the complaint more than three years after the subcontractors had completed work under their respective contracts. 2007 WL 1246421, at *2-3. The court went on to reject the general contractor's argument that "the statutes of limitations did not accrue until the moisture intrusion became apparent or reasonably should have become apparent to" the general contractor. Id. at *4. The court found that § 1-52(16) did not apply to delay accrual as any damage which may have occurred was to the owner's property, not to the general contractor's. Id.

The court declines to read as much into these cases as ECM would have it. Neither case mentions § 1-50(a)(5)f. Discovery of when any damage occurred was not even at issue in Kaleel. The court finds more instructive the plain language of § 1-50(a)(5) and case law construing it.

Having found that § 1-50(a)(5)f applies, the court considers the next issue ECM raises on appeal. ECM argues that even with the benefit of a discovery rule, Weaver Cooke's negligence and warranty claims are time barred because Weaver Cooke was aware of water intrusion issues at the project in 2008, which put it on notice of its potential claims and which time is more than three years prior to filing its second third-party complaint. It is undisputed that Weaver Cooke became aware of water intrusion in 2008. Specifically, its field superintendent knew shortly after the beginning of 2008 that water was getting into the building, apparently when it rained. Further, prior to August 2008, its project manager was aware of water intrusion issues "'mainly having to do with joints at various locations . . . .'" (Appellant Br., DE # 70, at 27 (quoting Lloyd Dep.)[1].) He was also aware that, purportedly during this same period, water was entering

---

[1] The court was unable to locate the testimony cited in the record. Weaver Cooke does not dispute that ECM's quotation of the testimony is inaccurate.

9

the wall cavity of one unit from above "'and flowing down into the unit.'" (Id. at 28 (quoting Lloyd Dep.)[2].)

According to ECM, this knowledge related to water intrusion at the project started the running of the statute of limitations in 2008 as to Weaver Cooke's negligence and warranty claims. ECM relies significantly on the case of Pembee Mfg. Corp. v. Cape Fear Constr. Co., 329 S.E.2d 350 (N.C. 1985), in support of this position, and the case warrants close examination. In Pembee, the North Carolina Supreme Court examined whether a genuine issue of material fact existed as to whether the plaintiff, the owner of a manufacturing plant, knew or should reasonably have known of the defective condition of the plant's roof more than three years prior to filing suit against the defendants, the general contractor and others associated with the construction. In January 1973, construction was substantially completed. Id. at 352. Shortly thereafter, roof leaks appeared over power pipes at the plant. Id. From 1976 to April 1977, the president of the plaintiff had discussions with one of the defendants about those leaks as well as "at 'many spots' throughout the plant." Id. In April 1977, one defendant made some repairs to the roof. Id. In April 1980, the plaintiff hired a professional engineer to inspect the roof, which "inspection revealed evidence of 'blistering' throughout the entire roof, which resulted from the entrapment of moisture in the several layers of roofing material." Id. In November 1982, the plaintiff filed suit against the defendants for breach of contract, negligence, and unjust enrichment. Id. The trial court granted the defendants' motion for summary judgment based on the statute of limitations. Id.

Initially, the court recognized the applicable three-year limitations periods of N.C. Gen. Stat. § 1-52(1), (5) and that the discovery rule in § 1-52(16) (and its predecessor) modified the

---

[2] See supra n.1.

common law in the case of latent injuries. Id. at 353-54. "[A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run. It does not matter that further damage could occur; such further damage is only aggravation of the original injury." Id. at 354 (citation omitted). The court affirmed the trial court's granting of summary judgment in favor of the defendants, and its analysis is worth repeating.

> The plaintiff in this case first complained of leaks in the roof within two months after occupying its newly built facility. The undisputed facts show that further complaints about leaks in many spots in the roof were made over five consecutive months in 1976 and 1977. These complaints clearly show that plaintiff, although perhaps not aware of the extent of damage, knew that its roof was defective at least as early as April 1977. The statute of limitations does not require plaintiff to be a construction expert. However, it does require that plaintiff not sit on its rights. Plaintiff, knowing of the existence of leaks in the roof, was put on inquiry as to the nature and extent of the problem. Plaintiff failed to inform itself of the nature and extent of the roof's defects when leaks were discovered and recurred repeatedly. Viewing the evidence in a light most favorable to plaintiff, there is nothing in the record which would indicate that plaintiff was unaware that its roof was defective until a point in time within three years prior to filing suit.
>
> Plaintiff argues that a distinction should be made between the leaks in the roof and the blistering caused by entrapment of moisture, and that this distinction creates a material issue of fact. We reject this argument. Under N.C.G.S. § 1–52(16), as well as former N.C.G.S. § 1–15(b), as soon as plaintiff's injury became apparent, or ought reasonably to have become apparent, its cause of action accrued. Plaintiff's claim is based on the assertion that its roof is defective. Plaintiff clearly knew more than three years prior to bringing suit that it had a defective roof, yet took no legal action until the statute of limitations had run. The fact that further damage which plaintiff did not expect was discovered does not bring about a new cause of action, it merely aggravates the original injury.

Id. (citations omitted).

What is significant about Pembee is, based on the leaks in the roof, the plaintiff was aware that its roof was defective. Williams, 714 S.E.2d at 444. Simply noticing damage does not necessarily put a party on notice of construction defects. See id. at 445-46 (holding that the trial court should not have entered summary judgment in favor of the defendant contractor based

11

on the statute of limitations where the plaintiffs had observed on occasion water entering through a set of doors and a window and had been assured repairs had corrected the issue); see also Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC, 764 S.E.2d 203, 213-14 (N.C. Ct. App. 2014) (concluding that a genuine issue of material fact existed as to the accrual of the plaintiff's negligent construction claim where the plaintiff was aware of some flashing defects but was not aware of more extensive flashing issues throughout the community which caused serious water damage).

    In this case, the nature of the alleged defects made them difficult to discover. They were covered by the brick veneer. As such, water intrusion would not have necessarily put Weaver Cooke on notice of any defects associated with the brick veneer installation. Furthermore, as ECM recognizes, at least of the one of the alleged defects in ECM's work was structural and did not contribute to water intrusion. (See Appellant Br., DE # 70, at 29.) There is no suggestion that Weaver Cooke should have been on notice of any structural defects based on the fact of water intrusion. Based on the foregoing, a reasonable juror could conclude that Weaver Cooke was not aware, or would not reasonably have been aware, of the defects underlying its claims against ECM until it received the Barbour report in March 2012. Because Weaver Cooke filed its claims against ECM within three years of that date, the bankruptcy court did not err in denying ECM's motion for summary judgment based on the statute of limitations defense. Having so concluded, there is no reason to disturb the bankruptcy court's denial of ECM's motion for reconsideration of its earlier order.

The 3 June 2014 and 28 May 2015 orders of the bankruptcy court are AFFIRMED.

This 20 January 2016.

_____

W. Earl Britt

Senior U.S. District Judge