IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-537-BR

WEAVER COOKE CONSTRUCTION, LLC,
    Appellant,

v.                                                       ORDER

STOCK BUILDING SUPPLY, LLC,
    Appellee.

This matter is before the court on Weaver Cooke Construction, LLC's ("Weaver Cooke") appeal from the 22 August 2014 order of United States Bankruptcy Judge Stephani W. Humrickhouse. The issues have been fully briefed and are ripe for disposition.

This dispute arises out of a real estate development project, a luxury condominium complex, in New Bern, North Carolina. Weaver Cooke served as the project's general contractor and subcontracted with appellee Stock Building Supply, LLC ("Stock") for the purchase and installation of windows and exterior doors on the project.[1] In March 2009, New Bern Riverfront Development, LLC ("New Bern"), the project owner/developer, filed suit in state court against

---

[1] The bankruptcy court noted:
    The subcontract at issue ("Subcontract") originally was made between Weaver Cooke and Lee Window & Door Company ("Lee Window"). Lee Window executed the contract on October 16, 2006, and on that same day, the majority of its assets, including its ability and obligation to perform under the Subcontract, were purchased by Stock []. The Subcontract was executed by Weaver Cooke on October 23, 2006, at which point it became effective.
    On November 3, 2006, Lee Window changed its name to PLF of Sanford, Inc. In its answer to Weaver Cooke's third-party complaint, PLF asserted that it "did not perform under the contract and took no action relating to the contract, materials supplied or installation of the same." This assertion is uncontested and is accepted by the court as fact. Further, it is an undisputed fact that the Subcontract was assigned to/and or assumed by Stock [], and that Stock [] did in fact perform under the Subcontract.

(DE # 17-1, at 5-6 n.1 (citation omitted).) While Stock claims that it "provided materials and labor for the Project to Weaver Cooke based on work orders and invoices," (Br., DE # 46, at 8), it does not argue that the Subcontract is unenforceable against it because the Subcontract was not assigned to, or assumed by, it.

various parties, including Weaver Cooke and some subcontractors, based on the allegedly defective construction of the project. In November 2009, New Bern filed a petition for relief under Chapter 11 of the bankruptcy code, and shortly thereafter, the state court action was removed to this court and transferred to the Bankruptcy Court. In May 2010, Weaver Cooke asserted third-party claims against certain parties, none of whom were subcontractors on the project. With leave of court, in June 2012, Weaver Cooke filed its second third-party complaint, asserting claims against numerous subcontractors, including Stock, for negligence, contractual indemnity, and breach of express warranty.

Stock[2] filed a motion for summary judgment on all Weaver Cooke's claims. On 22 August 2014, the bankruptcy court granted the motion as to the indemnity claim. The bankruptcy court has certified this order as final, and this court has likewise done so.

Weaver Cooke seeks indemnification from Stock "under the provisions of Article 16 [of the Subcontract] in the event it was liable to [New Bern] for Stock's performance under the Subcontract." (Br., DE # 45, at 13 (citation omitted).) Those provisions read:

> 16.1    Subcontractor shall be responsible to Contractor for the acts and omissions of Subcontractor's employees, sub-subcontractors and their agents and employees, and other persons performing portions of Subcontractor's Work under a contract with Subcontractor.
> 16.2    To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than Subcontractor's Work itself) including loss of use resulting therefrom, if caused in whole or in part by the negligent acts or omissions of Subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or

---

[2] PLF of Sanford, Inc. jointly filed the motion with Stock. (Mot., DE # 22-4, at 61-66.) However, Weaver Cooke has appealed the bankruptcy court's ruling only as to Stock. (See Notice of Appeal, DE # 17.)

> obligations of indemnity, which would otherwise exist as to a party or person described in this Article.[3]

(DE # 22-4, at 130.)

The parties' dispute primarily centers on whether ¶ 16.2 violates N.C. Gen. Stat. § 22B-1, which provides in relevant part:

> Any promise or agreement in, or in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance or appliance, including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee, its independent contractors, agents, employees, or indemnitees, is against public policy and is void and unenforceable.

