IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-145-BR

WATERPROOFING SPECIALTIES, INC.,
Appellant/Cross-Appellee,

v.                                                                              ORDER

WEAVER COOKE CONSTRUCTION, LLC,
Appellee/Cross-Appellant.

This matter is before the court on the appeals of Waterproofing Specialties, Inc. ("WSI")

and Weaver Cooke Construction, LLC ("Weaver Cooke") from the 13 March 2015 order of

United States Bankruptcy Judge Stephani W. Humrickhouse.  The issues have been fully briefed

and are ripe for disposition.

## I.  BACKGROUND

This dispute arises out of a real estate development project, a luxury condominium

complex, in New Bern, North Carolina.  Weaver Cooke served as the project's general contractor

and subcontracted with WSI.  "WSI was responsible for, among other things, installing and

applying concealed waterproofing, expansion joints and traffic coating[1] to the horizontal

concrete surfaces of the [] project, which included the Project's concrete balcony slabs and the

parking and pool decks."  (8/27/14 Order, DE # 79-1, at 5.)

In March 2009, New Bern Riverfront Development, LLC ("New Bern"), the project

owner/developer, filed suit in state court against various parties, including Weaver Cooke and

some subcontractors, based on the allegedly defective construction of the project.  In November

---

[1] "Traffic coating is a liquid waterproofing substance applied to exposed concrete in order to prevent water
penetration through the concrete and the attached structure."  (8/27/14 Order, DE # 79-1, at 8.)

2009, New Bern filed a petition for relief under Chapter 11 of the bankruptcy code, and shortly thereafter, the state court action was removed to this court and transferred to the Bankruptcy Court. New Bern later voluntarily dismissed the subcontractors from the action and filed its first amended complaint which alleges a number of construction defects. Weaver Cooke and others remained defendants and new parties were added. In May 2010, Weaver Cooke answered New Bern's first amended complaint and asserted third-party claims against certain parties, none of whom were subcontractors on the project.

With leave of court, in June 2012, New Bern filed its first supplemental complaint which incorporates by reference its first amended complaint and an attached "catalogue of issues" identified by its expert engineer George Barbour. (DE # 65-1, at 61-66.) Shortly thereafter, Weaver Cooke filed its second third-party complaint, asserting claims against numerous subcontractors, including WSI, for negligence, contractual indemnity, and breach of express warranty. Rather than detail the defects purportedly related to each subcontractor's work, Weaver Cooke referenced in, and attached to, its second third-party complaint New Bern's first amended complaint and New Bern's first supplemental complaint.

WSI subsequently filed a motion for summary judgment on all of Weaver Cooke's claims. On 27 August 2014, the bankruptcy court issued its first order on WSI's motion for summary judgment ("First Order"). It concluded that (1) the statute of limitations bars Weaver Cooke's negligence and breach of express warranty claims to the extent such claims are based on defects in sequencing (i.e., the order in which building materials are applied in relation to one another) related to WSI's application of traffic coating to concrete balconies and (2) "WSI is entitled to judgment as a matter of law on Weaver Cooke's negligence and breach of warranty claims to the extent that they relate to work performed by WSI on the parking and pool deck[s],"

2

(DE # 79-1, at 17).[2]  On 26 September 2014, the bankruptcy court issued a second order on

WSI's motion for summary judgment ("Second Order"), granting the motion on Weaver Cooke's

indemnity claim.[3]

At a subsequent hearing, according to both parties, the bankruptcy judge expressed some

uncertainty about whether these two prior orders resolved all issues between the parties.  WSI

then filed a motion "seeking clarification of whether any of the claims asserted against it by

[Weaver Cooke] are still pending, or whether all such claims were extinguished pursuant to the

court's previously entered summary judgment orders."  (3/13/15 Order, DE # 1-1, at 3.)  On 13

March 2015, the bankruptcy court disposed of this motion for clarification ("Clarification

Order"), and it is this order from which the parties appeal.

In the Clarification Order, the bankruptcy court first considered "whether all of Weaver

Cooke's claims arising out [of] concealed waterproofing issues have been resolved."  (Id. at 6.)

