IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-709-BR

WEAVER COOKE CONSTRUCTION, LLC,
    Appellant,

v.

RANDOLPH STAIR AND RAIL COMPANY,
    Appellee.

ORDER

      This matter is before the court on Weaver Cooke Construction, LLC's ("Weaver Cooke") appeal from the 19 September 2014 order of United States Bankruptcy Judge Stephani W. Humrickhouse. The issues have been fully briefed and are ripe for disposition.

### I. BACKGROUND[1]

      This dispute arises out of the construction a real estate development project, a luxury condominium complex, in New Bern, North Carolina. Weaver Cooke served as the project's general contractor. It subcontracted with appellee Randolph Stair and Rail Company ("Randolph Stair") to furnish and install the floor line relief angles (also referred to as shelf angles) at the project. "'Shelf angles are steel angles that resemble the shape of a capital 'L' and are attached to a building's floor slabs and integrated into the brick veneer to provide both support for the load of the brick veneer and to allow for a gap, or space, between the building and the brick

---

[1] For a more extensive factual and procedural background, see E. Carolina Masonry, Inc. v. Weaver Cooke Constr., LLC, No. 5:15-CV-252-BR, DE # 77 (E.D.N.C. Jan. 20, 2016).

veneer.'"  Randolph Stair & Rail Co. v. Weaver Cooke Constr., LLC, No. 5:15-CV-254-BR, DE # 54, at 1 n.1 (E.D.N.C. June 28, 2016) (quoting 8/27/14 Order, DE # 1-1, at 7).

After the project owner/developer filed suit against Weaver Cooke based on the allegedly defective construction of the project, Weaver Cooke asserted claims for negligence, contractual indemnity, and breach of express warranty against Randolph Stair.  The claims arise out of shelf angles allegedly missing from areas of the project, resulting in structural deficiencies in the brick veneer.

On 19 September 2014, the bankruptcy court granted Randolph Stair's motion for summary judgment on Weaver Cooke's negligence claim.  Applying the economic loss rule, the bankruptcy court concluded that no exception to the rule applied, and therefore, Weaver Cooke's negligence claim was barred.

In October 2014, Weaver Cooke filed a motion for leave to appeal from this interlocutory order, which this court denied.  In May 2015, the bankruptcy court certified the 19 September 2014 order as final pursuant to Federal Rule of Civil Procedure 54(b) and recommended that this court reconsider Weaver Cooke's motion for leave to appeal as a motion for leave to appeal a final order.  Thereafter, this court certified the 19 September 2014 order as final and directed the Clerk to reopen this action to allow the appeal to proceed.

## II.  DISCUSSION

Sitting as an appellate court, this court will review *de novo* the bankruptcy court's legal conclusions and mixed questions of law and facts and will review for clear error its factual findings.  See E. Carolina Masonry, Inc., DE # 77, at 3-4.  The court also reviews *de novo* the bankruptcy court's order granting summary judgment. See Nader v. Blair, 549 F.3d 953, 958

(4th Cir. 2008). Summary judgment is properly granted if there is no genuine issue of material fact and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Resolution of this appeal turns on whether the economic loss rule under North Carolina law applies.

> North Carolina's economic loss doctrine provides that a breach of contract does not ordinarily "give rise to a tort action by the promisee against the promisor." More specifically, it "prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk." In cases arising out of the sale of failed goods, the economic loss doctrine thus bars "recovery for purely economic loss in tort, as such claims are instead governed by contract law."
> While it originated out of the law of products liability, North Carolina's economic loss doctrine is based upon broad principles. The rationale for the rule is that "parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective" and that "[t]o give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract." The economic loss doctrine thus "encourages contracting parties to allocate risks for economic loss themselves, because the promisee has the best opportunity to bargain for coverage of that risk or of faulty workmanship by the promisor."

Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (citations omitted).

There are circumstances where this doctrine does not bar a tort claim against the promisor even though the terms of a contract governs the parties' relationship. Pertinent here is the scenario where there is damage to property other than that property which was the subject of the contract. See N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 82 (1978). The contract between Weaver Cooke and Randolph Stair was for the furnishing and installation of the project's shelf angles. As Weaver Cooke itself acknowledges, those "shelf angles were to integrate with the brick veneer installed by [another subcontractor]." (Weaver Cooke's Mem. Resp. Randolph Stair's Mot. Summ. J., DE # 25-6, at 35.) With such integration, "[a]ny defect in the installation of shelf angles would necessarily affect the brick veneer." (9/19/14 Order, DE

3

# 1-2, at 7.) Therefore, the brick veneer was within the subject of the contract, and recovery in tort for damages to it are economic loss and barred. See Severn Peanut, 807 F.3d at 94-95 (holding that the peanuts and storage dome damaged by a fire resulting from the misapplication of pesticide were not "'other property' outside of the contract" to apply pesticide where the pesticide, peanuts, and dome were "at the relevant times both contractually and practically bound up together").

Relying exclusively on the expert report of George Barbour, Weaver Cooke argues that there is damage to property other than the brick veneer. Specifically, Weaver Cooke claims, the omission of the shelf angles resulted in "damage to the post tension [("PT")] concrete slabs at each floor level, as well as providing a source of water intrusion." (Br., DE # 38, at 17.) The portion of Barbour's report on which Weaver Cooke relies provides in relevant part:

> Issues of concern related to this construction defect include the following:
>   1. Formation of cracks in the brick veneer at discontinuous edges of shelf angles and at balcony slabs as a result of normal concrete structure shortening or shrinkage and normal brick veneer expansion, as a result of the discontinuities caused by the variance in supported height.
>   . . . .
>   3. Load distribution to the PT concrete perimeter slab edges may not be consistent with assumptions made by the PT engineers
>   4. The resulting discontinuous nature of the Tyvek as discussed in section 1.1 – Weather Resistive Barrier and Related Flashings

(DE # 25-6, at 129.) The one thing that is clear from this excerpt is the omission of the shelf angles caused cracks to form in the brick veneer at certain locations. That the defect resulted in damage to the PT concrete slabs and water intrusion is not evident. In fact, Weaver Cooke represented in its response to Randolph Stair's motion for summary judgment that "[t]he failure to install all of the shelf angles . . . has nothing to do with water intrusion." (DE # 25-6, at 37.) Without more definitive evidence of damage to property other than the brick veneer, the

4

economic loss rule bars Weaver Cooke's negligence claim, and the bankruptcy court did not err in granting summary judgment to Randolph Stair on this issue.

### III. CONCLUSION

The bankruptcy court's 19 September 2014 order is AFFIRMED.

This 7 February 2017.

_____

W. Earl Britt

Senior U.S. District Judge