IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-710-BR

WEAVER COOKE CONSTRUCTION, LLC,
    Appellant/Cross-Appellee,

v.

EAST CAROLINA MASONRY, INC.,
    Appellee/Cross-Appellant.

ORDER

    This matter is before the court on the parties' appeals from the 19 September 2014 order of United States Bankruptcy Judge Stephani W. Humrickhouse. The issues have been fully briefed and are ripe for disposition.

## I. BACKGROUND[1]

    This dispute arises out of the construction of a real estate development project, a luxury condominium complex, in New Bern, North Carolina. Appellant/cross-appellee Weaver Cooke Construction, LLC ("Weaver Cooke") served as the project's general contractor. It subcontracted with appellee/cross-appellant East Carolina Masonry, Inc. ("ECM") to install brick veneer on the exterior of the subject project and perform work related thereto. After New Bern Riverfront Development, LLC ("New Bern"), the project owner/developer, filed suit against Weaver Cooke based on the allegedly defective construction of the project, Weaver Cooke

---

[1] For a more extensive factual and procedural background, see E. Carolina Masonry, Inc. v. Weaver Cooke Constr., LLC, No. 5:15-CV-252-BR, DE # 77 (E.D.N.C. Jan. 20, 2016).

asserted claims for negligence, contractual indemnity, and breach of express warranty against ECM.

> Weaver Cooke claims that ECM's work was defective in the following ways: ECM failed to install an adequate number of brick ties; failed to sufficiently seal and integrate through-wall [sic] flashing with other building components; failed to install adequate mortar netting; failed to leave airspace or insert a compressible filler material between bricks and the shelf angles in order to allow for expansion of the brick veneer; and improperly installed brick veneer where shelf angles were missing.

(9/19/14 Order, DE # 20-1, at 7.)

On 19 September 2014, the bankruptcy court granted in part ECM's motion for summary judgment on Weaver Cooke's negligence claim. As to the brick tie, airspace/compressible filler, and installation of brick veneer defects, the bankruptcy court concluded that those defects caused damage constituting economic loss, and therefore, "Weaver Cooke's negligence cause of action related to those defects is barred . . . ." (Id. at 8.) Regarding the other alleged defects with ECM's work, the bankruptcy court concluded the economic loss rule did not apply.

In October 2014, Weaver Cooke filed a motion for leave to appeal from this interlocutory order, which this court denied. In May 2015, the bankruptcy court certified the 19 September 2014 order as final pursuant to Federal Rule of Civil Procedure 54(b) and recommended that this court reconsider Weaver Cooke's motion for leave to appeal as a motion for leave to appeal a final order. Thereafter, this court certified the 19 September 2014 order as final and directed the Clerk to reopen this action to allow the appeal to proceed.

## II. DISCUSSION

Sitting as an appellate court, this court will review *de novo* the bankruptcy court's legal conclusions and mixed questions of law and facts and will review for clear error its factual findings. See E. Carolina Masonry, Inc., DE # 77, at 3-4. The court also reviews *de novo* the

2

bankruptcy court's order disposing of the summary judgment motion.  See Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008).  Summary judgment is properly granted if there is no genuine issue of material fact and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Resolution of the parties' appeals turns on the application of the economic loss rule under North Carolina law.

> North Carolina's economic loss doctrine provides that a breach of contract does not ordinarily "give rise to a tort action by the promisee against the promisor."  More specifically, it "prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk."   In cases arising out of the sale of failed goods, the economic loss doctrine thus bars "recovery for purely economic loss in tort, as such claims are instead governed by contract law."
> While it originated out of the law of products liability, North Carolina's economic loss doctrine is based upon broad principles. The rationale for the rule is that "parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective" and that "[t]o give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract."  The economic loss doctrine thus "encourages contracting parties to allocate risks for economic loss themselves, because the promisee has the best opportunity to bargain for coverage of that risk or of faulty workmanship by the promisor."

Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (citations omitted).

There are circumstances where this doctrine does not bar a tort claim against the promisor even though a contract between the parties exists.  Pertinent here is the scenario where there is damage to property other than that property which was the subject of the contract.  See N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 82 (1978).

The court first considers Weaver Cooke's appeal.  The bankruptcy court granted summary judgment in favor of ECM on Weaver Cooke's negligence claim as to the brick tie, airspace/compressible filler, and installation defects.  It characterized these defects as "'structural

3

defects'" based on Weaver Cooke's allegation that the defects "are structural in nature and have nothing to do with water intrusion." (9/19/14 Order, DE # 20-1, at 7; see also Weaver Cooke's Mem. Resp. ECM's Mot. Summ. J., DE # 28-2, at 38 ("The failure to install all of the brick ties, the failure to leave airspace or insert compressible filler, and ECM's installation of brick veneer where shelf angles were missing are structural in nature and have nothing to do with water intrusion.").) Recognizing that "Weaver Cooke has alleged that these defects have rendered the brick veneers structurally unsound and seeks damages related to the reconstruction of the brick veneers," the bankruptcy court reasoned these damages "only relate to property which was the subject of [Weaver Cooke's] contract with ECM," (9/19/14 Order, DE # 20-1, at 8), i.e., economic loss. Thus, it concluded Weaver Cooke's negligence claim as to the structural defects could not survive. On appeal, Weaver Cooke contends that this conclusion was error because the structural defects with ECM's work also damaged work or property other than that which was the subject of ECM's subcontract.

First, Weaver Cooke argues that the airspace/compressible filler and installation of brick veneer defects "contribute[d] to water intrusion and potential mold problems inside the residential units and the common areas." (Weaver Cooke's Br., DE # 41, at 18.) Setting aside the fact that this argument contradicts Weaver Cooke's representation before the bankruptcy court that these defects were structural and did not relate to water intrusion, the evidence does not support this argument. Weaver Cooke cites to the portion of the expert report of George Barbour in which he comments on a photograph taken of a location at the project where "[b]rick is mortared to the top of a relief angle."[2] (DE # 26-4, at 151.) The expert notes, "Unsealed cavity under relief angle susceptible to water infiltration." (Id.) This notation says nothing about

---

[2] Shelf angles are also referred to as relief angles.

4

residential units or common areas, let alone that any damage to those areas actually occurred as a result of the cavity being unsealed. Weaver Cooke has not pointed to any evidence indicating damage beyond that relating to the reconstruction of the brick veneer. In the absence of such evidence, the bankruptcy court correctly applied the economic loss rule to bar Weaver Cooke's negligence claim as to the airspace/compressible filler and brick veneer installation defects.

Second, Weaver Cooke argues that ECM's alleged failure to install an adequate number of brick ties to attach the brick veneer to the structure also presents a claim for damages to parts of the project other than property which was the subject of ECM's subcontract. Specifically, it asserts that this defect, when combined with the "forces created by" the airspace/compressible filler and installation defects, "can cause the brick veneer to bow, leading to a potential catastrophic collapse of whole sections of brick veneer walls, resulting in damage or injury to people and property in its path, as well as the obliteration of the doors, windows, metal stud framing, building wrap, sheathing and countless other items of work performed by other subcontractors." (Weaver Cooke's Br., DE # 41, at 24.) This damage concerns nothing more than the structural unsoundness of the brick veneer. There is no evidence that the brick veneer has in fact collapsed and damaged any person or other property. Accordingly, the damage resulting from ECM's alleged failure to install an adequate number of brick ties is economic loss, and the bankruptcy court correctly concluded that Weaver Cooke cannot recover in negligence for this harm.

