**SO ORDERED.**

**SIGNED this 26 day of June, 2018.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-10340-8-SWH |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | |
|     DEBTOR | |
| | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | ADVERSARY PROCEEDING NO. |
|     Plaintiff, | 10-00023-AP |
|     v. | |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC., | ORDER ON REMAND REGARDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST EAST CAROLINA MASONRY, INC. |
|     Defendants, | |
|     and | |
| WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
|     Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
|     v. | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURRENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**

      **Crossclaimants, Counterclaimants and Third-Party Defendants.**

      **and**

**NATIONAL ERECTORS REBAR, INC.**
      **Defendant, Counterclaimant, Crossclaimant and Third-Party Plaintiff,**

      **v.**

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**
      **Third-Party Defendants.**

      **and**

**J. DAVIS ARCHITECTS, PLLC,**

2

  **Third-Party Plaintiff,**

  v.

**MCKIM & CREED, P.A.,**
  **Third-Party Defendant.**

  **and**

**GOURAS, INC.,**
  **Third-Party Defendant and**
  **Fourth-Party Plaintiff,**

  v.

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
  **Fourth-Party Defendants.**

  **and**

**STOCK BUILDING SUPPLY, LLC,**
  **Third-Party Defendant and**
  **Fourth-Party Plaintiff,**

  v.

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
  **Fourth-Party Defendant.**

### ORDER ON REMAND REGARDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST EAST CAROLINA MASONRY, INC.

The matter before the court is the district court's remand after appeal of this court's order allowing summary judgment for third-party defendant East Carolina Masonry, Inc. ("ECM") against Weaver Cooke Construction, LLC ("Weaver Cooke") on Weaver Cooke's contractual indemnity

claim. For the reasons outlined below, on remand, ECM's motion for summary judgment on this claim will be allowed.

## BACKGROUND AND PROCEDURAL POSTURE

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of SkySail Luxury Condominiums ("SkySail Project") in New Bern, North Carolina. Weaver Cooke served as the SkySail Project's general contractor, and ECM as the subcontractor who installed brick veneers on the project's exterior walls. New Bern filed a state court action against Weaver Cooke and others in March 2009, and filed a petition for relief under Chapter 11 of the Bankruptcy Code in November 2009. The state court action was removed to the United States District Court for the Eastern District of North Carolina, and subsequently transferred to this court.

With leave of court, Weaver Cooke filed its second third-party complaint on June 14, 2012, asserting claims of negligence, contractual indemnity, and breach of express warranty against many of the subcontractors hired during construction of the SkySail Project, including ECM. In December 2013, many third-party defendants, including ECM as well as third-party defendant Stock Building Supply ("Stock Supply"), filed motions for summary judgment on Weaver-Cooke's claims. ECM filed its motion on December 20, 2013, seeking summary judgment with respect to all three of Weaver Cooke's claims against it. The court ruled on these motions by entering groups of orders pertaining to each of these three primary claims, and, with respect to its order on contractual indemnity, designated the Stock Supply order as the "lead order." On August 22, 2014, the court entered an order granting summary judgment in favor of Stock Supply on the indemnity claim,

4

which was Weaver Cooke's only remaining claim against Stock.[1]  (D.E. 898, the "Stock Indemnity Order").

The court subsequently entered orders on summary judgment for other third-party defendants (collectively, the "Related Orders"), including ECM, allowing summary judgment in whole or part on many of the same bases as in the Stock Indemnity Order.  That order, and the Related Orders, were certified as final by both this court and the district court for purposes of appeal.  In an order entered on August 12, 2016, the district court affirmed the Stock Indemnity Order in part, reversed in part, and remanded for further proceedings. (D.E. 1326, the "District Court Stock Indemnity Order")  The district court decided the appeals of the Related Orders on a similar basis, including Weaver Cooke's appeal of this court's order allowing summary judgment for ECM on the indemnity claim.[2]  (D.E. 954, the "ECM Indemnity Order")  As to the ECM Indemnity Order, the district court

---

[1] The court granted summary judgment in favor of Stock Supply on the negligence and breach of express warranty claims in an order entered on June 10, 2014.

