**SO ORDERED.**

**SIGNED this 24 day of July, 2018.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-10340-8-SWH |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | |
|     DEBTOR | |
| | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC, | ADVERSARY PROCEEDING NO. |
|     Plaintiff, | 10-00023-AP |
|     v. | |
| WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC., | ORDER ON REMAND REGARDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST RANDOLPH STAIR & RAIL CO. |
|     Defendants, | |
|     and | |
| WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
|     Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
|     v. | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURRENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**
      **Crossclaimants, Counterclaimants and Third-Party Defendants.**

      **and**

**NATIONAL ERECTORS REBAR, INC.**
      **Defendant, Counterclaimant, Crossclaimant and Third-Party Plaintiff,**

      **v.**

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**
      **Third-Party Defendants.**

      **and**

**J. DAVIS ARCHITECTS, PLLC,**

  **Third-Party Plaintiff,**

  v.

**MCKIM & CREED, P.A.,**
  **Third-Party Defendant.**

  **and**

**GOURAS, INC.,**
  **Third-Party Defendant and**
  **Fourth-Party Plaintiff,**

  v.

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
  **Fourth-Party Defendants.**

  **and**

**STOCK BUILDING SUPPLY, LLC,**
  **Third-Party Defendant and**
  **Fourth-Party Plaintiff,**

  v.

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
  **Fourth-Party Defendant.**

## ORDER ON REMAND REGARDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST RANDOLPH STAIR & RAIL CO.

The matter before the court is the district court's remand after appeal of this court's order allowing summary judgment for third-party defendant Randolph Stair & Rail Co. ("Randolph Stair") against Weaver Cooke Construction, LLC ("Weaver Cooke") on Weaver Cooke's contractual

indemnity claim. For the reasons outlined below, on remand, Randolph Stair's motion for summary judgment on this claim will be allowed.

## BACKGROUND AND PROCEDURAL POSTURE

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of SkySail Luxury Condominiums ("SkySail Project") in New Bern, North Carolina. Weaver Cooke served as the SkySail Project's general contractor, and Randolph Stair as the subcontractor who installed floorline relief angles, or shelf angles, as a structural component of the brick veneers on the project's exterior walls. New Bern filed a state court action against Weaver Cooke and others in March 2009, and filed a petition for relief under Chapter 11 of the Bankruptcy Code in November 2009. The state court action was removed to the United States District Court for the Eastern District of North Carolina, and subsequently transferred to this court.

With leave of court, Weaver Cooke filed its second third-party complaint on June 14, 2012, asserting claims of negligence, contractual indemnity, and breach of express warranty against many of the subcontractors hired during construction of the SkySail Project, including Randolph Stair. In December 2013, many third-party defendants, including Randolph Stair as well as third-party defendant Stock Building Supply ("Stock Supply"), filed motions for summary judgment on Weaver-Cooke's claims. Randolph Stair filed its motion on December 20, 2013, seeking summary judgment with respect to all of Weaver Cooke's claims against it (D.E. 688, 689), and incorporating by reference the memorandum in support of summary judgment filed by East Carolina Masonry, Inc. ("ECM")[1]. (D.E. 686) The court ruled on these motions by entering groups of orders pertaining to

---

[1] Randolph Stair has consistently and expressly relied upon and incorporated ECM's arguments throughout this litigation, and the court's orders as to Randolph Stair likewise have, where appropriate, incorporated and/or relied upon the ECM arguments. Accordingly, the court

4

each of these three primary claims, and, with respect to its order on contractual indemnity, designated the Stock Supply order as the "lead order." On August 22, 2014, the court entered an order granting summary judgment in favor of Stock Supply on the indemnity claim, which was Weaver Cooke's only remaining claim against Stock.[2] (D.E. 898, the "Stock Indemnity Order").

