**SO ORDERED.**

**SIGNED this 12 day of September, 2018.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

| | |
|---|---|
| NEW BERN RIVERFRONT DEVELOPMENT, LLC<br>    DEBTOR | CASE NO. 09-10340-8-SWH |
| | |
| NEW BERN RIVERFRONT DEVELOPMENT, LLC<br>    Plaintiff<br><br>    v.<br><br>WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC.,<br>    Defendants,<br><br>    and<br><br>WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br>    Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | ADVERSARY PROCEEDING NO. 10-00023-AP<br><br><br><br>ORDER DENYING MOTION TO LIFT STAY AND SUBSTITUTE WELLS FARGO BANK AS REAL PARTY IN INTEREST |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER REED PA, SKYSAIL OWNERS ASSOCIATION, INC.; NATIONAL REINFORCING SYSTEMS, INC., ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., CAROLINA CUSTOM MOULDING, INC., CURENTON CONCRETE WORKS, INC., WILLIAM H. DAIL d/b/a DD COMPANY, EAST CAROLINA MASONRY, INC., GOURAS, INC., HAMLIN ROOFING COMPANY, INC.; HAMLIN ROOFING SERVICES, INC., HUMPHREY HEATING & AIR CONDITIONING, INC.; PERFORMANCE FIRE PROTECTION, LLC; RANDOLPH STAIR AND RAIL COMPANY; STOCK BUILDING SUPPLY, LLC; PLF OF SANFORD, INC. f/d/b/a LEE WINDOW & DOOR COMPANY; UNITED FORMING, INC. a/d/b/a UNITED CONCRETE, INC.; JOHNSON'S MODERN ELECTRIC COMPANY, INC.; and WATERPROOFING SPECIALITIES, INC.,**
    Crossclaimants, Counterclaimants and
    Third-Party Defendants.

    **and**

**NATIONAL ERECTORS REBAR, INC.**
    Defendant, Counterclaimant,
    Crossclaimant and Third-Party
    Plaintiff,

    v.

**ROBERT P. ARMSTRONG, JR., ROBERT ARMSTRONG, JR., INC., SUMMIT DESIGN GROUP, INC., JMW CONCRETE CONTRACTORS, and JOHNSON'S MODERN ELECTRIC COMPANY, INC.**
    Third-Party Defendants.

    **and**

**J. DAVIS ARCHITECTS, PLLC,**
    **Third-Party Plaintiff,**

    **v.**

**MCKIM & CREED, P.A.,**
    **Third-Party Defendant.**

    **and**

**GOURAS, INC.,**
    **Third Party Defendant and**
    **Fourth-Party Plaintiff,**

    **v.**

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
    **Fourth-Party Defendants.**

    **and**

**STOCK BUILDING SUPPLY, LLC,**
    **Third-Party Defendant and**
    **Fourth-Party Plaintiff,**

    **v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
    **Fourth-Party Defendant.**

### ORDER DENYING MOTION TO LIFT STAY AND SUBSTITUTE WELLS FARGO BANK AS REAL PARTY IN INTEREST

The matter before the court is the Motion to Lift Stay and Substitute Wells Fargo Bank, N.A. as the Real Party in Interest jointly filed by defendants Weaver Cooke Construction, LLC ("Weaver Cooke") and Travelers Casualty & Surety Company of America ("Travelers"). (D.E. 1472, 1473 (memorandum)). Responses in opposition to the motion were filed by debtor New Bern Riverfront

Development, LLC and by Wells Fargo Bank, N.A. ("Wells Fargo"). (D.E. 1486, 1506) And, several of the third-party defendants indicated support for the motion by filing responses requesting that the motion be allowed on the grounds set forth in Weaver Cooke's and Travelers' memoranda. (D.E. 1493 (Gouras, Inc.), D.E. 1502 (East Carolina Masonry, Inc.), D.E. 1504 (Fluhrer Reed, PA), D.E. 1505 (William H. Dail d/b/a DD Co.)). A similar motion to add or substitute Wells Fargo was filed by former third-party defendants Kirkland, Inc., Milton L. Kirkland, and Janice J. Kirkland ("Indemnitors"), but is not addressed in this order given that the Indemnitors are no longer parties to this proceeding. Hearings were held in Raleigh, North Carolina on February 27, 2018 and on March 21, 2018, pursuant to which the court took the matter under advisement. For the reasons that follow, the motion will be denied.

