**SO ORDERED.**

**SIGNED this 31 day of October, 2018.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO. 09-10340-8-SWH** |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC,** | |
| DEBTOR | |
| | |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC,** | **ADVERSARY PROCEEDING NO.** |
| Plaintiff, | **10-00023-AP** |
| v. | |
| **WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC.,** | **ORDER REGARDING REMANDED ISSUES INCLUDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST WATERPROOFING SPECIALTIES, INC.** |
| Defendants, | |
| and | |
| **WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** | |
| Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
| v. | |

J. DAVIS ARCHITECTS, PLLC, FLUHRER
REED PA, SKYSAIL OWNERS ASSOCIATION,
INC.; NATIONAL REINFORCING SYSTEMS,
INC., ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., CAROLINA CUSTOM
MOULDING, INC., CURRENTON CONCRETE
WORKS, INC., WILLIAM H. DAIL d/b/a
DD COMPANY, EAST CAROLINA MASONRY,
INC., GOURAS, INC., HAMLIN  ROOFING
SERVICES, INC., HUMPHREY
HEATING & AIR CONDITIONING, INC.;
PERFORMANCE FIRE PROTECTION, LLC;
RANDOLPH STAIR AND RAIL COMPANY;
STOCK BUILDING SUPPLY, LLC; PLF OF
SANFORD, INC. f/d/b/a LEE WINDOW &
DOOR COMPANY; UNITED FORMING,
INC. a/d/b/a UNITED CONCRETE, INC.;
JOHNSON'S MODERN ELECTRIC
COMPANY, INC.; and WATERPROOFING
SPECIALITIES, INC.,
  **Crossclaimants, Counterclaimants and**
  **Third-Party Defendants.**


  **and**

NATIONAL ERECTORS REBAR, INC.
  **Defendant, Counterclaimant,**
  **Crossclaimant and Third-Party**
  **Plaintiff,**

  **v.**

ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., JMW CONCRETE
CONTRACTORS, and JOHNSON'S MODERN
ELECTRIC COMPANY, INC.
  **Third-Party Defendants.**

  **and**

J. DAVIS ARCHITECTS, PLLC,

**Third-Party Plaintiff,**

**v.**

**MCKIM & CREED, P.A.,**
        **Third-Party Defendant.**

        **and**

**GOURAS, INC.,**
        **Third-Party Defendant and**
        **Fourth-Party Plaintiff,**

**v.**

**RAFAEL HERNANDEZ, JR., CARLOS CHAVEZ d/b/a CHAVEZ DRYWALL, 5 BOYS, INC. and ALEX GARCIA d/b/a/ JC 5,**
        **Fourth-Party Defendants.**

        **and**

**STOCK BUILDING SUPPLY, LLC,**
        **Third-Party Defendant and**
        **Fourth-Party Plaintiff,**

**v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
        **Fourth-Party Defendant.**

## ORDER REGARDING REMANDED ISSUES INCLUDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST WATERPROOFING SPECIALTIES, INC.

The matter before the court is the district court's remand after appeal of this court's order allowing summary judgment for third-party defendant Waterproofing Specialties, Inc. ("WSI") against Weaver Cooke Construction, LLC ("Weaver Cooke") on Weaver Cooke's contractual indemnity claim.  For the reasons set out below, WSI's motion for summary judgment on this claim

will again be allowed. The court also will address an additional issue remanded by the district court in its order of January 4, 2017 (D.E. 1359, the "District Court Clarification Order"),[1] pertaining to the breadth of this court's analysis regarding certain sequencing issues addressed in this court's order of August 27, 2014 (D.E. 904).

## BACKGROUND AND PROCEDURAL POSTURE

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of SkySail Luxury Condominiums ("SkySail") in New Bern, North Carolina. Weaver Cooke served as SkySail's general contractor, and WSI as the subcontractor who, among other things, applied and installed concealed waterproofing, traffic coating, and expansion joints in connection with the horizontal concrete surfaces of the SkySail project. Generally speaking, Weaver Cooke alleges that failures in the sequence in which traffic coating was applied to the surfaces, in relation to the installation of other building materials, contributed to water intrusion problems and caused damage to the interior of certain condo units. New Bern filed a state court action against Weaver Cooke and others in March 2009, and filed a petition for relief under Chapter 11 of the Bankruptcy Code in November 2009. The state court action was removed to the United States District Court for the Eastern District of North Carolina, and subsequently transferred to this court.

