**SO ORDERED.**

**SIGNED this 19 day of December, 2018.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO. 09-10340-8-SWH** |
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC,** | |
| DEBTOR | |

| | |
|---|---|
| **NEW BERN RIVERFRONT DEVELOPMENT, LLC,** | **ADVERSARY PROCEEDING NO.** |
| Plaintiff, | **10-00023-AP** |
| v. | |
| **WEAVER COOKE CONSTRUCTION, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; J. DAVIS ARCHITECTS, PLLC; FLUHRER REED PA; and NATIONAL ERECTORS REBAR, INC. f/k/a NATIONAL REINFORCING SYSTEMS, INC.,** | **ORDER ON REMAND REGARDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST CURENTON CONCRETE WORKS, INC.** |
| Defendants, | |
| and | |
| **WEAVER COOKE CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** | |
| Defendants, Counterclaimants, Crossclaimants and Third-Party Plaintiffs, | |
| v. | |

**J. DAVIS ARCHITECTS, PLLC, FLUHRER
REED PA, SKYSAIL OWNERS ASSOCIATION,
INC.; NATIONAL REINFORCING SYSTEMS,
INC., ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., CAROLINA CUSTOM
MOULDING, INC., CURENTON CONCRETE
WORKS, INC., WILLIAM H. DAIL d/b/a
DD COMPANY, EAST CAROLINA MASONRY,
INC., GOURAS, INC., HAMLIN  ROOFING
SERVICES, INC., HUMPHREY
HEATING & AIR CONDITIONING, INC.;
PERFORMANCE FIRE PROTECTION, LLC;
RANDOLPH STAIR AND RAIL COMPANY;
STOCK BUILDING SUPPLY, LLC; PLF OF
SANFORD, INC. f/d/b/a LEE WINDOW &
DOOR COMPANY; UNITED FORMING,
INC. a/d/b/a UNITED CONCRETE, INC.;
JOHNSON'S MODERN ELECTRIC
COMPANY, INC.; and WATERPROOFING
SPECIALITIES, INC.,**

       **Crossclaimants, Counterclaimants and
       Third-Party Defendants.**


       **and**

**NATIONAL ERECTORS REBAR, INC.**
       **Defendant, Counterclaimant,
       Crossclaimant and Third-Party
       Plaintiff,**

       **v.**

**ROBERT P. ARMSTRONG, JR., ROBERT
ARMSTRONG, JR., INC., SUMMIT DESIGN
GROUP, INC., JMW CONCRETE
CONTRACTORS, and JOHNSON'S MODERN
ELECTRIC COMPANY, INC.**
       **Third-Party Defendants.**

       **and**

**J. DAVIS ARCHITECTS, PLLC,**

**Third-Party Plaintiff,**

**v.**

**MCKIM & CREED, P.A.,**
    **Third-Party Defendant.**

    **and**

**GOURAS, INC.,**
    **Third-Party Defendant and**
    **Fourth-Party Plaintiff,**

**v.**

**RAFAEL HERNANDEZ, JR., CARLOS
CHAVEZ d/b/a CHAVEZ DRYWALL,
5 BOYS, INC. and ALEX GARCIA
d/b/a/ JC 5,**
    **Fourth-Party Defendants.**

    **and**

**STOCK BUILDING SUPPLY, LLC,**
    **Third-Party Defendant and**
    **Fourth-Party Plaintiff,**

**v.**

**CARLOS O. GARCIA, d/b/a/ C.N.N.C.,**
    **Fourth-Party Defendant.**

### ORDER ON REMAND REGARDING WEAVER COOKE'S INDEMNITY CLAIM AGAINST CURENTON CONCRETE WORKS, INC.

The matter before the court is the district court's remand after appeal of this court's order

allowing summary judgment for third-party defendant Curenton Concrete Works, Inc. ("Curenton")

against Weaver Cooke Construction, LLC ("Weaver Cooke") on Weaver Cooke's contractual

indemnity claim.  For the reasons outlined below, on remand, Curenton's motion for summary judgment on this claim will be allowed.

## BACKGROUND AND PROCEDURAL POSTURE

New Bern Riverfront Development, LLC ("New Bern") is the owner and developer of SkySail Luxury Condominiums ("SkySail Project") in New Bern, North Carolina.  Weaver Cooke served as the SkySail Project's general contractor, and Curenton as the subcontractor who placed and finished the concrete on the elevated slabs (i.e. the balconies) and the parking deck.  New Bern filed a state court action against Weaver Cooke and others in March 2009, and filed a petition for relief under Chapter 11 of the Bankruptcy Code in November 2009.  The state court action was removed to the United States District Court for the Eastern District of North Carolina, and subsequently transferred to this court.