Weaver Cooke contends that no aspect of ¶ 16.2 violates this statute. Rather, it contends that, consistent with the statute, ¶ 16.2 obligates Stock to indemnify it for damages caused by Stock's negligence. Alternatively, it argues that even if ¶ 16.2 violates § 22B-1, the court may "blue pencil" any offending portions of the provision to make it enforceable. In response, Stock argues that ¶ 16.2 is invalid under § 22B-1 because it requires Stock to indemnify Weaver Cooke for damages caused by Weaver Cooke's own negligence. Stock also contends that "blue penciling" alters the indemnification provision does to require Stock to indemnify Weaver Cooke only if Stock alone is negligent, which Weaver Cooke does not allege.

"[I]nterpretation of a written contract is a question of law subject to *de novo* appellate review." <u>Scarborough v. Ridgeway</u>, 726 F.2d 132, 135 (4th Cir. 1984). Specifically with respect to contractual indemnity provisions,

> North Carolina courts have long upheld the validity and enforcement of indemnification provisions in contracts, whereby one party is required to reimburse another for claims paid to a third party. [Its] Supreme Court explained

---

[3] Article 16 contains an additional provision, ¶ 16.3; however, it is not at issue.

> the purpose of indemnity provisions, and [the] courts' role in interpreting these provisions, as follows:
>> An indemnity contract obligates the indemnitor to reimburse his indemnitee for loss suffered or to save him harmless from liability. [The] primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply. The court must construe the contract as a whole and an indemnity provision must be appraised in relation to all other provisions.

CSX Transp., Inc. v. City of Fayetteville, 785 S.E.2d 760, 763 (N.C. Ct. App. 2016) (quoting Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 658 S.E.2d 918, 921 (N.C. 2008)).

North Carolina General Statute § 22B-1 restricts a party's ability to indemnify itself in the construction setting. Under the statute, "any [construction indemnification] provision seeking to indemnify the promisee from its own negligence is void." Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co. of N.C., 548 S.E.2d 807, 810 (N.C. Ct. App. 2001). Simply put, "[t]he indemnity provisions to which G.S. § 22B-1 apply are those construction indemnity provisions which attempt to hold one party responsible for the negligence of another." Id. (quotation and citation omitted). However, the statute does not prohibit an indemnification provision which holds a party responsible for its own negligent acts. See N.C. Gen. Stat. § 22B-1 ("Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the *sole* negligence of the promisor, its agents or employees." (emphasis added)); Bridgestone/Firestone, 548 S.E.2d at 810-11; Int'l Paper Co. v. Corporex Constructors, Inc., 385 S.E.2d 553, 555 (N.C. Ct. App. 1989).

If a phrase or portion of an indemnification provision violates § 22B-1, the offensive language may be redacted and the remaining language enforced. See Vecellio & Grogan, Inc. v.

4

Piedmont Drilling & Blasting, Inc., 644 S.E.2d 16, 20-21 (N.C. Ct. App. 2007); Int'l Paper, 385 S.E.2d at 555.  However, "[b]y striking the offending language the Court [can]not rewrite the contract or substitute its own terms for those of the parties."  Int'l Paper, 385 S.E.2d at 555; see also Jackson v. Associated Scaffolders & Equip. Co., 568 S.E.2d 666, 668 (N.C. Ct. App. 2002) (recognizing an indemnification agreement cannot be enforced if severing the language which violates § 22B-1 would also require the court to add language).

Here, the bankruptcy court concluded that two portions of ¶ 16.2—the first, implicitly and the second, specifically—violate § 22B-1 because those portions "purport[] to hold Stock [] liable to Weaver Cooke for Weaver Cooke's own negligence," (DE # 17-1, at 11), and as such, the court excised those provisions as follows.

> To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than Subcontractor's Work itself) including loss of use resulting therefrom, *if caused in whole ~~or in part~~ by the negligent acts or omissions of Subcontractor*, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable~~, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder~~. . . .

(Id. (emphasis in original) ("[redacted]" omitted, strikethrough supplied).)  "Thus, upon revision by the court, Stock [] would be required to indemnify Weaver Cooke only for damages 'wholly' caused by Stock [] or its agents and employees."  (Id. (footnote omitted).)  The bankruptcy court then went on to conclude that, based on Weaver Cooke's own allegations and the evidence of record, Weaver Cooke cannot argue or establish that Stock is wholly responsible for the damages

5

for which it seeks indemnity and therefore granted summary judgment in favor of Stock on Weaver Cooke's indemnity claim.