The bankruptcy court recognized that the First Order discussed sequencing defects associated

with traffic coating but failed to address sequencing defects associated with concealed

waterproofing.  The bankruptcy court stated it intended to include concealed waterproofing in

that discussion as the reasoning applies equally to the concealed waterproofing sequencing

defects on the ground floor balconies (of units 116, 118, and 120) and thus the statute of

limitations bars claims as to those defects.  The bankruptcy court recognized that its prior ruling

also dispensed with claims based on WSI's application of both traffic coating and concealed

waterproofing on the parking and pool decks because, as a matter of law, WSI's work on the

---

[2] Weaver Cooke appealed from this order.  This court affirmed on the grounds stated by the bankruptcy court.
Weaver Cooke Constr., LLC v. Waterproofing Specialties, Inc., No. 5:14-CV-524-BR, DE # 48 (E.D.N.C. June 16,
2016).  Weaver Cooke appealed from that order.  Id., DE # 50.  On New Bern's motion, the Fourth Circuit Court of
Appeals dismissed the appeal.  Id., DE # 54.
[3] Weaver Cooke appealed from this order.  This court reversed in part, remanding for further proceedings Weaver
Cooke's contractual indemnity claim based on ¶ 16.2 of the parties' subcontract.  Weaver Cooke Constr., LLC v.
Waterproofing Specialties, Inc., No. 5:14-CV-731-BR, DE # 43 (E.D.N.C. Aug. 15, 2016).

decks was not defective.  In sum, the bankruptcy concluded that the First Order "resolved all claims for negligence and breach of express warranty against WSI for alleged defects relating to the concealed waterproofing on the ground floor balconies, the parking decks and the pool decks."  (Id. at 7.)

 Turning to the Second Order, the bankruptcy court noted that it had found the indemnity provision between the parties unenforceable as to the sequencing defects (based on both traffic coating and concealed waterproofing) because multiple parties were responsible for the resulting damage.  It recognized that the same analysis applies to defects with the parking and pool decks, and that, at any rate, it had also found as a matter of law that WSI was not negligent as to its work on the decks; without negligence, WSI cannot be liable in indemnity to Weaver Cooke for damages.  Accordingly, the bankruptcy court concluded the indemnity claim, to the extent based on all traffic coating and concealed waterproofing defects, had been resolved.  Thus, the bankruptcy court ultimately determined that its prior summary judgment orders had in fact disposed of all Weaver Cooke's claims relating to concealed waterproofing.

Lastly in the Clarification Order, the bankruptcy court addressed Weaver Cooke's argument that it had asserted a claim against WSI based on WSI's expansion joint work and that the First and Second Orders did not resolve such claims.  The court found that Weaver Cooke's claims in fact encompassed expansion joint defects and that Weaver Cooke had not waived those claims in the course of opposing WSI's motion for summary judgment.  These claims were not addressed in the First and Second Orders.  Therefore, the bankruptcy court concluded that Weaver Cooke's claims for negligence, breach of warranty, and contractual indemnity based on WSI's expansion joint work remain and amended its prior orders "to the extent needed to clarify the remaining claims and issues involving WSI . . . ."  (Id. at 11.)

On 27 March 2015, Weaver Cooke filed a notice of appeal from the Clarification Order and a motion for leave to appeal, both of which were docketed in Case No. 5:15-CV-138-BR. On 1 April 2015, WSI filed its notice of appeal from the same order, which was docketed in the instant case.  On 14 May 2015, the bankruptcy court certified the Clarification Order as final. On 19 June 2015, this court certified the order as final and denied as moot Weaver Cooke's motion for leave to appeal.  Subsequently, the parties moved to consolidate the two cases on appeal.  This court allowed the motion and directed all future filings to be in the instant case.

## II.  DISCUSSION

Although WSI filed the motion for clarification under Rule 60(b) of the Federal Rules of Civil Procedure, the bankruptcy court considered it pursuant to Rule 54(b) because the orders at issue were interlocutory.  The granting of such a motion is committed to the lower court's discretion.  See Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515-16 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.  Said power is committed to the discretion of the district court . . . ." (citations omitted)).  The court reviews any of the bankruptcy court's legal conclusions and mixed questions of law and fact de novo and any of its factual findings for clear error.  See E. Carolina Masonry, Inc. v. Weaver Cooke Constr., LLC, No. 5:15-CV-252-BR, DE # 77, at 3-4 (E.D.N.C. Jan. 20, 2016).