Having concluded Weaver Cooke cannot pursue its negligence claim for damages attributable to any of the structural defects, the court turns to ECM's appeal. Its appeal concerns that portion of the bankruptcy court's order denying its motion for summary judgment on Weaver Cooke's negligence claim relating to ECM's alleged failure to sufficiently seal and

5

integrate thru-wall flashing and failure to install adequate mortar netting. The bankruptcy court concluded that the economic loss rule did not bar damages associated with these defects because the defects caused damage to "other" property, namely, the interior of condominium units and common areas. ECM argues that the bankruptcy court should have applied the economic loss rule in spite of the fact these alleged damages relate to property outside the specific work of ECM. The court agrees.

In determining whether the economic loss rule should apply as to the remainder of Weaver Cooke's negligence claim, the decision in Severn Peanut Co. v. Industrial Fumigant Co., 807 F.3d 88 (4th Cir. 2015), is instructive. There, plaintiff Severn Peanut Co. ("Severn") and defendant Industrial Fumigant Co. ("IFC") had entered into an agreement for IFC to apply pesticide, which excluded recovery of consequential damages to Severn's "'property, product, equipment, downtime, or loss of business.'" Severn, 807 F.3d at 89 (citation omitted). IFC dumped the pesticide into Severn's peanut dome. Id. at 90. A fire and explosion occurred, destroying the peanuts and causing structural damage to the peanut dome. Id. "According to Severn, IFC's improper application of [the pesticide] caused the fire and explosion," and Severn sued IFC for negligence and negligence per se (as well as breach of contract), seeking recovery for the value of the peanuts, lost business income, damage to the peanut dome, and associated costs. Id.

Applying the principles of North Carolina's economic loss doctrine, the court concluded that Severn's negligence claims did not survive summary judgment. Id. at 94. In rejecting Severn's argument that economic loss did not occur because "'other property' outside of the contract" was damaged, the court stated:

> The contract was for the treatment of "commodities and/or space," and it
> specified that this included Severn's "1,976,503 [c]ubic [f]eet" of peanuts and its

6

> Severn, North Carolina peanut dome. Severn's complaint in turn acknowledges that the Fumitoxin tablets were placed within the dome and among the peanuts. The pesticide which allegedly caused the fire and the peanuts and dome which that fire allegedly destroyed were therefore at the relevant times both contractually and practically bound up together.

Id. at 95 (citation omitted).

Here, as discussed above, ECM's subcontract related to installation of the brick veneer at the project. However, ECM's subcontract and work thereunder cannot be considered in isolation from other aspects of the project. ECM's subcontract was directly tied to the general contract between New Bern and Weaver Cooke and the work of other subcontractors. The subcontract defined ECM's work as the masonry construction portion of the general contract and required ECM to complete its work in accordance with the plans and specifications for the project. In addition, the subcontract required ECM to coordinate its work with Weaver Cooke to avoid interfering with other subcontractors' work. Similarly, ECM was obligated to take precautions to protect other subcontractors' work from damage caused by its work. Regarding the physical aspect of ECM's work, it "was to be integrated with the work of other subcontractors." (Weaver Cooke's Mem. Resp. ECM's Mot. Summ. J., DE # 28-2, at 35.) It was thus within the contemplation of the parties, at the time of contracting, that defects in ECM's work could result in damage to property other than the masonry construction that ECM undertook.

Given the relationship of ECM's subcontract to the general contract for the project and given the nature of ECM's work, the court concludes that the damages Weaver Cooke seeks in negligence from ECM are to property that was the subject of the subcontract. Accordingly, such damages are considered economic loss, and the court reverses the bankruptcy court as to this part of its order. ECM is entitled to summary judgment on the entirety of Weave Cooke's negligence claim.

### III.  CONCLUSION

The bankruptcy court's 19 September 2014 order is AFFIRMED IN PART and REVERSED IN PART.  This matter is REMANDED with direction to the bankruptcy court to enter summary judgment in ECM'S favor on Weaver Cooke's negligence claim.

This 17 March 2017.

_____

W. Earl Britt

Senior U.S. District Judge