[2] In addition to the District Court Stock Indemnity Order (D.E. 1326), the other "Related Orders" on the indemnity issue, which respect to which the district court affirmed in part, reversed in part, and remanded, are: *Weaver Cooke Constr. LLC  v. Curenton Concrete Works, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1327); *Weaver Cooke Constr. LLC v. East Carolina Masonry, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1328); *Weaver Cooke Constr. LLC v. Gouras, Inc.*, Order (E.D.N.C. Aug.15, 2017)  (D.E. 1329); *Weaver Cooke Constr. LLC v. Randolph Stair and Rail Co.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1330); *Weaver Cooke Constr. LLC v. Waterproofing Specialties, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1331) and *Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*, Order (E.D.N.C. Jan. 4, 2017) (D.E. 1359); *Weaver Cooke Constr. LLC v. Humphrey Heating and Air Conditioning, Inc.*, Order (E.D.N.C. Aug. 23, 2016) (D.E. 1332); and *Weaver Cooke Constr. LLC v. Hamlin Roofing Services, Inc.*, Order (E.D.N.C. Mar. 24, 2017) (D.E. 1384) .

In the Related Orders, the district court cited the District Court Stock Indemnity Order and noted that in it, "the identical indemnification provisions were at issue, and this court held, among other things, neither N.C. Gen. Stat. § 22B-1 nor the contributing negligence of other parties precluded Weaver Cooke's indemnification claim against the subcontractor." *See, e.g., Weaver Cooke Constr. LLC v. Curenton Concrete Works, Inc.*, Order at 1 n.1 (D.E. 1327).

affirmed in part, reversed in part, and remanded, citing its reasoning as set forth in the District Court Stock Indemnity Order.

On May 16, 2017, this court held a status conference to consider the parameters of the matter on remand. The parties collectively agreed that counsel for Stock Supply and Weaver Cooke would take the lead in presenting the primary arguments pertaining to the indemnity issue in a subsequent hearing, after which the court would enter an order resolving the matter on remand as between Weaver Cooke and Stock Supply. Weaver Cooke and Stock Supply presented their arguments in a hearing on July 19, 2017, together with arguments on the closely related matter of Stock Supply's motion to exclude the testimony and expert report of Mr. Barbour (the "Barbour Report").

On September 29, 2017, this court entered its Order on Remand Regarding Stock Building Supply Motion for Summary Judgment on Indemnity Claim and Allowing Motion to Exclude Expert Report (the "Stock Indemnity Remand Order). The court again allowed summary judgment for Stock Supply. (DE 1406). The court excluded Mr. Barbour's report on *Daubert* grounds, concluding that as to Stock Supply, "[a]t most, the report includes Stock Supply's products and installation as a *possible* source, and a *possible* cause, of water intrusion. It establishes no more than that." *Id.* at 20. Further, the court held that even if the Barbour Report

> instead was admitted as evidence of proximate cause, Weaver Cooke's evidence still would be insufficient to satisfy its obligation of affirmatively demonstrating, with specific and admissible evidence, the existence of a genuine issue of material fact as to causation. Therefore, with or without the Barbour Report, Weaver Cooke cannot prove proximate cause as a matter of law; as a result, it cannot show negligence.

*Id.* Finally, the court granted summary judgment to Stock Supply on the alternative ground of Weaver Cooke's contributory negligence vis-a-vis Stock Supply, holding that permitting Weaver Cooke to require Stock Supply to indemnify it "for damages for which Weaver Cooke indisputably

6

was partially responsible would ignore both the language and purpose of §22B-1; indeed, it would be as if the statute, and the public policy it seeks to protect, did not exist." *Id.* at 23. Weaver Cooke sought to appeal this order, but the court declined to certify it as final, and the appeal was dismissed by the district court.

After entry of the Stock Indemnity Remand Order, the court granted to ECM and similarly situated parties the opportunity to file short briefs addressing the extent to which the reasoning in that order applied to their particular fact set. Unfortunately, most of the briefs advanced one-size-fits-all "me too" arguments without acknowledging pertinent differences in what the party actually argued in *its* motion for summary judgment (as opposed to what Stock Supply argued), and without focusing on the existence or lack of undisputed facts that could establish that Weaver Cooke was contributorily negligent *as to them*.[3] At a subsequent hearing held on February 1, 2018, the court permitted the parties to file supplemental briefs identifying, with specificity, the factual and legal contentions that are uniquely relevant to them and support entry of summary judgment in their favor. Weaver Cooke filed memoranda in response to these briefs, and the motions are ripe for disposition.