The court subsequently entered orders on summary judgment for other third-party defendants (collectively, the "Related Orders"), including Randolph Stair, allowing summary judgment in whole or part on many of the same bases as in the Stock Indemnity Order. That order, and the Related Orders, were certified as final by both this court and the district court for purposes of appeal. In an order entered on August 12, 2016, the district court affirmed the Stock Indemnity Order in part, reversed in part, and remanded for further proceedings. (D.E. 1326, the "District Court Stock Indemnity Order") The district court decided the appeals of the Related Orders on a similar basis, including Weaver Cooke's appeal of this court's order allowing summary judgment for Randolph Stair on the indemnity claim.[3] (D.E. 958, the "Randolph Stair Indemnity Order") As to the

---

will, throughout this order, quote extensively from filings pertaining to ECM. *See, e.g.*, Order Allowing Motion of Randolph Stair & Rail Co. for Summary Judgment on Indemnity Claim (D.E. 958); Order on Remand Regarding Weaver Cooke's Indemnity Claim Against East Carolina Masonry, Inc. (D.E. 1568).

[2] The court granted summary judgment in favor of Stock Supply on the negligence and breach of express warranty claims in an order entered on June 10, 2014.

[3] In addition to the District Court Stock Indemnity Order (D.E. 1326), the other "Related Orders" on the indemnity issue, which respect to which the district court affirmed in part, reversed in part, and remanded, are: *Weaver Cooke Constr. LLC v. Curenton Concrete Works, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1327); *Weaver Cooke Constr. LLC v. East Carolina Masonry, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1328); *Weaver Cooke Constr. LLC v. Gouras, Inc.*, Order (E.D.N.C. Aug.15, 2017) (D.E. 1329); *Weaver Cooke Constr. LLC v. Randolph Stair & Rail Co.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1330); *Weaver Cooke Constr. LLC v. Waterproofing Specialties, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1331) and *Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*, Order (E.D.N.C. Jan. 4, 2017) (D.E. 1359); *Weaver Cooke Constr. LLC v. Humphrey Heating & Air Conditioning, Inc.*, Order

Randolph Stair Indemnity Order, the district court affirmed in part, reversed in part, and remanded, citing its reasoning as set forth in the District Court Stock Indemnity Order. (D.E. 1330)

On May 16, 2017, this court held a status conference to consider the parameters of the matter on remand. The parties collectively agreed that counsel for Stock Supply and Weaver Cooke would take the lead in presenting the primary arguments pertaining to the indemnity issue in a subsequent hearing, after which the court would enter an order resolving the matter on remand as between Weaver Cooke and Stock Supply. Weaver Cooke and Stock Supply presented their arguments in a hearing on July 19, 2017, together with arguments on the closely related matter of Stock Supply's motion to exclude the testimony and expert report of Mr. Barbour (the "Barbour Report").

On September 29, 2017, this court entered its Order on Remand Regarding Stock Building Supply Motion for Summary Judgment on Indemnity Claim and Allowing Motion to Exclude Expert Report (the "Stock Indemnity Remand Order)". The court again allowed summary judgment for Stock Supply. (DE 1406). The court excluded Mr. Barbour's report on *Daubert* grounds, concluding that as to Stock Supply, "[a]t most, the report includes Stock Supply's products and installation as a *possible* source, and a *possible* cause, of water intrusion. It establishes no more than that." *Id.* at 20. Further, the court held that even if the Barbour Report

> instead was admitted as evidence of proximate cause, Weaver Cooke's evidence still would be insufficient to satisfy its obligation of affirmatively demonstrating, with specific and admissible evidence, the existence of a genuine issue of material fact as

---

(E.D.N.C. Aug. 23, 2016) (D.E. 1332); and *Weaver Cooke Constr. LLC v. Hamlin Roofing Services, Inc.*, Order (E.D.N.C. Mar. 24, 2017) (D.E. 1384) .

In the Related Orders, the district court cited the District Court Stock Indemnity Order and noted that in it, "the identical indemnification provisions were at issue, and this court held, among other things, neither N.C. Gen. Stat. § 22B-1 nor the contributing negligence of other parties precluded Weaver Cooke's indemnification claim against the subcontractor." *See, e.g., Weaver Cooke Constr. LLC v. Curenton Concrete Works, Inc.*, Order at 1 n.1 (D.E. 1327).

6

>  to causation. Therefore, with or without the Barbour Report, Weaver Cooke cannot prove proximate cause as a matter of law; as a result, it cannot show negligence.