## BACKGROUND

New Bern Riverfront Development, LLC ("New Bern" or "Plaintiff") initiated this action in Wake County Superior Court against nine defendants, including Travelers and Weaver Cooke, on March 30, 2009, over nine years ago.[1] Both Weaver Cooke and Travelers filed answers to the original complaint. In June of 2009, Wells Fargo was made a party to the Wake County proceeding when Weaver Cooke asserted third-party claims against it for an equitable lien and unjust enrichment.

New Bern initiated a chapter 11 case on November 30, 2009, and the state court action was removed to this court on February 3, 2010. After seeking and receiving authority to amend its complaint, New Bern filed an amended complaint on May 6, 2010 (the "Amended Complaint").

---

[1] Portions of this background discussion previously were set out in the court's recent Order Granting New Bern Riverfront Development, LLC's motion to strike, and are recited here almost verbatim, without indication of quotation. (D.E. 1561)

(D.E. 15) Travelers and Weaver Cooke remained defendants and filed timely answers, together with claims against Wells Fargo and its predecessor, Wachovia Bank, N.A. (D.E. 30 at 40-45 & Ex. 1)

In New Bern's bankruptcy case, the court approved the debtor's reorganization plan ("the Plan") on October 19, 2011. The Plan set out the parameters of Wells Fargo's role in this proceeding, including the extent to which it would fund and direct the construction defect litigation on behalf of the debtor and plaintiff, New Bern. In the adversary proceeding, an initial scheduling order was entered on November 22, 2011, which set December 21, 2011 as the deadline for adding new parties. Travelers and Weaver Cooke, among others, subsequently sought an extension of all deadlines in the scheduling order. Although the court allowed a thirty-day extension of some of the scheduling order deadlines, it did not extend the deadline for adding new parties, except upon a showing of good cause.[2]

On January 25, 2012, Weaver Cooke and Travelers, together with Wells Fargo and Wachovia (collectively herein, "Wells Fargo"), filed a consent motion requesting that both of the Movants' claims against Wells Fargo be bifurcated and stayed for the duration of the proceeding (the "Consent Motion"), subject to the terms of their proposed order. (Bankr. D.E. 275). As was explained in the motion, the litigation

> involves allegations of construction defects at the SkySail Condominiums located in New Bern, North Carolina and owned by Debtor. In the Litigation, Defendants [i.e., Movants] asserted claims against Wachovia [i.e., Wells Fargo and Wachovia, collectively referred to in the motion as "Wachovia"], which claims seek: (a) an equitable lien on the property; and (b) payment of any undisbursed loan proceeds (collectively, the "Wachovia Claims"). Defendants are the only parties asserting any

---

[2] Thereafter, New Bern was given leave to file a supplemental complaint, Travelers and Weaver Cooke (again, among others) were given leave to serve additional third-party complaints, and the deadline to add new parties was extended to January 7, 2013. Other scheduling order deadlines were later extended, but the deadline for adding new parties was not.

> claims against Wachovia in this Litigation. The Wachovia Claims have some issues of fact and/or law in common with some of the claims and defenses being asserted in the Litigation by or against parties other than Wachovia (the "Common Issues"). The Wachovia Claims also include many issues of fact and/or law which are unique.
>
> As a result of the confirmed Plan of Reorganization, Wachovia now controls and directs the claims asserted by the Debtor / Plaintiff in the Litigation. As a result, Wachovia will be involved in the litigation, including any mediation and potential settlement. It is the parties' expectation that the Litigation can proceed without the Wachovia Claims. The parties, therefore, respectfully request that except for the Common Issues, the Court bifurcate the Wachovia Claims from the Litigation and then stay the Wachovia Claims, provided Wachovia and Defendants shall be bound by any determination on the Common Issues in the Litigation.

Bankr. D.E. 275 at 2-3. Judge Leonard, who was at that time the bankruptcy judge presiding over the proceeding, allowed the motion and, two days later, entered the order staying the bifurcated claims (the "Consent Order"). That order provides:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that all claims asserted against Wachovia [again, Wells Fargo and Wachovia collectively referred to as "Wachovia"] by Defendants are STAYED. *All remaining claims and defenses in the above-captioned matter (the "Litigation") shall proceed and Wachovia shall not be required to participate in such claims, or file any further documents in connection with the Litigation.*
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except for issues of fact and/or law in common with any claims or defenses being asserted in the Litigation by or against parties other than Wachovia (the "Common Issues"), all claims asserted against Wachovia by Defendants are BIFURCATED from the Litigation; and that *Wachovia and Defendants shall be bound by any determination on the Common Issues in the Litigation.*
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the stay imposed by this Order shall remain in place pending further order of this Court.