With leave of court, Weaver Cooke filed its second third-party complaint on June 14, 2012, asserting claims of negligence, contractual indemnity, and breach of express warranty against many

---

[1] To avoid the confusion attendant to the citation of multiple dockets, the court will identify both bankruptcy court orders and district court orders only by the docket entry numbers assigned to them in this adversary proceeding. The court is aware that in this order, as well as others entered in this proceeding, its citation format does not align with standard Bluebook convention. That is by design. For purposes of the New Bern adversary proceeding, the court has adopted a drastically simplified form of citation to pleadings, court orders, and other court documents.

of the subcontractors hired during construction of SkySail, including WSI. "Rather than detail the defects purportedly related to each subcontractor's work, Weaver Cooke referenced in, and attached to, its second third-party complaint New Bern's first amended complaint and New Bern's first supplemental complaint." District Court Clarification Order at 2 (D.E. 1359). In December 2013, many third-party defendants, including WSI as well as third-party defendants Stock Building Supply ("Stock Supply") and East Carolina Masonry ("ECM"), filed motions for summary judgment on Weaver-Cooke's claims. WSI filed its motion and memorandum on December 20, 2013, seeking summary judgment with respect to all of Weaver Cooke's claims against it. (D.E. 704, 706)  The court ruled on WSI's motion, along with those filed by other third-party defendants, by entering groups of orders pertaining to each of these three primary claims and, with respect to its order on contractual indemnity, designated the Stock Supply order as the "lead order." On August 22, 2014, the court entered an order granting summary judgment in favor of Stock Supply on the indemnity claim, which was Weaver Cooke's only remaining claim against Stock.[2]  (D.E. 898, the "Stock Indemnity Order")

The court subsequently entered orders on summary judgment for other third-party defendants (collectively, the "Related Orders"), including WSI (D.E. 955, the "WSI Indemnity Order"), allowing summary judgment in whole or part on many of the same bases as in the Stock Indemnity Order.  That order, and the Related Orders, were certified as final by both this court and the district court for purposes of appeal.  In an order entered on August 12, 2016, the district court affirmed the Stock Indemnity Order in part, reversed in part, and remanded for further proceedings. (D.E. 1326,

---

[2] The court granted summary judgment in favor of Stock Supply on the negligence and breach of express warranty claims in an order entered on June 10, 2014.

the "District Court Stock Indemnity Order")  The district court decided the appeals of the Related Orders on a similar basis, including Weaver Cooke's appeal of this court's order allowing summary judgment for WSI on the indemnity claim.[3]  As to the WSI Indemnity Order, the district court affirmed in part, reversed in part, and remanded, citing its reasoning as set forth in the District Court Stock Indemnity Order.  (D.E. 1331, the "District Court WSI Indemnity Order")

On May 16, 2017, this court held a status conference to consider the parameters of that matter on remand.  The parties collectively agreed that counsel for Stock Supply and Weaver Cooke would take the lead in presenting the primary arguments pertaining to the indemnity issue in a subsequent hearing, after which the court would enter an order resolving the matter on remand as between Weaver Cooke and Stock Supply.  Weaver Cooke and Stock Supply presented their arguments in a hearing on July 19, 2017, together with arguments on the closely related matter of Stock Supply's motion to exclude the testimony and expert report of Mr. Barbour (the "Barbour Report").

---

[3] In addition to the District Court Stock Indemnity Order (D.E. 1326), the other "Related Orders" on the indemnity issue, which respect to which the district court affirmed in part, reversed in part, and remanded, are: *Weaver Cooke Constr. LLC v. Curenton Concrete Works, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1327); *Weaver Cooke Constr. LLC v. East Carolina Masonry, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1328); *Weaver Cooke Constr. LLC v. Gouras, Inc.*, Order (E.D.N.C. Aug.15, 2017)  (D.E. 1329); *Weaver Cooke Constr. LLC v. Randolph Stair & Rail Co.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1330); *Weaver Cooke Constr. LLC v. Waterproofing Specialties, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1331) and *Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*, Order (E.D.N.C. Jan. 4, 2017) (D.E. 1359); *Weaver Cooke Constr. LLC v. Humphrey Heating & Air Conditioning, Inc.*, Order (E.D.N.C. Aug. 23, 2016) (D.E. 1332); and *Weaver Cooke Constr. LLC v. Hamlin Roofing Services, Inc.*, Order (E.D.N.C. Mar. 24, 2017) (D.E. 1384) .

In the Related Orders, the district court cited the District Court Stock Indemnity Order and noted that in it, "the identical indemnification provisions were at issue, and this court held, among other things, neither N.C. Gen. Stat. § 22B-1 nor the contributing negligence of other parties precluded Weaver Cooke's indemnification claim against the subcontractor." *See, e.g., Weaver Cooke Constr. LLC v. Curenton Concrete Works, Inc.*, Order at 1 n.1 (D.E. 1327).