With leave of court, Weaver Cooke filed its second third-party complaint on June 14, 2012, asserting claims of negligence, contractual indemnity, and breach of express warranty against many of the subcontractors hired during construction of the SkySail Project, including Curenton.  In December 2013, many third-party defendants, including Curenton as well as third-party defendant Stock Building Supply ("Stock Supply"), filed motions for summary judgment on Weaver-Cooke's claims. Curenton filed its motion on December 20, 2013, seeking summary judgment with respect to all of Weaver Cooke's claims against it (D.E. 687, 690).  The court ruled on these motions by entering groups of orders pertaining to each of these three primary claims, and, with respect to its order on contractual indemnity, designated the Stock Supply order as the "lead order."  On August 22, 2014, the court entered an order granting summary judgment in favor of Stock Supply on the

indemnity claim, which was Weaver Cooke's only remaining claim against Stock.[1] (D.E. 898, the "Stock Indemnity Order").

The court subsequently entered orders on summary judgment for other third-party defendants (collectively, the "Related Orders"), including Curenton, allowing summary judgment in whole or part on many of the same bases as in the Stock Indemnity Order. That order, and the Related Orders, were certified as final by both this court and the district court for purposes of appeal. In an order entered on August 12, 2016, the district court affirmed the Stock Indemnity Order in part, reversed in part, and remanded for further proceedings. (D.E. 1326, the "District Court Stock Indemnity Order") The district court decided the appeals of the Related Orders on a similar basis, including Weaver Cooke's appeal of this court's order allowing summary judgment for Curenton on the indemnity claim.[2] (D.E. 957, the "Curenton Indemnity Order") As to the Curenton Indemnity Order, the district court affirmed in part, reversed in part, and remanded, citing its reasoning as set

---

[1] The court granted summary judgment in favor of Stock Supply on the negligence and breach of express warranty claims in an order entered on June 10, 2014.

[2] In addition to the District Court Stock Indemnity Order (D.E. 1326), the other "Related Orders" on the indemnity issue, which respect to which the district court affirmed in part, reversed in part, and remanded, are: *Weaver Cooke Constr. LLC v. Curenton Concrete Works, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1327); *Weaver Cooke Constr. LLC v. East Carolina Masonry, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1328); *Weaver Cooke Constr. LLC v. Gouras, Inc.*, Order (E.D.N.C. Aug.15, 2017) (D.E. 1329); *Weaver Cooke Constr. LLC v. Randolph Stair & Rail Co.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1330); *Weaver Cooke Constr. LLC v. Waterproofing Specialties, Inc.*, Order (E.D.N.C. Aug.15, 2016) (D.E. 1331) and *Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*, Order (E.D.N.C. Jan. 4, 2017) (D.E. 1359); *Weaver Cooke Constr. LLC v. Humphrey Heating & Air Conditioning, Inc.*, Order (E.D.N.C. Aug. 23, 2016) (D.E. 1332); and *Weaver Cooke Constr. LLC v. Hamlin Roofing Services, Inc.*, Order (E.D.N.C. Mar. 23, 2017) (D.E. 1380) .

In the Related Orders, the district court cited the District Court Stock Indemnity Order and noted that in it, "the identical indemnification provisions were at issue, and this court held, among other things, neither N.C. Gen. Stat. § 22B-1 nor the contributing negligence of other parties precluded Weaver Cooke's indemnification claim against the subcontractor." *See, e.g., Weaver Cooke Constr. LLC v. Curenton Concrete Works, Inc.*, Order at 1 n.1 (D.E. 1327).

forth in the District Court Stock Indemnity Order. (D.E. 1327, the "District Court Curenton Indemnity Order")

On May 16, 2017, this court held a status conference to consider the parameters of the matter on remand. The parties collectively agreed that counsel for Stock Supply and Weaver Cooke would take the lead in presenting the primary arguments pertaining to the indemnity issue in a subsequent hearing, after which the court would enter an order resolving the matter on remand as between Weaver Cooke and Stock Supply. Weaver Cooke and Stock Supply presented their arguments in a hearing on July 19, 2017, together with arguments on the closely related matter of Stock Supply's motion to exclude the testimony and expert report of Mr. Barbour (the "Barbour Report").