The court assumes without deciding that the bankruptcy court properly concluded that the last clause of ¶ 16.2 quoted above, i.e., the "regardless of" clause, violates § 22B-1 and should be severed. See Int'l Paper, 385 S.E.2d at 555 (holding that the clause "regardless of whether or not it is caused in part by a party indemnified hereunder" in a similar indemnity provision "violates the provisions of G.S. § 22B-1" and severing that portion). The court, however, disagrees with the bankruptcy court's conclusion that the phrase limiting indemnification to claims, damages, losses, and expenses caused *in part* by the negligent acts of omissions or the subcontractor likewise violates § 22B-1. The statute does not preclude indemnification where one is being held responsible solely for one's own negligence even though other parties might have been negligent too. See N.C. Gen. Stat. § 22B-1 ("Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the *sole* negligence of the promisor, its agents or employees." (emphasis added)). When one reads the whole of ¶ 16.2 (with the last clause redacted), Stock agreed to indemnify Weaver Cooke only for damages arising out of Stock's performance of its work and caused by Stock's (or its agents) negligence. The provision does not purport to hold Stock responsible for the negligence of any other party and thus comports with § 22B-1 and does not bar indemnification if other parties were negligent.

Next, Weaver Cooke contends that the bankruptcy court erroneously concluded that ¶ 16.1 of the Subcontract "does not, in and of itself, require something more or different from Stock" than ¶ 16.2, (DE # 17-1, at 20). The court disagrees. For the reasons stated by the

bankruptcy court, (id. at 18-20), ¶ 16.1 does not provide an indemnity obligation independent of ¶ 16.2, and the court affirms as to this issue.

Finally, Weaver Cooke challenges the bankruptcy court's conclusion to award summary judgment to Stock on Weaver Cooke's indemnification claim on the alternative ground of contributory negligence. The bankruptcy court recognized, "'[I]f any other party failed to act reasonably prudent under the circumstances, and that negligence contributed to [Weaver Cooke's] loss, the indemnification provision does not apply.'" (Id. at 21 (quoting Associated Mech. Contractors, Inc. v. HDR Eng'g Inc. of the Carolinas, No. 97-2737, 1999 WL 253539, at *5 (4th Cir. 1999) (unpublished) (citing N.C. Gen. Stat. § 22B-1) (alterations in original)).) Relying on the evidence that multiple parties, including Weaver Cooke itself, contributed to the damages for which Weaver Cooke seeks indemnification, the bankruptcy court concluded Weaver Cooke could not seek indemnification from Stock as Stock did not "'wholly'" cause the damages at issue.

As recognized previously, neither § 22B-1 nor the Subcontract itself prohibits indemnification where parties in addition to the promisee/subcontractor are negligent. The Fourth Circuit's unpublished decision Associated Mechanical, on which the bankruptcy court relied, is not to the contrary. There, the court considered a provision which read that "'[t]he engineer hereby agrees to indemnify the owner for all claims arising *solely* from negligent acts, errors or omissions of the engineer in the performance of professional services under this Agreement.'" Associated Mech., 1999 WL 253539, at *5 (citation omitted) (alteration and emphasis in original). Based on this provision, the court stated that "[f]or [the assignee] to recover from its indemnification claim, [the assignee] must prove that [the engineer] breached a duty to the [owner] and that the breach was the sole cause of the [owner's] damages." Id. The

7

court ultimately concluded that the evidence showed that the engineer could not have been the sole cause of the damages, and therefore, the indemnification claim could not proceed and summary judgment in the assignee's favor was proper. Id.

Unlike in this case, there was no issue in Associated Mechanical as to whether the indemnification provision was unenforceable under § 22B-1. It was simply a matter of interpretation of the indemnification provision, which incidentally is different from the contested provision here, and review of the evidence. The provision in this case permits Weaver Cooke to recover in indemnification for damages arising out of Stock's performance of its work and caused by Stock's (or its agents) negligence, irrespective of whether other parties were negligent too and contributed to the damages. The bankruptcy court erred in concluding otherwise.

For the foregoing reasons, the 22 August 2014 order of the bankruptcy court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings.[4]

This 12 August 2016.

_____
W. Earl Britt
Senior U.S. District Judge

---

[4] Stock raises an alternative argument in support of affirming the bankruptcy court, that is, Stock did not engage in conduct that proximately caused property damage to the project. Although Stock raised this argument in support of its motion for summary judgment, the bankruptcy court did not address it. The court leaves it to the bankruptcy court to consider it, if necessary, in the first instance on remand. See Q Int'l Courier, Inc. v. Smoak, 441 F.3d 214, 220 n.3 (2006).