A.    WSI's Appeal

On appeal, WSI contends that the bankruptcy court incorrectly concluded that Weaver Cooke had alleged claims related to WSI's expansion joint work and that Weaver Cooke had not waived those claims.  The court assumes, without deciding, that the bankruptcy court correctly

5

determined that Weaver Cooke's claims encompassed defects based on WSI's expansion joint work. Therefore, the issue this court must resolve is whether the bankruptcy court properly revisited its prior orders to conclude that Weaver Cooke had not waived claims based on those defects.

To resolve this issue, the court examines the parties' conduct relative to WSI's motion for summary judgment. In its motion, WSI sought dismissal of Weaver Cooke's second third-party complaint "in its entirety." (DE # 66-6, at 3.) In its brief supporting the motion, in the recitation of the facts, WSI stated that certain products it had installed "are not elements of this lawsuit, including expansion joints[.]" (DE # 67-1, at 4.) Immediately thereafter it continued, "This cause of action involves alleged defects of the concealed waterproofing and traffic coating installed by WSI." (Id.) WSI then highlighted the evidence pertaining to the concealed waterproofing and traffic coating. WSI's summary judgment arguments centered on defects purportedly related to its installation of the concealed waterproofing and traffic coating. (See, e.g., id. at 16 (asserting in support of its statute of limitations defense that "the only claim of improper work performed by WSI is related to the sequencing of the installation of the waterproofing products on the terrace, balconies and patios").) WSI did not make any argument specifically pertaining to its expansion joint work.

In its written response to the motion, in the facts section entitled "Improper Installation of Waterproofing and Traffic Coating," Weaver Cooke stated that it entered into a subcontract with WSI "for labor and materials for waterproofing, expansion joints and traffic coating on horizontal concrete surfaces at the . . . project . . . ." (DE # 73-1, at 3 (citation omitted).) It briefly explained what installation of each of these products entailed. Pertinent to expansion joints, it stated, "The expansion joint work of [WSI] involved the installation of materials to

6

bridge planned gaps constructed between structural concrete slabs to insure that water does not flow through the joints."  (Id.)  To the extent it discussed WSI's work, Weaver Cooke's argument in opposition to summary judgment focused on traffic coating and concealed waterproofing.  The only time Weaver Cooke mentioned expansion joints in its argument was in response to WSI's statute of limitations argument that Weaver Cooke was aware of water intrusion at the project.  Weaver Cooke's reference to expansion joints was to point out that some of the testimony on which WSI relied was "limited to potential water intrusion through expansion joints, not as a result of improperly sequenced traffic coating or waterproofing."  (Id. at 36.)

At the hearing on WSI's motion for summary judgment, "WSI again stated its contention that only two products were at issue:  concealed waterproofing and traffic coating." (Clarification Order, DE # 1-1, at 10.)  Weaver Cooke did not dispute that contention.  It was not until after (1) entry of the two summary judgment orders, (2) another hearing, and (3) WSI's filing of the motion for clarification did Weaver Cooke suggest that its claims also relate to WSI's expansion joint work.

In the Clarification Order, the bankruptcy court concluded that Weaver Cooke's silence in response to WSI's summary judgment assertions as to what defects were and were not at issue was justified because WSI did not meet its summary judgment burden in the first instance. Specifically, the bankruptcy court found because "WSI did not make a showing that there were no genuine factual issues regarding the expansion joints," Weaver Cooke was not obligated to raise anything about the expansion joints.  (Id.)  WSI contends this conclusion was in error.  The court agrees.