---

[3] The court had anticipated that each party would apply the legal analysis set out the Stock Indemnity Remand Order to their own unique factual circumstances. The court determined that Weaver Cooke was contributorily negligent *as to Stock Supply*, which in and of itself does not establish that Weaver Cooke was contributorily negligent as to any other party, though the argument that Weaver Cooke fell short in its duty to properly supervise its subcontractors is an argument advanced by virtually all third-party defendants, as well as plaintiff New Bern. Similarly, the court's determination that Weaver Cooke's negligence-based contractual indemnity claim against Stock Supply failed for lack of *proximate cause* does not necessarily mean that its claim against other parties would fail, or could only fail, as to any other party for precisely that same reason.

**ECM'S PLEADINGS**

To address the matter on remand, the court examines the initial pleadings, its original orders, and the issues addressed therein with respect to ECM. In its third-party complaint, Weaver Cooke alleged that ECM caused injury to it by reason of: "(1) improper brick tie installation; (2) lack of a soft joint (i.e. horizontal expansion joint) below steel shelf angles; (3) lack of mastic applied to laps and terminations in self-adhered flashing membrane; and (4) improper installation of mortar nets," all of which were identified in the Barbour Report and the report of Sutton-Kennerly & Associates as issues requiring correction. D.E. 686 at 10. In its motion for summary judgment, ECM argued that the applicable statute of limitations barred Weaver Cooke's claims of negligence and breach of express warranty, that the economic loss rule barred Weaver Cooke's negligence claim, and that Weaver Cooke's contractual indemnity claim was barred by N.C. Gen. Stat. § 22B-1. Like Stock Supply, ECM argued that "the uncontroverted evidence demonstrates that, if any defects were present in ECM's work, those defects were caused, at least in part, by Weaver Cooke's negligent management, supervision, and sequencing, thereby precluding its right to indemnity." *Id.* at 6. And, ECM raised the issue of whether Weaver Cooke could satisfy the proximate cause component of its contractual indemnity claim, arguing that these reports "identify only alleged defects in ECM's work and the potential that water damage to the SkySail [Project] *might* have resulted from such defects." *Id.* at 11. Weaver Cooke filed a memorandum in response, and ECM filed a reply. (D.E. 754, 809)

With regard to Weaver Cooke's contractual indemnity claim, the court entered an order allowing ECM's motion for summary judgment[4] on September 26, 2014.  (D.E. 954) The court applied the same reasoning it used in granting summary judgment to Stock Supply: Namely, that certain portions of the subcontracts between Weaver Cooke and the related parties ran afoul of N.C. Gen. Stat. § 22B-1 and had to be excised from the agreements. Pursuant to that blue penciling, the court interpreted the contracts to permit Weaver Cooke to seek indemnification from ECM only if Weaver Cooke could establish that ECM was *solely* responsible for the alleged damages, rather than responsible "in part," which Weaver Cooke was unable to do.  On appeal, the district court affirmed in part, reversed in part, and remanded for the same reasons it

---

[4] The court denied ECM's motion for summary judgment to the extent that the statute of limitations barred the negligence and breach of express warranty claims (D.E. 882), and the district court affirmed (D.E. 1313). The court also entered a separate order addressing whether Weaver Cooke's negligence claim was barred by the economic loss rule, wherein the court allowed ECM's motion as to some "structural defects" which were the subject of the underlying contract, and denied the motion as to other damages that the court considered to be within an exception to the economic loss rule.  (D.E. 935 at 7-8) On appeal, the district court affirmed to the extent this court had allowed ECM's motion, and otherwise reversed with direction to this court to enter summary judgment for ECM on the entirety of Weaver Cooke's negligence claim. (D.E. 1376) This court subsequently entered summary judgment on the remainder of that claim. (D.E. 1379)