*Id.* Finally, the court granted summary judgment to Stock Supply on the alternative ground of Weaver Cooke's contributory negligence vis-a-vis Stock Supply, holding that permitting Weaver Cooke to require Stock Supply to indemnify it "for damages for which Weaver Cooke indisputably was partially responsible would ignore both the language and purpose of §22B-1; indeed, it would be as if the statute, and the public policy it seeks to protect, did not exist." *Id.* at 23. Weaver Cooke sought to appeal this order, but the court declined to certify it as final, and the appeal was dismissed by the district court.

After entry of the Stock Indemnity Remand Order, the court granted to Randolph Stair and similarly situated parties the opportunity to file short briefs addressing the extent to which the reasoning in that order applied to their particular fact set. Unfortunately, most of the briefs advanced one-size-fits-all "me too" arguments without acknowledging pertinent differences in what the party actually argued in *its* motion for summary judgment (as opposed to what Stock Supply argued), and without focusing on the existence or lack of undisputed facts that could establish that Weaver Cooke was contributorily negligent or had failed to show proximate cause *as to them*.[4] At a subsequent hearing held on February 1, 2018, the court permitted the parties to file supplemental briefs

---

[4] The court had anticipated that each party would apply the legal analysis set out the Stock Indemnity Remand Order to their own unique factual circumstances. The court determined that Weaver Cooke was contributorily negligent *as to Stock Supply*, which in and of itself does not establish that Weaver Cooke was contributorily negligent as to any other party, though the argument that Weaver Cooke fell short in its duty to properly supervise its subcontractors is an argument advanced by virtually all third-party defendants, as well as plaintiff New Bern. Similarly, the court's determination that Weaver Cooke's negligence-based contractual indemnity claim against Stock Supply failed for lack of *proximate cause* does not necessarily mean that its claim against other parties would fail, or could only fail, as to any other party for precisely that same reason.

identifying, with specificity, those factual and legal contentions that are uniquely relevant to them and support entry of summary judgment in their favor. Weaver Cooke filed memoranda in response to these briefs, and the motions are ripe for disposition.

## RANDOLPH STAIR'S PLEADINGS

To address the matter on remand, the court examines the initial pleadings, its original orders, and the issues addressed therein with respect to Randolph Stair. The claims asserted by Weaver Cooke against Randolph Stair in its third-party complaint (D.E. 345) arise out of shelf angles allegedly missing from certain areas of the SkySail project. *See, e.g.*, D.E. 756 at 6, D.E. 1324 at 1. Like Stock Supply, and in this instance by specifically adopting the arguments advanced by ECM, Randolph Stair argued in its motion for summary judgment that Weaver Cooke was contributorily negligent in ways that precluded its contractual indemnity claim. ECM's Mem. of Law in Supp. of Its Mot. for Sum. Judg. (D.E. 686) at 19-31. In particular, Randolph Stair adopted ECM's argument that "the uncontroverted evidence demonstrates that, if any defects were present in ECM's work, those defects were caused, at least in part, by Weaver Cooke's negligent management, supervision, and sequencing, thereby precluding its right to indemnity." *Id.* at 6. Also among the contentions adopted by Randolph Stair: ECM's argument that the language of the subcontract precluded the contractual indemnity claim. *Id.* at 32-34. Weaver Cooke filed memoranda in response to both Randolph Stair (D.E. 743, 746) and ECM (D.E. 754), and Randolph Stair filed a reply. (D.E. 808)

With regard to Weaver Cooke's contractual indemnity claim, the court entered an order on September 26, 2014, wherein the court allowed Randolph Stair's motion for summary judgment on the same grounds set forth in the Stock Indemnity Order and also "for the reasons

8

set forth in the order of September 26, 2014 granting ECM's motion for summary judgment."[5] (D.E. 958 (the "Randolph Stair Indemnity Order"), incorporating D.E. 954)  Thus, the court applied the same reasoning it used in granting summary judgment to Stock Supply: Namely, that certain portions of the subcontracts between Weaver Cooke and the related parties ran afoul of N.C. Gen. Stat. § 22B-1 and had to be excised from the agreements. Pursuant to that blue penciling, the court interpreted the contracts to permit Weaver Cooke to seek indemnification from Randolph Stair only if Weaver Cooke could establish that Randolph Stair was *solely* responsible for the alleged damages, rather than responsible "in part," which Weaver Cooke was unable to do.  On appeal of the Randolph Stair Indemnity Order, the district court affirmed in part, reversed in part, and remanded for the same reasons it set forth in its order regarding Stock Supply.  (D.E. 1330)  This court reviewed those reasons in its Stock Indemnity Remand Order:

> On appeal, the district court accepted this court's strike-through of the "regardless of" clause, but disagreed with its excision of the "or in part" clause. Specifically, the district court held that it would

---

[5] With respect to Weaver Cooke's other claims against Randolph Stair, Randolph Stair argued that the statute of limitations barred Weaver Cooke's negligence and breach of express warranty claims.  The court rejected that argument, concluding in an order entered on August 27, 2014, that material issues of fact precluded the court from concluding as a matter of law that Weaver Cooke was, or should have been, aware of any missing shelf angles more than three years prior to the filing of its claims against Randolph Stair.  (D.E. 905) Randolph Stair filed a motion to reconsider, which the court denied in an order entered on May 28, 2015.  (D.E. 1185) The district court affirmed both of those orders on June 28, 2016, concluding that "genuine issues of material fact exist as to (1) whether Weaver Cooke instructed Randolph Stair (or was otherwise involved in the decision) to omit shelf angles at certain locations and (2) whether Weaver Cooke was or should have been aware of the missing shelf angles" prior to its receipt of the Barbour Report.  (D.E. 1324).
    The court entered a separate order allowing Randolph Stair's motion for summary judgment on grounds that Weaver Cooke's negligence claim was barred by the economic loss rule. (D.E. 934)  On appeal, the district court affirmed.  (D.E. 1373)
    In sum, Weaver Cooke's negligence claim against Randolph Stair is no longer viable, but its breach of express warranty claim remains.

9

> assume[ ] without deciding that the bankruptcy court properly
> concluded that the last clause of ¶ 16.2 quoted above, i.e. the
> "regardless of" clause, violates § 22B-1 and should be severed.
> *See Int'l Paper*, 385 S.E.2d at 555 (holding that the clause
> "regardless of whether or not it is caused in part by a party
> indemnified hereunder" in a similar indemnity provision "violates
> the provisions of G.S. § 22B-1" and severing that portion). The
> court, however, disagrees with the bankruptcy court's conclusion
> that the phrase limiting indemnification to claims, damages, losses,
> and expenses caused *in part* by the negligent acts [or] omissions
> [of] the subcontractor likewise violates § 22B-1. The statute does
> not preclude indemnification when one is being held responsible
> solely for one's own negligence even though other parties might
> have been negligent too. *See* N.C. Gen. Stat. § 22B-1 ("Nothing
> contained in this section shall prevent or prohibit a contract,
> promise or agreement whereby a promisor shall indemnify or hold
> harmless any promisee or the promisee's independent contractors,
> agents, employees or indemnitees against liability for damages
> resulting from the *sole* negligence of the promisor, its agents or
> employees." (emphasis added)). When one reads the whole of ¶
> 16.2 (with the last clause redacted), Stock agreed to indemnify
> Weaver Cooke only for damages arising out of Stock's
> performance of its work and caused by Stock's (or its agents['])
> negligence. The provision does not purport to hold Stock
> responsible for the negligence of any other party and thus
> comports with § 22B-1 and does not bar indemnification if other
> parties were negligent.

Order on Appeal at 6. In addition, the district court agreed with Weaver Cooke's challenge "to the bankruptcy court's conclusion to award summary judgment to Stock on Weaver Cooke's indemnification claim on the alternative ground of contributory negligence." *Id.* at 7. Applying the same rationale as before, the district court held that this court erred in "conclud[ing] Weaver Cooke could not seek indemnification from Stock as Stock did not 'wholly' cause the damages at issue," and held that neither the statute nor the subcontract "prohibits indemnification where *parties in addition to the promisee/subcontractor* are negligent." *Id.* (emphasis added).