Consent Order, Bankr. D.E. 276 at 2-3 (emphasis added). Thus, as of January 2012, the role of Wells Fargo in the bankruptcy case and in the adversary proceeding was as set forth in the plan of reorganization, with these further limitations as set out in the Consent Order.

6

On October 23, 2017 – some five and a half years later – Travelers substituted its counsel of record. Its new counsel sought leave to file a third-party complaint the next day. In their motion seeking leave to file the new complaint, counsel asserted that if Travelers were permitted to file the complaint, no prejudice would be suffered by any existing party to the litigation, the litigation would not be delayed, and that plaintiff New Bern would not be required to expend additional time or money prosecuting the underlying action. No party objected to Travelers' motion, and it was allowed by order dated November 20, 2017. (D.E. 1447) The third-party complaint was filed on December 1, 2017 (D.E. 1449), and the new parties filed answers. New Bern subsequently filed a motion to strike the third party complaint, which was allowed by order entered on May 30, 2018. (DE 1561) A motion for reconsideration of that order was denied on August 7, 2018. (D.E. 1575)

In the instant motion, Weaver Cooke and Travelers seek to lift the stay imposed by the 2012 Consent Order and to substitute Wells Fargo as the real party in interest, in place of the debtor and plaintiff New Bern. Proceeding under Rule 17, made applicable to this adversary proceeding by Bankruptcy Rule 7017, Movants posit the following arguments: 1) that Wells Fargo is the real party in interest because it has both the right to enforce the claims in the litigation and stands to receive practically all of the benefits of the litigation; 2) that Movants will be prohibited from asserting certain defenses in the litigation if Wells Fargo is not the named plaintiff, including failure to mitigate damages; 3) that New Bern is not the real party in interest because it lacks both the right to enforce the claims in the litigation and a significant interest in the case; and, 4) that joining Wells Fargo is necessary for the sake of transparency to the jury.

New Bern and Wells Fargo oppose the motion on grounds that 1) substitution of Wells Fargo as plaintiff would render plaintiff New Bern's reorganization impossible, and the confirmed plan

7

absurd; 2) that Rule 17 substitution is improper where there has not been a complete claim assignment, and inasmuch as New Bern stands to significantly benefit from the litigation through the funding of its confirmed plan, such assignment neither existed nor was intended; 3) that the Rule 17 motion has been waived by reason of significant delay, given that the now-asserted bases for substitution have been known for over six years; and, 4) that the purpose of Rule 17 is to protect defendants from multiplicity of liability, and here, there is no risk of that, especially in light of the Consent Order.

## DISCUSSION

Rule 17 of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7017, provides in relevant part that an action "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). As the Court of Appeals for the Fourth Circuit observed in *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, the rule was "[i]ntended to expand the class of those who may sue to include persons having an equitable or beneficial interest." 485 F.2d 78, 83 (4th Cir. 1973), *cert. denied*, 415 U.S. 935 (1974). Unfortunately, the *VEPCO* court concluded, in practice, "[a]bout the best that can be said for Fed. R. Civ. P. 17 is that it conveys a certain amount of correct information about naming plaintiffs." *Id.* at 82. In *VEPCO*, the court's vexation stemmed from the rule being "unfortunately susceptible to efforts to prevent prosecution of claims as illustrated by this appeal," or, more broadly, from the fact that the rule provides a platform on which "[i]ngenious counsel are enabled to present yet another 'decision point' resulting in extravagant expenditures of time and effort before ever reaching the merits." *Id.* at 83. Ultimately, the *VEPCO* court concluded, "'Rule 17(a) is a barnacle on the federal practice

8

ship. It ought to be scraped away.'" *Id.* (quoting John E. Kennedy, *Federal Rule 17(a); Will The Real Party In Interest Please Stand?*, 51 Minn. L. Rev. 675, 724 (1967)).