On September 29, 2017, this court entered its Order on Remand Regarding Stock Building Supply Motion for Summary Judgment on Indemnity Claim and Allowing Motion to Exclude Expert Report (D.E. 1405, the "Stock Indemnity Remand Order)".  The court again allowed summary judgment for Stock Supply.  The court excluded Mr. Barbour's report on *Daubert* grounds, concluding that as to Stock Supply, "[a]t most, the report includes Stock Supply's products and installation as a *possible* source, and a *possible* cause, of water intrusion.  It establishes no more than that."  *Id.* at 20.  Further, the court held that even if the Barbour Report

> instead was admitted as evidence of proximate cause, Weaver Cooke's evidence still would be insufficient to satisfy its obligation of affirmatively demonstrating, with specific and admissible evidence, the existence of a genuine issue of material fact as to causation.  Therefore, with or without the Barbour Report, Weaver Cooke cannot prove proximate cause as a matter of law; as a result, it cannot show negligence.

*Id.*  Finally, the court granted summary judgment to Stock Supply on the alternative ground of Weaver Cooke's contributory negligence as to Stock Supply, holding that permitting Weaver Cooke to require Stock Supply to indemnify it "for damages for which Weaver Cooke indisputably was partially responsible would ignore both the language and purpose of §22B-1; indeed, it would be as if the statute, and the public policy it seeks to protect, did not exist."  *Id.* at 23.  Weaver Cooke sought to appeal this order, but the court declined to certify the order as final, and the appeal was dismissed by the district court.

After entry of the Stock Indemnity Remand Order, the court granted to WSI and similarly situated parties the opportunity to file short briefs addressing the extent to which the reasoning in that order applied to their particular fact set.  Unfortunately, most of the briefs advanced one-size-fits-all "me too" arguments without acknowledging pertinent differences in what the party actually argued in *its* motion for summary judgment (as opposed to what Stock Supply argued), and without

7

focusing on the existence or lack of undisputed facts that could establish that Weaver Cooke was contributorily negligent or had failed to show proximate cause *as to them*.[4]  At a subsequent hearing held on February 1, 2018, the court permitted the parties to file supplemental briefs identifying, with specificity, those factual and legal contentions that are uniquely relevant to them and support entry of summary judgment in their favor.[5]  WSI filed two such briefs (D.E. 1411, 1512), to which Weaver Cooke responded (D.E. 1439, 1519).

In addition, the district court, in an order entered on January 4, 2017, remanded another question for this court's consideration: "On appeal, the parties debate whether the First Order's analysis should also apply to the sequencing defects associated with the concealed waterproofing applied to the second floor balconies over habitable space and on the pool courtyard (terrace) PT slab."  D.E. 1359 at 11.  The "First Order" to which the district court referred is more fully described below, in the discussion of the pleadings and orders pertaining to WSI.  Because this "scope of First

---

[4] The court had anticipated that each party would apply the legal analysis set out the Stock Indemnity Remand Order to their own unique factual circumstances.  The court determined that Weaver Cooke was contributorily negligent *as to Stock Supply*, which in and of itself does not establish that Weaver Cooke was contributorily negligent as to any other party, though the argument that Weaver Cooke fell short in its duty to properly supervise its subcontractors is an argument advanced by virtually all third-party defendants, as well as plaintiff New Bern. Similarly, the court's determination that Weaver Cooke's negligence-based contractual indemnity claim against Stock Supply failed for lack of *proximate cause* does not necessarily mean that its claim against other parties would fail, or could only fail, as to any other party for precisely that same reason.

[5] Moreover, as will be discussed in more detail below, the particular factors that guided resolution of the Stock Supply matter on remand were not, and are not, the only factors relevant to the issues left for resolution by this court.  In the court's consideration of this matter on remand as to ECM and Randolph Stair and Rail Co. ("Randolph Stair"), the dispositive factor proved to be a  different issue which remained viable after this court's long-ago entry of summary judgment as to the main issues in the proceeding, that being whether the restrictive and definitional language of the indemnity clause itself precluded Weaver Cooke from seeking indemnity from a subcontractor when the alleged damages were a component of the subcontractor's "Work."  (D.E. 1568, the "ECM Indemnity Remand Order")

Order's analysis" issue is a comparatively simple one requiring only this court's clarification of its own prior orders, it is explained below in the context of WSI's pleadings, then summarily resolved at the conclusion of this order.  And, for that reason, the following account of WSI's pleadings extends beyond the scope of the indemnity-related pleadings in order to encompass both remanded issues.