On September 29, 2017, this court entered its Order on Remand Regarding Stock Building Supply Motion for Summary Judgment on Indemnity Claim and Allowing Motion to Exclude Expert Report (the "Stock Indemnity Remand Order)". The court again allowed summary judgment for Stock Supply. (DE 1406). The court excluded Mr. Barbour's report on *Daubert* grounds, concluding that as to Stock Supply, "[a]t most, the report includes Stock Supply's products and installation as a *possible* source, and a *possible* cause, of water intrusion. It establishes no more than that." *Id.* at 20. Further, the court held that even if the Barbour Report

> instead was admitted as evidence of proximate cause, Weaver Cooke's evidence still
> would be insufficient to satisfy its obligation of affirmatively demonstrating, with
> specific and admissible evidence, the existence of a genuine issue of material fact as
> to causation. Therefore, with or without the Barbour Report, Weaver Cooke cannot
> prove proximate cause as a matter of law; as a result, it cannot show negligence.

*Id.* Finally, the court granted summary judgment to Stock Supply on the alternative ground of Weaver Cooke's contributory negligence vis-a-vis Stock Supply, holding that permitting Weaver Cooke to require Stock Supply to indemnify it "for damages for which Weaver Cooke indisputably

was partially responsible would ignore both the language and purpose of §22B-1; indeed, it would be as if the statute, and the public policy it seeks to protect, did not exist." *Id.* at 23.  Weaver Cooke sought to appeal this order, but the court declined to certify it as final, and the appeal was dismissed by the district court.

After entry of the Stock Indemnity Remand Order, the court granted to Curenton and similarly situated parties the opportunity to file short briefs addressing the extent to which the reasoning in that order applied to their particular fact set.  Unfortunately, most of the briefs advanced one-size-fits-all "me too" arguments without acknowledging pertinent differences in what the party actually argued in *its* motion for summary judgment (as opposed to what Stock Supply argued), and without focusing on the existence or lack of undisputed facts that could establish that Weaver Cooke was contributorily negligent or had failed to show proximate cause *as to them*.[3]  At a subsequent hearing held on February 1, 2018, the court permitted the parties to file supplemental briefs identifying, with specificity, those factual and legal contentions that were uniquely relevant to them and supported entry of summary judgment in their favor.  Weaver Cooke filed memoranda in response to these briefs, and the motions are ripe for disposition.

---

[3] The court had anticipated that each party would apply the legal analysis set out the Stock Indemnity Remand Order to their own unique factual circumstances.  The court determined that Weaver Cooke was contributorily negligent *as to Stock Supply*, which in and of itself does not establish that Weaver Cooke was contributorily negligent as to any other party, though the argument that Weaver Cooke fell short in its duty to properly supervise its subcontractors is an argument advanced by virtually all third-party defendants, as well as plaintiff New Bern. Similarly, the court's determination that Weaver Cooke's negligence-based contractual indemnity claim against Stock Supply failed for lack of *proximate cause* does not necessarily mean that its claim against other parties would fail, or could only fail, as to any other party for precisely that same reason.

## CURENTON'S PLEADINGS

To address the matter on remand, the court examines the initial pleadings, its original orders, and the issues addressed therein with respect to Curenton.  The claims asserted by Weaver Cooke against Curenton in its third-party complaint (D.E. 345) arise out of Curenton's alleged failure to properly place concrete in balcony forms (which were set and marked by other parties), such that the balconies did not achieve the proper slope for water drainage and are susceptible to ponding due to the lack of a smooth and even surface, resulting in damage from water intrusion.  Weaver Cooke Mem. in Resp. to Mot. for Sum. J. (D.E. 749) at 5-7, 28-32. Among other things, Curenton argued in its motion for summary judgment that Weaver Cooke failed to put forth evidence necessary to create a genuine issue of material fact as to whether Curenton breached any duty owed by it to Weaver Cooke, resulting in damages.  Curenton Mem. in Supp. of Mot. for Sum. J. (D.E. 690) at 25-29.  Curenton also advanced the argument that the language of the indemnity provision excluding damages to "the Work" precluded the contractual indemnity claim.  *Id.* at 17-18.  And, in its reply to Weaver Cooke's response memorandum, Currenton noted that it had incorporated the arguments of other parties[4] and, accordingly, that with regard to that otherwise "fully briefed" issue, Weaver Cooke's contributory negligence "in relation to the concrete balconies" barred any negligence claim. D.E. 825 at 10.