Weaver Cooke should not have remained silent if it disagreed with WSI's characterization of its (Weaver Cooke's) claims in dispute.  In support of its summary judgment motion, WSI made express representations as to its work with which Weaver Cooke took, and did not take, issue.  It made the representations not only in its brief but also at the hearing on the motion.  Weaver Cooke therefore had two opportunities to refute the representations.  If WSI was mistaken in its belief about the lack of potential liability for its expansion joint work, as Weaver Cooke contends, then Weaver Cooke was obligated to correct WSI's misapprehension, particularly when it knew that WSI sought dismissal of all Weaver Cooke's claims.  By remaining silent, Weaver Cooke implicitly agreed WSI's expansion joint work was not an issue and waived any argument to the contrary.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (recognizing that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned" and holding that where summary judgment movant asserted that non-movant's claims were based on oral agreements and in response non-movant did not suggest to the contrary, non-movant could not later argue on appeal a different basis for the claims); Alston v. Equifax Info. Servs., LLC, Civil Action No. TDC-13-1230, 2016 WL 5231708, at *9 (D. Md. Sept. 21, 2016) (holding that in connection with cross-motions for summary judgment, the substance of the plaintiff's motion and her "silence" in response to the defendant's characterization of her claims as being based on violations of specified statutory provisions established abandonment of claims based on other statutory provisions set forth in her complaint); Njema v. Wells Fargo Bank, N.A., 124 F. Supp. 3d 852, 867 (D. Minn. 2015) (recognizing that where the non-movant did not respond to the movant's statement in its summary judgment memorandum about the lack of damages flowing from its conduct, the non-movant waived any argument that he had incurred damages in connection with the claim).  For

8

this reason, the bankruptcy court abused its discretion in amending its prior orders to clarify that all Weaver Cooke's claims based on WSI's expansion joint work remain, and the court will reverse the Clarification Order to the extent it held those claims remain.

B. Weaver Cooke's Appeal

Weaver Cooke's appeal concerns the bankruptcy court's disposition of Weaver Cooke's claims related to WSI's installation of concealed waterproofing. Specifically, Weaver Cooke contends that the bankruptcy court erroneously failed to address WSI's concealed waterproofing work on the second floor balconies over habitable spaces or the pool courtyard (terrace) post-tension ("PT") slab and erred in its conclusion about WSI's concealed waterproofing work on the pool deck. It also argues that the bankruptcy court did not properly dispose of its indemnity claim to the extent the claim relates to concealed waterproofing in these three areas of the project.

*1. Second Floor Balconies and Pool Courtyard (Terrace) PT Slab*

First, Weaver Cooke points out that the Clarification Order failed to address WSI's installation of concealed waterproofing on the second floor balconies over habitable spaces, i.e., balconies of units 213, 217, 218, and 220, and on the pool courtyard (terrace) PT slab and argues that such failure was error. Relevant to the court's analysis of this issue is what the bankruptcy court addressed regarding the statute of limitations and sequencing defects in the First Order and how it applied its reasoning from this order in the Clarification Order.

In the First Order, the bankruptcy court explained that WSI applied traffic coating on the project's concrete balconies out of sequence to the installation of the brick veneer and the balcony sliding glass doors. The bankruptcy court reasoned, however, because Weaver Cooke created the construction schedule, Weaver Cooke was aware of the traffic coating sequencing

9

issue more than three years (the limitation period) prior to the filing of its second third-party complaint.  The court further concluded that standing water on the balconies and water intrusion through the exterior balcony doors caused Weaver Cooke to be aware (or it should have been aware) the sequencing of the application of the traffic coating was defective—at a time outside the limitation period—and thus the statute of limitations bars Weaver Cooke's negligence and breach of warranty claims in relation to the sequencing defects.  In reaching its conclusions, the court did not distinguish concrete balconies by unit or area of the project.

In the Clarification Order, the bankruptcy court recognized that the First Order "focuses specifically on sequencing defects relating to traffic coating[.]"  (DE # 1-1, at 6.)  It concluded that its earlier reasoning applied equally to sequencing defects associated with WSI's application of concealed waterproofing on the ground floor balconies, i.e., balconies of units 116, 118, and 120, because Weaver Cooke had scheduled the application of concealed waterproofing out of sequence, just as it had the traffic coating.  Additionally, it applied its findings about notice provided to Weaver Cooke by virtue of the standing water on the balconies and water intrusion to conclude that Weaver Cooke's negligence and breach of warranty claims based on concealed waterproofing sequencing defects on the ground floor balconies were time barred.  The bankruptcy court discussed concealed waterproofing only in relation to the ground floor balconies because concealed waterproofing was not applied to "elevated" balconies.  (Id. at 6 n.1.)  Therefore, Weaver Cooke is correct that the bankruptcy court did not discuss the application of concealed waterproofing and sequencing issues in any other areas of the project, namely the second floor balconies over habitable space and on the pool courtyard (terrace) PT slab.