Further, the bankruptcy court denied ECM's motion for summary judgment on grounds that Weaver Cooke failed to state a claim for breach of express warranty.  The court concluded that the claim was in essence a breach of contract claim, and that Weaver Cooke had presented sufficient evidence to create a genuine issue of material fact with respect to whether ECM had breached the contract and was responsible for the ensuing damages. (D.E. 969 at 6-7)  ECM moved for reconsideration, which the court denied.  (D.E. 1133)  On appeal, the district court affirmed both orders, agreeing that the allegations sufficiently alleged a breach of contract claim. (D.E. 1318)

Finally, the court entered a separate order specifically addressing ECM's contributory negligence defense, which it had asserted as a bar to Weaver Cooke's negligence claim.  (D.E. 961)  In that order, the court concluded that "genuine issues of material fact still exist as to whether Weaver Cooke was negligent in failing to identify the defects in ECM's work of which it now complains," and denied the motion on that basis. *Id.* at 7.

set forth in its order regarding Stock Supply.  (D.E. 1328)  This court reviewed those reasons in its Stock Indemnity Remand Order:

> On appeal, the district court accepted this court's strike-through of the "regardless of" clause, but disagreed with its excision of the "or in part" clause. Specifically, the district court held that it would
>
>> assume[ ] without deciding that the bankruptcy court properly concluded that the last clause of ¶ 16.2 quoted above, i.e. the "regardless of" clause, violates § 22B-1 and should be severed. *See Int'l Paper*, 385 S.E.2d at 555 (holding that the clause "regardless of whether or not it is caused in part by a party indemnified hereunder" in a similar indemnity provision "violates the provisions of G.S. § 22B-1" and severing that portion).  The court, however, disagrees with the bankruptcy court's conclusion that the phrase limiting indemnification to claims, damages, losses, and expenses caused *in part* by the negligent acts [or] omissions [of] the subcontractor likewise violates § 22B-1.  The statute does not preclude indemnification when one is being held responsible solely for one's own negligence even though other parties might have been negligent too.  *See* N.C. Gen. Stat. § 22B-1 ("Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the *sole* negligence of the promisor, its agents or employees." (emphasis added)).  When one reads the whole of ¶ 16.2 (with the last clause redacted), Stock agreed to indemnify Weaver Cooke only for damages arising out of Stock's performance of its work and caused by Stock's (or its agents['])  negligence.  The provision does not purport to hold Stock responsible for the negligence of any other party and thus comports with § 22B-1 and does not bar indemnification if other parties were negligent.
>
> Order on Appeal at 6.  In addition, the district court agreed with Weaver Cooke's challenge "to the bankruptcy court's conclusion to award summary judgment to Stock on Weaver Cooke's indemnification claim on the alternative ground of contributory negligence." *Id.* at 7.  Applying the same rationale as before, the district court held that this court erred in "conclud[ing] Weaver Cooke could not seek indemnification from Stock as Stock did not 'wholly' cause the damages at issue," and held that neither the statute nor the subcontract "prohibits

10

indemnification where *parties in addition to the promisee/subcontractor* are negligent." *Id.* (emphasis added).

> Ultimately, the district court reversed the Indemnity Order on grounds that "the provision in this case permits Weaver Cooke to recover in indemnification for damages arising out of Stock's performance of its work and caused by Stock's (or its agents[']) negligence, irrespective of whether other parties were negligent too and contributed to the damages." *Id.* at 8. The district court remanded the Indemnity Order for further proceedings in accordance with its order. Finally, the district court also noted, in concluding, that
>
>> Stock raises an alternative argument in support of affirming the bankruptcy court, that is, Stock did not engage in conduct that proximately caused property damage to the project. Although Stock raised this argument in support of its motion for summary judgment, the bankruptcy court did not address it. The court leaves it to the bankruptcy court to consider it, if necessary, in the first instance on remand.
>
> *Id.* at 8 n.4 (citation omitted).

Indemnity Remand Order at 8-9 (construing District Court Stock Indemnity Order).