Ultimately, the district court reversed the Indemnity Order on grounds that "the provision in this case permits Weaver Cooke to recover in indemnification for damages arising out of Stock's performance of its work and caused by Stock's (or its agents[']) negligence, irrespective of whether other parties were negligent too and contributed to the damages." *Id.* at 8. The district court remanded the

10

>Indemnity Order for further proceedings in accordance with its order. Finally, the district court also noted, in concluding, that

>>Stock raises an alternative argument in support of affirming the bankruptcy court, that is, Stock did not engage in conduct that proximately caused property damage to the project. Although Stock raised this argument in support of its motion for summary judgment, the bankruptcy court did not address it. The court leaves it to the bankruptcy court to consider it, if necessary, in the first instance on remand.

>*Id.* at 8 n.4 (citation omitted).

Stock Indemnity Remand Order at 8-9 (construing District Court Stock Indemnity Order).

On Weaver Cooke's appeal of this court's entry of the Randolph Stair Indemnity Order (D.E. 958), wherein the court entered summary judgment for Randolph Stair on the indemnity claim, the district court entered a short order in which it affirmed in part, reversed in part, and remanded based on the reasoning in the District Court Stock Indemnity Order, discussed above. (D.E. 1330) In some of district court's dispositions on appeal, its order included a footnote acknowledging various remaining issues that the parties had brought to its attention as remaining unresolved in the proceedings before this court. With Randolph Stair, the district court's order did not include such a notation.[6] With respect to its order as to ECM, however, the district court noted in a footnote that

>ECM additionally argues that (1) under the terms of the subcontract, Weaver Cooke is not entitled to indemnity for *injury or damage to ECM's own work, i.e., masonry work*, and (2) North Carolina precludes indemnity where the parties, like ECM and Weaver Cooke, are *in pari delicto*. Although ECM raised these

---

[6] These observations by the district court are helpful in fleshing out the parameters of any remaining issues that may, or may not, require resolution in the context of moving this proceeding closer to trial. The district court's notations are not comprehensive summaries of those remaining issues, however, and, contrary to Weaver Cooke's contentions, they do not serve as limitations upon the matters this court may properly consider on remand.

> arguments in support of its motion for summary judgment, the bankruptcy court
> did not address them. The court leaves it to the bankruptcy court to consider
> them, if necessary, in the first instance on remand. *See Q Int'l Courier, Inc. v.
> Smoak*, 441 F.3d 214, 220 n.3 (4th Cir. 2006).

D.E. 958 at 1 n.1 (emphasis added). On June 26, 2018, this court entered its order on remand allowing summary judgment for ECM on the indemnity claim. ECM Indemnity Remand Order (D.E. 1568). As noted earlier, Randolph Stair has consistently adopted the arguments advanced in ECM's written memoranda as its own. In addition, both Randolph Stair and Weaver Cooke have filed supplemental memoranda responsive to the court's request that they address the indemnity question remanded to this court, and the matter on remand is ripe for disposition.

In both of its supplemental memoranda, and most particularly in its reply memorandum (D.E. 1441), Randolph Stair argued that the contributory negligence analysis as set forth in the Stock Indemnity Remand Order is the basis upon which this court should allow summary judgment in its favor on the remanded contractual indemnity issue. It specifically declined to advance any arguments with respect to proximate cause, and expressly stated in its reply brief that it "does not contend the proximate cause analysis in the Stock Remand Order applies to it, as Weaver Cooke's Response suggests." (D.E. 1441 at 1) The court, however, will allow Randolph Stair's motion on grounds that were discussed in the ECM Indemnity Remand Order and are equally applicable to Randolph Stair: Namely, that the indemnity agreement excludes damages to the subject of the contract, *i.e.* "the Work."

## DISCUSSION

Randolph Stair is the subcontractor retained by Weaver Cooke to install shelf angles, which are steel angles "attached to a building's floor slabs and integrated into the brick veneer to provide both support for the load of brick veneer and to allow for a gap, or space, between the

12

building and the brick veneer." ECM Indemnity Remand Order (D.E. 1568) at 12 n.5. Randolph Stair's work was closely linked to that of ECM in that the shelf angles installed by Randolph Stair subsequently were used by ECM as a necessary component of its installation of brick ties, and, eventually, the building's brick veneer. According to Weaver Cooke:

> 8. In March 2012, Weaver Cooke was served with a copy of the report of NBRD's, [sic] expert, George Barbour. In his report, Mr. Barbour observed that Randolph *failed to install shelf angles in all locations required by the plans and specifications and opined that this was a structural issue*. [Barbour Rep. 1.7, attached as Attachment G]
>
> 9. Once the brick veneer had been installed by ECM in locations where shelf angles were omitted by Randolph, this condition cited above by Mr. Barbour would be concealed from view, or "latent." *The failure to install all of the shelf angles is structural in nature and has nothing to do with water intrusion*.