In addition, as many courts have made clear, the "requirements of Rule 17 should not be confused with the jurisdictional doctrine of standing." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008). Instead, the rule captures a "nonconstitutional, prudential limitation on standing." *Id.* at 757. Moreover, "courts . . . have overwhelmingly held that a Rule 17 objection is waived if not raised with reasonable promptness." *Trenwick America Reinsurance Corp. v. IRC, Inc.*, 764 F.Supp.2d 274, 293 (D. Mass. 2011), *citing, e.g., Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982) ("The real party in interest defense . . . should be raised in timely fashion or it may be deemed waived."). As Movants acknowledge, "[j]oinder or substitution of parties under Rule 17(a) is a matter of discretion for the trial court." Movants' Mem. in Supp. of Motion (D.E. 1473) at 7 (citing *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 415 (2d Cir. 2015)).

In the fifty years that have passed since the Fourth Circuit groused about the rule, no material changes or updates have been made to either its text or to its barnacle image. The rule abides, as it originally was: A simply-worded capture of the fundamental premise that a complaint should be "'brought by the person who, according to the governing substantive law, is entitled to enforce the right.'" *Oscar Gruss & Son, Inc., v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003), *quoting* 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1543, at 334 (2nd ed. 1990). In this matter, Movants cite Rule 17 as the basis upon which to lift the stay imposed by the 2012 Consent Order and to substitute Wells Fargo as the real party in interest, on

the bases set out above. The court will address each in turn, and begins with what it views as Wells Fargo's and New Bern's most obvious objection to the motion, that being the timing of it.

### I.     Timing of Movants' Rule 17 Motion

It is patently obvious that the instant motion was put forward as a result of Movants' change in strategy, which itself was prompted by Movants' retention of new counsel.[3] To again review, New Bern has been the plaintiff in this adversary proceeding since initiation of the lawsuit and, more importantly, since both before and after confirmation of its plan of reorganization in 2011. All of the bases upon which Movants now argue that substitution under Rule 17 is appropriate were known to them for the past seven years. Moreover, those bases were known to them *at the time they sought the consent order containing the stay they now seek to lift*. Though Movants seem not to perceive it, the court cannot help but note the irony that Weaver Cooke and Travelers, who now seek to bring Wells Fargo back into this litigation as an active participant, are the parties who previously sought to remove Wells Fargo from active participation in the litigation. Not only do Movants offer no explanation for the delay, or for their change of strategy, they do not even acknowledge it. It is apparent that there has been no intervening change to the operative facts or material developments with respect to controlling law, or to the text or application of Rule 17. All that *has* changed is the identity, and legal strategy, of Movants' counsel.

The Movants' effort to reshape the litigation according to their fresh legal perspective was discussed by the court in its recent order striking the third-party complaint:

---

[3] There is, of course, nothing whatsoever amiss with a party's decision to make changes to its legal staffing and/or strategy. Such decisions are worth noting, however, when that election – rather than a material change in the operative facts, or in controlling law, etc. – is the catalyst for extensive motions practice.

10

> After initially representing in its motion that the third-party complaint was premised on a pure contractual indemnity dispute, and would involve no delay in the proceedings *and require no additional expenditures of time or money by existing parties*, Travelers – after entry of the court's order granting leave to file the third-party complaint – immediately took two telling actions: First, it sought reopening of the discovery period; and second, *it sought to have Wells Fargo named as the real party in interest*. Travelers' third-party claims were no longer a quest for determination of the narrow contractual terms that tied it to the third-party defendants; rather, they became a mechanism for changing the course of the litigation. The court notes that the newly disclosed goals of Travelers are not, on their face, improper or unwarranted. For present purposes, they are just too late.

Order Granting New Bern Riverfront Dev't, LLC's Motion to Strike (May 30, 2018) (D.E. 1561) at 7-8 (emphasis added). And, in addition to having Wells Fargo named as the real party in interest, Movants ask the court to lift the stay imposed in 2012 by the Consent Order. That order makes clear that Wells Fargo is bound by the determinations reached in the adversary proceeding. Indeed, since 2012, Wells Fargo has been proceeding under the Consent Order's stipulation that "all remaining claims and defenses shall proceed and [Wells Fargo] shall not be required to participate." Bankr. D.E. 276 at 2.