## WSI'S PLEADINGS

To address the matters on remand, the court examines the initial pleadings, its original orders, and the issues addressed therein with respect to WSI.  The claims asserted by Weaver Cooke against WSI in its third-party complaint (D.E. 345) arise out of water intrusion damages attributed by Weaver Cooke to WSI's provision of various forms of waterproofing, traffic coatings, and joint sealants.  *See, e.g.*, D.E. 759 at 4-5 (Weaver Cooke Response to WSI's Mot. for Sum. J.).  Like Stock Supply, WSI argued in support of its motion for summary judgment that Weaver Cooke was contributorily negligent in ways that precluded its contractual indemnity claim.  *See* D.E. 704 (WSI Motion for Sum. J.), D.E. 706 at 19-31 (WSI Mem. of Law in Supp. of Mot. for Sum. J.).  WSI argued further that uncontested evidence established that the damages of which Weaver Cooke complained were attributable to errors in the sequencing of trades, and that Weaver Cooke, as the general contractor, was responsible for sequencing and managing that work.  *E.g.*, D.E. 706 at 5-8, 21-28.  WSI also argued that Weaver Cooke's negligence claim was barred as a matter of law in light of the written contract between the two parties.

WSI did not itself independently advance the argument which was put forward by ECM and subsequently proved to be a basis for decision in this court's order allowing summary judgment for ECM on the indemnity claim, namely, that the language *of the indemnity clause itself*, as set out in

the parties' subcontract, precluded the contractual indemnity claim.  *See* D.E. 1568 at 13-15 (ECM Indemnity Remand Order).  WSI did, however, expressly adopt and incorporate all other arguments and defenses asserted by other third-party defendants to the extent those arguments were not inconsistent with its own.[6]  (D.E. 706 at 28)  Weaver Cooke filed a memorandum in response, and WSI filed a reply.  (D.E. 759, D.E. 821)

With regard to Weaver Cooke's contractual indemnity claim against WSI, the court entered an order on September 26, 2014, wherein the court allowed WSI's motion for summary judgment on the same grounds set forth in the Stock Indemnity Order.   (D.E. 955, incorporating D.E. 954)  Thus, the court applied the same reasoning it used in granting summary judgment to Stock Supply: Namely, that certain portions of the subcontracts between Weaver Cooke and the related parties ran afoul of N.C. Gen. Stat. § 22B-1 and had to be excised from the agreements. Pursuant to that blue penciling, the court interpreted the contracts to permit Weaver Cooke to seek indemnification from WSI only if Weaver Cooke could establish that WSI was *solely* responsible for the alleged damages, rather than responsible "in part," which Weaver Cooke was unable to do.  The court held further that

> [i]n addition, there is evidence in the record that Weaver Cooke itself contributed to the water intrusion problem.  Certain management-level employees for Weaver Cooke admit that Weaver Cooke contributed to the sequencing error wherein the sliding glass doors were installed before the traffic coating had been applied to the concrete balconies.  Steve Tidey, Weaver Cooke's project superintendent, admitted that Weaver Cooke created a construction schedule which called for the application of the traffic coating after the installation of the sliding glass doors.  Tidey further acknowledged that this was a mistake on the part of Weaver Cooke.  Kevin Lloyd, Weaver Cooke's project manager and vice president, confirmed that Weaver Cooke's schedule called for the doors to be installed before the application of the traffic coating to the balconies.  Lloyd further testified that this scheduling component was

---

[6] Moreover, and more importantly, this court, especially at this advanced stage of this proceeding, is not required to ignore legal positions with likely application to the facts before it simply because they are brought to the forefront by other parties.

an obvious error when compared to the architectural details, which called for the application of the traffic coating prior to the installation of the exterior doors.

D.E. 955 at 16-17.

Subsequent to entry of the WSI Indemnity Order, WSI filed a motion seeking clarification of whether any of the claims asserted against it by Weaver Cooke still remained pending in light of the WSI Indemnity Order and a previous summary judgment order entered by the court (the "WSI First Order"), which had allowed WSI's motion on statute of limitations grounds. (D.E. 904) In its motion to clarify, WSI discussed both the WSI First Order and the WSI Indemnity Order, and argued that it had sought summary judgment on all claims asserted by Weaver Cooke arising out of alleged defects caused by WSI, *i.e.*, sequencing defects and pool and parking deck cracks. Specifically, WSI maintained that Weaver Cooke's failure to highlight any other areas of defective work (such as expansion joints) in its responsive memorandum or at the hearing barred Weaver Cooke from recovering as to any other defects, such that the court's two orders allowing summary judgment for WSI resolved all outstanding claims against it.