On August 25, 2014, the court entered an order allowing summary judgment for Curenton on both the negligence and breach of warranty claims, concluding that both were barred by the statute of limitations.  D.E. 901 (the "Curenton SOL Order).  That order, which

---

[4] Curenton stated in its memorandum that to the "extent that any arguments of other parties track those of Curenton, then Curenton would ask the Court to consider those arguments as additional support for Curenton's position."  D.E. 690 at 1 n1.

was subsequently affirmed by the district court (D.E. 1320), includes an extensive recap of the

evidentiary record with regard to Weaver Cooke's allegations and claims against Curenton.  D.E.

901 at 7-10, 12-13.  It provides, in part:

> Specifically, Curenton was responsible for pouring the project's elevated concrete
> slabs, which included the balcony slabs . . . .  The "forms" for Currenton's
> concrete pours were constructed and removed by another subcontractor, United
> Forming Incorporated.  Weaver Cooke's claims against Curenton related to the
> alleged defective construction of the concrete balcony slabs.  The concrete
> placement for the balconies was completed in February of 2008.  Weaver Cooke
> asserts that Curenton is liable for construction defects relating to water intrusion
> occurring in or around the balcony doors as the SkySail Project, which Weaver
> Cooke further alleges cause damage to the interior of certain condo units.  Weaver
> Cooke claims that the water intrusion through the doors was caused, in part, by
> the pooling of water on balconies due to improper balcony slopes, improper "step-
> downs," and the lack of a smooth and even finish.

*Id*. at 7-8.  That order went on to discuss the nature and extent of Weaver Cooke's awareness of

the water intrusion through the sliding glass balcony doors, as the issues before the court in that

order hinged on whether such defects would have been latent, when they were or should have

been discovered, etc. The court concluded that Weaver Cooke was aware of the water intrusion

and its potential causes during 2008 and certainly no later than the spring of 2009, such that its

claims against Curenton were time-barred.  *Id.* at 8-10.

With regard to Weaver Cooke's contractual indemnity claim, the court entered an order

on September 26, 2014, allowing Curenton's motion for summary judgment on the same grounds

set forth in the Stock Indemnity Order.  (D.E. 957 (the "Curenton Indemnity Order"))  The court

applied the same reasoning it used in granting summary judgment to Stock Supply: Namely, that

certain portions of the subcontracts between Weaver Cooke and the related parties ran afoul of

N.C. Gen. Stat. § 22B-1 and had to be excised from the agreements.  Pursuant to that blue

penciling, the court interpreted the contracts to permit Weaver Cooke to seek indemnification

from Curenton only if Weaver Cooke could establish that Curenton was *solely* responsible for

the alleged damages, rather than responsible "in part," which Weaver Cooke was unable to do.

In addition, the court noted that while Curenton had not, on its own behalf, specifically

articulated contributory negligence as a basis for summary judgment, "evidence that would

support that argument is set out in its memorandum in the context of its breach of express

warranty discussion."[5]  *Id.* at 21.  The court reached no conclusions on this point, as it did not

need to; instead, it observed that the "contributory negligence of *any* party – including,

obviously, Weaver Cooke – is acutely relevant to construction of the subcontract," then noted

that it already had discussed in the Stock Indemnity Order "the nature, extent, and significant of

Weaver Cooke's own allegations with respect to the multiple causative factors and sources of the

water intrusion problems at SkySail."  *Id*. at 22.

On appeal of the Curenton Indemnity Order, the district court affirmed in part, reversed

in part, and remanded for the same reasons it set forth in its order regarding Stock Supply.  (D.E.

1327)  This court reviewed those reasons in its Stock Indemnity Remand Order:

> On appeal, the district court accepted this court's strike-through of the
> "regardless of" clause, but disagreed with its excision of the "or in part" clause.
> Specifically, the district court held that it would
>
> assume[ ] without deciding that the bankruptcy court properly
> concluded that the last clause of  ¶ 16.2 quoted above, i.e. the

_____

[5] Specifically the court noted in its Curenton Indemnity Order that "Curenton does not specifically articulate contributory negligence as a basis for summary judgment, although evidence that would support that argument is set out in its memorandum in the context of its breach of express warranty discussion ... and also was persuasively argued by Stock Supply: 'Weaver Cooke's negligent construction of the Project, its negligent supervision of the Project, and its negligent instructions to the subcontractors are the primary cause of, or at least a contributing cause of, the alleged construction defects at Skysail about which Weaver Cooke complains in its Third-Party Complaint.'" D.E. 957 at 21.