Weaver Cooke did raise the issue before the bankruptcy court in response to WSI's motion for clarification, although not in the clearest of terms. On appeal, the parties debate whether the First Order's analysis should also apply to the sequencing defects associated with the concealed waterproofing applied to the second floor balconies over habitable space and on the pool courtyard (terrace) PT slab. The bankruptcy court is in a better position to address this issue in the first instance, and therefore, the court will remand the issue for the bankruptcy court's consideration.

### 2. Pool Deck

Regarding the area of the pool deck, Weaver Cooke argues that the First Order addressed only WSI's traffic coating work, not its installation of concealed waterproofing. Therefore, it contends, the bankruptcy court erroneously concluded in the Clarification Order that the First Order found that there were no genuine issues of material fact as to whether WSI's installation of concealed waterproofing on the pool deck was defective.[4] In support of this contention, Weaver Cooke claims (1) the evidence the bankruptcy court considered did not relate to concealed waterproofing on the pool deck and (2) the bankruptcy court failed to consider pertinent evidence from the report of expert George Barbour. To resolve the issue, the court examines the evidence before the bankruptcy court in making its initial summary judgment ruling.

In its first argument in support of its motion for summary judgment, WSI claimed that it and Weaver Cooke "agree that the leaks in the pool deck . . . are a result of underlying structural deficiencies causing cracks beyond the capability of the traffic coating and concealed waterproofing systems installed by WSI." (DE # 67-1, at 8.) WSI cited the testimony of experts Dean Penny, Barbour, and James Justus and Weaver Cooke's president, Dan Estes, in support of

---

[4] Weaver Cooke does not take issue with the bankruptcy court's conclusion about WSI's work on the parking deck.

this proposition and "request[ed] that it be granted judgment relating to the alleged . . . pool deck deficiencies." (Id. at 10.) In response, Weaver Cooke disagreed, citing the testimony of expert Skip Lewis and the report of another expert, Roger Stroud, to contend that "[t]he assertions by experts Lewis and Stroud create a genuine dispute of material fact as to whether the weatherproofing and traffic coating installed by [WSI] performed properly." (DE # 73-1, at 16.)

In the First Order, the bankruptcy court recounted the evidence cited by both WSI and Weaver Cooke, except Barbour's testimony on which WSI relied.[5] The court found that the testimony of Lewis and Stroud, the experts on which Weaver Cooke exclusively relied, was insufficient to establish causation and accordingly concluded "no genuine issue of material fact exists as to whether WSI's work on the . . . pool deck[] was defective." (First Order, DE # 79-1, at 17.) Therefore, summary judgment on Weaver Cooke's negligence and breach of warranty claims as to WSI's pool deck work was granted.

Weaver Cooke now points out that experts Penny and Justus, on whose testimony WSI relied in support of its motion for summary judgment, were addressing only structural issues causing cracks in the pool deck, not concealed waterproofing. It also claims that the testimony of experts Lewis and Stroud, on which it relied, was limited to traffic coating. In short, according to Weaver Cooke, "[n]one of the expert testimony reviewed by the Bankruptcy Court related to the performance of the concealed waterproofing on the pool deck." (DE # 92, at 43.) Weaver Cooke then cites to excerpts from expert Barbour's report related to concealed waterproofing on the pool deck and states that the bankruptcy court did not consider this evidence from Barbour's report.

---

[5] According to WSI, Barbour agrees that "WSI is 'off the hook' for cracking in the pool deck" and "that the underlying cracks are beyond the capabilities of a properly applied waterproofing system." (DE # 79-1, at 9 (citing Barbour report).)

Weaver Cooke is correct that the bankruptcy court did not consider this particular evidence from Barbour in reaching its conclusion about WSI's work on the pool deck. However, the bankruptcy court's failure to do so was not error. Weaver Cooke did not rely on that evidence in opposing summary judgment on the issue of concealed waterproofing on the pool deck. Rather, as previously noted, it only relied on evidence from experts Lewis and Stroud in responding to WSI's argument on this issue, and contrary to its representation now, it argued before the bankruptcy court that their testimony related to traffic coating **as well as** concealed waterproofing. Furthermore, Weaver Cooke never argued to the bankruptcy court that the expert testimony from Penny and Justus (on which WSI relied) should not be considered for purposes of summary judgment on concealed waterproofing. Because Weaver Cooke did not come forward with evidence from Barbour or contest the consideration of Penny's and Justus's testimony below, the court declines to consider that evidence or argument now,[6] see Weaver Cooke Constr., LLC v. Stock Bldg. Supply, LLC, No. 5:14-CV-475-BR, DE # 58, at 3-4 (E.D.N.C. May 16, 2016) (declining to consider new argument Weaver Cooke raised on appeal), and the bankruptcy court's conclusion regarding WSI's application of concealed waterproofing on the pool deck stands.