On Weaver Cooke's appeal of this court's entry of the ECM Indemnity Order (D.E. 954), wherein the court entered summary judgment for ECM on the indemnity claim, the district court entered a short order in which it affirmed in part, reversed in part, and remanded based on the reasoning in the District Court Stock Indemnity Order, discussed above. (D.E. 1328) In addition, the district court noted in a footnote that

> ECM additionally argues that (1) under the terms of the subcontract, Weaver Cooke is not entitled to indemnity for *injury or damage to ECM's own work, i.e., masonry work*, and (2) North Carolina precludes indemnity where the parties, like ECM and Weaver Cooke, are *in pari delicto*. Although ECM raised these arguments in support of its motion for summary judgment, the bankruptcy court did not address them. The court leaves it to the bankruptcy court to consider them, if necessary, in the first instance on remand. *See Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 220 n.3 (4th Cir. 2006).

*Id.* at 1 n.1 (emphasis added). Both ECM and Weaver Cooke have filed supplemental memoranda addressing the indemnity question remanded to this court, as well as the particular arguments noted by the district court, and the matter on remand is ripe for disposition.

In both of its supplemental memoranda, ECM focused on the contributory negligence issue, to the exclusion of the first issue cited by the district court. D.E. 1413, 1509. Weaver Cooke did the same. D.E. 1436, 1518. The court will, however, address both of those issues, as well as the related question of proximate cause.

## DISCUSSION

The specific damages that Weaver Cooke alleges ECM to have caused are set out in the Barbour Report, wherein Mr. Barbour opines that ECM failed to:

> 1. Install adequate brick ties;
> 2. Sufficiently seal and integrate through-wall flashing with other building components;
> 3. Install adequate mortar netting; and
> 4. Leave airspace or insert a compressible filler material between bricks and the shelf angles in order to allow for expansion of the brick veneer.

ECM Mem. in Support of Sum. J. at 4-5 (D.E. 686) ("ECM Mem."). In addition, Mr. Barbour faulted ECM for allegedly installing brick veneer where shelf angles were missing.[5] Weaver Cooke Mem. in Response to ECM Mot. for Sum. J. at 6-7 (D.E. 754) ("Weaver Cooke Response"). According to Weaver Cooke,

---

[5] Weaver Cooke subcontracted with third-party defendant Randolph Stair and Rail Co. ("Randolph Stair") to install the shelf angles. As has previously been noted,
> [s]helf angles are steel angles that resemble the shape of a capital 'L' and are attached to a building's floor slabs and integrated into the brick veneer to provide both support for the load of brick veneer and to allow for a gap, or space, between the building and the brick veneer.

Order [Denying] Summary Judgment Regarding Statute of Limitations Defense Asserted by Randolph Stair and Rail Co. at 7 (August 27, 2014) (D.E. 905).

>    the issues with the through-wall flashing and mortar netting are related to water intrusion.  The failure to install all of the brick ties, the failure to leave airspace or insert compressible filler, and ECM's installation of brick veneer where shelf angles were missing are structural in nature and have nothing to do with water intrusion.

*Id*. at 7.

Before the court now are issues raised in ECM's initial motion for summary judgment, and noted by the district court as remaining unresolved and therefore potentially viable on remand: First, whether, *under the specific terms of the subcontract*, Weaver Cooke is entitled to seek indemnity from ECM for injury or damage to ECM's own work; specifically, the masonry work.  For the reasons set out below, the court will enter summary judgment for ECM on this ground.  To the extent that Weaver Cooke theoretically could still pursue its contractual indemnity claim for water intrusion damages outside the scope of ECM's work, the court will enter summary judgment for ECM on the alternative ground originally raised in ECM's summary judgment motion, which is that Weaver Cooke failed to establish the element of proximate cause.  Finally, the district court observed that the question of whether ECM and Weaver Cooke are *in pari delicto* – i.e., whether Weaver Cooke was contributorily negligent with respect to the specific damages at issue vis-a-vis ECM – also remained open for disposition.  Because the contractually indemnity claim is fully resolved by the court's conclusions as set out below, the court need not, and does not, consider the issue of contributory negligence.