Weaver Cooke's Mem. in Response to Randolph Stair Mot. for Sum. Judg. (D.E. 756, "Weaver Cooke Response") at 6 (emphasis added). With regard to Weaver Cooke's claims against Randolph Stair, "the gist of the claims is that Randolph [Stair] failed to install an adequate number of shelf angles as called for in the project's specifications and that this resulted in structural deficiencies in the brick." Order Allowing Motion for ECM for Sum. Judg. on Indem. Claim (D.E. 954) at 25.

As discussed in the ECM Indemnity Remand Order, the district court pointed out in its order remanding as to ECM that this court had not yet addressed the argument, set out in ECM's original motion for summary judgment, that "even if Weaver Cooke's own failure to properly supervise ECM's work does not completely preclude it from receiving indemnity, the damages for which it is entitled to indemnity are limited by the terms of the subcontract." D.E. 1328 at 1 n.1; *see also* ECM Mem. (D.E. 686) at 32; Randolph Stair Mem. (D.E. 689) (incorporating ECM

13

Mem.). The language to which the district court (and ECM) referred is identical to the language used in the Weaver Cooke-Randolph Stair subcontract, and provides as follows:

> 16.2  To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (*other than Subcontractor's Work itself*) including loss of use resulting therefrom, if caused in whole or in part by the negligent acts or omissions of Subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity, which would otherwise exist as to a party or person described in this Article.

D.E. 686, Ex. 1, ¶ 16.2 (emphasis added). The subcontract between Weaver Cooke and Randolph Stair defines the "Subcontractor's Work" in Attachment A-1 to the subcontract, as follows:

> Provide all required labor, material, equipment, supervision, taxes and insurance to provide structural and miscellaneous metals including:
>
> 1. Pan fill stairs with aluminum railings (5 complete)
> 2. Ships Ladders (2)
> 3. Elevator hoist beams, pit ladders and sump pit grates (2 sets)
> 4. Galvanized brick lintels
> 5. Steel framing, columns, beams, channels, angles and decking at large (1) and small (4) towers
> 6. Relieving angles, veneer supports, kicker support angles, shelf angles with anchors and anchor plates
> 7. Angles at elevators and channel frames at roll-up doors
>
> Delivery, installation taxes, shop drawings and labor expenses for above is included.

Weaver Cooke Response (D.E. 756) at 66 (Attachment A).

Weaver Cooke has acknowledged that the damages it attributes to Randolph Stair are "purely structural" and have nothing to do with water intrusion. The alleged structural damages are those set forth in the Barbour Report, and with regard to Randolph Stair, the report provides that Mr. Barbour observed, from construction phase photos, that "shelf angles were omitted in numerous locations on all building elevations," and that shelf angles "were not mitered and welded at building corners as specified in 2.10.A.1." D.E. 756 at 97 (Attachment G). From site visits, Mr. Barbour concluded that floor line shelf angles "were omitted and/or discontinuous in several observed locations. Furthermore, the shelf angles were not welded at corners and in fact did not extend around corners in any location observed." *Id.* Based on these observations, along with additional observations pertaining to construction elements within ECM's (not Randolph Stair's) scope of work, Mr. Barbour set forth the following analysis:

> Construction phase photographs indicated, and destructive testing has confirmed, that the floor line relief angles, also referred to as shelf angles, were omitted in numerous locations at all building elevations and were not installed in accordance with contact (sic) requirements. The Skysail plans specify the shelf angles be provided at the floor lines. ACI 530, Building [C]ode Requirements for Masonry Structures limits brick veneer heights to 30 feet. Omission of the shelf angles forces the brick veneer to span from the bottom most support, commonly the foundation or first floor structural element, to the roof, a distance ranging from approximately 43 to 55 feet. Issues of concern related to this construction defect include the following:
> > 1. Formation of cracks in the brick veneer at discontinuous edges of shelf angles and at balcony slabs as a result of normal concrete structure shortening or shrinkage and normal brick veneer expansion, as a result of the discontinuities caused by the variance in supported height.
> > 2. Omission of the specified horizontal expansion joints in areas where the shelf angle was omitted results in a discontinuous horizontal control joint in the veneer.
> > 3. Load distribution to the PT concrete perimeter slab edges may not be consistent with assumptions made by the PT engineers.
> > 4. The resulting discontinuous nature of the Tyvek as discussed in section 1.1 ...