It is true that "the rules do not specify a particular procedure or time" in which an objection under Rule 17(a) must be made; there is consensus, however, that the issue must be raised with "reasonable promptness." *Trenwick*, 764 F. Supp. 2d. at 293. The *Trenwick* court undertook a thorough survey of recent federal court decisions addressing the timeliness of Rule 17 objections, and found that "a critical issue in determining when delay is excessive is whether the defendants had enough information to raise the objection at a much earlier point in the proceedings." *Id.* at 294. In support of that point the court cited *Hefley v. Jones*, 687 F.2d 1383, 1387 (10th Cir. 1982), wherein the defendant "had facts before him to assert this defense for a year and a half from the time the complaint was filed," and *Esquire Swimming Pool Prod., Inc. v. Pittman*, 332 A.2d 128, 131,

11

130 (R.I. 1975), wherein that court determined that "[n]othing in the record suggests that defendants were ignorant of the real party in interest of the actual claims involved," and that undue delay in "making such a challenge may result in the defendant's being deemed to have waived his right to raise this objection."    Concluding that the defendants were in possession of all necessary information to determine whether to lodge a Rule 17 objection from the early stages of the litigation, the *Trenwick* court noted that

> [d]efendants never amended their answer to include failure to join the real party in interest as a defense, nor [did they] file a motion to dismiss under Rule 17. They never made the Rule 17 argument until they filed their pre-trial memoranda, approximately three years after the start of this litigation. In that time, tremendous resources have been expended by both sides on the assumption that Trenwick/UNUM would be the plaintiff. (Indeed, three different judges have presided over this case under the same assumption.)
>
> `
>
> I find that raising an objection to Trenwick and UNUM as the proper plaintiffs in this suit three years into the proceeding and on the eve of trial constitutes undue delay on defendants' part. They have waived their right to object. (Indeed, this tactic is another version of raising the "no written contract" claim at the eleventh hour to avoid repayment of an acknowledged debt. It is a delaying tactic, putting off the day of reckoning.)

*Trenwick*, 764 F.Supp.2d. at 294.

Movants' discussion of *Trenwick*, and the many other cases cited by Wells Fargo and New Bern on the topic of timeliness, comes distressingly close to misconstruing those cases. Contending that all of the cases cited by Wells Fargo and New Bern "involve parties raising this argument either on the eve of trial, during trial, or on appeal," Movants maintain that "when trial has not yet been set, as is the situation here," the cases provide no basis for a finding of waiver. D.E. 1516 at 18-19. Review of those cases, however, establishes that the courts' discussions and holdings were not based solely on the proximity of the Rule 17 argument to a trial date. Rather, those courts discussed, and premised their decisions upon, the full range of material facts available to them, which included the

12

length of time the objecting party was in possession of information relevant to its determination of whether to pursue a Rule 2017 objection. *See, e.g.*, *Trenwick,* 764 F. Supp. 2d at 294; *United Healthcare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 563 (8th Cir. 1996) (argument raised during pre-trial conference one week before trial, where defendant was on notice of basis for objection "nearly two years prior to trial"); *McLouth Steel Corp. v. Mesta Mach. Co.*, 11 F. Supp. 689, 691 (E.D. Pa. 1953) (argument raised four days before trial and "after two years of procedural maneuvering"). Those courts, like this one, look with disfavor on the use of a Rule 17 motion to bring forward tardy legal theories in hopes of changing the litigation landscape.

On timing grounds alone, the motion must be denied. Movants failed to explain or even acknowledge their years-long delay in bringing these objections to the fore. Moreover, it would be patently unfair to Wells Fargo to remove it from active participation in the litigation and release them from the obligation to participate, but then, to pull them back in as a full and active participant *seven years* later – long after the bulk of discovery has been completed and dispositive motions have been filed and determined. This court, like the district court in *Trenwick*, concludes that the Movants' Rule 17 claim "is waived and, in any case, is without merit." *Trenwick*, 764 F. Supp. 2d. at 293.

## II.     Purpose of Rule 17 Not Satisfied by Substitution

Even if the instant motion had been made in a timely manner, the court would deny it on the alternative ground that the substitution sought by Movants would not advance, and in fact does not comport with, the purposes of Rule 17. Movants contend that New Bern is not the real party in interest because it lacks the right to enforce the litigation claims and has no significant interest in the case; instead, they argue, Wells Fargo is the real party in interest, because Wells Fargo holds the

13

right to enforce the litigation claims and will receive virtually all of the benefits of the litigation. Movants' argument rests in large part on their position that the confirmed plan ("the Plan") itself embodies a complete assignment of claims.