In an order entered on March 13, 2015, the court agreed in part, and held that all "claims relating to alleged sequencing defects, concealed waterproofing and traffic coating have been addressed and resolved in this court's prior orders." D.E. 1144 at 11 (Order Regarding Motion to Clarify ("WSI Clarification Order")). The prior rulings had resolved claims pertaining to WSI's application of traffic coating and concealed waterproofing on the parking and pool decks because, as a matter of law, WSI's work on those decks was not defective. *Id.* at 7. Moreover, the court held that its analysis in the WSI Indemnity Order resolved the indemnity claim to the extent it was based on all alleged defects relating to traffic coating or concealed waterproofing. However, the court held, Weaver Cooke's claims against WSI for negligence, breach of warranty, and contractual

11

indemnity, regarding the *expansion joints only*, remained pending, and amended its prior orders accordingly.

Both the WSI Indemnity Order and the WSI Clarification Order were appealed. With respect to the WSI Indemnity Order, the district court entered a short order in which it affirmed in part, reversed in part, and remanded (D.E. 1331), citing the same reasons it set forth in its order regarding Stock Supply. In some of the district court's dispositions on appeal, its order also included a footnote acknowledging various remaining issues that the parties had brought to its attention as remaining unresolved in the proceedings before this court. With WSI, the district court's order did not include such a notation.[7]

To again review, the district court's reasoning regarding Stock Supply also was set forth in this court's Stock Indemnity Remand Order:

> On appeal, the district court accepted this court's strike-through of the "regardless of" clause, but disagreed with its excision of the "or in part" clause. Specifically, the district court held that it would
>
>> assume[ ] without deciding that the bankruptcy court properly concluded that the last clause of ¶ 16.2 quoted above, i.e. the "regardless of" clause, violates § 22B-1 and should be severed. *See Int'l Paper*, 385 S.E.2d at 555 (holding that the clause "regardless of whether or not it is caused in part by a party indemnified hereunder" in a similar indemnity provision "violates the provisions of G.S. § 22B-1" and severing that portion). The court, however, disagrees with the bankruptcy court's conclusion that the phrase limiting indemnification to claims, damages, losses, and expenses caused *in part* by the negligent acts [or] omissions [of] the subcontractor likewise violates § 22B-1. The statute does not preclude

---

[7] Observations by the district court always are helpful in fleshing out the parameters of any remaining issues that may, or may not, require resolution in the context of moving this proceeding closer to trial. The district court's notations are not comprehensive summaries of those remaining issues, however, and, contrary to Weaver Cooke's contentions, they do not serve as limitations upon the matters this court may properly consider on remand.

indemnification when one is being held responsible solely for one's own negligence even though other parties might have been negligent too. *See* N.C. Gen. Stat. § 22B-1 ("Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the *sole* negligence of the promisor, its agents or employees." (emphasis added)). When one reads the whole of ¶ 16.2 (with the last clause redacted), Stock agreed to indemnify Weaver Cooke only for damages arising out of Stock's performance of its work and caused by Stock's (or its agents[']) negligence. The provision does not purport to hold Stock responsible for the negligence of any other party and thus comports with § 22B-1 and does not bar indemnification if other parties were negligent.

Order on Appeal at 6. In addition, the district court agreed with Weaver Cooke's challenge "to the bankruptcy court's conclusion to award summary judgment to Stock on Weaver Cooke's indemnification claim on the alternative ground of contributory negligence." *Id.* at 7. Applying the same rationale as before, the district court held that this court erred in "conclud[ing] Weaver Cooke could not seek indemnification from Stock as Stock did not 'wholly' cause the damages at issue," and held that neither the statute nor the subcontract "prohibits indemnification where *parties in addition to the promisee/subcontractor* are negligent." *Id.* (emphasis added).

Ultimately, the district court reversed the Indemnity Order on grounds that "the provision in this case permits Weaver Cooke to recover in indemnification for damages arising out of Stock's performance of its work and caused by Stock's (or its agents[']) negligence, irrespective of whether other parties were negligent too and contributed to the damages." *Id.* at 8. The district court remanded the Indemnity Order for further proceedings in accordance with its order. Finally, the district court also noted, in concluding, that

Stock raises an alternative argument in support of affirming the bankruptcy court, that is, Stock did not engage in conduct that proximately caused property damage to the project. Although Stock raised this argument in support of its motion for summary judgment, the bankruptcy court did not address it. The court leaves it to the bankruptcy court to consider it, if necessary, in the first instance on remand.

*Id.* at 8 n.4 (citation omitted).