"regardless of" clause, violates § 22B-1 and should be severed. *See Int'l Paper*, 385 S.E.2d at 555 (holding that the clause "regardless of whether or not it is caused in part by a party indemnified hereunder" in a similar indemnity provision "violates the provisions of G.S. § 22B-1" and severing that portion). The court, however, disagrees with the bankruptcy court's conclusion that the phrase limiting indemnification to claims, damages, losses, and expenses caused *in part* by the negligent acts [or] omissions [of] the subcontractor likewise violates § 22B-1. The statute does not preclude indemnification when one is being held responsible solely for one's own negligence even though other parties might have been negligent too. *See* N.C. Gen. Stat. § 22B-1 ("Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the *sole* negligence of the promisor, its agents or employees." (emphasis added)). When one reads the whole of ¶ 16.2 (with the last clause redacted), Stock agreed to indemnify Weaver Cooke only for damages arising out of Stock's performance of its work and caused by Stock's (or its agents[']) negligence. The provision does not purport to hold Stock responsible for the negligence of any other party and thus comports with § 22B-1 and does not bar indemnification if other parties were negligent.

Order on Appeal at 6. In addition, the district court agreed with Weaver Cooke's challenge "to the bankruptcy court's conclusion to award summary judgment to Stock on Weaver Cooke's indemnification claim on the alternative ground of contributory negligence."[6] *Id.* at 7. Applying the same rationale as before, the

---

[6] The contributory negligence analysis the court refers to here is its initial analysis as set out in the Stock Indemnity Order, which did not rest on whether Weaver Cooke was contributorily negligent; rather, in that order, the court's focus was on whether the negligence of *multiple* parties contributed to the damages. On appeal of that order,

> The district court simply found, as a matter of law, that the indemnity provision as this court construed it could not be properly applied to the facts of record. Having found error with this court's construction of the contractual language, the district court remanded on that basis. The district court thus did not opine on the issue of whether Weaver Cooke's contributory negligence with respect to the party from whom it sought recovery indemnity would, under 22B-1, preclude Weaver Cooke's recovery. Nor did the district court need to do so, given that while this

11

district court held that this court erred in "conclud[ing] Weaver Cooke could not seek indemnification from Stock as Stock did not 'wholly' cause the damages at issue," and held that neither the statute nor the subcontract "prohibits indemnification where *parties in addition to the promisee/subcontractor* are negligent." *Id.* (emphasis added).

Ultimately, the district court reversed the Indemnity Order on grounds that "the provision in this case permits Weaver Cooke to recover in indemnification for damages arising out of Stock's performance of its work and caused by Stock's (or its agents['']) negligence, irrespective of whether other parties were negligent too and contributed to the damages." *Id.* at 8. The district court remanded the Indemnity Order for further proceedings in accordance with its order. Finally, the district court also noted, in concluding, that

> Stock raises an alternative argument in support of affirming the bankruptcy court, that is, Stock did not engage in conduct that proximately caused property damage to the project. Although Stock raised this argument in support of its motion for summary judgment, the bankruptcy court did not address it. The court leaves it to the bankruptcy court to consider it, if necessary, in the first instance on remand.

*Id.* at 8 n.4 (citation omitted).

Stock Indemnity Remand Order (D.E. 1406) at 8-9 (construing District Court Stock Indemnity

Order). Like several of the district court's other dispositions on appeal, its Curenton order

included a footnote acknowledging that the parties had brought to its attention an issue that

---

court had noted the fact of and summarized the uncontested evidence with respect to Weaver Cooke's contributory negligence, this court did not rest its holding on that basis.

Stock Indemnity Remand Order (D.E. 1406) at 22 n.10 (emphasis omitted).

remained unresolved in the proceedings before this court.[7]  Specifically, the district court noted in the footnote that

> Curenton also contends that it is entitled to summary judgment in its favor "because Weaver Cooke [cannot] produce evidence beyond conjecture and speculation that Curenton breached any duty owed to Weaver Cooke, in tort or contract, that would trigger a claim for indemnity." (D.E. #50, at 24)  Although Curenton raised this argument in support of its motion for summary judgment, the bankruptcy court did not address it.  The court leaves it to the bankruptcy court to consider it, if necessary, in the first instance on remand.  *See Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 220 n.3 (4th Cir. 2006).

D.E. 1327 at 1 n.1.