### 3. Indemnity

In the Clarification Order, the bankruptcy court applied its reasoning from the Second Order regarding indemnification. Specifically, the court stated:

> The scope of the Second Order, which evaluated Weaver Cooke's indemnity claims against WSI, similarly covered concealed waterproofing issues at the parking and pool decks, as well as the ground floor balconies. The Second Order granted WSI summary judgment on Weaver Cooke's indemnity claim as to

---

[6] The court emphasizes that the reason it is not considering the new evidence and argument Weaver Cooke raises in this appeal is Weaver Cooke's failure to raise it before the bankruptcy court. It is not because Weaver Cooke deferred argument on the issue in its earlier appeal. See Weaver Cooke Constr., LLC v. Waterproofing Specialties, Inc., No. 5:14-CV-524-BR, DE # 48, at 2 n.2 (E.D.N.C. June 16, 2016).

the balcony sequencing defects. The court found that the contractual indemnity clause was unenforceable as to alleged sequencing defects because it mandated indemnification regardless of whether WSI was solely at fault in violation of N.C. Gen Stat. § 22B-1. Since Weaver Cooke's allegations made clear that multiple parties were potentially responsible for damages caused by water intrusion, the indemnity provision was unenforceable as to the sequencing defects. While the court specifically highlighted balcony sequencing defects in denying Weaver Cooke's indemnity claim (which, as discussed above, was intended to cover both traffic coating and concealed waterproofing on the balconies), the same analysis applies to the alleged defects at the parking and pool decks. Weaver Cooke did not allege that the damages resulting from the pool and parking deck problems were solely caused by WSI. Additionally, the court already determined that there is no genuine issue of fact regarding whether WSI's work on the decks was defective. As such, WSI cannot be liable to Weaver Cooke under the indemnity provision, which itself requires that the damage be caused by the "negligent acts or omissions" of the subcontractor. Thus, the indemnity claims regarding all alleged concealed waterproofing and traffic coating defects have been resolved by the court's summary judgment motions.

(Clarification Order, DE # 1-1, at 8.)

As noted previously, this court reversed in part the Second Order, concluding that "neither N.C. Gen. Stat. § 22B-1 nor the contributing negligence of other parties precluded Weaver Cooke's indemnification claim against the subcontractor." Weaver Cooke Constr., LLC v. Waterproofing Specialties, Inc., No. 5:14-CV-731-BR, DE # 43, at 1 (E.D.N.C. Aug. 15, 2016) (citing Weaver Cooke Constr., LLC v. Stock Bldg. Supply, LLC, No. 5:14-CV-537-BR, DE # 53 (E.D.N.C. Aug. 12, 2016)). Therefore, it was error for the bankruptcy court to rely on reasoning that this court later rejected. However, to the extent Weaver Cooke seeks indemnification from WSI based on WSI's work on the pool deck, the court agrees with the bankruptcy court that indemnification is not proper. The pertinent indemnification provision "requires that the damage be caused by the 'negligent acts or omissions' of the subcontractor." (Clarification Order, DE # 1-1, at 8.) The bankruptcy court concluded as a matter of law that WSI's work on the pool deck was not defective, i.e., it was not negligent. Therefore, in the

14

absence of negligence, the bankruptcy court correctly determined that Weaver Cooke's indemnity claim based on WSI's pool deck work cannot survive.

### III.  CONCLUSION

The bankruptcy court's 13 March 2015 order is AFFIRMED IN PART and REVERSED IN PART.  The case is REMANDED for further proceedings consistent with this order and Weaver Cooke Constr., LLC v. Waterproofing Specialties, Inc., No. 5:14-CV-731-BR, DE # 43, (E.D.N.C. Aug. 15, 2016).

This 4 January 2017.

_____

W. Earl Britt

Senior U.S. District Judge