**1.     Indemnity Agreement Excludes Damages to the Subject of the Contract**

The district court pointed out in its order that this court had not yet addressed ECM's argument, set out in its original motion for summary judgment, that "even if Weaver Cooke's own failure to properly supervise ECM's work does not completely preclude it from receiving

13

indemnity, the damages for which it is entitled to indemnity are limited by the terms of the subcontract." D.E. 1328 at 1 n.1; *see also* ECM Mem. (D.E. 686) at 32. The language to which the district court and ECM refer provides as follows:

> 16.2  To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (*other than Subcontractor's Work itself*) including loss of use resulting therefrom, if caused in whole or in part by the negligent acts or omissions of Subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity, which would otherwise exist as to a party or person described in this Article.

D.E. 686, Ex. 1, ¶ 16.2 (emphasis added). The subcontract between Weaver Cooke and ECM defines the "Subcontractor's Work" in Attachment A-1 to their subcontract, as follows: "Work includes furnishing and installing brick, concrete masonry units, cavity insulation, joint reinforcing, wall ties, grout, thru-wall flashing, pre-formed control joints, dove tail anchors, mortar stop, dampproofing, clean up, mortar, sand, supervision, labor, equipment, and taxes." D.E. 686-1, at 4.

It is evident that ECM's unique fact set is such that there are two separate "kinds" of possible damages – those allegedly caused by leaking water, and, those damages Weaver Cooke attributes purely to the brickwork not being properly done, per the expert reports upon which Weaver Cooke relies. Here, it is abundantly clear that *only* "the issues with the through-wall flashing and mortar netting are related to water intrusion." Weaver Cooke Response at 7. The remainder "are structural in nature and have nothing to do with water intrusion." *Id.* It is readily

apparent that the alleged "structural" damages come squarely within the scope of ECM's "Work" and, for that reason, they are specifically and wholly excluded from the scope of damages for which Weaver Cooke may endeavor to seek indemnification.

Moreover, with respect to these remaining potential damages in connection with thru-wall flashing and mortar netting, notwithstanding Weaver Cooke's contention that there are defects in these construction elements that are in some way "related to water intrusion," that position in no way changes the fact that thru-wall flashing and mortar netting also are specifically and wholly within ECM's scope of work. Again, per the language of its own subcontract, Weaver Cooke may seek indemnity for those damages "arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to ... *injury to or destruction of tangible property (other than Subcontractor's Work itself)*." D.E. 686, Ex. 1, ¶ 16.2 (emphasis added). To the extent that Weaver Cooke seeks damages based on alleged injury *to these components*, that recovery is precluded by the language just discussed. In contrast, to the extent that Weaver Cooke seeks to argue that deficiencies in ECM's installation of the thru-wall flashing and mortar netting ultimately caused water intrusion damages to the SkySail Project – i.e., damages to tangible property other than ECM's "Work itself" – then that argument would be viable, in theory. In practice, however, for the reasons set out below, that argument is precluded by Weaver Cooke's failure to satisfy its burden on proximate cause.

**2. Lack of Proximate Cause**

In its original motion for summary judgment, ECM argued that Weaver Cooke's "catch-all inclusion of whatever defects and damage plaintiff or any experts may assert" rests on the

Barbour Report and Sutton-Kennerly & Associates reports, which "identify only alleged defects in ECM's work and the potential that water damage to the SkySail [Project] *might* have resulted from such defects." D.E. 686 (ECM Mem in Supp. of Sum. J.) at 11. The "proximate cause argument also relates to the remanded indemnity issue because § 22B-1 is a negligence-based statute, such that traditional negligence analyses apply." Stock Indemnity Remand Order (D.E. 1406) at 9. Under the language of the contractual indemnity provision as discussed above, the only damages potentially recoverable by Weaver Cooke would be those caused by, but outside the scope of, ECM's "Work" – i.e., water intrusion damages.