*Id*. at 98.

The question of whether there was damage to property outside the scope of the parties' contract (as opposed to the scope of "the Work") was addressed by the district court in its order affirming this court's order allowing summary judgment for Randolph Stair on the economic loss issue. (D.E. 1373) Interestingly, in that context, it appears that Weaver Cooke advanced the wholly unsupported position[7] that "the omission of the shelf angles resulted in 'damage to the post tension [("PT")] concrete slabs at each floor level, as well as providing a source of water intrusion.' (Br., DE #38, at 17.)" D.E. 1373 at 4. The district court concluded that the "one thing that is clear from this excerpt is the omission of the shelf angles caused cracks to form in the brick veneer at certain locations." *Id.* "That the defect resulted in damage to the PT concrete slabs and water intrusion is not evident," the district court wrote, and "[w]ithout more definitive evidence of damage to property other than to the brick veneer, the economic loss rule bars Weaver Cooke's negligence claim." *Id.* at 4-5.

In its original memorandum, Weaver Cooke argued that "[c]ontrary to the assertions of Randolph [Stair], its indemnity obligation is not limited to only claims for "'bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than Subcontractor's Work itself).'" D.E. 756 at 53. As it did in the ECM Indemnity Remand Order, the court disagrees. For the same reasoning set forth in that order, the court concludes that any alleged insufficiency as to the quantity or placement of the shelf angles installed by Randolph Stair is wholly within the scope of Randolph Stair's "Work." "To the extent that Weaver Cooke

---

[7] As the district court noted, this position directly contradicts Weaver Cooke's representations, discussed earlier, that the damages it attributes to Randolph Stair were "structural in nature" and had "nothing to do with water intrusion."

seeks damages based on alleged injury to these components, that recovery is precluded by the language just discussed." D.E. 1568 at 15. Moreover, the court finds, based on the broader interpretation of "scope of work" used by the district court in its discussion of the economic loss rule, that any damage to the brick veneer (including, in particular, the cracking cited by the district court) also comes within the scope of Randolph Stair's "Work."

The economic loss rule obviously does not, itself, determine the parameters of whether the damages Weaver Cooke attributes to Randolph Stair are within, or outside, the scope of "the Work." Applying the rule, this court already has found that it precluded Weaver Cooke from recovering on the negligence claim because the "installation of shelf angles is integrally related to construction of the brick veneer. Any defect in the installation of shelf angles would necessarily affect the brick veneer." D.E. 934 at 7. "For purposes of the economic loss rule," the court concluded, "the damages alleged to the brick veneer relate to the subject of Randolph Stair's contract, i.e., installation of the anchors for the brick veneer." *Id.* On appeal, the district court affirmed *and* took a broader view of what work would be included within a contract's scope of work, as opposed to relating to damage to property other than that which was the subject of the contract. D.E. 1373 at 3-5.

The court finds the district court's analysis of the rule to be both informative and persuasive. Further, the court sees no sound basis upon which it could conclude, using the district court's broader view, that the damages for which Weaver Cooke seeks contractual indemnity (and which must be based on a showing of negligence) are for damage outside the scope of Randolph Stair's "Work." Summary judgment will be granted to Randolph Stair on this basis.

## CONCLUSION

For the foregoing reasons, the court on remand concludes that Randolph Stair's motion for summary judgment on the contractual indemnity claim is **ALLOWED** on grounds that Weaver Cooke's claim for damages pertains wholly and only to "the Work" performed by Randolph Stair as defined within the parties' subcontract and the attachments thereto, and is for that reason excepted from recovery in indemnity.

**END OF DOCUMENT**