In particular, Movants point to paragraph 9.2 of the Plan, which was approved by the court in the bankruptcy case on October 11, 2011. That paragraph provides that

> the Debtor shall retain the right and standing to assert and shall have the right, along with Wells Fargo, to commence, pursue, settle, compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtor (including Bankruptcy Causes of Action but excluding the Construction Litigation) which accrued and were asserted or capable of assertion by the Debtor as a debtor-in-possession as of the Petition Date.

Movants' Mem. in Support of Mot. at 4, *quoting* Plan at ¶ 9.2 (Bankr. Case 09-10340, Bankr. D.E. 292). The Plan defines the "Construction Litigation" as the "litigation between Debtor and Weaver Cooke Construction, LLC, et al. in this Court." Bankr. D.E. 292 at 11. Further, the Movants note, in the Construction Litigation – *i.e.*, in this action – Wells Fargo has "total control over the claims asserted" by New Bern. D.E. 1473 at 4-5. As the Plan provides,

> The Construction Litigation shall be pursued to its conclusion by final judgment or settlement in the Court, or until such time as Wells Fargo decides to abandon the Construction Litigation. Wells Fargo shall oversee and manage the pending litigation involving the Debtor. Wells Fargo shall pay the Debtor's litigation costs with all costs being a protective advance under the Note, and shall have the sole authority to retain counsel to prosecute and defend the litigation and settle the litigation.

Movants' Mem. in Support of Mot. (D.E. 1473) at 5 (quoting Plan at ¶ 6.4.1 (Bankr. Case 9-10340, Bankr. D.E. 292) (emphasis omitted)).

In addition, Movants contend that Wells Fargo stands to receive "most, if not all, of the recovery if [New Bern] is successful in the Construction Litigation because [New Bern's] approximately $18 million in claimed damages is less than the amount still owing on the loan. Thus,

14

only Wells Fargo can realistically benefit from the litigation." *Id.* at 6 (footnote omitted). Based on their review of Wells Fargo's capacity to oversee and manage the litigation, Movants conclude that the Plan provisions, taken together, lead to the conclusion that "[t]he Bankruptcy Plan is, *in effect*, a complete assignment from [New Bern] to Wells Fargo of [New Bern's] chose in action against Defendants." *Id.* at 9 (emphasis added). The Plan itself "manifests an intent" to make Wells Fargo the owner of "the debt allegedly owed by Weaver Cooke," and conveys upon Wells Fargo "the unconditional right to any proceeds up to the amount of its Note." *Id.* at 10. This, they conclude, constitutes a complete assignment under North Carolina state law, such that New Bern has been stripped of any "real interest" and only Wells Fargo may properly proceed as the plaintiff. *Id.* at 9-10 (citing cases).

New Bern and Wells Fargo respond that there has not been a complete claim assignment, that New Bern stands to significantly benefit from the litigation, and that a substitution of Wells Fargo for New Bern would render the debtor's Chapter 11 reorganization impossible, and the confirmed Plan "absurd." D.E. 1506 at 4. Specifically, they point out that the Plan

> was not confirmed to defeat itself. As it is correctly read, the Plan entitles Wells Fargo to proceeds of the Litigation up to the amount owed on its Note. The Plan simply confirms Wells Fargo's status of first priority secured lender in the bankruptcy. The purpose of proceeds from the Litigation is the repair of the condominium units damaged by the Defendants' design and construction defects. Wells Fargo intends to apply the proceeds of the Litigation first to pay costs of the Litigation and place the remaining amount in a repair trust. This allows the *Debtor* (not Wells Fargo) to repair and sell property of the estate to pay the *Debtor's* secured and unsecured creditors.

*Id.* at 7. If the court were to accept the Movants' interpretation of the Plan, they conclude, Wells Fargo would be entitled to *all* proceeds of the Litigation, including amounts in excess of Wells Fargo's secured claim – which would defeat the Plan. *Id.*

15

Having fully reviewed the parties' filings and the cases cited therein, it is readily apparent that there has been no assignment of the complete claim to Wells Fargo. Instead, Wells Fargo has only been given authority to act and in fact has been acting as a secured creditor by the terms in the confirmed Plan. Additional provisions of the Plan support the court's conclusion that a complete assignment of the litigation claims to Wells Fargo was not effectuated. In the definitional section, and in the section discussing the means by which to execute the Plan, it provides:

> 2.1 <u>Allowed Claim or Interest</u>: Any claim against or interest in the Debtor (a) for which a proof of claim or interest was filed on or before the date designated by the Court as the last day on which to file such proofs of claim or interest in this proceeding, or (b) which is listed in the Schedules filed by the Debtor (unless listed as unliquidated, disputed or contingent) and, in either case, to which (i) no objection has been filed within the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or Order of this Court, or (ii) an objection has been timely filed and determined by Final Order, and then only to the extent the Order allows such claim or interest.
>
> * * *
>
> 2.21 <u>Effective Date</u>: The first day of the month next following the Confirmation Date, unless the Confirmation Order has been stayed.
>
> * * *
>
> 2.28 <u>Net Sale Proceeds</u>: The amount remaining from the gross sale proceeds arising from the sale of any of the Debtor's real property, after payment or provision for the purchaser's deposit; seller concessions as provided in the contract of sale; seller closing costs; and where applicable, the accrued sewer and water tap fees as provided below and any broker's commissions due with respect to such sale.
>
> * * *
>
> 2.37 <u>Sale Properties</u>: The condominium units in SkySail Condominium located on Middle Street, New Bern, NC, and vested in the Debtor as of the Effective Date.
>
> * * *
>
> 6.1 <u>Vesting of Assets</u>: All tangible and intangible assets of the Debtor shall vest in the Reorganized Debtor as of the Effective Date.
>
> * * *
>
> 6.2.3. The Net Sale Proceeds derived from the Sale Properties, together with any recoveries from the pending civil action by the Debtor against Weaver Cooke and other parties (the "Construction Litigation"), will be the sole means to repay Wells Fargo for the protective advances and to fund the payment of Allowed Claims under the Amended Plan.

Amended Plan Of Reorganization Dated June 30, 2011, As Modified September 19, 2011 ) ("Plan"), at 2, 4-5, 10-11 (Bankr. D.E. 292).

The Plan identifies the sources of repayment to creditors: the Net Sale Proceeds and litigation proceeds. Section 6.2.3 earmarks those proceeds for the payment of both Wells Fargo for protective advances and to fund the payment of Allowed Claims under the Amended Plan. Section 2.1 defines "Allowed Claim" to include all allowed claims of the debtor – not just the claim of Wells Fargo.

The Plan recognizes that Wells Fargo has a valid, first-priority security interest in the Sale Properties, but the Plan does not *give* Wells Fargo its collateral; rather, the Plan allows Wells Fargo to control its use, and to adequately protect its interests in the collateral. Such functions are the traditional bailiwick of the secured creditor and exercising them does not transform Wells Fargo into the owner of the collateral. In fact, the Plan contemplates that Wells Fargo must foreclose – again, the traditional recourse of a secured creditor – in order to enforce its security interest and possibly take ownership of the collateral.

It also is noteworthy that Wells Fargo retains the right to abandon the litigation, the result of which would be reversion to the debtor pursuant to 11 U.S. C. § 554. Finally, pursuant to Section 6.1 of the confirmed Plan, "[a]ll tangible and intangible assets of the Debtor shall vest in the Reorganized Debtor as of the Effective Date." Plan at 10. Section 6.1 does not exclude the Construction Litigation in this vesting, thus solidifying the premise that the debtor owns the litigation claim and has not, by virtue of its Plan, assigned it to Wells Fargo.

The decision put forward by Movants as being on all fours with this case, *Ground Improvement Techniques, Inc. v. United States*, 618 F. App'x 1020 (Fed. Cir. July 28, 2015), is not

17

controlling; nor is it persuasive.[4]  Although that court found that the secured parties named in the complaint were the real parties in interest, and its determination was "based on the plain language of the documents involved in the bankruptcy proceedings" which specifically effected an assignment, that court also found that the debtor had *no* financial interest in the claims.  618 F. App'x at 1024, 1026, 1029 (noting that neither the plan nor the agreement respecting litigation "provided for distribution of any proceeds to [the debtor] itself, and that the debtor "no longer has *any* 'financial interest in claims arising from the [project]'").  Considering the facts in the instant case, this court comes to the opposite conclusion.  The plain language of the debtor's Plan does not effect an absolute assignment, and the debtor does have a financial interest in the claims.