13

Stock Indemnity Remand Order (D.E. 1406) at 8-9 (construing District Court Stock Indemnity Order (D.E. 1330)).

On WSI's and Weaver Cooke's consolidated appeal of the WSI Clarification Order, in an order entered on January 4, 2017, the district court again affirmed in part, reversed in part, and remanded. (D.E. 1359, the "District Court WSI Clarification Order") The district court considered both of this court's orders on summary judgment – *i.e.*, the WSI First Order (D.E. 904) and the WSI Indemnity Order (D.E. 955) – to the extent that those orders were addressed in the WSI Clarification Order (D.E. 1144). On WSI's appeal, the district court reversed to the extent that this court had

> concluded that Weaver Cooke's silence in response to WSI's summary judgment assertions as to what defects were and were not at issue was justified because WSI did not meet its summary judgment burden in the first instance. Specifically, the bankruptcy court found that because "WSI did not make a showing that there were no genuine factual issues regarding the expansion joints," WSI was not obligated to raise anything about the expansion joints. [WSI Clarification Order at 10.] WSI contends this conclusion was in error. The court agrees.
>
> ... If WSI was mistaken in its belief about the lack of potential liability for its expansion joint work, as Weaver Cooke contends, then Weaver Cooke was obligated to correct WSI's misapprehension, particularly when it knew that WSI sought dismissal of all Weaver Cooke's claims. By remaining silent, Weaver Cooke implicitly agreed WSI's expansion joint work was not an issue and waived any argument to the contrary.

District Court WSI Clarification Order at 7-8. Accordingly, because it found that Weaver Cooke had waived any possible claims against WSI for any damages other than those having to do with water intrusion resulting from alleged defects in the traffic coating and concealed waterproofing, the district court reversed the WSI Clarification Order to the extent that it held that claims pertaining to the expansion joints remained.

On Weaver Cooke's appeal of the WSI Clarification Order, the district court affirmed in part and remanded in part. Weaver Cooke argued that the bankruptcy court "erroneously failed to

address WSI's concealed waterproofing work on the second floor balconies over habitable spaces or the pool courtyard (terrace) post-tension ("PT") slab and erred in its conclusion about WSI's concealed waterproofing work on the pool deck." D.E. 1359 at 9. Weaver Cooke argued further that this court "did not properly dispose of its indemnity claim to the extent the claim relates to concealed waterproofing in these three areas of the project." *Id.* The district court affirmed with respect to this court's conclusion about concealed waterproofing on the pool deck. *Id*. at 11-13.

However, the district court also remanded an issue to this court, having concluded that Weaver Cooke was "correct that the bankruptcy court did not discuss the application of concealed waterproofing and sequencing issues in any other areas of the project, namely the second floor balconies over habitable space and on the pool courtyard (terrace) PT slab." Specifically as to the second floor balconies, the district court explained that

> [i]n the Clarification Order, the bankruptcy court recognized that the First Order discussing the statute of limitations issues] "focuses specifically on sequencing defects relating to traffic coating[.]" [citation omitted] It concluded that its earlier reasoning applied equally to sequencing defects associated with WSI's application of concealed waterproofing on the ground floor balconies, *i.e.*, balconies of units 116, 118, and 120, because Weaver Cooke had scheduled the application of concealed waterproofing out of sequence, just as it had the traffic coating. Additionally, it applied its findings about notice provided to Weaver Cooke by virtue of the standing water on the balconies and water intrusion to conclude that Weaver Cooke's negligence and breach of warranty claims based on concealed waterproofing sequencing defects on the ground floor balconies were time barred. The bankruptcy court discussed concealed waterproofing only in relation to the ground floor balconies because concealed waterproofing was not applied to "elevated" balconies. [citation omitted]
> Weaver Cooke did raise the issue before the bankruptcy court in response to WSI's motion for clarification, although not in the clearest of terms. On appeal, the parties debate *whether the First Order's analysis should also apply to the sequencing defects associated with the concealed waterproofing applied to the second floor balconies over habitable space and on the pool courtyard (terrace) PT slab.* The bankruptcy court is in a better position to address this issue in the first instance, and therefore, the court will remand the issue for the bankruptcy court's consideration.

D.E. 1359 at 10-11 (emphasis added).  As to the pool deck, the district court concluded that the bankruptcy court's failure to consider the Barbour expert report on this topic was not error, because Weaver Cooke did not itself rely upon it when opposing summary judgment, and instead relied upon the testimony of experts Penny and Justus.  Accordingly, the district court determined that this bankruptcy court's conclusion "regarding WSI's application of concealed waterproofing on the pool deck stands."  *Id.* at 13.