In both of its supplemental memoranda (D.E. 1407, 1510), Curenton argued that the court should, on remand, enter summary judgment for it based upon the contributory negligence analysis as set forth in the Stock Indemnity Remand Order, D.E. 1407 at 4, D.E. 1510 at 4-7.  In addition, Curenton contends the court could enter summary judgment as to the indemnity claim on the alternate basis of proximate cause, which Curenton cites in its first supplemental response, or on the "alternate theory" referenced in the footnote to the District Court Curenton Indemnity Order, which Curenton offers to further address at some future time if the court wishes.  D.E. 1407 at 4, D.E. 1510 at 7.  In its responsive memoranda, Weaver Cooke argues that Curenton "did not raise Weaver Cooke's alleged contributory negligence in support of Curenton's motion for summary judgment on Weaver Cooke's indemnity claim," and further has failed to put forward "its own specific evidence which establishes as a matter of law that Weaver Cooke was

---

[7] These observations by the district court are helpful in fleshing out the parameters of any remaining issues that may, or may not, require resolution in the context of moving this proceeding closer to trial.  The district court's notations are not comprehensive summaries of those remaining issues, however, and, contrary to Weaver Cooke's contentions, they do not serve as limitations upon the matters this court may properly consider on remand.

contributorily negligent with respect to the installation of the balconies." D.E. 1422 at 5-8, D.E. 1522 at 6-7.   Weaver Cooke also maintains that at this juncture, Curenton should be limited to the argument it advanced in its initial motion and argued on appeal – that there was no evidence of a breach of duty by Curenton – and is precluded from conflating that position with the "lack of proximate cause" argument discussed in the Stock Indemnity Remand Order.   D.E. 1422 at 10-13, D.E. 1522 at 4-6.

On remand, having fully considered the foregoing, the court will allow Curenton's motion on grounds that were discussed in the ECM Indemnity Remand Order and are equally applicable to Curenton: Namely, that Weaver Cooke's indemnity claim was precluded on grounds that the indemnity agreement excluded damages to the subject of the contract itself, i.e., "the Work."   *See* ECM Indemnity Remand Order (D.E. 1568) at 13-15.   Further, for the reasons set out below, the court concludes that Weaver Cooke's contributory negligence in connection with the sequencing that was necessary to achieve waterproofing of the exterior balcony doors precludes it, under N.C.G.S. § 22B-1, from seeking indemnity from Curenton.

## DISCUSSION

As discussed earlier, Curenton is the subcontractor retained by Weaver Cooke to provide the labor involved in placing concrete slabs for several aspects of the SkySail project, but only Curenton's work on the concrete balconies is at issue here.   With its contractual indemnity claim, "Weaver Cooke is seeking indemnity from Curenton, but only in the event Weaver Cooke becomes liable to plaintiff on account of Curenton's failure to perform as required under its Subcontract." D.E. 749 at 11.   Plaintiff New Bern's claims regarding concrete work performed by Curenton "have been limited to the improper finishing and sloping of the balconies."   *Id*. at 5.

Weaver Cooke's "primary assertion is that Curenton failed to accurately achieve and uniformly achieve the elevations established on isolated concrete balcony forms, and otherwise failed to finish the concrete slabs so as to provide a smooth, even and uniform surface, free from undulations which may trap or repel water on the balconies." *Id.* at 6.  More specifically, Weaver Cooke "presents a claim for Indemnity from Curenton for *the cost of repair and correction of Curenton's Work in order for it to be free from defects* and in conformance with the requirements of the Subcontract Documents, plus any *other or consequential damages* for which Weaver Cooke may be liable to the Plaintiff [New Bern]." *Id*. at 15 (emphasis added).  For the following reasons, the court will again allow summary judgment for Curenton on the indemnity claim.

## I.      Indemnity Agreement Excludes Damages to the Subject of the Contract

Curenton argued in its original motion for summary judgment that Weaver Cooke's indemnity claim must fail because it did "not seek indemnity for damages to tangible property other than the work of Curenton."  D.E. 690 at 18.  Under Curenton's interpretation, that "work" would include not only any alleged deficiencies in the concrete slabs themselves, but also any water intrusion damages Weaver Cooke attributed to its work, under the theory that the "work" in this context would include the SkySail project as a whole.  *Id.*  The court agrees.

The court discussed this same issue in the ECM Indemnity Remand Order, and in that context observed that the damages for which Weaver Cooke could be entitled to indemnity are limited by the terms of the subcontract.  The language to which the court referred is identical to the language used in the Weaver Cooke-Curenton subcontract, and provides as follows:

> 16.2  To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims,

15

damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (*other than Subcontractor's Work itself*) including loss of use resulting therefrom, if caused in whole or in part by the negligent acts or omissions of Subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.  Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity, which would otherwise exist as to a party or person described in this Article.