In its memorandum, ECM noted that "[w]hen asked in discovery *what such injuries were proximately caused by ECM's negligence*, Weaver Cooke Pointed to only the four defects in ECM's work alleged by Mr. Barbour and the *potential* of damage to SkySail." ECM Mem. (D.E. 686) at 10 (emphasis added). Specifically, in response to ECM's interrogatories asking Weaver Cooke to "describe with specificity the basis of Weaver Cooke's determination [that] the alleged problems, defects or issues, were caused by ECM," Weaver Cooke replied:

> ANSWER
> *See* Plaintiff's expert reports and the report of Sutton-Kennerly & Associates provided to counsel for ECM which address the condition of the brick masonry work on the project. Among the conditions identified in the reports which Weaver Cooke currently believes fall within ECM's scope of work include, but are not limited to, the following conditions: (1) improper brick tie installation; (2) lack of a soft joint (i.e. horizontal expansion joint) below steel shelf angles; (3) lack of mastic applied to laps and terminations in self-adhered flashing membrane; and (4) improper installation of mortar nets. Weaver Cooke has denied liability to Plaintiff for those and any other conditions, However, to the extent that Weaver Cooke is found liable to Plaintiff for any conditions which pertain or relate to or arise out of work which ECM performed or failed to perform, then Weaver Cooke contends that ECM is liable to Weaver Cooke for all losses, costs and damages incurred or to be incurred by Weaver Cooke as a proximate result thereof, pursuant to the Second Third Party Complaint against ECM.

*Id.* On that basis, ECM maintained that Weaver Cooke failed to make a sufficient showing of proximate cause.

Weaver Cooke's memorandum in response to ECM's motion for summary judgment provides, in relevant part, as follows:

> 14. At various times between early 2010 and early 2012, [Stock Supply] and Jeld-Wen visited Skysail, inspecting the exterior windows and glass doors, performing water testing, and making repairs in the area of doors. During this time, they led Weaver Cooke to believe that the water intrusion issues occurring in the fourth floor units was [sic] primarily caused by the defects in the transoms above the doors....
> 15. At no time did [Stock Supply] or Jeld-Wen advise Weaver Cooke that there were any other problems or a risk of water intrusion throughout all four floors of the entire SkySail project. Furthermore, none of these water intrusion issues provided any indication that there was potential for structural issues at SkySail within the building envelope caused by ECM's latent defects, the absence of brick ties, the failure to leave airspace or insert compressible filler, and the placement of brick veneer in locations where shelf angles were omitted....
> 16. It was *not until March 2012 that Weaver Cooke became aware that such an extensive water intrusion problem did potentially exist at Skysail [sic] that could involve other subcontractors' scopes of work such as ECM in addition to [Stock Supply]. Weaver Cooke became aware of this when it was provided a copy of the report of NBRD's expert, George Barbour*....
> 17. It was also not until March 2012 that Weaver Cooke became aware of the potential for structural issues at Skysail [sic] within the building envelope caused by the absence of brick ties, the failure to leave airspace or insert compressible filler, and installation of brick veneer in locations where shelf angles were omitted. Weaver Cooke certainly was not put on notice of these structural issues by the water intrusion issues occurring prior to March 2012....
> 18. If, for some reason, it is found that the water intrusion problems throughout the entirety of SkySail were not apparent, or reasonably ought to have become apparent to Weaver Cooke in March 2012, then the earliest Weaver Cooke could have reasonably discovered the numerous latent defects leading to the water intrusion caused by multiple subcontractors, including ECM, would have been May 6, 2010, the date of NBRD's First Amended Complaint, in which NBRD claimed Weaver Cooke breached the contract by "failing to properly construct the Project buildings in a manner preventing water intrusion, which is causing damage and the potential for significant mold problems in the residential units as well as the common areas." Doc. No. 15 ¶ 150(l)]

D.E. 754 at 8-9 (citations to Estes and Connor affidavits omitted). Addressing the question of proximate cause, Weaver Cooke responded that "there is a genuine dispute of material fact pertaining to causation" in that

> ECM argues that it was not simply Weaver Cooke's failure to supervise ECM that caused problems on the project but also Weaver Cooke's failure to supervise the work of other subcontractors on the project. The interrelation between these various subcontractors and their scopes of work and whether failure to supervise one subcontractor was the proximate cause of damage to another subcontractor's work is inappropriate for summary adjudication as it requires resolution of a variety of factual issues.

*Id.* at 21; *see also* Weaver Cooke Response to ECM Mem. in Response to [Stock Indemnity Remand Order] (D.E. 1436) at 10-11 (citing this paragraph in response to the court's request to bring forward the bases upon which the analyses contained in the Stock Indemnity Remand Order do, or do not, pertain as to Weaver Cooke v. ECM).