Here, New Bern was, and is, the real party in interest, and Movants have provided to the court no persuasive or even plausible basis upon which to conclude otherwise.  Moreover, the court

---

[4] In *Ground Improvement*, the court permitted the substitution of plaintiffs under Rule 17(a)(3) based on its view that the "relevant interests were transferred through [the] bankruptcy proceeding."  *Bell v. United States*, 2016 WL 3172401 at *4 (Fed. Cl. June 6, 2016) (discussing *Ground Improvement*).  In *Bell*, the court noted that

> the leniency of Rule 17(a)(3) is not without limits.  "The ]Rule 17(a)(3)] provision should not be misunderstood or distorted.  It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."  Fed. R. Civ. P. 17 advisory committee's note to 1996 amendment.  This court has denied Rule 17(a)(3) substitution when plaintiffs unreasonably delayed determining ownership of the relevant property.  *See Textainer Equip. Mgmt. Ltd. v. United States*, 115 Fed. Cl. 708, 716-17 (2014) (refusing RCFC 17(a)(3) substitution, where there was no indication that timely discovery of ownership was difficult, and plaintiffs delayed resolution of ownership), *reconsideration denied*, No. 08-610, 2014 WL 2938452 (Fed. Cl. June 30, 2014).

*Bell*, 2016 WL 3172401 at *5 (discussing *Textainer*, wherein Rule 17 motion was denied as "too late" and movants provided "no reason" to explain their failure to raise the objection in a timely way).

18

concludes that even if Wells Fargo possibly could be considered *a* real party in interest, so too is New Bern, and only one need be named. *See, e.g.,Virginia Elec. & Power Co.*, 485 F.2d at 84 (discussing in context of partial subrogation, where there are two real parties and "either party may bring suit"). Rule 17 facilitates the proper presentation of defenses, and protects against the multiplicity of actions that would occur if a party were sued, in a subsequent action, by the party actually entitled to recover against it in the first place. *Id*. at 84-85. By virtue of the Consent Order, there is no possibility that the defendants risk a multiplicity of actions. The purpose of the rule has been satisfied with New Bern as named plaintiff, and the rule has no further role to play here, especially in Movants' efforts to reshape the litigation.

### III.     Ability of Movants to Assert All Defenses is Not Dependent Upon Wells Fargo's Status

The Movants contend that without Wells Fargo as *the* real party in interest, or at least *a* named real party in interest, their ability to assert their full array of defenses – and in particular their mitigation of damages defense – is compromised. In particular, Movants emphasize that Wells Fargo's status as a secured creditor, along with "the nature of its interests in the Construction Litigation, and its control of this case[,] should not be concealed." D.E. 1473 at 13. Per the Movants' forecast, they intend to argue at trial that the "allegedly defective conditions at Sky[S]ail could have been corrected years ago," and that "the failure to make timely repairs exacerbated the conditions at the property." *Id.* at 14.

However, nothing prohibits the Movants from fully asserting all proper defenses or introducing evidence of Wells Fargo's role in the litigation. The question of whether Wells Fargo, rather than New Bern, had a legal duty to mitigate, is one which will be a legal question not for this court but for the trial judge. The court anticipates that the trial court may have some difficulty

requiring Wells Fargo to answer so-called defenses in a litigation where the proponents of those defenses sought successfully to preclude Wells Fargo from participating in that same litigation.

Finally, Travelers and Weaver Cooke argue that their motion is motivated by a desire to serve the interests of transparency. According to their supporting reply memorandum, Wells Fargo had an obligation to take action to prevent deterioration to the building, failed to meet it, and is attempting to "deflect that responsibility by camouflaging its identity and its role in this case." D.E. 1516 at 18. Movants therefore seek to "unmask the Bank as the holder of the claim and the party responsible for ignoring any needed repairs and maintenance to the structure." *Id.* The court disagrees. The motion could just as easily be interpreted as an effort by Movants to gain advantage of jurors' general susceptibility to notions of the "big bad bank." Here, the court agrees with Wells Fargo that not only is it not a real party in interest, for it to be named as a party would be greatly prejudicial. As was noted in the Consent Order, Wells Fargo has a limited relationship to the main issues in this defective construction litigation case, and was "sidelined" for over seven years during which time significant and comprehensive discovery was undertaken and completed; the prejudice it would suffer as the "banner plaintiff" at this late juncture would be unfair. In light of the foregoing, which serves as a separate and additional basis upon which to deny both the request to stay and the request to substitute, the motion will be denied.

## CONCLUSION

Accordingly, for the reasons set out above, the motion of Travelers and Weaver Cooke to lift the stay imposed by the 2012 Consent Order, and to substitute Wells Fargo for New Bern as the real party in interest, is **DENIED**.

**END OF DOCUMENT**