Finally, on the question of indemnity, the district court noted in the District Court WSI Clarification Order that it previously had, in part, reversed this court's WSI Indemnity Order, for reasons discussed above.  However, because this court already had concluded that WSI's work on the pool deck was not defective ("i.e., it was not negligent"), the district court agreed that indemnification was not proper because "the pertinent indemnification provision 'requires that the damage be caused by the 'negligent acts or omissions' of the subcontractor."  *Id.* at 14.   "In the absence of negligence, the bankruptcy court correctly determined that Weaver Cooke's indemnity claim based on WSI's pool deck work cannot survive."  *Id.* at 15.

Returning to the primary matter at hand, what remains for consideration for indemnity purposes is whether Weaver Cooke may pursue its contractual indemnity claim against WSI for damages due to water intrusion resulting from alleged sequencing defects in connection with WSI's provision of concealed waterproofing and traffic coating at SkySail.  WSI contends that the contributory negligence analysis as set forth in the Stock Indemnity Remand Order is the basis upon which this court should allow summary judgment in its favor on the remanded contractual indemnity issue.  For the reasons that follow, the court will allow summary judgment for WSI on that ground, and also on the alternative basis more fully articulated in the ECM Indemnity Remand Order (D.E.

1568), which is equally applicable to WSI; that being that the indemnity agreement excludes damages to the subject of the contract, *i.e.* "the Work."  In addition, with respect to the issue remanded by the district court on appeal of the WSI Clarification Order, the court will clarify that its analysis as set forth in the WSI First Order did extend and pertain to the defects alleged with respect to the second floor balconies over habitable space and the pool courtyard (terrace) PT slab. The court turns now to the indemnity claim.

## DISCUSSION

## I.    Contributory Negligence of Weaver Cooke

WSI is the subcontractor responsible for, among other things, "installing and applying concealed waterproofing, expansion joints and traffic coating to the horizontal concrete surfaces of the SkySail project, which included the Project's concrete balcony slabs and the parking and pool decks."  D.E. 904 at 5.  The traffic coating itself is "a liquid waterproofing substance applied to exposed concrete in order to prevent water penetration through the concrete and the attached structure."  *Id.* at 8.  As has previously been discussed many times, the gist of the problem is that architectural details for SkySail called for the traffic coating "to be applied to the concrete balconies *prior* to the installation of the sliding glass doors, such that the traffic coating would run *underneath* the threshold of the sliding glass doors."  *Id.* at 8 & n.2 (citing exhibits and testimony of Weaver Cooke employees).  Unfortunately, "the sliding glass doors were actually installed *before* the traffic coating had been applied such that the traffic coating went *over* the threshold of the balcony doors." *Id.*  Weaver Cooke also alleged that "traffic coating was installed out of sequence in relation to the installation of the brick veneer and led to water intrusion through the Project's walls."  D.E. 955 at 15 n.5.

17

In support of its motion for summary judgment on grounds of contributory negligence, WSI cited evidence of record establishing, in its view, that "Weaver Cooke's actions were the sole cause of the [water intrusion] condition as they set the sequencing of the work which led to the alleged defect." D.E. 706 at 22. All that is necessary for present purposes, however, is that WSI establish Weaver Cooke's *contributory* negligence from the evidence of record, which it has undisputably done.

As with Stock Supply, "ample evidence of record establishes, as a matter of law, that Weaver Cooke bears partial responsibility for *the same negligence and damages*" that it now attributes to WSI. Stock Indemnity Remand Order (D.E. 1406) at 21 (emphasis added). More specifically,

> Under the district court's more expansive reading of ¶ 16.2 of the parties' subcontract, Weaver Cooke is not precluded by § 22B-1 from seeking indemnity from other parties, including multiple subcontractors who may have been negligent. However, to the extent that Weaver Cooke bears responsibility (i.e. is contributorily negligent) for the damages *for which it seeks indemnity from [a particular subcontractor]*, § 22B-1 bars Weaver Cooke's recovery.

*Id.* at 21-22.