D.E. 690, Ex. 1, ¶ 16.2 (emphasis added).  The subcontract between Weaver Cooke and

Curenton defines the "Subcontractor's Work" in Attachment A-1 to the subcontract, as follows:

Provide all required labor, material, equipment, supervision, taxes and insurance to place and finish concrete slabs in strict accordance with the plans and specifications, CRSI and ACI recommended practices and the following special requirements:

Labor to place and finish concrete for slabs on grade and elevated slabs

All supervision is included

D.E. 690-2 at 2.

Weaver Cooke has consistently argued that its indemnity obligation is not limited to only

claims for "bodily injury, sickness, disease or death, or to injury to or destruction of tangible

property (other than Subcontractor's Work itself)."  As it did in the ECM Indemnity Remand

Order, the court disagrees.  To the extent that Weaver Cooke seeks to pursue any indemnity

claim as to Curenton for "the cost of repair and correction of Curenton's Work in order for it to

be free from defects and in conformance with the requirements of the Subcontract Documents,"

that claim is obviously, and entirely, precluded by the language of the subcontract that would

give rise to such a claim in the first place.  *See also* Waterproofing Specialties Order on Remand (D.E. 154) at 19-20.

Equally precluded here, though perhaps less obviously so, is any indemnity claim for related damages, such as water intrusion through the exterior doors and into the condominium interiors.  As in the ECM Indemnity Remand Order (D.E. 1568) and the Randolph Stair Indemnity Remand Order (D.E. 1573), the court finds, based on the broader interpretation of "scope of work" used by the district court in its discussion of the economic loss rule, that any damage to these integrated areas also comes within the scope of Curenton's "Work."  The economic loss rule obviously does not, itself, determine the parameters of whether the water intrusion damages Weaver Cooke attributes to Curenton are within, or outside, the scope of "the Work"; however, this court finds the district court's analysis of the rule, as applied to the factual and legal landscape of this proceeding, to be both informative and persuasive.  The court sees no sound basis upon which it could conclude, using the district court's broader view, that the damages for which Weaver Cooke seeks contractual indemnity (and which must be based on a showing of negligence) are for damage outside the scope of Curenton's "Work."  Summary judgment will be granted to Curenton on this basis.

## II.    Contributory Negligence Bars Recovery

Weaver Cooke contends that Curenton cannot seek summary judgment on grounds of Weaver Cooke's contributory negligence because Curenton didn't specifically raise and articulate that argument in its initial motion for summary judgment, and maintains that the "Bankruptcy Court has already acknowledged that 'Curenton [did] not specifically articulate[] contributory negligence as a basis for summary judgment ...'" D.E. 1442 at 5, quoting D.E. 957

at 21.  In fact, Curenton's argument, and the court's observation as to that issue, was more

thorough:

> Curenton does not specifically articulate contributory negligence as a basis for summary judgment, *although evidence that would support that argument is set out in its memorandum*[8] *in the context of its breach of express warranty discussion*, Curenton Mem. at 27-29, and also was persuasively argued by Stock Supply: "Weaver Cooke's negligent construction of the Project, its negligent supervision of the Project, and its negligent instructions to the contractors are the primary cause of, or at least a contributing cause of, the alleged construction defects at Skysail about which Weaver Cooke complains in its Third-Party Complaint."  Stock Supply Mem. at 39-40.  Thus, Weaver Cooke's contributory negligence "bars any indemnity under § 22B-1, whether grounded in negligence, contract, or otherwise.  *Id.* at 40.  In response to that, Weaver Cooke argued that its indemnity claim sounds in contract, while contributory negligence is a defense that sounds in tort.

D.E. 957 at 21.  The question of whether Weaver Cooke was contributorily negligent was

properly before the court when the Curenton Indemnity Order was entered, and it is properly

before the court now.

In the Stock Indemnity Remand Order, the court held that Weaver Cooke was "precluded

from seeking indemnification from Stock Supply based on its own undisputed contributory

negligence."  D.E. 1406 at 21.  Curenton argues that the court's analysis in that order applies,

and controls, here.  In its initial supplemental memorandum filed after entry of the Stock

Indemnity Remand Order, Curenton summed up its position quite succinctly:

---

[8] In its reply brief, Curenton pointed out that it had discussed "Weaver Cooke's own negligence (and actual knowledge of problems) in relation to the concrete balconies" in its original memorandum, wherein it also incorporated the arguments set out by other parties in response to Weaver Cooke's negligence theories.  D.E. 825 at 10, *citing* D.E. 690 at 23-29.  Nor was it surprising that Curenton's arguments might appear at first blush to have been advanced in the wrong context; Curenton also noted, with some frustration, the challenges it perceived in responding to Weaver Cooke's arguments, including "confusion," "tap dancing with legal theory(ies)," and the tendency of Weaver Cooke to "recast" the legal bases upon which its own claims for relief are founded.