The court has not ruled on this question in the Weaver Cooke-ECM context, though, to be sure, the parties should be expecting it. Weaver Cooke maintained in its first supplemental memoranda to the court that there remains a "genuine issue of material fact pertaining to causation, the second element needed to establish contributory negligence." D.E. 1436 at 10. As Weaver Cooke knows, causation also is a required element of establishing negligence per the plain language of its contractual indemnity provision. *See, e.g.*, Stock Indemnity Remand Order at 20-21. So, while Weaver Cooke has opined that "the only issues available to ECM on remand are those specifically identified by the District Court in its order," it did not share the basis for that conclusion, and, in any event, the court disagrees.

In establishing the elements of negligence, made necessary here by the contractual indemnity provision requiring such a showing, the burden in the summary judgment context was

and is on Weaver Cooke as the proponent of its claim to put forth admissible, relevant evidence sufficient to establish the existence of genuine issues of material fact as to whether the acts or omissions it attributes to ECM proximately caused the water-related damages of which it now complains.[6]  Again, it comes down to the Barbour Report and the report of Sutton-Kennerly & Associates.  In its original motion for summary judgment, ECM articulated the proximate cause argument but did not aggressively pursue it, choosing to focus on other defensive theories; it did, however, manage to shift the burden to Weaver Cooke.  Further, this question subsequently was addressed in exhaustive detail during the hearing held on July 19, 2017; was discussed in the Indemnity Remand Order; and, finally, gave rise to the court's request of the parties to articulate the extent to which the matters addressed in the hearing and orders pertained to them. There is simply no way around it.  In sum, Weaver Cooke was acutely aware of its need to bring forward evidence responsive to ECM's proximate cause argument.

Unfortunately, Weaver Cooke didn't address the matter with specificity in its initial memorandum in response to ECM's motion for summary judgment, and also failed to address it in either of its two supplemental responses, other than to contend that "the only issues available to ECM on remand are those specifically identified by the District Court."  D.E. 1436 at 6.  The Barbour testimony appended by Weaver Cooke to its responsive memoranda does not speak to whether any of the flaws Mr. Barbour perceived in ECM's work *caused actual water intrusion and/or actual water damage*.  Weaver Cooke has not cited to this court any specific language from the Barbour Report, or the Sutton-Kennerly & Associates report, that could support this

---

[6] "This proximate cause argument also relates to the remanded indemnity issue because 22B-1 is a negligence-based statute, such that traditional negligence analyses apply." Stock Indemnity Remand Order at 9.

crucial factor in Weaver Cooke's claim.[7]  In a nutshell, this court has no basis upon which it could now conclude that Weaver Cooke has proffered, in either the Barbour Report and/or the Sutton-Kennerly & Associates report, relevant and admissible evidence sufficient to meet its burden of showing that some aspect of ECM's installation of the thru-wall flashing or mortar netting proximately caused any kind of water damage to the SkySail project.  With no showing of proximate cause, the negligence required to invoke the indemnity clause also is lacking, and summary judgment is appropriate for ECM on this claim.

## CONCLUSION

For the foregoing reasons, the court on remand concludes that ECM's motion for summary judgment on the contractual indemnity claim is **ALLOWED** with respect to Weaver Cooke's claim for damages relating to "the Work" performed by ECM, that being the masonry work as defined within the parties' subcontract and the attachments thereto, any damages sought by Weaver Cooke are excepted from recovery in indemnity.  Further, with respect to Weaver Cooke's claim for any water intrusion damages resulting from ECM's allegedly negligent performance of its work resulting in damages to other tangible property at SkySail, the motion is **ALLOWED** on grounds that Weaver Cooke has failed to satisfy its burden of showing proximate cause.

## END OF DOCUMENT

---

[7] For that reason, there is no basis upon which this court should undertake its inherent obligation as "gatekeeper" to analyze, under Rule 702 of the Federal Rules of Evidence, whether either of these reports is helpful or relevant with respect to resolution of the dispute as between Weaver Cooke and ECM.