Weaver Cooke maintains that the evidence put forward by WSI "does not rise to the level of contributory negligence," D.E. 1439 at 5, but the court disagrees. It is undisputably clear from the extensive evidence of record in this proceeding that Weaver Cooke was responsible, at the very least in part, for the sequencing errors that it claims contributed to the water intrusion problems at SkySail and for which Weaver Cooke would seek indemnity from WSI. These sequencing errors resulted in installation of the sliding glass doors prior to application of the traffic coating to the concrete balconies; in addition, Weaver Cooke created the sequencing schedule for the traffic coating and installation of the brick. Weaver Cooke set these schedules in error and its representatives have acknowledged that mistake. *See, e.g.*, WSI Indemnity Order (D.E. 955) at 13-

18

17; D.E. 706 at 22-25 (citing deposition testimony of Weaver Cooke employees Tidey and Lloyd; D.E. 1512 (WSI Supp. Resp. to Court Order on Remand regarding Stock Supply) at 3 (also citing deposition testimony of Tidey and Lloyd).  Accordingly, based on its own undisputed contributory negligence, Weaver Cooke is precluded from seeking indemnification from WSI.

## II.     Preclusive Contractual Language as discussed in ECM Indemnity Remand Order

Alternatively, as discussed in the ECM Indemnity Remand Order (D.E. 1568), the district court pointed out in its order remanding as to ECM that this court had not yet addressed ECM's argument that "even if Weaver Cooke's own failure to properly supervise ECM's work does not completely preclude it from receiving indemnity, the damages for which it is entitled to indemnity are limited by the terms of the subcontract."  D.E. 1328 at 1 n.1; *see also* ECM Mem. (D.E. 686) at 32.  The language to which the district court (and ECM) referred is identical to the language used in the Weaver Cooke-WSI subcontract, and provides as follows:

> 16.2  To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (*other than Subcontractor's Work itself*) including loss of use resulting therefrom, if caused in whole or in part by the negligent acts or omissions of Subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.  Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity, which would otherwise exist as to a party or person described in this Article.

D.E. 686, Ex. 1,  ¶ 16.2 (emphasis added).  The subcontract between Weaver Cooke and WSI defines the "Subcontractor's Work" in Attachment A-1 to the subcontract, as follows:

Provide all required labor, material, equipment, supervision, taxes and insurance to provide waterproofing, traffic coatings, and joint sealants in strict accordance with the plans and specifications and following special requirements:

Work includes:

Membrane waterproofing of below-grade foundation walls and elevator pit walls
Furnishing and installing rigid insulation board in conjunction with the below-grade waterproofing
Waterproof the suspended slabs of the pool plaza and the second floor breezeway using 180 mils of the specified membrane, surface conditioner, protection board and drainage mat including a 10-year watertightness warranty
Provide and install the specified traffic coating system to balconies and upper level parking deck and ramp
Shotblast or pressure wash surfaces to receive traffic coatings
Caulk exterior masonry control joints, EIFS to masonry joints, under balconies, exterior window and door perimeters, slab on grade control joints, interior floor expansion joint assemblies, exterior masonry wall expansion joint assemblies, and interior floor-to-floor fire-rated blankets at exposed expansion joints and between walls

Weaver Cooke Response (D.E. 759-1) at 3 (Attachment A-1).

The language of this indemnity provision specifically precludes recovery for damage to "the Work," which in this instance consists of WSI's installation of the concealed waterproofing and traffic coatings per the terms of the subcontract recited above. As with the ECM Indemnity Remand Order, this court sees no sound basis upon which it could possibly conclude, using the district court's broader view of what comes within a subcontractor's scope of work (as articulated in that court's orders discussing the economic loss rule), that the damages for which Weaver Cooke would seek contractual indemnity here are for damage outside the scope of WSI's "Work." Summary judgment will be granted to WSI on this basis.

## III.    District Court WSI Clarification Order on Remand

Finally, with respect to the issue remanded by the district court in its disposition on appeal of the WSI Clarification Order, the court has carefully and thoroughly reviewed its own orders as

well as the parties' pleadings in relation to them. Having done so, the court clarifies that its analysis as set forth in the WSI First Order (D.E. 904) did extend and pertain to the defects alleged with respect to the second floor balconies over habitable space and the pool courtyard (terrace) PT slab. Thus, Weaver Cooke's claims as to those components of the SkySail project likewise were, and are, barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, on remand, WSI's motion for summary judgment on the contractual indemnity claim is **ALLOWED** on grounds of Weaver Cooke's contributory negligence. In addition, and in the alternative, WSI's motion is **ALLOWED** on grounds that Weaver Cooke's claim for damages pertains wholly and only to "the Work" performed by WSI as defined within the parties' subcontract and the attachments thereto, and is for that reason excepted from recovery in indemnity. And, finally, with respect to the issue remanded by the district court in its order of January 4, 2017, the court clarifies and confirms that its analysis as set forth in the "First Order" (D.E. 904) does apply to the sequencing defects associated with the concealed waterproofing applied to SkySail's second floor balconies over habitable space, as well as on the pool courtyard (terrace) TP slab.

## END OF DOCUMENT