> As the Court noted in its original [Curenton Indemnity Order], Weaver Cooke "alleges that water intrusion through the Projects exterior doors and windows was caused by a combination of defects, attributable to several different subcontractors." (Document 957, at page 14 of 26).  Curenton is one of those subcontractors, as is Stock Supply.  There are no other claims against Curenton other than for damages arising out of water intrusion through the Project's doors at the balconies.  (Document 957, at pages 14-15 of 26, including footnote 4).  Accordingly, to the extent Stock is entitled to summary judgment as a result of Weaver Cooke's own contributory negligence relating to construction defects allegedly involving the balconies, Curenton is also entitled to summary judgment.

D.E. 1407 at 4.  Weaver Cooke, responding, argues that "a close review of Weaver Cooke's alleged negligence reveals important differences between Stock and Curenton."  D.E. 1422 at 5.  In particular, Weaver Cooke cites this court's emphasis on sequencing errors which led to, among other things, installation of the exterior sliding glass doors before (rather than after) application of the traffic coating to the concrete balconies.  According to Weaver Cooke, those sequencing errors in no way relate to the work done by Curenton, because "Curenton is alleged to have created an improper slope on the balconies such that water drained toward the units instead of away from them."  *Id*. at 5-6.

What Weaver Cooke asks the court to disregard, however, is evidence of record, discussed in the Stock Indemnity Remand Order and more recently in the Waterproofing Specialties Indemnity Remand Order (D.E. 1584), which establishes that as to the confluence of factors that resulted in water intrusion through the exterior doors, Weaver Cooke bears at least partial responsibility *for those damages*.  Put another way, the water intrusion damages Weaver Cooke attributes to Curenton are the *exact same* water intrusion damages for which this court has specifically found that Weaver Cooke bears at least partial responsibility.  D.E. 1406 at 21-23, D.E. 1584 at 17-19.  This is precisely what N.C. Gen. Stat. § 22B-1 precludes.  That statute provides that any promise or agreement in connection with a construction contract such as this

19

one, wherein the promisor would purport to indemnify the promisee – here, Weaver Cooke – against "liability for . . . *damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee*, . . . is against public policy and is void and unenforceable."  N.C. Gen. Stat. § 22B-1; *see also* D.E. 1406 at 22-23 (citing cases).

    After taking into account the district court's more expansive reading of the indemnity statute, this court determined in the Stock Supply Indemnity Remand Order that "to the extent that Weaver Cooke bears responsibility (i.e. is contributorily negligent) *for the damages for which it seeks indemnity from Stock Supply*, § 22B-1 bars Weaver Cooke's recovery."  D.E. 1406 at 22.  Likewise here, Curenton has solidly established that Weaver Cooke bears at least partial responsibility for the very damages for which it would seek indemnity from Curenton.  To permit Weaver Cooke to require Curenton to indemnify it "for damages for which Weaver Cooke indisputable was partially responsible would ignore both the language and purpose of § 22B-1; indeed, it would be as if the statute, and the public policy it seeks to protect, did not exist."  *Id.* at 23.  For those reasons, Weaver Cooke's indemnity claim is precluded, and the court will enter summary judgment for Curenton.[9]

---

[9] The court has reviewed the evidence of record as between Weaver Cooke and Curenton. In light of the conclusions discussed above, however, the court need not, and therefore will not, address Curenton's additional bases for summary judgment including its contention that Weaver Cooke failed to put forth evidence to support Curenton's breach of duty, and Curenton's post-Stock Indemnity Remand Order contention (which is, in the court's opinion, the stronger argument) that Weaver Cooke failed to show proximate cause.

**CONCLUSION**

For the foregoing reasons, the court on remand concludes that Curenton's motion for summary judgment on the contractual indemnity claim is **ALLOWED** on grounds that Weaver Cooke's claim for damages pertains wholly and only to "the Work" performed by Curenton as defined within the parties' subcontract and the attachments thereto, and is for that reason excepted from recovery in indemnity.  Further, Curenton's motion is **ALLOWED** on the alternative basis of Weaver Cooke's contributory negligence.

**END OF DOCUMENT**